# EXHIBIT A

Contract ID# __001__
Sales Partner: _____

# RAM

## MERCHANT AGREEMENT

Agreement dated __August 10, 2020__ between Ram Capital Funding LLC (**"RCF"**) and the Merchant listed below (**"MERCHANT"**)
(Month)   (Day)   (Year)

### MERCHANT INFORMATION

Merchant's Legal Name:_____

D/B/A:_____State of Incorporation / Organization: ____ Federal Tax ID _____

Type of Entity (circle one)   Corporation   Limited Liability Company   Limited Partnership   Limited Liability Partnership   Sole Proprietorship

Physical Address: _____ City:_____ State:_____ Zip:_____

Contact Name: _____ Contact Number:_____ Email:_____

Mailing Address: _____ City:_____ State:_____ Zip:_____

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant ("Merchant" or "Seller") hereby sells, assigns and transfers to RCF ("RCF" or "Buyer") (making RCF the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to RCF.

The Purchased Amount shall be paid to RCF by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, RCF (the "Account") into which Merchant and Merchant's customers shall remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each Transaction, until such time as RCF receives payment in full of the Purchased Amount. Merchant hereby authorizes RCF to ACH Debit the specified remittances from the merchant's Account on a daily basis and will provide RCF with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by RCF remains in the Account and will be held responsible for any fees incurred by RCF resulting from a rejected ACH attempt or an event of default. (See Appendix A) RCF is not responsible for any overdrafts or rejected transactions that may result from RCF's ACH debiting the specified amounts under the terms of this agreement. RCF will debit the specific daily amount each business day and upon receipt of the Merchant's monthly bank statements on or about the eighteenth day of each month reconcile the Merchant's Account by either crediting or debiting the difference from or back to the Merchant's Account so that the amount debited per month equals the specified percentage. RCF may, upon Merchant's request, adjust the amount of any payment due under this Agreement at RCF's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between RCF and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Total Purchase Price: _____ Specified Percentage: __10__ % Specific __DAILY__ Amount:$ _____ Total Purchased Amount:$ _____

**THE MERCHANT AGREEMENT TERMS AND CONDITIONS SET FORTH ON PAGE 2, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

**FOR THE MERCHANT (#1)**
By_____        _____     [Sign Here]
       (Print Name and Title)                                              (Signature)

**FOR THE MERCHANT (#2)**
By _____       _____     [Sign Here]
       (Print Name and Title)                                              (Signature)

**OWNER#1**
By_____        _____     [Sign Here]
              (Print Name)                                                 (Signature)

**OWNER #2**
By _____       _____     [Sign Here]
              (Print Name)                                                 (Signature)

**RAM CAPITAL FUNDING, LLC**
By _____        Sales Associate Name: _____
         (Company Officer)                                                     (Signature)

Ram Capital Funding, LLC |PO Box 749 | New York |NY 10038

RCF ACH

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to RCF with a Bank acceptable to RCF to obtain electronic fund transfer services for the Merchant's account at the Bank approved by RCF (the "Account") Merchant shall provide RCF and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes RCF and/or its agent(s) to deduct from the Account the amounts owed to RCF for the receipts as specified herein and to pay such amounts to RCF. Merchant also hereby authorizes RCF to withdraw from the Account the specified percentages and/or sums by RCF debiting the account. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by RCF or not. This additional authorization is not a waiver of RCF's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which RCF did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of RCF.

**1.2 Term of Agreement.** This Agreement shall remain in full force and effect until the entire "Purchased Amount" is received by RCF as per the terms of this Agreement, however, at any point during the term of this Agreement, Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon actual receipt) to RCF. The termination of this Agreement shall not affect Merchant's continuing obligation and responsibility to fully satisfy all outstanding obligations that are due to RCF simultaneously with the Notice of termination.

**1.3 Future Purchases.** RCF reserves the right to rescind the offer to make any purchase payments hereunder, in its sole and absolute discretion.

**1.4 Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize RCF and its agents to investigate their financial responsibility and history, and will provide to RCF any authorizations, bank or financial statements, tax returns, etc., as RCF deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. RCF is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.5 Transactional History.** Merchant authorizes all of their banks and brokers to provide RCF with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program.

