K8EPFTCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FEDERAL TRADE COMMISSION,

        Plaintiff,

   v.                                    20 CV 4432 (LAK)
                                     Telephone Conference
RCG ADVANCES, LLC, ET AL.,

        Defendants.
------------------------------x

                               New York, N.Y.
                               August 14, 2020
                               2:08 p.m.

Before:

               HON. LEWIS A. KAPLAN,

                            District Judge

            APPEARANCES VIA TELEPHONE

FEDERAL TRADE COMMISSION
    Attorneys for Plaintiff
BY: IONA RUSU GORECKI
    MARGUERITE MOELLER

JOSEPH MURE, JR., ESQ. & ASSOCIATES
    Attorney for Defendant RCG Advances, LLC
BY: ANTHONY VARBERO
    DAVID C. CASAGRANDE

TERENZI & CONFUSIONE, P.C.
    Attorneys for Defendant Ram Capital Funding, LLC
BY: RONALD M. TERENZI
    THOMAS ALTON HARVEY

JEFFREY FLEISCHMANN
    Attorney for Defendant Jonathan Braun

1           (The Court and all parties appearing telephonically)

2           THE COURT:  Hi.  Okay.  I appreciate everybody
3  accommodating this call.  I think we can cut through quite a
4  few things.  The way we'll handle this, since we have a
5  reporter on the call, is that unless I call on someone by name
6  to speak, anybody who speaks begins by stating his or her name.
7  Understood all around?

8           MULTIPLE VOICES:  Yes.

9           THE COURT:  Okay.  The first thing I want to take up
10 is this sealing application, and before we get to the substance
11 of it, I would like to understand exactly what the status quo
12 is.

13          As near as I can tell, what happened is that the
14 defendants redacted their papers, made images of the redacted
15 papers, filed the images of the redacted papers, and restricted
16 access to the redacted papers electronically to the Court and
17 the lawyers for the FTC.  Is that the status quo, Mr. Varbero?

18          MR. VARBERO:  No, your Honor.  And I apologize.  When
19 I was processing it, I thought I had checked the proper button
20 that the Court and the participants could see it because I
21 think there were two different options, and that was never my
22 intention; so I apologize.  I thought I had checked the ones
23 that said access to everybody, but then I subsequently e-mailed
24 both to the Court and everybody.  Again, I apologize for filing
25 it in that manner.

|   |   |
|---|---|
| 1 | THE COURT:  I'm sorry.  What is it that you e-mailed |
| 2 | to the Court? |
| 3 | MR. VARBERO:  The unredacted copy and the redacted |
| 4 | filing, as well as to the plaintiff. |
| 5 | THE COURT:  Andy, have we received any such things? |
| 6 | THE DEPUTY CLERK:  Judge, I don't think I received |
| 7 | anything else besides what's online, unless I'm mistaken. |
| 8 | THE COURT:  So, Mr. Varbero, to whom did you e-mail |
| 9 | them? |
| 10 | MR. VARBERO:  I believe it was |
| 11 | KaplanNYSDchambers@NYSD. |
| 12 | THE COURT:  Okay.  Well, I don't know where you got |
| 13 | the idea to do that, but it doesn't work. |
| 14 | MR. VARBERO:  I apologize.  I had contacted the Court, |
| 15 | and that's why I sent them yesterday at 1:53 a.m. in the |
| 16 | morning.  I tried that earlier in the day.  The day before I |
| 17 | had contacted the Court.  It was my understanding to forward |
| 18 | them to that, both the redacted and unredacted and include the |
| 19 | plaintiff's counsel. |
| 20 | THE COURT:  Did the plaintiff's counsel get them? |
| 21 | MS. GORECKI:  Yes, your Honor.  We did receive them. |
| 22 | THE COURT:  Okay. |
| 23 | MS. GORECKI:  Apologies.  This is Ioana Gorecki.  In |
| 24 | responding to Judge Kaplan's question about whether we did |
| 25 | receive the documents.  We did receive them. |

