UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RCG ADVANCES, LLC et al.<br><br>Defendants. | **Case No. 20-CV-4432- LAK** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS RCG ADVANCES LLC AND ROBERT L. GIARDINA'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**I. LEGAL STANDARD** ........ 1

**II. ARGUMENT** ........ 2

A. The Rule 8(a) Pleading Standard Applies to the FTC's Deception and Unfairness Claims Under the FTC Act ........ 2

B. The FTC's Complaint States Claims for Deception Under the FTC Act Based on Defendants' Unlawful Financing Activities ........ 3

1. The Complaint Describes How Defendants Misrepresented the Terms of Financing 4

2. The Parol Evidence Rule Does Not Apply in FTC Act Cases ........ 5

3. Defendants' Subsequent Disclosures Cannot Cure Their Initial Misrepresentations . 6

C. The FTC's Complaint States Claims for Unfairness Under the FTC Act Based on Defendants' Unlawful Collection Activities ........ 7

1. The Complaint Describes Defendants' Unfair Collections Practices in Detail, Including That They Filed Confessions of Judgment Against Consumers Who Did Not Breach Their Contracts, Threatened Violence Against Them, and Took Unauthorized Charges from Their Bank Accounts ........ 8

2. Defendants' Factual Dispute Regarding Count III of the Complaint Is Improper at the Motion to Dismiss Stage ........ 10

3. The *Noerr-Pennington* Doctrine Does Not Bar Count II ........ 11

**III. CONCLUSION** ........ 13

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................ 2, 6, 11, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................... 2, 6, 11

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 103 S. Ct. 2161 (1983) .................. 15

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609 (1972) ...... 13

*Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523 (1961) ........................................................................................................... 13

*ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219 (S.D.N.Y. 2008) .................................. 1, 2

*Exposition Press, Inc. v. FTC*, 295 F.2d 869 (2d Cir.1961) ................................................ 7, 8

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ........................................................ 12

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y. 2004) ........................................................................................................... 15

*FTC v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242 (E.D.N.Y. May 23, 2012) .............................................................................. 3

*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006)................................................. 7

*FTC v. Five–Star Auto Club*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ........................................ 5

*FTC v. Ivy Capital, Inc.*, No. 11-283, 2011 WL 2118626 (D. Nev. May 25 , 2011) .................... 4

*FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010)........................................... 4

*FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008)....................... 3, 5, 6, 7

*FTC v. Sterling Drug, Inc.*, 317 F.2d 669 (2d Cir.1963) ........................................................ 5

*FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014)........................................... 3, 12

*FTC v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193 (S.D.N.Y. 2000) ............................................ 9

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ...................................... 14

*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008)........................................ 4

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019)13, 14

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)...................................................................... 4

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .......... 4

*Ross v. A. H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir. 1979) .......... 4

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) .......... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) .......... 4

*U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605 (S.D.N.Y. 2008) .......... 2

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965) .......... 13

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir.1995) .......... 2

*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455 (D.D.C.1997) .......... 4

**Statutes**

15 U.S.C. § 45 .......... 1, 5, 9

**Rules**

Fed. R. Civ. P. 8 .......... 2, 3

Fed. R. Civ. P. 9 .......... 3, 4

Plaintiff, the Federal Trade Commission ("FTC"), opposes the Motion To Dismiss The Complaint (Dkt. No. 40 or "Motion") filed by Defendants RCG Advances LLC and Robert L. Giardina (collectively, "Defendants"). In its detailed, fourteen-page complaint (Dkt. No. 1 or "Complaint"), the FTC explains how Defendants misrepresented the terms of their financing products (Count I), and used unfair confession of judgment filings (Count II), unfair threats (Count III), and unauthorized withdrawals (Count IV) to coerce repayment from small business customers in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. The Complaint details the entities responsible for the foregoing law violations, as well as the individuals who formulated, participated in, and had knowledge of these violations.

