UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>v.<br><br>RCG ADVANCES, LLC, a limited liability company, f/k/a Richmond Capital Group, LLC, also d/b/a Viceroy Capital Funding and Ram Capital Funding,<br><br>RAM CAPITAL FUNDING LLC, a limited liability company,<br><br>ROBERT L. GIARDINA, individually and as an owner and officer of RCG ADVANCES, LLC,<br><br>JONATHAN BRAUN, individually and as a *de facto* owner and an officer or manager of RCG ADVANCES, LLC, and<br><br>TZVI REICH, a/k/a Steven Reich, individually and as an owner and officer of RAM CAPITAL FUNDING LLC, and as a manager of RCG ADVANCES, LLC,<br><br>Defendants. | : | **Case No. 20-CV-4432** |

**DEFENDANT RCG ADVANCES LLC, RAM CAPITAL FUNDING, AND ROBERT GIARDINA'S MEMORANDUM OF LAW IN REPLY TO THE PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**


Anthony Varbero
JOSEPH MURE JR. & ASSOCIATES
26 Court Street, Suite 1200
Brooklyn, NY 11242
Phone: (718)852-9100
Joseph Mure Jr., Esq.
David C. Casagrande
*Attorney for Defendants*

## TABLE OF CONTENTS

Counts One, Two and Four of the Plaintiff's Complaint Sound in Fraud and Are Subject to the Heightened Pleading Requirements of Rule 9(b)…………………………...……………………1

The Plaintiff Has Mischaracterized Representations in Defendants' Website as well as the Law Pertaining to Parole Evidence in FTC Cases……………………………..……….……………….5

The Noerr-Pennington Doctrine Bar Count Two of the Complaint………………………………7

The Plaintiff Has Failed to Properly Attribute the Alleged Unfair Collection Threats to Each of the Defendants ……………………………………….……………...…………………9

CONCLUSION……………………………………………………………………………..10

## TABLE OF AUTHORITIES

**Cases** **Page**

*Ashcroft v. Iqbal*,
556 U.S. 1030, 129 S. Ct. 1937 (2008) ……………………………………………...….5, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) …………………………….………………….5, 10

*Cf. Burnett v. Al Baraka Inv. and Dev. Corp.*,
274 F.Supp.2d 86 (D.D.C.2003) ………………………………………………...…….4

*Concourse Nursing Home v. Engelstein*,
717 N.Y.S.2d 154 (1st Dept. 2000) ……………………………………………………8

*EDF Renewable Development, Inc. v. Tritec Real Estate Company, Inc.*,
147 F.Supp.3d 63 (E.D.N.Y. 2015) ……………………………………………..…….9

*FTC v. Consumer Health Benefits Ass'n*,
No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242 (E.D.N.Y. May 23, 2012)…………….4

*FTC v. Ivy Capital, Inc.*,
No. 11-283, 2011 WL 2118626 (D. Nev. May 25, 2011) …………………………...….2

*FTC v. Lights of America, Inc.*,
No. SACV 10-1333, 760 F.Supp.2d 848, 850-55, 2010 WL 5564048 (C.D.Cal. Dec. 17, 2010) ……………………………………………..…………………..……………1

*FTC v. Med. Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008) ……………………………………….………3, 4

*FTC v. Shire Viropharma, Inc.*,
917 F.3d 147 (3d Cir. 2019) …………………………………………………………….9

*FTC v. Tax Club, Inc.*,
994 F. Supp. 2d 461 (S.D.N.Y. 2014) ……………………………………………………3

*Ross v. A.H. Robins Co., Inc.*,
607 F.2d 545 (2d Cir.1979) ……………………………………………………..…….4

*Top Shelf Management, Inc. v. Campbell-Ewald Company*,
117 F.Supp. 3d 722 (Dist. Court, M.D. North Carolina 2015) ……………………..……1

