UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>RCG ADVANCES, LLC, a limited liability company, f/k/a Richmond Capital Group, LLC, also d/b/a Viceroy Capital Funding and Ram Capital Funding,<br><br>RAM CAPITAL FUNDING LLC, a limited liability company,<br><br>ROBERT L. GIARDINA, individually and as an owner and officer of RCG ADVANCES, LLC,<br><br>JONATHAN BRAUN, individually and as a *de facto* owner and an officer or manager of RCG ADVANCES, LLC, and<br><br>TZVI REICH, a/k/a Steven Reich, individually and as an owner and officer of RAM CAPITAL FUNDING LLC, and as a manager of RCG ADVANCES, LLC,<br><br>    Defendants. | Case No. 20-CV-4432<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and Section 522(a) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6822(a), to obtain monetary civil penalties, permanent injunctive relief, rescission or reformation of contracts, the refund of monies paid, and other equitable relief for Defendants' acts or

1

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 521 of the GLB Act, 15 U.S.C. § 6821, in connection with their business financing activities.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a)(2), which prohibits "making a false, fictitious, or fraudulent statement or representation" "to obtain or attempt to obtain" from a customer "customer information of a financial institution."

## DEFENDANTS

5. Defendant **RCG Advances, LLC** ("RCG"), formerly known as Richmond Capital Group LLC, and also doing business as Viceroy Capital Funding and Ram Capital Funding, is a New York limited liability company. RCG lists its address as 111 John Street Suite 1210, New York, NY 10038. RCG transacts or has transacted business in this District and throughout the United States. At times material to this Complaint, acting alone or in concert

with others, RCG has advertised, marketed, offered, or distributed financing to businesses throughout the United States.

6. Defendant **Ram Capital Funding LLC** ("Ram") is a New Jersey limited liability company. Ram lists its address as 111 John Street Suite 1210, New York, NY 10038. Ram transacts or has transacted business in this District and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Ram has advertised, marketed, offered, or distributed financing to businesses throughout the United States.

7. Defendant **Robert L. Giardina** ("Giardina") is the owner, officer, managing member, and partner of RCG. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Giardina resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

8. Defendant **Jonathan Braun** ("Braun") is a *de facto* owner and an officer or manager of RCG. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Braun resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

9. Defendant **Tzvi Reich**, also known as Steve Reich ("Reich"), is president and manager of Ram, and a manager of RCG. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices set forth in this Complaint. Defendant Reich resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

10. Defendants RCG and Ram (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. Corporate Defendants have conducted the business practices described below using common officers, managers, business functions, employees, and office locations, and have commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Giardina, Braun, and Reich have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

11. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Overview

12. Since at least 2015, Defendants have engaged in a number of deceptive and unfair practices while providing small business financing. Defendants' victims include small

businesses, medical offices, non-profit organizations, and religious organizations (hereinafter, "consumers").

13. Defendants purport to provide immediate funds in a specific amount in exchange for consumers' agreement to repay a higher amount from future business receivables (often referred to as a "merchant cash advance"). The repayment amount is remitted over time through daily debits from consumers' bank accounts. Defendants claim that consumers will repay their merchant cash advance with a specific amount, called the "Total Purchased Amount." In reality, in numerous instances, Defendants withdraw more than the represented Total Purchased Amount. While Defendants indicate they solicit consumers' financial information, including their bank account routing number, account number, and log-in credentials to provide and service the merchant cash advance, such sensitive consumer information is regularly used to withdraw funds beyond what customers are told in the contract that they are obligated to pay.

14. In addition, in advertising their financing products to consumers, Defendants falsely claim that their financing products do not feature a personal guaranty or upfront costs. In addition, Defendants promise consumers a specific amount of financing, but provide a much smaller amount. Defendants also engage in unfair collection practices, including, in some instances, by filing confessions of judgment against consumers in circumstances not permitted by their financing agreements and threatening physical violence, and make unauthorized debits from consumers' accounts.

15. To process debits from consumers' bank accounts, Defendants use the services of a merchant processor. In contracts signed by Defendants with their merchant processor,

Defendants agree to operate their business in strict compliance with the Gramm-Leach-Bliley Act.