**1.6 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by RCF for monies owed to RCF from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by RCF.

**1.7 No Liability.** In no event will RCF be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of RCF's legal fees and expenses resulting therefrom.

**1.8 Reliance on Terms.** Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, RCF and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.9 Sale of Receipts.** Merchant and RCF agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from RCF to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. RCF has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to RCF in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest,- it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that RCF has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and RCF shall promptly refund to Merchant any interest received by RCF in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that RCF not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.10 Power of Attorney.** Merchant irrevocably appoints RCF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to RCF from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to RCF, and (v) to file any claims or take any action or institute any proceeding which RCF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Merchant, and RCF is authorized to use Merchant's funds to pay for same.

**1.11 Protections against Default.** The following Protections 1 through 7 may be invoked by RCF immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the RCF electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse or unacceptable to RCF; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of RCF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RCF; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor. These protections are in addition to any other remedies available to RCF at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchase Amount plus all fees (including legal fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** RCF may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes RCF to execute in the name of the Merchant a Confession of Judgment in favor of RCF in the amount of Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, RCF may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** RCF may enforce its security interest in the Collateral identified in Article III hereof.

**Protection 5.** The entire Purchase Amount and all fees (including legal fees) shall become immediately refundable and payable to RCF from Merchant.

**Protection 6.** RCF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, under which RCF shall recover Judgment against Merchant, Merchant shall be liable for all of RCF's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchants Assignment of Merchant's Lease of Merchant's business premises to RCF. Upon breach of any provision in this Agreement, RCF may exercise its rights under this Assignment of Lease without prior Notice to Merchant. **Protection 8.** RCF may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to RCF.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes RCF to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that RCF obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against RCF or any of its affiliates relating to any (i)investigation undertaken by or on behalf of RCF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by RCF, including this Agreement and any other RCF documentations (collectively, "Confidential Information") are proprietary and confidential information of RCF. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of RCF to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles RCF to not only damages and legal fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.14 Publicity** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes RCF to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.15 D/B/A's** Merchant hereby acknowledges and agrees that RCF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between RCF and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement; and until RCF is fully paid:

**2.1 Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial Statements, copies of which have been furnished to RCF, and future statements which will be furnished hereafter at the discretion of RCF, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise RCF of any material adverse change in their financial condition, operation or ownership. RCF may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to RCF within 5 business days. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming RCF as loss payee and additional insured in amounts and against risks as are satisfactory to RCF and shall provide RCF proof of such insurance upon request.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect on Merchant's obligations under this Agreement, without RCF's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and RCF, nor shall Merchant change any of its places of business without prior written consent by RCF.

**2.7 Daily Batch Out** Merchant will batch out receipts with the Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from RCF to Merchant, execute, acknowledge and deliver to RCF and/or to any other person, firm or corporation specified by RCF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

**2.10 Working Capital Funding** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than RCF.

**2.11 Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of RCF.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.14 Good Faith, Best Efforts and Due Diligence** Merchant and Guarantors hereby affirm that it will conduct its business in Good Faith and will expend its Best Efforts to maintain and grow its business, to ensure that RCF obtains the Purchased Amount. Furthermore, Merchant and Guarantors hereby agree, warrant and represent hereby that they will constantly perform all appropriate Due Diligence and credit checks of all of the customers' finances, cash flow, solvency, good faith, payment histories and business reputations (the "Due Diligence Requirements") as may suffice to ensure any and all products and/or services provided, sold or delivered by Merchant to said customers will be paid for by customers in full and on time, and will not result in the creation of an unpaid account. These Due Diligence Requirements must be performed prior to any sales to any customer, and repeated no less frequently than monthly for so long as any sums are due from those customers. Full documentation of all of Merchant's compliance with its Due Diligence Requirements must be maintained in Merchant's files so long as RCF has not fully collected all sums due to it. This is not a guaranty of payment by customers, but is a guaranty of full, adequate and good faith Due Diligent investigation and credit check of customers before extending credit to them and continuing no less frequently than monthly so long as sums are still due.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or Guarantor shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Merchant; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business, (f) Merchant shall transfer or sell all or substantially all of its assets, (g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (h) Merchant shall use multiple depository accounts without the prior written consent of RCF (i) Merchant shall change its depositing account without the prior written consent of RCF; (j) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (k) Merchant shall default under any of the terms, covenants and conditions of any other agreement with RCF.