1           THE COURT:  Okay.  Well, Mr. Varbero, wherever you got
2    the idea it should have gone to my JA, you are mistaken.  She
3    is teleworking, and she has no access to the court computer
4    system and probably isn't going to know they're in her e-mail
5    for another six weeks.
6           So you're going to have to send them again, and you
7    should send them to Mr. Mohan.
8           MR. VARBERO:  Okay, your Honor.  I apologize.  Thank
9    you.
10          THE COURT:  Okay.  So then what I understand, assuming
11   this all gets straightened out, what you want to do is you want
12   me to sign off on the redactions; is that right?
13          MR. VARBERO:  That was part of the relief, your Honor.
14          THE COURT:  Well, what else was part of the relief?
15          MR. VARBERO:  Part of the relief was a TRO because of
16   a stay because of a --
17          THE COURT:  Well, all I'm talking about so far --
18          MR. VARBERO:  Oh, yes.
19          THE COURT:  -- is the letter motion to seal.
20          MR. VARBERO:  Correct, your Honor.
21          THE COURT:  Now, with respect to that application, is
22   there anything else you're asking for, other than for me to
23   sign off on whatever you redacted?
24          MR. VARBERO:  No, your Honor.
25          THE COURT:  Okay.  Now, whatever you filed on this,

since you're asking for injunctive relief, constitutes judicial documents.  They are presumptively open to the public, both in common law and under the First Amendment, and there has to be a specific and particularized showing of a basis for doing anything else with them.

Now, your letter doesn't come remotely close, and if all there is is your letter, I'm just going to deny it and open everything up.  Now, what would you like to do?

MR. VARBERO:  Accept the Court's position of denying and opening it up.  It was -- the intent on the seal was not to obstruct the federal criminal investigation, and that was really the basis for it.  As well as, there could be detrimental harm to the defendants, but it was more so the communications with my office and the U.S. Attorney's Office.

THE COURT:  Well, you put such communications before me for the purpose of having me consider them in deciding whether to grant you relief or not; is that correct?

MR. VARBERO:  Yes, your Honor.

THE COURT:  All right.  Now, is there any reason why, given the presumption of public access, that those materials, which you chose to put before me, shouldn't be made public?

MR. VARBERO:  Not at this time, your Honor.

THE COURT:  Okay.  Well, then I'm going to deny your letter application.

MR. VARBERO:  I understand.

1      THE COURT:  Do we understand each other?

2      MR. VARBERO:  Yes, your Honor.

3      THE COURT:  If at some point you think you can make
4 the showing required by cases like *Lugosch* and *Amadeo*, you're
5 free to try, but right now, I haven't got a basis before me.

6      Okay.  Now, with respect to a TRO, of course, I don't
7 know what's redacted from your papers at this moment, but I'll
8 give you an opportunity to make your case for a TRO orally.  So
9 the floor is yours, Mr. Varbero.

10     MR. VARBERO:  Thank you, your Honor.  The main reason
11 for the TRO is because of our clients, Giardina and Richman, or
12 RCG's, Fifth Amendment protections.

13     The New York State Attorney General's Office, the
14 Department of Justice, the Manhattan DA and the FTC have been
15 working together collectively on the same information in
16 bringing their claims based on the same information,
17 transactions and occurrences.  And I understand a civil stay is
18 an extraordinary remedy, but here, this case warrants it.

19     The Second Circuit has clearly laid out the test, but
20 the particular factors in this case, they all overlap on the
21 same issues in a criminal and civil matter.  And one of the
22 biggest concerns is we cannot openly participate in discovery
23 because of the way the agencies are working together, or put an
24 answer in or a motion in the State's -- in the New York State's
25 AG case, which has criminal cause of action in it, without

1   waiving our client's --

2            THE COURT:  Mr. Varbero, I saw that in your papers,
3   and it's just not true.  They charge you in a civil complaint
4   that seeks only civil relief with for a violation of the usury
5   statute, which could be prosecuted criminally but nobody has
6   charged anybody under.  Am I mistaken?

7            MR. VARBERO:  Yes, but it can lead to the misdemeanor,
8   but there are also assault and battery and there are other
9   charges against the other co-defendants that could be part or
10  imputed of ours and charged to our client.

11           THE COURT:  Has any defendant in this case been named
12  in any accusatory instrument in a criminal proceeding anywhere?

13           MR. VARBERO:  Not at this time, your Honor.

14           THE COURT:  Okay.  So let's pick it up from there.  We
15  have no criminal charges.

16           MR. VARBERO:  But we do know -- we believe it's
17  stronger than a possibility.  We believe it's imminent.  And
18  why I say that, is that we've been told by the United States
19  Attorney's Office that Mr. Giardina is going to be charged with
20  federal fraud crimes.  Not pending, not if.