Defendants' Motion offers a confusing jumble of inapplicable legal standards, misstatements of law, unsubstantiated factual assertions, and questions of fact that are inappropriate at the motion-to-dismiss stage. For example, Defendants assume that this is an action for fraud governed by common law—a premise this Court summarily rejected in a prior motion to dismiss. (*See* Dkt. No. 33.) Additionally, Defendants rely on the parol evidence rule despite this not being a contract enforcement action, rely on the *Noerr-Pennington* doctrine without any legal support for its application to consumer protection actions under the FTC Act, and attempt to refute the factual allegations in the Complaint, both prematurely and in a conclusory fashion. For these reasons, and for those set forth herein, the Court should deny Defendant's Motion.

## I. LEGAL STANDARD

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008) (citation omitted). To survive a motion to dismiss, a complaint need only allege "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

In deciding a motion to dismiss, "the Court must accept plaintiff's factual allegations as true and draw all reasonable inferences in its favor." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 608–09 (S.D.N.Y. 2008). The issue on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *ESPN, Inc.*, 586 F. Supp. 2d at 224 (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

## II. ARGUMENT

### A. The Rule 8(a) Pleading Standard Applies to the FTC's Deception and Unfairness Claims Under the FTC Act

A pleading that states a claim for relief must contain, among other things, a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see FTC v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *3 (E.D.N.Y. May 23, 2012). By contrast, a pleading "alleging fraud or mistake . . .must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

For actions brought under Section 5 of the FTC Act, Rule 8(a) applies, not Rule 9(b). *See, e.g., FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469–71 (S.D.N.Y. 2014) (Rule 9(b) does not apply to the FTC Act); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314–15 (S.D.N.Y. 2008) (same); *Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7 (finding that

because such claims "do not require proof of the same essential elements of common law fraud," they "need not be pleaded with particularity"). Indeed, in summarily denying this same argument in a recent motion to dismiss, this Court held that the FTC Act "bars unfair and deceptive acts and practices in commerce" and has "different legal standards" than "an action for fraud governed by New York common law, which [this case] is not." (Dkt. No. 33 at 1.) Defendants' cases in support of applying Rule 9(b) are inapposite: securities fraud and common law fraud cases between private litigants are irrelevant here,[1] and the two cited FTC cases are non-binding district court cases from the Ninth Circuit.[2]

Even if the Court were to find that Rule 9(b) applies, however, the FTC's Complaint meets these heightened requirements. A pleading is sufficient under Rule 9(b) if it provides the defendant with a "reasonable opportunity to answer the complaint" and gives "adequate information to frame a response." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 257 (S.D.N.Y. 2008) (quoting *Ross v. A. H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175 (1980)). As discussed in Sections II.B and C, *infra*, the FTC's Complaint alleges detailed facts supporting each of its counts, providing Defendants with more than enough information to prepare an adequate answer.

### B. The FTC's Complaint States Claims for Deception Under the FTC Act Based on Defendants' Unlawful Financing Activities

The FTC's Complaint states a claim for deception (Count I) because it alleges facts showing that Defendants materially misrepresented the terms of their financing products. In

---

[1] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 2508 (2007) (heightened pleading requirements required by the Private Securities Litigation Reform Act); *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) (securities fraud case brought by private parties); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (same); *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C.1997) (common law fraud).

[2] *See FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852-54 (C.D. Cal. 2010); *FTC v. Ivy Capital, Inc.*, No. 11-283, 2011 WL 2118626, at *3 (D. Nev. May 25 , 2011).

response, Defendants misstate the legal standard for deception under the FTC Act (Mot. at 10), incorrectly claim that the parol evidence rule prevents the FTC from enforcing false advertising claims made outside a contract (*Id.* at 11-12), and erroneously argue that after-the-fact disclosures can cure initial misrepresentations (*Id.* at 10, 12). Defendants' heavy reliance on New York state court cases (five out of the six cases cited in Section I of their Motion) highlights the extent to which Defendants misunderstand the legal standards applicable in this case.