*UMG RECS v. Escape Media Group, Inc.*,
948 N.Y.S.2d 881 (Sup. Ct. N.Y. 2012) …………….……………………………………8

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
389 F.3d 1251 (D.C.Cir.2004).…………………………..…………………………….2

*USLIFE Credit Corp. v. FTC*,
599 F.2d 1387 (5th Cir. 1979) ……………………………………………………….7

*Williams v. Martin-Baker Aircraft Co.*,
389 F.3d 1251 (D.C. Cir. 2004) ……………………………………………………..2

**Statutes and Regulations**

Federal Rules of Civil Procedure
Rule 9(b) ………………………………………………...……………..1, 2, 3, 4, 5
Rule 8(a)……………………………………………………………………….3, 10

Federal Trade Commission Act………………………………..…………………………1, 2, 3

## I) Counts One, Two and Four of the Plaintiff's Complaint Sound in Fraud and Are Subject to the Heightened Pleading Requirements of Rule 9(b)

The FTC has propounded a series of allegations against the Defendants which culminate in causes of action sounding in fraud (i.e. Count I Misrepresentations Regarding Financing Products; Count II Unfair Use of Confessions of Judgment; Count IV Unauthorized Withdrawals). Despite having done so, the Complaint fails to plead such allegations with particularity pursuant to Rule 9(b)'s heightened pleading standard.

The Opposition first asserts that Rule 9(b) does not apply to actions under §5 of the FTC Act before proceeding to assert that the Complaint purportedly satisfies the rule. While Defendants openly acknowledge that certain Courts have reached differing views on whether Rule 9(b) applies to claims under §5 of the FTC Act, numerous Courts have in fact specifically held that Rule 9(b) applies to §5 claims in analogous circumstances. In *FTC v. Lights of America, Inc*., No. SACV 10-1333, 760 F.Supp.2d 848, 850-55 (C.D. Cal. Dec. 17, 2010), the court held that Rule 9(b) applied because the FTC's §5 claims alleged – as here – a fraudulent course of conduct where (1) the defendants distributed promotional materials that made specific representations (2) these representations were allegedly false and (3) the defendants knew or should have known that their conduct was unfair or deceptive. Though the FTC omitted the word "fraud" from its Complaint in *Lights of America*, as they have done in the instant matter, the court held that this omission did "not detract from the apparently fraudulent nature of the allegations." *Id*. at 853. In coming to its decision, the court found persuasive the "analogous," though "not identical," elements of a violation of the FTC Act and negligent misrepresentation *Id*.; *see also Top Shelf Management, Inc. v. Campbell-Ewald Company*, 117 F.Supp. 3d 722, n.4 (Dist. Court, M.D. North Carolina 2015) ("Like *Lights of America*, courts frequently require that

section 5 claims involving misrepresentations be pleaded with particularity. *See* 5A Wright, Federal Practice and Procedure §1297 n.11.40 (3d ed. 2004 & Supp.)").

Likewise, in *FTC v. Ivy Capital, Inc.*, No. 11-283, 2011 WL 2118626, at *3 (D. Nev. May 25, 2011) the Court specifically applied the Rule 9(b) standard in a claim brought under the FTC Act where – as here – the FTC "alleged that the defendants collectively engaged in a unified course of fraudulent conduct, which forms the entire basis of the claims alleged."

Under Rule 9(b), a plaintiff must "state the time, place, and content of the false representations, the fact misrepresented ... and identify individuals allegedly involved in the fraud." *Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). This necessarily requires the plaintiff identify the 'who, what, where, when and how' with respect to the circumstances of the alleged fraud. In the instant matter, there is a conspicuous absence of the "who." Indeed, despite the Opposition repeatedly trumpeting in conclusory fashion that "the Complaint describes Defendants' unfair practices in detail," it does not. The Plaintiff cannot credibly represent that they have described Count One (Misrepresentations Regarding Financing Products), Count Two (Unfair Use of Confessions of Judgment) and/or Count Four (Unauthorized Withdrawals) "**in detail**" when their entire 14 page Complaint is devoid of the identity of a single consumer alleged to have fallen victim to any of the foregoing. Notwithstanding each of the preceding three causes of action sounding in fraud, no "who" has been presented to the Defendants or this Court – just completely anonymous and nameless "consumers." This glaring omission of the specific consumers from the Complaint within the context of the underlying rationale for Rule 9(b) underscores its applicability in the instant matter. "[B]ecause 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response." *Id.*