## Defendants' Misrepresentations Regarding Their Financing Products

16. Defendants advertise their financing products on the Internet. On their website, Defendants claim that their financing product requires "no personal guaranty of collateral from business owners."

17. In reality, Defendants' financing contracts do include a "personal guaranty" that consumers must agree to:

> **Personal Guaranty of Performance**. The undersigned Guarantor(s) hereby guarantees to RCG, Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in the Merchant Agreement in Sections thereof 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13 and 2.14, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

18. In previous versions of their contracts, Defendants included the following provision:

> **Personal Guaranty**. In the event of a Default under Sections 2.3, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13, and 2.14 hereof, should RCG determine that the Purchase Amount cannot be obtained from the Merchant's business, RCG will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to RCG for all of RCG's losses and damages, in additional [sic] to all costs and expenses and legal fees associated with such enforcement.

19. Also on their website, Defendants claim that their financing requires "no upfront costs." In fact, Defendants withhold various fees upfront, prior to disbursing the funding to consumers. Some of these fees appear buried in Defendants' contracts, without any language alerting consumers that they are withdrawn upfront. Other withheld amounts are not disclosed anywhere in the contract.

20.     Defendants promise consumers a specific amount of financing.  For example, the first page of Defendants' contracts prominently sets forth the financing amount as the "Total Purchase Price."  In reality, however, Defendants provide consumers with substantially less than the total amount promised by withholding various fees ranging from several hundreds to tens of thousands of dollars prior to disbursement.  As discussed above, these fees appear several pages into Defendants' contracts and without any indication that they reduce the amount of funds consumers were promised.  In addition, Defendants sometimes withdraw fees that are in excess of amounts listed near the end of the agreements.  Specifically, in internal emails, Defendants have directed that higher fees be charged and smaller amounts transferred to consumers than those promised.  As a result, consumers in numerous instances have complained that they received significantly less funding than they were promised.

21.     Defendants promise that consumers will repay the financing amount by remitting a specific amount, called the "Total Purchased Amount," which is prominently set forth on the first page of the contract.  Consumers agree to set aside "Specified Percentage" of each sale of goods or services into a designated bank account.  Defendants promise to debit a "Specific Daily Amount" each business day until they have collected the Total Purchased Amount.  In reality, however, in numerous instances, Defendants withdraw more than the specific amount represented as the Total Purchased Amount, including by using the financial information they previously solicited to make daily debits from consumers' bank accounts after the Total Purchased Amount has been paid.

22.     For example, in one instance, pursuant to a financing agreement between Defendants and one consumer, Defendants financed the consumer with $350,000 in Total

Purchase Price. To repay the financing, the agreement stated that Defendants would debit from the consumers' bank account a Specific Daily Amount of $9,999 each business day until Defendants collected a Total Purchased Amount of $524,650. In fact, Defendants continued to withdraw the Specific Daily Amount ($9,999) even after the consumer had repaid the Total Purchased Amount ($524,650), collecting a total of $599,940 from the consumer—$75,290 more than what was agreed to in the consumers' financing agreement. In numerous other instances, Defendants have made four or more daily debits from consumers' accounts after consumers had already repaid the Total Purchase Amount, resulting in withdrawals exceeding the amount consumers agreed to pay.

23. Internal emails indicate that Defendants have funded consumers knowing they will attempt to collect more than the Total Purchased Amount; they dub the practice as "overcollection." Further, in numerous instances when consumers have realized that Defendants were overcollecting, and requested a refund, Defendants have refused to provide the refund. For example, in one instance, a merchant who remitted the Total Purchased Price asked Defendants to stop debiting his account and Defendants decided to "leave it on," referring to the daily debits. In another instance, one Defendant discussed a merchant's request for a refund noting "he emailed me for refund I told him go away," prompting another Defendant to instruct "DONT RESPOND." In yet another instance, Defendants discussed refunds in general noting they do not "refund unless merchants beg and chase us LOL."