**3.2 Personal Guaranty.** In the event of a Default under Sections 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13, and 2.14 hereof, should RCF determine that the Purchased Amount cannot be obtained from the Merchant's business, RCF will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to RCF for all of RCF's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3 Remedies** In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, RCF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy. All rights, powers and remedies of RCF in connection with this Agreement may be exercised at any time by RCF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4 Costs.** Merchant shall pay to RCF all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(b) the enforcement of RCF's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

**3.5 Required Notifications** Merchant is required to give RCF written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give RCF seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by RCF.

**4.2 Assignment** RCF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to RCF shall become effective only upon receipt by RCF. Notices to Merchant shall become effective three days after mailing.

**4.4 Waiver Remedies.** No failure on the part of RCF to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive and remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction** This Agreement shall be binding upon and inure to the benefit of Merchant, RCF and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of RCF which consent may be withheld in RCF's sole discretion. RCF reserves the right to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if RCF so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum Merchant waives any right to oppose any motion or application made by RCF to transfer such proceeding to an Acceptable Forum.

**4.6 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8 Severability.** In case any of the provision in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and RCF and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11 CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT), AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.11 Facsimile Acceptance.** Facsimile signatures hereon shall be deemed acceptable for all purposes.

Initials: _____

Initials: _____

**RAM CAPITAL FUNDING LLC - SECURITY AGREEMENT AND GUARANTY**

Merchant's Legal Name: _____ D/B/A: _____
Physical Address: _____ City _____ State _____ Zip _____
Federal ID# _____

## SECURITY AGREEMENT

**Security Interest.**   This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant grants to RCF a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to RCF under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to RCF upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover RCF's entitlements under this Agreement, RCF is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of RCF's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, RCF or an affiliate of RCF. RCF is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by RCF without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, RCF has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, RCF will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from RCF written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant agrees that this is a contract of recoupment and RCF is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant agrees not to contest or object to any motion for relief from the automatic stay filed by RCF. Merchant agrees to execute and deliver to RCF such instruments and documents RCF may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. RCF is authorized to execute all such instruments and documents in Merchant's name.

**Additional-Collateral**.   To secure Guarantor's payment and performance obligations to RCF under the Guaranty, the Guarantor hereby grants RCF a security interest in_____
_____(the "Additional Collateral"). Guarantor understands that RCF will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to RCF under any other agreement between Merchant or Guarantor and RCF (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as RCF deems necessary to perfect or maintain RCF's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes RCF to file any financing statements deemed necessary by RCF to perfect or maintain RCF's security interest, which financing statement may contain notification that Merchant and/or Guarantor have granted a negative pledge to RCF with respect to the Collateral, and the Additional Collateral, and that any subsequent lienor may be tortuously interfering with RCF's rights. Merchant and Guarantor shall be liable for, and RCF may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by RCF in protecting, preserving and enforcing RCF's security interest and rights.

**Negative Pledge**.   Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**.   RCF shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, RCF may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that RCF may enter into an agreement with Merchant's landlord giving RCF the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**.   Upon any Event of Default, RCF may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to RCF, whether by acceleration or otherwise.

## GUARANTY

**Personal Guaranty of Performance**.   The undersigned Guarantor(s) hereby guarantees to RCF, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers**.   In the event of a breach of the above, RCF may seek recovery from Guarantors for all of RCF's losses and damages by enforcement of RCF's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral RCF may hold pursuant to this Agreement or any other guaranty.