21           We had the conversation with the U.S. Attorney about
22  whether he was the subject or a witness.  He's actually a
23  subject and a target, and even if he cooperated and took a plea
24  deal, he would not be knocked down to being a witness.  So in
25  the last week, really --

1         THE COURT:  Mr. Varbero, you know, a target is
2    different than a subject, and a subject is different than a
3    witness, and even a target is not necessarily going to be
4    charged.
5         MR. VARBERO:  Respectfully, you're correct, your
6    Honor, but my understanding from the conversations with the
7    U.S. Attorney's Office, he is inevitably -- or he is going to
8    be charged criminally.
9         THE COURT:  And who told you that?
10        MR. VARBERO:  The United --
11        THE COURT:  I want a name.
12        MR. VARBERO:  -- States Attorney.  I was going to get
13   it.  The Assistant United States Attorney Louis Pellegrino.
14        MS. GORECKI:  Your Honor, this is Iona Gorecki from
15   the Federal Trade Commission.  At some point, I would also like
16   to respond to this, whenever your Honor gives me the chance.
17        THE COURT:  Well, of course.
18        Okay.  Go on, Mr. Varbero.
19        MR. VARBERO:  Based on those circumstances and facts,
20   the issue is that you have a civil federal agency moving
21   forward with their case, and we know it's imminent that pending
22   criminal charges are going to be brought against our client,
23   and if we don't answer in this case in front of you, your
24   Honor, they could move for a default.
25        So like the papers say, we're in somewhat of a rock

and a hard place in dealing with constitutional protections and handling the civil suit.  And as stated in my -- in the reply that was filed, you know, there is case law in the Southern District that says in the interests of justice, when it's required or if there's civil and criminal cases, the Court can grant a stay.

And simply based on the fact that any communications from our clients that move to dismiss or to answer or participate would waive those rights is our concern.

THE COURT:  Well, let's take them one at a time.  Suppose your client makes a motion to dismiss the civil case, how does that implicate Fifth Amendment rights?

MR. VARBERO:  My understanding, your Honor, is any of the communications then open up the door that he's actively participated in the case and waived his Fifth Amendment right.

THE COURT:  I think you misunderstand the law pretty grievously.  If he makes a motion to dismiss under rule 12(b)(6), what he's saying is if all the facts alleged by the FTC are true, the FTC loses anyway because the complaint's not sufficient as a matter of law.  Right?

MR. VARBERO:  Yes, your Honor.

THE COURT:  Okay.  So a motion to dismiss does not necessarily implicate anybody's Fifth Amendment rights.  True?

MR. VARBERO:  Yes, your Honor.  But respectfully, this Court ruled yesterday on the 12(b)(6) motion in regard to one

of the co-defendants -- okay, there are factual allegations in the case; so even if we did put in a 12(b)(6) motion, the likelihood is it would be denied based on the precedent that I said. And then the next step would be to put an answer in and to get into the factual facts of the case.

THE COURT: Mr. Varbero, the fellow who made the motion to dismiss that I denied yesterday put in an affidavit in which he specifically addressed key factual allegations against him. And by doing that, although I'm not pre-judging the issue, he may very well have waived the Fifth Amendment voluntarily, right out of the get-go. Right?

MR. VARBERO: I understand, your Honor. It's just that in light of the overlapping facts and the parallel, what will be a criminal case, we believe, and a criminal investigation all stems from all these agencies working together and sharing information.

THE COURT: Mr. Varbero, I don't know, do I, for certain whether there will be any criminal charges. If I were to assume that there would be criminal charges, I don't know what they would be and, therefore, I can't really assess the extent to which, if any, that the facts overlap between the FTC's case and whatever criminal case might be brought, if any. Isn't that true?

MR. VARBERO: I understand. Yes, your Honor.