#### 1. The Complaint Describes How Defendants Misrepresented the Terms of Financing

To state a claim that Defendants have engaged in deceptive acts or practices under Section 5(a)(1), "the FTC must show three elements: (1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) [that] the representation, omission, or practice is material." *Med. Billers Network*, 543 F. Supp. 2d at 303 (citation omitted). A court should focus on the overall impression created by the advertising, not its "literal truth or falsity." *Id.* at 304 (citing *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 675 (2d Cir.1963)). Additionally, "each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information." *Med. Billers Network*, 543 F. Supp. 2d at 304 (citation omitted). A claim is considered material if it "involves information important to consumers and, hence, is likely to affect their choice of, or conduct regarding a product." *FTC v. Five–Star Auto Club,* 97 F. Supp. 2d 502, 529 (S.D.N.Y. 2000) (citation omitted). "Express representations that are shown to be false are presumed material." *Med. Billers Network*, 543 F. Supp. 2d at 304.

The FTC's Complaint alleges, plainly and concisely, that Defendants' website misleads consumers when it states that Defendants' financing products require "no personal guaranty of collateral" and "no upfront costs." (Compl. ¶¶ 16, 19.) The Complaint alleges that contrary to

these express marketing claims, Defendants *require* business owners to agree to a personal guaranty (*id.* ¶¶ 17-18), and that Defendants withhold various fees upfront, prior to disbursing the funding to consumers. (*Id.* ¶ 19.) Some of these fees appear buried in Defendants' contracts, without any language alerting consumers that they are withdrawn upfront. (*Id.*) Other withheld amounts are not disclosed anywhere in the contract. (*Id.* ¶ 19.) Additionally, the Complaint explains how Defendants further mislead consumers regarding the specific amount of financing they will receive by prominently listing a specific financing amount on the first page of their contracts (labeled as the "Total Purchase Price") but then providing consumers with substantially smaller amounts. (*Id.* ¶ 20.) The Complaint thus alleges that Defendants made express claims that are false; as noted above, express representations that are shown to be false are presumed material. *See Med. Billers Network*, 543 F. Supp. 2d at 304.

Taking the "factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, the Complaint alleges "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and thus meets the standard for surviving a motion to dismiss.

**2. The Parol Evidence Rule Does Not Apply in FTC Act Cases**

In their Motion, Defendants do not focus on the misrepresentations outlined above, admitting instead that "even if contradictory materials do exist" (Mot. at 11), such advertising is irrelevant in light of Defendants' contracts and must be excluded under the parol evidence rule (Mot. at 11-12). But deception under the FTC Act attaches to any "representation, omission, or practice" that meets the three-part test quoted above. *See Med. Billers Network*, 543 F. Supp. 2d at 304. Indeed, false advertising claims that run contrary to a product or service's true features (even if defendants later attempt to contradict or soften those claims in contracts or otherwise) have long been the basis for countless FTC law enforcement actions in the area of FTC Act

deception.[3] As such, Defendants' reliance on the parol evidence rule under New York law and a litany of New York state contract enforcement cases (Mot. at 11-12) is misplaced: the FTC does not seek to enforce Defendants' financing agreements but rather to show that Defendants misrepresented the terms of their financing products—both in advertisements and in the agreements themselves.

**3. Defendants' Subsequent Disclosures Cannot Cure Their Initial Misrepresentations**

Defendants' argument that the disclosures in their contracts would have cured any misrepresentations in their advertising is also unavailing for two reasons. First, as explained above, "each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information." *Med. Billers Network*, 543 F. Supp. 2d at 304 (citation omitted). In addition, "[t]he law is violated if the first contact is secured by deception even though the true facts are made known to the buyer before he enters into the contract of purchase." *Id.* (quoting *Exposition Press,* 295 at 873) (internal quotations omitted). As a result, any subsequent truthful disclosures regarding Defendants' personal guaranty and fees are insufficient to cure the initial misrepresentations on Defendants' websites that no such costs will be charged.