The primary authority relied upon by the Plaintiff in support of the Opposition's conclusion that Rule 9(b) does not apply has notably been articulated by the FTC @ Pg. 2 as follows: "For actions brought under Section 5 of the FTC Act, Rule 8(a) applies, not Rule 9(b). *See*, *e.g., FTC v. Tax Club, Inc*., 994 F. Supp. 2d 461, 469–71 (S.D.N.Y. 2014) (Rule 9(b) does not apply to the FTC Act)." However, "Rule 9(b) does not apply to the FTC Act" is not only <u>not</u> the holding of *Tax Club*, the FTC has provided the Court with a completely false narrative of the context in which the issue of Rule 9(b) even arose:

> "In their initial Memorandum of Law, Defendants did not explicitly raise [Rule 9b], merely stating—in a footnote, no less—that 'there is no controlling authority excusing Plaintiffs from [the] obligation' of meeting Rule 9(b)'s requirements, and that the Court 'need not reach the question of the applicability of Rule 9(b).' But in their Reply Memorandum, Defendants changed course, affirmatively stating that the Court 'should evaluate the Amended Complaint in light of the particularity requirements of Rule 9(b).' **It is well settled, however, that a court need not consider arguments relegated to footnotes or raised for the first time in a reply brief.** *See, e.g., Tolbert v. Queens Coll*., 242 F.3d 58, 75 (2d Cir.2001)…" (emphasis added). *Tax Club*, 994 F. Supp. 2d at 471, n.1.

To clarify and repeat, despite the FTC specifically representing to this Court that the holding of *Tax Club* was purportedly "Rule 9(b) does not apply to the FTC Act," the Court explicitly stated it was not even considering the issue. The existence of such a brazenly false representation to the Court by the FTC of this nature further underscores the need for particularity in their Complaint.

Such misrepresentation on the part of the FTC is compounded when one considers they similarly provided a false narrative surrounding their secondary authority provided to this Court: "For actions brought under Section 5 of the FTC Act, Rule 8(a) applies, not Rule 9(b). *See, e.g. FTC v. Med. Billers Network, Inc*., 543 F. Supp. 2d 283, 314–15 (S.D.N.Y. 2008) (same)." Same in this context is the equivalent of the FTC representing to this Court that the holding of *Med. Billers Network,* is "Rule 9(b) does not apply to the FTC Act." Rather unsurprisingly, that is not the holding of that case either nor the context in which Rule 9(b) arose:

> "The Taylor Defendants argue that the FTC's claims that Defendants violated the TSR by failing to disclose additional costs and requirements associated with the MBN Program are subject to Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a plaintiff asserting a claim for fraud or mistake to plead the circumstances constituting such fraud or mistake with particularity. Fed.R.Civ.P. 9(b). Count III of the FTC's Amended Complaint does not specifically include any allegation regarding a TSR violation based on Defendants' failure to disclose additional costs and requirements. These issues are raised in the FTC's moving papers. The Taylor Defendants argue that Rule 9(b) does not permit the FTC to now assert such nondisclosures as grounds for a TSR violation. **As the Taylor Defendants raise this argument for the first time in their reply brief and the FTC has had no opportunity to address it, the Court declines to consider it."** *Med.Billers Network*, 543 F.Supp. at 283.