**Defendants' Unlawful Collections Practices**

24. In order to obtain funding, Defendants require businesses and their owners to confess judgment to the full amount owed under the contract, so that Defendants can immediately proceed to court to collect on a purportedly owed judgement. At the same time, Defendants' contracts provide that Defendants will not hold consumers in breach if payments are remitted more slowly than anticipated because business revenues slowed down and that consumers do not owe anything if the business shuts down entirely:

> If Future Receipts are remitted more slowly than RCG may have anticipated or projected because Merchant's business has slowed own, or if the full Purchased Amount is never remitted because Merchant's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Merchant has not breached this Agreement, Merchant would not owe anything to RCG and would not be in breach or default under this Agreement.

25. In practice, however, Defendants in many instances file confessions of judgment against consumers for missing payments due to a slowdown in business revenues or due to a business shutdown, a violation of the terms of the financial agreement.

26. In addition, Defendants have also filed confessions of judgment against consumers who were still making required payments but payments temporarily could not be processed due to technical issues outside of the consumers' their control. For example, in some instances, consumers' banks unexpectedly and temporarily locked their bank accounts due to fraud or security alerts, thus preventing Defendants from effectuating the daily withdrawals. Despite consumers' attempts to explain and resolve the situation, Defendants held them in default and filed confessions of judgment against them.

27. In other instances, Defendants filed confessions of judgment against consumers who did not breach relevant provisions of Defendants' financing agreements, including one consumer who was still continuing to make daily payments to Defendants.

28.     Because Defendants' confessions of judgment require both the business entity and the individual owner to confess judgment to the entire repayment amount, upon filing the confession of judgment in court, Defendants in many instances are able to seize consumers' business and personal assets.   Consumers do not expect to face a confession of judgment filing because, in a number of instances, consumers have not breached the relevant provisions in the financing agreement, or were promised that they would not be held in breach if they could not pay due to a slowdown in business revenues.   Numerous consumers report being financially devastated by Defendants' confession of judgment filings.

29.     Defendants also make threatening collection calls to consumers, frequently using obscene or profane language, to induce them to continue making payments.   For example, Defendants have threatened violence or other criminal means to harm the physical person, reputation, or property of the consumer or third parties if they do not continue making their daily payments.   Defendants' representatives told one consumer they were going to "break his jaw" if he did not make the required payments, and told another consumer they would "come down there and beat the s**t out of you."   Defendants threatened another consumer that if he did not pay, they would ruin his reputation by falsely accusing him of being a child molester.

30.     Defendants' threats caused or likely caused consumers to fear for their physical safety and forego important contractual and legal rights, including the right to have their payments reduced or reconciled, and induced the payment of a disputed payment obligation.

**Defendants' Unauthorized Withdrawals**

31.     Defendants make unauthorized withdrawals from consumers' accounts.   For example, in numerous instances, although Defendants' contracts state that they will debit the

specific daily amount once on each *business* day, Defendants in many instances make two withdrawals from consumers' accounts on a single day following a bank holiday. Consumers do not authorize these additional payments, do not expect to have their accounts debited twice in one day, and often face financial hardships and overdrawn accounts as a result. In other instances, Defendants withdraw more than the specific amount represented as the Total Purchased Amount, without receiving authorization from consumers. When consumers complain about the unauthorized debits, Defendants in many instances do not refund the additional amounts withdrawn.

### Ongoing Nature of Defendants' Unlawful Practices

32. Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

### VIOLATIONS OF THE FTC ACT

33. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

35. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

### COUNT I
### Misrepresentations Regarding Financing Products

36. In numerous instances in connection with the advertising, marketing or offering of business financing, Defendants represent, directly or indirectly, expressly or by implication, that:

    a. Defendants require no personal guaranty from business owners;

    b. Defendants charge no upfront costs;

    c. Consumers will receive a specific amount of financing; and

    d. Defendants will withdraw from consumers' bank accounts a specified amount to repay Defendants' funding to consumers.

37. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 36, such representations were false or misleading at the time Defendants made them.