RCF does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) RCF's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to RCF. In addition, RCF may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to RCF; (ii) release Merchant from its obligations to RCF; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to RCF under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that

RCF must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement**. Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability**. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

**MERCHANT #1**

By_____
    (Print Name and Title)
SS#_____

_____ [Sign Here]
    (Signature)
Drivers License Number _____

**MERCHANT #2**

By_____
    (Print Name and Title)
SS#_____

_____ [Sign Here]
    (Signature)
Drivers License Number _____

**OWNER/GUARANTOR #1**

_____
    (Print Name)
SS# _____

_____ [Sign Here]
    (Signature)
Drivers License Number _____

**OWNER/GUARANTOR #2**

_____
    (Print Name)
SS#_____

_____ [Sign Here]
    (Signature)
Drivers License Number _____

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represent that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of RCF documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and RCF, and RCF shall be entitled to all remedies available under law, equity and/or this Agreement. RCF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to RCF. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes RCF, its agents and representatives and any credit reporting agency engaged by RCF, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to RCF as a consequence of this Agreement or for RCF's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT PCRV WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO PUNITIVE DAMAGES AND ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.**

**Ram Capital Funding, LLC |PO Box 749 | New York |NY 10038**

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

**This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.**

**DISBURSMENT OF ADVANCE PROCEEDS.** By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller later identifies and is acceptable to Buyer) (hereinafter referred to as the "Designated Checking Account") This authorization is to remain in full force and effect until Buyer has received written notification from Seller of its termination in such time and in such manner as to afford Buyer and Seller's depository bank a reasonable opportunity to act on it.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

**MISCELLANEOUS.** Buyer is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Seller's account must comply with the provisions of U.S. law.

I, (We)_____Hereby Authorize, Ram Capital Funding, LLC_____
(Hereinafter known as "RCF") to Electronically (ACH) debit the Bank Account Below, of which I am a signer:

Bank Name:_____Branch:_____

ABA: Routing:_____DDA: Account:_____For the

amount of: $_____ (Or) Percentage of each Banking Deposit: %N/A_____

On the Following Days: __MONDAY - FRIDAY_____

This authorization is to remain in full force and effect until COMPANY has received written notification from me at least 5 banking days prior of its termination to afford COMPANY a reasonable opportunity to act on it.

Signer :(Print Name /Title)_____ Date: ___August 10, 2020___

X_____

Ram Capital Funding, LLC |PO Box 749 | New York |NY 10038

# Appendix: The Fee Structure:

A. **Origination Fee**- $_____ to cover Underwriting and related expenses.
B. **ACH Program Fee**- $_____ (or 12% of the funded amount, depending on size of advance) ACH's are labor intensive and are not an automated process, requiring us to charge this fee to cover costs.
C. **NSF Fee Standard**- $50.00 (each) up to **THREE TIMES ONLY** before a default is declared.
D. **Rejected ACH**- $100.00 – When Merchant directs bank to reject our ACH Debit.
E. **Bank Change Fee**- $500.00- When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.
F. **Blocked ACH Payment**- $5,000.00—This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.
G. **Default Fee**- a Default Fee of $2500.00 shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement. *See* Merchant Agreement at p.2, ¶3.1.
H. **Working Capital Funding**- A fee of $5,000.00 shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than RAM. *See* Merchant Agreement at p.2, ¶2.10.
I. **Account Management Fee**- At the end of each month, Merchant will pay to RAM an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a "Specified Percentage" of the Merchants settlement amount for that Month.
J. **Miscellaneous Service Fee**- Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant Agreement is $_____ paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with RAM. Additional copies of prior monthly statements will incur a fee of $10.00.

**Merchant 1 (sign)** _____     **Print:** _____

**Merchant 2 (sign)** _____     **Print:** _____

Ram Capital Funding, LLC

Dear Merchant,

Thank you for accepting an offer from Ram Capital Funding LLC. ("RCF") We look forward to being your funding partner for as long as you need.

Please note that the way your advance is set up RCF needs viewing access to your bank account each business day in order to calculate the amount of your daily payment. Please be assured that we will carefully safeguard your confidential information and only essential personnel will have access to it.

Please fill out the form below with the access information for your account.

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1:_____

Security Question/Answer 2:_____

Security Question/Answer 3:_____

Any other information necessary to access your account: _____

---

Please note in the event we can not access your account we will take an estimated payment plus a $39 fee for each day we don't have access. If you have any questions please feel free to contact our cash management department directly at (646) 762-1847

**Ram Capital Funding, LLC |PO Box 749 | New York |NY 10038**