THE COURT: Okay. One more question for you,

1   Mr. Varbero.  What's going to happen in the next two or three
2   weeks that would force your clients to choose between remaining
3   silent and suffering a default in this case?
4           MR. VARBERO:  The fact that waiving the Fifth
5   Amendment participating in the case, it may warrant three
6   weeks.  It still stands to be the same if the U.S. Attorney is
7   bringing the criminal charges based on the overlapping facts
8   and same information.  I mean, you have the detective from the
9   NYPD who gathered all the information for two years between the
10  State -- between the agencies and walked it across the street
11  to the U.S. Attorney's Office.
12          THE COURT:  What steps have to be taken in this
13  lawsuit in the next three weeks by your clients?
14          MR. VARBERO:  Either move to dismiss or answer.
15          THE COURT:  Is the FTC prepared to extend their time
16  to answer or move if they request it?  Ms. Gorecki?
17          MS. GORECKI:  Yes, your Honor, this is Iona Gorecki
18  for the FTC.  We would prefer to maintain the timetable that is
19  currently before the Court.  Obviously, Judge, if you decide
20  differently, we would go along with that, but we would prefer
21  to maintain the current timetable.
22          THE COURT: All right. Anything else, Mr. Varbero?
23          MR. VARBERO:  No, your Honor.
24          THE COURT:  Okay.  Anyone else on the defendant's side
25  want to be heard?

1                MR. HARVEY:  No, Judge.  Tom Harvey.

2                THE COURT:  Okay.  Then -- did I miss someone?
3     Mr. Fleischmann?

4                MR. FLEISCHMANN:  Nothing from me, your Honor.  Thank
5     you.

6                THE COURT:  Okay.  Ms. Gorecki?

7                MS. GORECKI:  Yes, your Honor.

8                THE COURT:  On the TRO?

9                MS. GORECKI:  Yes, your Honor.  The first thing, and I
10    agree with all the points your Honor raised.  There's no
11    indictment here.  The attempt to somehow convert the Newark
12    AG's case into a criminal case because it references a couple
13    of penal statutes is simply not correct.  The suit is brought
14    under a civil law, under executive law 6312.  The relief sought
15    is civil.

16               And in addition, you know, the reason I jumped in
17    before and, you know, what I wanted to note is that I'm
18    concerned that, as your Honor stated, you have to have a chance
19    to look at the unredacted versions of the affirmations and the
20    memo.  And I'm concerned because the representations that
21    Mr. Varbero made today regarding how imminent this potential
22    criminal prosecution is and the fact that, you know, he was
23    told that, not maybe Mr. Giardino would be charged, but that he
24    would be charged, it just doesn't line up with the affirmations
25    that they submitted in support of even their TRO motion.

1           The affirmations they submitted are much more vague.
2   They do say that the -- Mr. Giardino is a subject, he's not a
3   target, and it really is unclear where the support is for the
4   idea that he is going to be charged for sure, definitely, no
5   question about it.  I don't see that anywhere in the
6   affirmations that counsel submitted.
7           THE COURT:  Okay.  I'm sorry, go ahead.
8           MS. GORECKI:  Sorry.  Additionally, another thing that
9   I wanted to bring up was that in addition to the lack of an
10  indictment, here we're not talking about a private plaintiff's
11  interest.  We are talking about civil law enforcement agency.
12  We are charged with protecting consumers in the marketplace,
13  and so the public interest here and the FTC's interests are
14  merged and weigh strongly against a stay.
15          And so it's certainly much more compelling than it
16  would be if it were simply a private plaintiff, and at the same
17  time, the burden on the defendants is minimal.  I mean, to the
18  extent that -- your Honor, it is not even clear who is bringing
19  the stay.
20          So if we take a look at, you know, the notice of -- or
21  electronic filing, they said it was brought on behalf of all of
22  the defendants.  But when you look at the actual motion to
23  stay, it apparently was only brought on behalf of, I think, it
24  was Giardina, RCG and Ram Capital Funding.
25          And then when we look at the defendant's affirmation,

1   it says that it's in support of, I think it's, RCG, Giardina
2   and Michelle Gregg, who is not even a defendant in this case.
3   So as a side note, we're not even sure who is bringing the
4   motion to stay.
5          But aside from that, to the extent that it's a
6   corporation, they don't have a Fifth Amendment right; so the
7   burden is mirrored there.  And as your Honor noted, given
8   there's no indictment, there's not even a subpoena by a grand
9   jury, that the Fifth Amendment privilege or the burden on it is
10  minimal at this time.
11         THE COURT:  Okay.  I'm not going to grant a TRO.  I
12  see no cognizable threat of irreparable injury before the
13  motion can be briefed and argued in a normal course.
14         Let's see if we can agree on a briefing schedule and
15  obviate the need for expedited anything.  How much time does
16  the FTC want to respond to the motion, assuming that that order
17  to show cause is regarded as a notice of motion?
18         MS. GORECKI:  Your Honor, again, this is Iona Gorecki.
19  We have already submitted an opposition to the motion this
20  morning at, I believe, around 10:30 a.m.
21         THE COURT:  Well, I've seen it.  Is that satisfactory
22  to you for me to go ahead and decide what amounts to, not a
23  TRO, but to a preliminary injunction?
24         MS. GORECKI:  Yes, your Honor.  I believe that we are
25  satisfied that the motion that we submitted this morning would

1   be sufficient to decide the preliminary injunction issue.

2             THE COURT:  And what about the defendants?
3   Mr. Varbero?  I've had the replies from two groups of
4   defendants.  Are the defendants prepared to have me go ahead
5   and rule on this motion --

6             MR. VARBERO:  Yes, your Honor.

7             THE COURT:  -- without further briefing?  Mr. Varbero,
8   is that right?

9             MR. VARBERO:  Yes.  Mr. Varbero.  Right.

10            THE COURT:  And Mr. Terenzi?

11            MR. TERENZI:  Your Honor, we're not part of that
12  motion.

13            THE COURT:  Okay.  Mr. Fleischmann?

14            MR. FLEISCHMANN:  Your Honor, Mr. Braun is also not
15  part of that motion.  I believe that counsel probably just
16  checked the boxes incorrectly when he filed it, but we were not
17  part of the motion.

18            THE COURT:  Okay.  So I will mark this as submitted as
19  of now, and you'll get a decision in due course.

20            Okay.  Anything else we can usefully accomplish this
21  afternoon?

22            MR. WHITE:  Your Honor, this is Michael White for the
23  Federal Trade Commission.  My pro hoc admission, I think it's
24  ECF 7, is still pending, and I had to resubmit it for a minor
25  technical error.  I was just hoping it could be considered and

K8EPFTCC

1     entered, if appropriate.  Thank you.
2              THE COURT:  Okay.  All righty.
3              MR. VARBERO:  Your Honor?
4              THE COURT:  Yes.
5              MR. VARBERO:  I apologize.  It's Anthony Varbero.  Our
6     answer is due today, and I know you had raised the extension.
7     We had reached out to the FTC to see if they would grant the
8     extension and we received the same position that they wouldn't.
9     We would just respectfully ask time to put an answer in pending
10    the decision of this motion.
11             THE COURT:  What's the commission's view?
12             MS. GORECKI:  Your Honor, to the extent that
13    Mr. Varbero says he has reached out to us, we've never
14    discussed an extension of the motion to dismiss or an answer.
15    I was not party to any conversations, but our position is that
16    they should remain the same.
17             Defendants knew about the criminal investigation, upon
18    which they base this motion to stay, a couple of weeks ago.
19    They could have filed this motion a couple of weeks ago, once
20    they found out, and then still been able to file their answer
21    or motion to dismiss today, per the schedule.  We believe the
22    schedule should remain in place.
23             MR. VARBERO:  Your Honor, could I comment on that for
24    a moment?  It's Anthony Varbero.
25             THE COURT:  Yes.

1     MR. VARBERO:  So we had -- my office and co-counsel
2  had several conversations with Mr. Pellegrino and Detective
3  Nicolosi, and there was one at the beginning -- or the end of
4  June, the beginning of July, and then we didn't reconvene again
5  until the middle of this week.  And when it became clear -- and
6  it wasn't initially so clear that they were actually being
7  indicted until this week; otherwise, we would have brought the
8  motion two weeks ago.
9     Again, with regard to when I checked the box, if I
10  didn't correctly check the box again is because the plaintiff
11  had named RCG Advances, and I did it in error as an "also known
12  as" Ram; so I apologize on that.  We don't represent them.  I
13  just want to clarify that.  But their name is operating as a
14  Ram Capital Company or d/b/a.
15     THE COURT:  Okay.  I'll give you another week to
16  answer or move, Mr. Varbero.  But the date is August 21.
17     MR. VARBERO:  Thank you, your Honor.
18     THE COURT:  Okay.  Thanks, everybody.
19     MR. VARBERO:  Thank you, Judge.
20     MS. GORECKI:  Thank you.
21     THE COURT:  Bye, bye.
22     (Adjourned)