Second, the contracts themselves (*see, e.g.,* Dkt. No. 41-2) contain additional misrepresentations and fail to disclose properly the nature of the fees. On the first page of Defendants' agreements, Defendants prominently disclose a specific "Total Purchase Price." (*Id.*

[3] *See, e.g., Med. Billers Network*, 543 F. Supp. 2d at 307 (truthful representations in the Registration Agreement could not cure misrepresentations in print advertisements or during telephone sales calls); *Exposition Press, Inc. v. FTC,* 295 F.2d, 873 (2d Cir. 1961) (subsequent truthful disclosures in literature sent to consumers did not cure initial misrepresentation in advertisement); *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (fine print on back of check explaining that depositing check would constitute agreement to purchase internet services was insufficient to overcome the net impression that the check was simply a refund or rebate).

at 2.) In the agreement introduced by Defendants, that specific "Total Purchase Price" is $20,000. (*Id.*) Defendants' agreement describes the Total Purchase Price as "the funds provided," even though in reality, consumers would not have received that amount. (Compl. ¶ 20.) In fact, consumers would receive a substantially smaller amount after Defendants' withholding of various fees. (*Id.*) Defendants' fee disclosures—appearing on page 9 of the contract (Dkt. No. 41-2 at 10)—do not clearly specify that the fees will be withheld up front or that they will reduce the prominently-disclosed "Total Purchase Price." In fact, the only reference in Defendants' contracts to the timing of the fees appears on a separate page—page 8 of the contract (Dkt. No. 41-2 at 9)—containing Defendants' Authorization Agreement for Direct Deposit. Buried in the second paragraph of that page, Defendants include the following language: "By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees . . ." In any event, and Defendants' misguided reading of the agreement aside, the issue presently before the Court is whether the FTC's allegations of misrepresented fees are "plausible," and the FTC respectfully submits that the Complaint satisfies that standard.

### C. The FTC's Complaint States Claims for Unfairness Under the FTC Act Based on Defendants' Unlawful Collection Activities

The Complaint states a claim for unfairness under the FTC Act (Count II) by alleging that Defendants used confessions of judgement unfairly, including by filing them against consumers who did not default, or against consumers who experienced temporary technical difficulties, or in contravention of express promises in Defendants' own contracts. Similarly, the Complaint states a claim for unfairness (Count III) by alleging that Defendants used threats of violence and other unlawful means to coerce payments from consumers. Finally, the Complaint states a third claim for unfairness (Count IV) by alleging that Defendants made unauthorized withdrawals from

consumers' accounts. Aside from their Rule 9(b) arguments, already dispensed with in Section A, *supra*, Defendants' remaining challenges to the FTC's unfairness claims reflect improper disputes of fact and the inapplicable *Noerr-Pennington* doctrine.

**1. The Complaint Describes Defendants' Unfair Practices in Detail, Including That They Filed Confessions of Judgment Against Consumers Who Did Not Breach Their Contracts, Threatened Violence Against Them, and Took Unauthorized Charges From Their Bank Accounts**

A practice is unfair under the FTC Act if (1) it causes or is likely to cause substantial injury to consumers, (2) which is not reasonably avoidable, and (3) is not outweighed by any countervailing benefits to consumers or competition. *FTC v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193, 203 (S.D.N.Y. 2000); 15 U.S.C. § 45(n).

The FTC's Complaint describes in detail the practices that it alleges violate the FTC Act's prohibition on unfair trade practices. In support of **Count II**, the FTC alleges that Defendants used confession of judgments unfairly, including by filing confessions of judgment against consumers who were still current in their payments or who did not breach Defendants' financing agreements (Compl. ¶ 24), who missed payments due to a business slowdown or shutdown, despite contractual promises that Defendants would not file confessions of judgment under those circumstances (*id.* ¶ 21-22), or whose payments temporarily could not be processed due to technical issues outside of their control (*id.* ¶ 23). The Complaint further explains that Defendants' actions have "financially devastated" numerous consumers and that consumers could not reasonably avoid this substantial harm because they could not anticipate Defendants would file confessions of judgment against them in these circumstances. (*Id.* ¶ 25.) Thus, the Complaint alleges clear costs to consumers when Defendants file confessions of judgment in a manner that conflicts with their own financing agreements or against consumers who are substantially complying with their payment obligations without countervailing benefits to these

consumers or to competition.

In support of **Count III**, the FTC alleges that Defendants engaged in unfair collection methods by calling consumers and threatening violence and other harm to the physical person, reputation, or property of the consumer or third parties in order to coerce them into making payments. (*Id.* ¶ 26.) Examples provided in the Complaint include Defendants' threat to "break [a consumer's] jaw" if he did not make payments or to "come down there and beat the s**t out of" another consumer. (*Id.*) Defendants also threatened to ruin a consumer's reputation by falsely accusing him of being a child molester. *(Id.)* Consumers threatened by Defendants are likely to experience substantial injury in the form of fear for their physical safety and foregoing contractual and legal rights that they would otherwise enjoy under the contracts, such as the right to have their payments reduced or reconciled. (*Id.*) Such consumers are also likely to be coerced into making payment on a disputed payment obligation. (*Id.*) Consumers could not have avoided this egregious behavior – the Complaint alleges that it occurred after consumers had already entered into Defendants' contracts. (*Id.*) The Complaint also lays out the clear costs to consumers without offsetting benefits.

Finally, in support of **Count IV**, the FTC alleges that Defendants made unauthorized withdrawals from consumers' accounts, including by withdrawing two debits on days following bank holidays despite contractual promises that Defendants would debit consumers' accounts once per day on business days only. (*Id.* ¶ 28.) Consumers experience substantial injury in the form of financial hardships and overdrawn accounts due to Defendants' double-debits and cannot reasonably avoid this substantial harm because they do not expect to have funds withdrawn in a manner that contradicts the language of Defendants' agreements. (*Id.*) The Complaint alleges the costs to consumers as result of Defendants' unauthorized withdrawals without offsetting

benefits to these consumers or to competition.

As with the FTC's deception claim, taking these "factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, the Complaint alleges "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and thus meets the standard for surviving a motion to dismiss.

**2. Defendants' Factual Dispute Regarding Count III of the Complaint Is Improper at the Motion to Dismiss Stage**

Defendants raise factual disputes regarding their involvement in the unfair collection activities alleged in Count III. Specifically, Defendants claim that only Defendant Jonathan Braun engaged in the "brazen conduct" alleged in the FTC's Complaint. (Mot. at 19-20.) But such factual arguments – which, to boot, appear unsupported by any citations to affidavits or other evidence – do not "take all of the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and are thus improper at the motion to dismiss stage. *See, e.g.*, *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (holding that courts may not rely on factual allegations contained in legal briefs or memoranda when deciding a 12(b)(6) motion). Indeed, in summarily denying another motion to dismiss in this case (Dkt. No. 33), the Court has already rejected similar attempts to introduce new factual arguments.

Putting aside the improper attempt by Defendant Giardina to point the finger at other defendants in the context of this motion to dismiss, his argument is also defective on the law. Individuals may be held liable for deceptive acts or practices under the FTC Act if "(1) [they] participated directly in the wrongful acts or practices or . . . had the authority to control the corporate defendants; and (2) [they] had some knowledge of the acts or practices." *Tax Club, Inc.*, 994 F. Supp. 2d at 471. As a result, the FTC need not allege that each individual engaged in each unlawful practice in the Complaint as long as it alleges those individuals "had the authority

to control the corporate defendants" and "had some knowledge" of the unlawful activity. *Id.* In alleging that Defendant Giardina is the "owner, officer, managing member, and partner of RCG" and that "[a]t times material to this Complaint . . . he formulated, directed, controlled, and had the authority to control, or participated in the acts and practices set forth in this Complaint," (Compl. ¶ 8), the FTC's Complaint meets that standard. *See, e.g., id.* at 471-72 (holding that the FTC's allegations on individual liability, which are substantially similar to those alleged in this case, were sufficient on a motion to dismiss).

### 3. The *Noerr-Pennington* Doctrine Does Not Bar Count II

The *Noerr–Pennington* doctrine immunizes from federal antitrust liability petitioning activity that attempts to influence government decision-making even when the underlying purpose of the activity is to restrain competition and thereby gain a competitive advantage. *See generally Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609 (1972). Defendants invoke the *Noerr-Pennington* doctrine in an attempt to defeat Count II of the Complaint, related to their unfair use of confessions of judgment, but fail to demonstrate that the doctrine applies to the FTC's action at all or, even if the doctrine were to apply, that their confession of judgment filings would not fall under the "sham exception" to the doctrine.

#### a. Defendants Fail to Demonstrate That *Noerr-Pennington* Applies to the FTC's Action

In their Motion, Defendants fail to cite to a single case extending the *Noerr-Pennington* doctrine to law enforcement actions for deceptive or unfair practices under the FTC Act. (*See generally* Mot. 15-18.) Indeed, a court in this district has recently declined to extend its reach to a debt collection claim. *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp.

3d 668, 693–94 (S.D.N.Y. 2019) (refusing to apply doctrine in FDCPA cases involving debt collection litigation activity).

Furthermore, Defendants also fail to demonstrate that filing confessions of judgment – which, in New York, are executed by a clerk of the court based on Defendants' own affirmations – constitutes "petitioning activity" protected by *Noerr-Pennington*. As another court in this district found, "the *Noerr–Pennington* doctrine is not applicable to conduct through which private parties seek to achieve anticompetitive aims by making representations to the government in circumstances where the government does not perform any independent review of the validity of the statements, does not make or issue any intervening judgment and instead acts in direct reliance on the private party's representations." *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 370 (S.D.N.Y. 2002) (citations omitted).

**b. Defendants' Confession of Judgment Filings Fall Under the "Sham Exception" to the *Noerr-Pennington* Doctrine**

Even if *Noerr-Pennington* applied conceptually to the filing of confessions of judgment (which it does not), the Complaint alleges that Defendants' confession of judgment filings were founded on substantive misrepresentations to the courts; this triggers the "sham exception" to the *Noerr-Pennington* doctrine. The 'sham exception' "excludes any abuse of process that bars access to the courts, including unethical conduct in the setting of the adjudicatory process. . . ." *Michelo*, 419 F. Supp. 3d at 693–94 (internal quotations and citations omitted). Additionally, "[f]raudulent acts are not protected by the *Noerr-Pennington* doctrine when they occur in the adjudicatory process or where false information is filed with an administrative agency with deceptive intent." *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004).

Here, the FTC's Complaint targets only instances where Defendants use consumers'

signed confessions of judgment in a manner that is unfair under the FTC Act, including by filing such confessions of judgment against consumers who did not breach Defendants' agreements. (Compl. ¶¶ 21-25). In filing these confessions of judgment with the courts, Defendants misrepresent that they are entitled to obtain judgment by default, thus wielding the power of the courts to obtain judgments to which they have no lawful claim. These activities fall outside of any protections *Noerr-Pennington* otherwise may afford. *See, e.g.*, *Michelo*, 419 F. Supp. 3d at 693–94 (applying the "sham exception" where defendants made false representations in court filings and submitted false affidavits); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) (refusing to extend *Noerr-Pennington* protections in light of defendants' litigation-related misconduct).[4]

## III. CONCLUSION

For the reasons set forth above, the FTC respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated: September 3, 2020

Respectfully Submitted,

*/s/Ioana Gorecki*
Ioana Gorecki
Marguerite Moeller
Michael White (pro hac vice admission pending)
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, D.C. 20580
igorecki@ftc.gov
(202) 326-2077

*Attorneys for Plaintiff*

[4] For the same reasons, Defendants also cannot rely on the First Amendment right to petition to defeat the FTC's claims under Count II. The FTC's Complaint seeks to assert liability for specific situations where Defendants file for and obtain judgments by confessions in a manner that is unfair, such as filing confessions of judgment in contravention of their consumer financing agreements. In doing so, Defendants misrepresent to the courts that they are entitled to the entry of judgment by confession. "Baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S. Ct. 2161, 2170 (1983).
.

**CERTIFICATE OF SERVICE**

I, Ioana Gorecki, hereby certify that on September 3, 2020, I electronically filed the foregoing Plaintiff's Opposition To Defendants RCG Advances LLC And Robert L. Giardina's Motion To Dismiss The Complaint with the Clerk of the Court using its CM/ECF system, which will send notification of such filing to all counsel of record.

I, Ioana Gorecki, further certify that on September 3, 2020, I submitted a copy of the foregoing to the Orange County Sheriff's Office of Goshen, New York so that it may be personally served upon *pro se* Defendant Jonathan Braun, currently incarcerated at FCI Otisville.

*/s/Ioana Gorecki*
IOANA GORECKI