Stripped of the foregoing purported precedent, the Opposition is left to rely on a single unreported Westlaw case: *FTC v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *2 (E.D.N.Y. May 23, 2012). In this instance, the FTC's narrative contains an omission of material fact by presenting the holding as allegedly "finding that because such claims do not require proof of the same essential elements of common law fraud, they need not be pleaded with particularity" while conveniently neglecting to note that this conclusion was entirely predicated upon the fact that "**the Court has already considered and rejected the contention that the claims in the amended complaint sound in fraud**. **('[T]he claims at issue here do not sound in fraud and are thus not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).**')"(emphasis added). *Id*. at 6.

Where, as here, an agency of the federal government, with all of its resources and force, brings a series of accusations of implicit dishonesty, the heightened pleading requirements of Rule 9(b) serve an important safeguarding function. *Cf. Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F.Supp.2d 86, 103 (D.D.C.2003) ("It is worth recalling that one of the reasons for Rule 9(b)'s heightened pleading standard in fraud cases was the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing....'") (*quoting Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 557 (2d Cir.1979)). Indeed, the main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the

charges against them to prepare a defense. With the Plaintiff having failed to identify a single victim (e.g. which consumers allegedly had unauthorized withdrawals, which consumers allegedly had a confession of judgment used unfairly, which consumers allegedly received misrepresentations regarding a financial product), the allegations against the Defendants have not been specified with sufficient particularity to apprise them of the conduct alleged to be deceptive and fairly enable them to prepare a defense.

Simply put, the FTC's allegations are "legal conclusions couched as factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Accordingly, the First, Second and Fourth counts of the Complaint warrant dismissal. Likewise, having failed to identify a single victim, the First, Second and Fourth counts must be dismissed even applying general pleading standards because "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2008) *quoting Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.

**II) <u>Plaintiff Has Mischaracterized Representations in Defendants' Website as well as the Law Pertaining to Parole Evidence in FTC Cases</u>**

Aside from presenting a false narrative regarding precedent provided to this Court, the FTC has also deliberately mischaracterized certain material facts throughout the Complaint. In wholly conclusory fashion, the FTC propounds that two statements from Defendants' website misrepresented their products to consumers: (1) that Defendants' products "require no personal guaranty of collateral" and (2) that Defendants' charge "no upfront costs."

As an initial matter, the FTC has substantively altered the representations in question from how they appeared on the Defendants website for purposes of bolstering their own self-serving theory of fraud. By way of example, in order to attack the Defendants' website representation that they "require no personal guaranty of collateral" as fraudulent, the FTC has

entirely dispensed with the "collateral" component by disingenuously alleging the mere existence of merchant owner personal guarantees somehow render this statement false. To the contrary however, the FTC has not – and cannot – plead any facts establishing that the Defendants' required any merchant guarantor to pledge their personal collateral. Confronted with this reality, the FTC has instead opted to deliberately ignore the explicit semantics of the very representation they assert is false. In its place they have manufactured a completely different statement.

Likewise, the FTC similarly foists their own arbitrary interpretation of the Defendants' website representation of "no-upfront cost" on the Court. In the hopes of supporting yet another of their false allegations, the FTC ironically turns to the fees disclosed in the very same "Merchant Agreement" for the "Purchase and Sale of Future Receivables" they concomitantly argue Defendants' cannot rely upon for parole evidence rule purposes. However, the agreements confirm that no merchant was required to pay an "upfront cost" as such term exists in both its reasonable layman's and legal meanings. For purposes of clarity and avoidance of doubt, no one paid a cost or fee upfront in the hopes of ultimately securing a merchant cash advance. Any and all costs were disclosed in the parties' "Merchant Agreement" for the "Purchase and Sale of Future Receivables" and only deducted contemporaneous with the merchant being funded. Not a month earlier, not a week earlier, not a day earlier as the term "upfront" suggests.

The FTC's use of such factual gymnastics in contravention of both logic and law is not simply an issue of inartful pleading. To the contrary, their alteration of what appeared on the Defendant's website was deliberate and forms the very foundation of their Complaint.

Finally, the Opposition's strenuous assertion that "The Parole Evidence Rule Does Not Apply in FTC Act Cases" (Opp. at 5) transparently seeks to deprive this Court of its ability to

rely upon objective evidentiary materials in favor of the FTC's own false narrative and mischaracterizations. It too however is a misplaced interpretation of the law as explained by the Court's philosophy in *USLIFE Credit Corp. v. FTC*, 599 F.2d 1387, 1389 (5th Cir. 1979):

> "The [FTC's] May 23, 1978, decision took no note of this court's decision in *Anthony v. Community Loan & Investment Corp.,* 559 F.2d 1363 (5th Cir. 1977)....The Commission responded in a second final opinion dated September 14, 1978, by characterizing Anthony as nothing more than an application of Georgia's parole evidence rule. It concluded that the rule which this court applied in private damage litigation would not apply in administrative enforcement proceedings. We do not read Anthony so narrowly.... In endorsing the FTC staff statement the Anthony court stated, "Consumers should not be encouraged to avoid reading or to ignore the information the Act requires to be provided. In addition, the Court can apply the parole evidence rule in this situation to further, not derogate, the purposes of the Act. In this situation therefore Georgia's parole evidence rule is not in conflict with the purposes of the federal statute. 559 F.2d at 1370"; *see also In the Matter of Tower Loan of Mississippi*, 1990 WL 606578 (1990)("[FTC] counsel agree that the parole evidence rule relied on in *Anthony* and *US Life* prohibits a party to a contract from seeking to offer oral proof to vary or negate the terms of a contract and will not offer evidence negating the contracts at issue here...)."

**III) <u>The Noerr-Pennington Doctrine Bars Count Two of the Complaint</u>**

The Opposition first asserts that the Noerr-Pennington doctrine does not apply to the FTC's action at all before proceeding to assert that, if the doctrine does apply, the Defendants' confession of judgment filings fall under the "sham exception" to the doctrine. Neither is true.

As an initial matter, the FTC would have this Court mistakenly believe that the Defendants' filing of confessions of judgment have only been "executed by a clerk of the court based on Defendants' own affirmations" while presenting authority existing within that context which denies Noerr-Pennington protection in instances of "representations to the government in circumstances where the government does not perform any independent review of the validity of the statements, does not make or issue any intervening judgment and instead acts in direct reliance on the private party's representations." The Opposition's narrative is however factually unfounded and legally misplaced inasmuch as it deliberately feigns ignorance of the entire series

of cases identified in Defendants' Motion to Dismiss where a Judge did in fact perform an independent review of the validity of the confession of judgment within the context of a contested adversarial proceeding which resulted in a formal adjudication of its validity in favor of the Defendants.

Despite the sum and substance of those judicial rulings formally confirming the validity of the Defendants' confessions of judgment, the FTC nonetheless asserts "the Complaint alleges that Defendants' confession of judgment filings were founded on substantive misrepresentations to the courts; this triggers the "sham exception" to the Noerr-Pennington doctrine" (Opp. at p. 12). Having been repeatedly successful enforcing the validity of these very same confessions of judgment before multiple judges, the Defendants' litigation necessarily cannot be considered a sham as a matter of law. *Concourse Nursing Home v. Engelstein*, 717 N.Y.S.2d 154, 154 (1st Dept. 2000) ("The action was properly dismissed on the ground that the tortious conduct alleged involved the petitioning of a governmental agency that is immune from suit under the First Amendment of the US Constitution. Although the Noerr-Pennington doctrine initially arose in the antitrust field, the courts have expanded it to protect First Amendment petitioning of the government from claims brought under Federal and State law…Nor can defendants' efforts on behalf of their client, ultimately successful as they were, be considered a sham."); *see also UMG RECS v. Escape Media Group, Inc.*, 948 N.Y.S.2d 881, 981 (Sup. Ct. N.Y. 2012) ("The doctrine holds that parties may not be subject to liability for petitioning the government or a governmental agency for a redress of grievances, such as by filing litigation"). Thus, "by definition, a 'successful effort to influence government action' cannot be considered a sham." *EDF Renewable Development, Inc. v. Tritec Real Estate Company, Inc.*, 147 F.Supp.3d 63, 69 (E.D.N.Y. 2015). The Defendants are therefore undoubtedly worthy of immunity under the

Noerr–Pennington doctrine as their litigation activity has repeatedly proven both defensible and legitimate.

Finally, the Opposition suggests that the Noerr-Pennington doctrine does not bar Count Two because "[i]n their Motion, Defendants fail to cite to a single case extending the *Noerr-Pennington* doctrine to law enforcement actions for deceptive or unfair practices under the FTC Act." In response, we draw the Court's attention to the fact that the FTC has failed to cite to a single case which holds the Noerr-Pennington doctrine is purportedly inapplicable to law enforcement actions for deceptive or unfair practices under the FTC Act. The burden here lies with the Plaintiff which has initiated the cause of action – not the Defendants – inasmuch as the Noerr-Pennington doctrine is of constitutional scope and magnitude. Indeed, the 3rd Circuit Court of Appeals recently commented on "the FTC's improper use" of law enforcement actions for deceptive or unfair practices under the FTC Act which "has the potential to discourage lawful petitioning activity by interested citizens—activity that is protected by the First Amendment. Because we affirm the District Court's judgment dismissing the complaint, we need not address the issue further but suggest that the FTC be mindful of such First Amendment concerns." *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 161 (3d Cir. 2019).

**IV) <u>The Plaintiff Has Failed to Properly Attribute the Alleged Unfair Collection Threats to Each of the Defendants</u>**

The Plaintiff contends that a violation of the FTC Act for deceptive acts imputes individual liability when they: (1) participated directly in the wrongful acts or practice or . . . had the authority to control the corporate defendants and (2) had some knowledge of the acts or practices." The Complaint however merely parrots these elements by stating in conclusory terms that Mr. Giardina is the "owner, officer, managing member, and partner of RCG" and"[a]t times material to this Complaint . . . he formulated, directed, controlled, and had the authority to

control, or participated in the acts and practices set forth in this Complaint." (Opp. 10 - 11). A plaintiff must to do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. Rule 8 provides that a defendant is entitled to notice of the claims brought against him while *Twombly* makes clear that at the pleading stage each defendant is entitled to know what he has alleged to have done, with whom and for what purpose. *Twombly*, 550 U.S. at 555-56, 127 S. Ct. 1955. Mere generalizations as to any particular defendant — or even defendants as a group — are insufficient. *See Id*.

The mere fact the Defendants worked for the same company - while simultaneously pursuing separate competitive activities - does not alter these pleading requirements. Count Three of the Complaint lacks factual allegations to state a claim against Mr. Giardina and grouping the defendants together does not satisfy Plaintiff's obligation to state a claim against each defendant in this lawsuit.

## CONCLUSION

Accordingly, Defendants' respectfully request this Court grant the instant motion dismissing Plaintiff's Complaint in its entirety.

Dated: September 10, 2020

**The Law Office of Joseph Mure, Jr. & Associates**
\s\ *Anthony C. Varbero*
By: Anthony Varbero, Esq.
26 Court Street, Suite 1200
Brooklyn, New York 11242
Telephone (718) 852-9100
Email: anthony.varbero@murelaw.com
*Attorney for Defendants Richmond Capital Group LLC, and Robert Giardina*

**CERTIFICATE OF SERVICE**

I, Anthony C. Varbero, hereby certify that on September 10, 2020, I electronically filed the foregoing Defendant RCG Advances LLC and Robert L. Giardina's Reply to Plaintiff's Opposition to RCG Advances LLC And Robert L. Giardina's Motion To Dismiss The Complaint with the Clerk of the Court using its CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anthony C. Varbero*

Anthony C. Varbero