38. Therefore, Defendants' representations as set forth in Paragraph 36 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
### Unfair Use of Confessions of Judgment

39. In numerous instances, Defendants use confessions of judgment unfairly, including by filing confessions of judgment against consumers who (a) are current in their payments or did not breach the Defendants' contract; (b) miss payments due to a slowdown in business revenues or business cessation, despite contractual representations that consumers will not be in breach or default under those circumstances, or (c) whose payments cannot be processed due to temporary technical difficulties outside the consumers' control.

40. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing

benefits to consumers or competition.

42. Therefore, Defendants' acts or practices as set forth in Paragraph 39 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## COUNT III
## Unfair Collection Threats

42. In numerous instances, Defendants unfairly seek to induce consumers to make payments, including by threatening to use violence or other unlawful or criminal means to harm the physical person, reputation, or property of the consumer or third parties or to ruin consumers' businesses.

43. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

44. Therefore, Defendants' acts or practices as set forth in Paragraph 42 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## COUNT IV
## Unauthorized Withdrawals

45. In numerous instances, Defendants withdraw funds from consumers' bank accounts without the express informed consent of those consumers.

46. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

47. Therefore, Defendants' acts or practices as set forth in Paragraph 45 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE GLB ACT

48. Section 521 of the GLB Act, 15 U.S.C. § 6821, became effective on November 12, 1999, and remains in full force and effect. Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

49. The GLB Act defines "customer" to mean "with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary." 15 U.S.C. § 6827(1). The GLB Act defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of a financial institution and is identified with the customer." 15 U.S.C. § 6827(2).

50. Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance with such Act." Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), a violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the FTC Act. Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the powers to the enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule. Section 19 of the FTC Act,

15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the GLB Act, including but not limited to the rescission or reformation of contracts, and the refund of money or return of property.

51. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by the Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of up to $43,792 for each violation of the GLB Act. *See* 16 C.F.R. § 1.98(d) (2021). As described herein, Defendants committed violations of Section 521 of the GLB Act, 15 U.S.C. § 6821, with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

52. Each instance in which Defendants have failed to comply with Section 521 of the GLB Act, 15 U.S.C. § 6821, constitutes a separate violation of the GLB Act for the purpose of assessing monetary civil penalties.

## COUNT V
### Use of False Statements to Obtain Customer Financial Information

53. In numerous instances in connection with the advertising, marketing or offering of business financing, Defendants make false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain customer information of a financial institution of those customers, such as bank account numbers, routing numbers, log-in

credentials, and the identity of authorized signers of bank accounts, including by representing, directly or indirectly, expressly or by implication, that Defendants will withdraw from consumers' bank accounts a specified amount to repay Defendants' funding to consumers when in fact Defendants regularly used customer financial information to withdraw more than the specified amount from consumers' bank accounts.

54. Therefore, Defendants' acts and practices set forth in Paragraph 53 violate Section 521 of the GLB Act, 15 U.S.C. § 6821, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

55. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the GLB Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 5(a), 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b) and 57b, Section 522 of the GLB Act, 15 U.S.C. § 6822, and the Court's own equitable powers, requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act and the GLB Act by Defendants;

B. Award such relief as the Court finds necessary to address Defendants' violations of the FTC Act and the GLB Act, including rescission or reformation of contracts, the refund of

monies paid, or other relief necessary to redress injury to consumers resulting from Defendants' violations;

  C. Award Plaintiff monetary civil penalties from Defendants for every violation of Section 521 of the GLB Act; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JAMES REILLY DOLAN
Acting General Counsel

Dated: June 10, 2021

*/s/ Gregory A.Ashe*
MARGUERITE L. MOELLER
GREGORY A. ASHE
IOANA R. GORECKI
Federal Trade Commission
600 Pennsylvania Ave. NW
Mail Stop CC-10232
Washington, DC 20580
Tel: (202) 326-2905 (Moeller)
Tel: (202) 326-3719 (Ashe)
Tel: (202) 326-2077 (Gorecki)
Facsimile: (202) 326-2752
Email: mmoeller@ftc.gov, gashe@ftc.gov,
  igorecki@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION