# FTC SUMMARY JUDGMENT EXHIBIT 36

**Declaration of FTC Counsel Gregory Ashe in Support of Its Motion for Summary Judgment**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>     v.<br><br>RCG ADVANCES, LLC, et al.,<br><br>     Defendants. | **Case No. 20-CV-4432-LAK**<br><br>**DECLARATION OF FTC COUNSEL GREGORY ASHE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

I, Gregory A. Ashe, hereby declare as follows:

1.     I am over twenty-one years of age and a citizen of the United States.   I am one of the attorneys representing the Federal Trade Commission ("FTC") in this action and am admitted to appear in this matter *pro hac vice*.   My work address is 600 Pennsylvania Avenue NW, Washington, DC 20580.   Unless stated otherwise, I have personal knowledge of the facts stated herein and, if called as a witness, would competently testify thereto.

2.     On or about March 7, 2022, I along with FTC co-counsel Julia Heald, had a telephonic conference with counsel for Defendant Jonathan Braun, Michael DiBennedetto.   Mr. Benedetto informed us that Defendant Braun would be responding to the FTC's First Set of Requests for Admissions to Jonathan Braun and Second Set of Requests for Admissions to Jonathan Braun in the next few days.   I responded that Defendant Braun's responses were due months earlier, and that if Mr. Braun provided out-of-time discovery responses the FTC would consider how to respond after receipt.

3.     On or about March 9, 2022, Ms. Heald and I had another telephonic conference with Mr. DiBennedetto and Joseph Baratta, counsel to Defendant Braun.   Counsel asked if the FTC would agree to Defendant Braun serving his responses to the FTC's First Set of Requests

for Admissions and Second Set of Requests for Admissions on March 10 (the day before

discovery closed).   I responded that, because discovery was closing in two days and Mr. Braun's

responses were due months prior, the FTC could not stipulate to such an agreement.   I further

explained, as I had previously, that counsel did not need the FTC's permission to file an out-of-

time discovery response but that if counsel did, the FTC would evaluate how to respond.

Notwithstanding my response, later that day, Mr. DiBenedetto sent Ms. Heald and me an email

with a draft stipulation.   Attached hereto as **Attachment A** is a true and correct copy of that

email.

4.      The next day, on March 10, 2022, I responded to Mr. DiBenedetto's email stating

that "We cannot agree to the stipulation.   As we stated, you do not need our permission to file an

out-of-time response to discovery.   If served with such responses, we will evaluate the

appropriate course of action."   Attached hereto as **Attachment B** is a true and correct copy of

that email.

5.      On March 11, 2022, Defendant Braun's counsel served its belated response to the

FTC's Second Set of Requests for Admissions to Defendant Jonathan Braun.   Attached hereto

as **Attachment C** is a true and correct copy of the cover email and Defendant Braun's belated

response.   The FTC is not aware of Defendant Braun obtaining a court order allowing for a

longer time period to respond.

6.      On or about March 28, 2022, Ms. Heald and I had another telephonic

conversation with Mr. DiBenedetto and Mr. Baratta.   Among other things, Defendant Braun's

counsel asked if the FTC had reviewed Defendant Braun's belated response and what the FTC's

position was on that response.   We responded that we had reviewed and were evaluating

whether a motion to strike or other pleading was the appropriate course of action for the FTC's

response to Defendant Braun's belated response.

7.      On or about April 1, 2022, Defendant Braun's counsel served its belated response

to the FTC's First Set of Requests for Admissions to Defendant Jonathan Braun.   Attached

hereto as **Attachment D** is a true and correct copy of the cover email and Defendant Braun's

belated response.   The FTC is not aware of Defendant Braun obtaining a court order allowing

for a longer time period to respond.

I declare under penalty of perjury that the foregoing is true and correct.   Executed in
Washington, DC on April 8, 2022.

*/s/ Gregory A. Ashe*
Gregory A. Ashe
Attorney for Plaintiff
FEDERAL TRADE COMMISSION

# ATTACHMENT A

| | |
|---|---|
| **From:** | Michael DiBenedetto |
| **To:** | Ashe, Gregory; Joseph P Baratta |
| **Cc:** | Heald, Julia; Moeller, Marguerite |
| **Subject:** | RE: FTC v. Richmond Capital |
| **Date:** | Wednesday, March 9, 2022 4:46:40 PM |
| **Attachments:** | Braun Stipulation.pdf |

Gregory,

It was a pleasure speaking with you this afternoon. Please see attached proposed stipulation that would be filed with the Court, upon your consent. We will serve responses to admissions tomorrow.

Thank you

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Wednesday, March 9, 2022 1:45 PM
**To:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Yes, still scheduled.  And yes, virtual.  Our court reporting service said they will circulate the Zoom information the day before (i.e., tomorrow).

Gregory Ashe
Senior Staff Attorney
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3719

**From:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>
**Sent:** Wednesday, March 9, 2022 1:27 PM
**To:** Ashe, Gregory <GASHE@ftc.gov>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Gregory,

We note that there is a deposition scheduled for this Friday, March 11, 2022 of Paul Ribaudo. Is it still scheduled? And, if so, is it virtual? Please advise.

Thank you.

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Monday, March 7, 2022 11:53 AM

# ATTACHMENT B

| | |
|---|---|
| **From:** | Ashe, Gregory |
| **To:** | Michael DiBenedetto; Joseph P Baratta |
| **Cc:** | Heald, Julia; Moeller, Marguerite |
| **Subject:** | RE: FTC v. Richmond Capital |
| **Date:** | Thursday, March 10, 2022 9:01:00 AM |

Counsel,

We cannot agree to the stipulation.  As we stated, you do not need our permission to file an out-of-time response to discovery.  If served with such responses, we will evaluate the appropriate course of action.

Meanwhile, tomorrow's deposition of Paul Ribaudo has been postponed.

Gregory Ashe
Senior Staff Attorney
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3719

---

**From:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>
**Sent:** Wednesday, March 9, 2022 4:46 PM
**To:** Ashe, Gregory <GASHE@ftc.gov>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Gregory,

It was a pleasure speaking with you this afternoon. Please see attached proposed stipulation that would be filed with the Court, upon your consent. We will serve responses to admissions tomorrow.

Thank you

---

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Wednesday, March 9, 2022 1:45 PM
**To:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Yes, still scheduled.  And yes, virtual.  Our court reporting service said they will circulate the Zoom information the day before (i.e., tomorrow).

Gregory Ashe
Senior Staff Attorney

# ATTACHMENT C

| From: | Michael DiBenedetto |
|---|---|
| To: | Ashe, Gregory; Joseph P Baratta |
| Cc: | Heald, Julia; Moeller, Marguerite |
| Subject: | RE: FTC v. Richmond Capital |
| Date: | Friday, March 11, 2022 1:57:55 PM |
| Attachments: | Response to FTC"s Second RFAs to Jonathan Braun 20220311.pdf |

Gregory,

Good afternoon. Please see attached Mr. Braun's responses to Plaintiff's Second Set of Requests for Admissions. Have a good weekend.

---

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Thursday, March 10, 2022 9:02 AM
**To:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Counsel,

We cannot agree to the stipulation.  As we stated, you do not need our permission to file an out-of-time response to discovery.  If served with such responses, we will evaluate the appropriate course of action.

Meanwhile, tomorrow's deposition of Paul Ribaudo has been postponed.

Gregory Ashe
Senior Staff Attorney
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3719

---

**From:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>
**Sent:** Wednesday, March 9, 2022 4:46 PM
**To:** Ashe, Gregory <GASHE@ftc.gov>; Joseph P Baratta <jpbaratta@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>; Moeller, Marguerite <mmoeller@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Gregory,

It was a pleasure speaking with you this afternoon. Please see attached proposed stipulation that would be filed with the Court, upon your consent. We will serve responses to admissions tomorrow.

Thank you

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FEDERAL TRADE COMMISSION,

                     Plaintiff,

          - against -

RCG ADVANCES, LLC et al.,

                    Defendants.
------------------------------------------------------------------X

DEFENDANT JONATHAN
BRAUN'S RESPONSE TO
PLAINTIFF'S SECOND SET
OF REQUESTS FOR ADMISSIONS

20-cv-4432 (LAK)

## DEFENDANT BRAUN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSIONS

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant, Jonathan Braun ("Defendant"), by his undersigned attorneys, object and respond to Plaintiff's Second Set of Requests for Admissions dated June 25, 2021 ("Plaintiff's Demand"), as follows:

## GENERAL OBJECTIONS

1.    Defendant submits these responses and objections solely upon his knowledge, information and/or belief as to the facts and information available to him as of the date of this response, and without waiver and subject to any such objections made herein.

2.    Defendant's responses and objections do not constitute an admission to any of the requests and/or allegations made in such requests, nor does Defendant's objections and responses made herein constitute an admission that Defendant agrees with the characterization, definition, or assumption contained in any request nor does Defendant concede that a request is proper, or seeks information and/or documents that is properly discoverable.  Furthermore, a statement or objection that documents will or will not be produced in response to a request does not mean that Defendant possesses the knowledge that any such document or information exists or is in his custody or control.

1

3.     Defendant reserves any and all objections to relevance, materiality, and/or admissibility of any information provided or document identified in response to the requests during the pendency of this litigation.

4.     Defendant objects to any and all requests to the extent that they are irrelevant, vague, overly broad, unduly burdensome, harassing, involve undue expense, and/or are irrelevant to the claims and defenses of the parties, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

5.     Defendant objects to each of the requests to the extent they could be construed as requesting disclosure of information prepared by or at the direction of their attorneys; to the extent that it could be construed as requesting disclosure of information prepared by or for Defendant; to the extent that it could be construed as requesting disclosure, release, or review of confidential communications by and between Defendant and Defendant's counsel; and to the extent it is otherwise covered by the attorney-client privilege and the attorney work-product privilege. In the event of any inadvertent production of any document protected by an applicable privilege or doctrine is not intended to constitute, and shall not constitute, a waiver in whole or in part of such privilege or doctrine.

6.     Defendant objects to the requests to the extent that they seek to impose a discovery obligation beyond the scope of the relevant statutes, rules and/or case law including the Federal Rules of Civil Procedure and the Local Rules of this Court.

7.     Defendant objects to any and all document and/or information requests to the extent that they seek confidential or financial information before an appropriate protective order or confidentiality stipulation is in place.

8.     Defendant objects to the requests to the extent that they seek documents and/or

2

information that is not relevant to the subject matter of any claim or defense that is at issue in this litigation; that is not proportional to the needs of the case; and/or that is not reasonably calculated to lead to the discovery of admissible evidence.

9.      Defendant objects to the requests to the extent that they seek documents and/or information that is not in Defendant's possession, custody, or control.

10.     Defendant objects to any and all document and/or information requests to the extent they seek the identification of documents, writings, records, or publications in the public domain or within Plaintiff's possession or control and is thus available to Plaintiff.

11.     Defendant objects to the requests to the extent that they seek discovery in violation of any applicable law.

12.     Defendant objects to the requests to the extent that they call for information concerning documents that are no longer in existence.

13.     Defendant objects to the requests to the extent that they are irrelevant, vague, ambiguous, overly broad, unduly burdensome, unreasonably cumulative, overlapping or duplicative.

14.     Defendant objects to the requests to the extent that they purport to require disclosure of information that is already in the possession of the Plaintiff; available from public sources; as accessible to the Plaintiff as to Defendant; or obtainable from another source that is more convenient, less burdensome or less expensive, such as a party to the above-captioned litigation.

15.     Defendant objects to the requests to the extent that they imprecisely specify the information sought.

16.     Defendant objects to the requests to the extent that they purport to impose a duty on Defendant to undertake a search for information beyond a diligent search of their files when

PX36 - 13

information responsive to the request would reasonably be expected to be found.

17.     Defendant object to the requests that they seek information that is the confidential and propriety information of Defendant, the joint confidential and proprietary information of Defendant, his business, representatives, employees, agents and/or third party, or the subject of a non-disclosure/confidentiality agreement or the like between Defendant and a third party.

18.     Defendant objects to any and all document demands that are not reasonably limited in time and/or scope.

19.     Defendant objects to the requests to the extent that they call for the discovery of information protected by the attorney-client privilege, the attorney work-product immunity and/or any other applicable privilege or immunity under federal, state or local law.  The inadvertent production of any information that is privileged or otherwise protected from discovery shall not constitute a waiver of any such privilege or protection.

20.      Defendant objects to the requests to the extent that they call to produce information and/or documents protected by the attorney-client privilege, work-product doctrine or otherwise protected or protectable from discovery (collectively, "Privilege").

21.     Defendant objects to the requests to the extent that they call for information and/or documents that are not in his possession, custody or control, or that are in the possession, custody, or control of Plaintiff or third parties whom Defendant does not control, including former employees, agents, attorneys, officers, directors, consultants, representatives or other persons who formerly acted on behalf of Defendant.

22.     Defendant's responses are given without, in any way, waiving or intending to waive, but on the contrary, intending to preserve: (a) all questions as to the competency, relevancy, materiality, privilege, and admissibility of evidence, for any purpose, of the responses, or subject

matter thereof, in any subsequent proceedings in, or the trial of, this action; (b) the right to object to the use of any of the responses produced in any subsequent proceedings in, or the trial of, this action; (c) the right to object on any ground, at any time, or to a demand for further discovery procedures involving or relating to the responses herein provided; and (d) the right to review, correct, add to, or clarify any of the responses to the document demands.

<u>**OBJECTIONS TO INSTRUCTIONS**</u>

1.     Defendant objects to the instructions in Plaintiff's request to the extent that said instructions are overly broad, unduly burdensome, and disproportionate, to the needs of this action and/or seeks disclosure of documents and/or information beyond Defendant's control, possession, custody or knowledge.

2.     Defendant further objects to the instructions in Plaintiff's requests to the extent that said instructions are to impose obligations inconsistent with or in addition to the Federal Rules of Civil Procedure or the rules of this Court.

<u>**SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSIONS**</u>

Without waiving the foregoing objections, but in express reliance thereon, Defendant incorporates the foregoing objections in the responses below and responds to the individually numbered admissions as follows:

<u>**ADMISSION NO. 1:**</u>

Admit that on one or more occasions You instructed Tzvi "Steve" Reich to wire money to the account of a Consumer and Robert Giardina to reimburse Reich with RCG funds.

<u>**RESPONSE TO ADMISSION NO. 1**</u>:

Deny.

5

**ADMISSION NO. 2:**

 Admit that on one or more occasions, You switched the name of the company on a "Merchant Agreement" from Ram to RCG after the terms of the deal were negotiated but before the deal was funded.

**RESPONSE TO ADMISSION NO. 2**:

 Deny.

**ADMISSION NO. 3:**

 Admit that on one or more occasions, You instructed Tzvi "Steve" Reich to switch the name of the company on a "Merchant Agreement" from Ram to RCG after the terms of the deal were negotiated but before the deal was funded.

**RESPONSE TO ADMISSION NO. 3**:

 Deny.

**ADMISSION NO. 4:**

 Admit that on one or more occasions, You switched the name of the company on a "Merchant Agreement" from RCG to Ram after the terms of the deal were negotiated but before the deal was funded.

**RESPONSE TO ADMISSION NO. 4**:

 Deny.

**ADMISSION NO. 5:**

 Admit that on one or more occasions, You instructed Tzvi "Steve" Reich to switch the name of the company on a "Merchant Agreement" from RCG to Ram after the terms of the deal were negotiated but before the deal was funded.

PX36 - 16

**RESPONSE TO ADMISSION NO. 5**:

Deny.

**ADMISSION NO. 6:**

Admit that for one or more Consumers, You held back money in reserve thereby depositing into their bank accounts an amount less than the amount listed on the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 6**:

Deny.

**ADMISSION NO. 7:**

Admit that for one or more Consumers, RCG held back money in reserve thereby depositing into their bank accounts an amount less than the amount listed on the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 7**:

Deny.

**ADMISSION NO. 8:**

Admit that for one or more Consumers, You deducted more fees from the "Total Purchase Price" listed on the first page of the "Merchant Agreement" than the amount of Origination and ACH Program fees listed in Appendix A of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 8**:

Deny.

**ADMISSION NO. 9:**

Admit that for one or more Consumers, RCG deducted more fees from the "Total Purchase Price" listed on the first page of the "Merchant Agreement" than the amount of Origination and

ACH Program fees listed in Appendix A of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 9**:

Defendant lacks knowledge or information as to whether RCG deducted more fees from the "Total Purchase Price" listed on the first page of the "Merchant Agreement" than the amount of Origination and ACH Program fees listed in Appendix A of the "Merchant Agreement" and cannot admit or deny the allegation.

**ADMISSION NO. 10:**

Admit that You did not inform Consumers that RCG's payment processor would debit two separate daily payments from Consumers' bank accounts on the days following bank holidays.

**RESPONSE TO ADMISSION NO. 10**:

Deny.

**ADMISSION NO. 11:**

Admit that You did not inform Consumers prior to providing financing that You would use obscene or profane language in telephone calls to Consumers who were struggling to make their daily payments.

**RESPONSE TO ADMISSION NO. 11**:

Admit that I did not inform Consumers prior to providing financing that I would use obscene or profane language in telephone calls to Consumers who were struggling to make their daily payments, and deny that obscene or profane language was used.

**ADMISSION NO. 12:**

Admit that You did not inform Consumers prior to providing financing that You would threaten Consumers with physical violence if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 12**:

Admit that I did not inform Consumers prior to providing financing that I would threaten Consumers with physical violence if they stopped making their daily payments, and deny that I made any such threats.

**ADMISSION NO. 13:**

Admit that You did not inform Consumers prior to providing financing that You would threaten to ruin the reputation of Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 13**:

Admit that I did not inform Consumers prior to providing financing that I would threaten to ruin the reputation of Consumers if they stopped making their daily payments, and deny that I made any such threats.

**ADMISSION NO. 14:**

Admit that You did not inform Consumers prior to providing financing that You would threaten to ruin the physical property of Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 14**:

Admit that I did not inform Consumers prior to providing financing that I would threaten to ruin the physical property of Consumers if they stopped making their daily payments, and deny that I made any such threats.

**ADMISSION NO. 15:**

Admit that You required one or more Consumers to provide bank login information in the Merchant Agreement.

**RESPONSE TO ADMISSION NO. 15**:

Deny.

9

**ADMISSION NO. 16:**

Admit that You required one or more Consumers to provide bank account routing

information in the Merchant Agreement.

**RESPONSE TO ADMISSION NO. 16**:

Deny.

**ADMISSION NO. 17:**

Admit that RCG required one or more Consumers to provide bank login information in the

Merchant Agreement.

**RESPONSE TO ADMISSION NO. 17**:

Admit.

**ADMISSION NO. 18:**

Admit that RCG required one or more Consumers to provide bank account routing

information in the Merchant Agreement.

**RESPONSE TO ADMISSION NO. 18**:

Admit.

**ADMISSION NO. 19:**

Admit that You did not provide financing to a Consumer unless RCG received their bank

login information.

**RESPONSE TO ADMISSION NO. 19**:

Deny.

**ADMISSION NO. 20:**

Admit that You did not provide financing to a Consumer unless RCG received their bank

account routing number.

10

**RESPONSE TO ADMISSION NO. 20**:

 Deny.

**ADMISSION NO. 21:**

 Admit that RCG did not provide financing to a Consumer unless RCG received their bank login information.

**RESPONSE TO ADMISSION NO. 21**:

 Admit.

**ADMISSION NO. 22:**

 Admit that RCG did not provide financing to a Consumer unless RCG received their bank account routing number.

**RESPONSE TO ADMISSION NO. 22**:

 Admit.

**ADMISSION NO. 23:**

 Admit that RCG's policy was to withdraw from Consumers' bank accounts an amount exceeding the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 23**:

 Deny.

**ADMISSION NO. 24:**

 Admit that for one or more Consumers, RCG withdrew from Consumers' bank accounts an amount exceeding the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

11

**RESPONSE TO ADMISSION NO. 24**:

Defendant lacks knowledge or information as to whether RCG withdrew from Consumers' bank accounts an amount exceeding the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" and cannot admit or deny the allegation.

**ADMISSION NO. 25:**

Admit that for one or more Consumers, You withdrew from Consumers' bank accounts an amount exceeding the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 25**:

Deny.

**ADMISSION NO. 26:**

Admit that RCG's policy was to make daily withdrawals from Consumers' bank accounts for four days after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 26**:

Deny.

**ADMISSION NO. 27:**

Admit that for one or more Consumers, RCG made daily withdrawals from Consumers' bank accounts for four days after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 27**:

Defendant lacks knowledge or information as to whether RCG made daily withdrawals from Consumers' bank accounts for four days after the Consumer paid the amount listed as the "Total

12

Purchased Amount" on the first page of the "Merchant Agreement" and cannot admit or deny the allegation.

**ADMISSION NO. 28:**

Admit that for one or more Consumers, You made daily withdrawals from Consumers' bank accounts for four days after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 28**:

Deny.

**ADMISSION NO. 29:**

Admit that RCG's policy was to make daily withdrawals from Consumers' bank accounts after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" until the Consumer contacted RCG to stop withdrawals.

**RESPONSE TO ADMISSION NO. 29**:

Deny.

**ADMISSION NO. 30:**

Admit that for one or more Consumers, RCG made daily withdrawals from Consumers' bank accounts after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" until the Consumer contacted RCG to stop withdrawals.

**RESPONSE TO ADMISSION NO. 30**:

Defendant lacks knowledge or information as to whether  RCG made daily withdrawals from Consumers' bank accounts after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" until the Consumer contacted RCG to stop withdrawals and cannot admit or deny the allegation..

13

**ADMISSION NO. 31:**

 Admit that for one or more Consumers, You made daily withdrawals from Consumers' bank accounts after the Consumer paid the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" until the Consumer contacted You to stop withdrawals.

**RESPONSE TO ADMISSION NO. 31**:

 Deny.

**ADMISSION NO. 32:**

 Admit that RCG's policy when transferring a Consumer's balance from one "Merchant Agreement" to a new "Merchant Agreement" was to inflate the amount of the balance that You transferred.

**RESPONSE TO ADMISSION NO. 32**:

 Deny.

**ADMISSION NO. 33:**

 Admit that for one or more Consumers, when transferring a Consumer's balance from one "Merchant Agreement" to a new "Merchant Agreement" RCG inflated the amount of the balance that was transferred.

**RESPONSE TO ADMISSION NO. 33**:

 Defendant lacks knowledge or information as to whether RCG inflated the amount of the balance that was transferred when transferring a Consumer's balance from one "Merchant Agreement" to a new "Merchant Agreement" and cannot admit or deny the allegation.

**ADMISSION NO. 34:**

 Admit that for one or more Consumers, when transferring a Consumer's balance from one

14

"Merchant Agreement" to a new "Merchant Agreement" You inflated the amount of the balance that You transferred.

**RESPONSE TO ADMISSION NO. 34**:

    Deny.

**ADMISSION NO. 35:**

    Admit that RCG's policy was to tell Consumers that they had a higher outstanding balance than they actually owed.

**RESPONSE TO ADMISSION NO. 35**:

    Deny.

**ADMISSION NO. 36:**

    Admit that for one or more Consumers, RCG told Consumers that they had a higher outstanding balance than they actually owed.

**RESPONSE TO ADMISSION NO. 36**:

    Defendant lacks knowledge or information as to whether RCG told Consumers that they had a higher outstanding balance than they actually owed and cannot admit or deny the allegation.

**ADMISSION NO. 37:**

    Admit that for one or more Consumers, You told Consumers that they had a higher outstanding balance than they actually owed.

**RESPONSE TO ADMISSION NO. 37**:

    Deny.

**ADMISSION NO. 38:**

    Admit that RCG's policy was to not refund to Consumers amounts withdrawn from

Consumers' accounts that exceeded the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 38**:

Deny.

**ADMISSION NO. 39:**

Admit that for one or more Consumers, RCG did not refund to Consumers amounts withdrawn from Consumers' accounts that exceeded the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 39**:

Defendant lacks knowledge or information as to whether  RCG did not refund to Consumers amounts withdrawn from Consumers' accounts that exceeded the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement" and cannot admit or deny the allegation.

**ADMISSION NO. 40:**

Admit that for one or more Consumers, You did not refund to Consumers amounts withdrawn from Consumers' accounts that exceeded the amount listed as the "Total Purchased Amount" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 40**:

Deny.

**ADMISSION NO. 41:**

Admit that for one or more Consumers You provided financing with the intent of collecting more than the amount specified in the "Total Purchased Amount" on the first page of

16

the Merchant Agreement.

**RESPONSE TO ADMISSION NO. 41**:

   Deny.

**ADMISSION NO. 42:**

   Admit that for one or more Consumers RCG provided financing with the intent of collecting more than the amount specified in the "Total Purchased Amount" on the first page of the Merchant Agreement.

**RESPONSE TO ADMISSION NO. 42**:

   Defendant lacks knowledge or information as to whether RCG provided financing with the intent of collecting more than the amount specified in the "Total Purchased Amount" on the first page of the Merchant Agreement  and cannot admit or deny the allegation.

**ADMISSION NO. 43:**

   Admit that You have knowledge of a Client Services Application and Agreement between Richmond Capital Group, LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 43**:

   Deny.

**ADMISSION NO. 44:**

   Admit that You have knowledge of a Client Services Application and Agreement between Addy Source LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 44**:

   Deny.

17

**ADMISSION NO. 45:**

Admit that You have knowledge of a Client Services Application and Agreement between Franklin Funding Group LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 45:**

Deny.

**ADMISSION NO. 46:**

Admit that You have knowledge of a Client Services Application and Agreement between Karish Kapital LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 46:**

Deny.

**ADMISSION NO. 47:**

Admit that You have knowledge of a Client Services Application and Agreement between Merchant Advance 1 LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 47:**

Deny.

**ADMISSION NO. 48:**

Admit that You have knowledge of a Client Services Application and Agreement between Orange ACH LLC and Actum Processing.

**RESPONSE TO ADMISSION NO. 48:**

Deny.

**ADMISSION NO. 49:**

Admit that Section 4.2 of the Client Services Terms and Conditions in the Client Services

18

Application and Agreement between Richmond Capital Group, LLC and Actum Processing states that "Client agrees to follow all regulations regarding the use of the Company's sales of Services and any other applicable regulatory body."

**RESPONSE TO ADMISSION NO. 49**:

Deny.

**ADMISSION NO. 50:**

Admit that Section 5.2 of the Client Services Terms and Conditions in the Client Services Application and Agreement between Richmond Capital Group, LLC and Actum Processing states that "Client does, and at all times during the term of this Agreement, will, operate its business in strict compliance with: (i) all laws and regulations applicable to Client's business to the highest legal and ethical standards, including, among others, the Federal Trade Commission Act of 1914 (the "FTC Act") and the rules and regulations promulgated thereunder."

**RESPONSE TO ADMISSION NO. 50**:

Deny.

**ADMISSION NO. 51:**

Admit that the Client Services Application and Agreement between Richmond Capital Group, LLC and Actum Processing defines "Regulations" to mean "All federal, state and local regulations that govern Internet business, consumer information, credit card transactions and Transactions (as defined below), including but not limited to the FCRA, federal Regulation E and Title 31 of the Code of Federal Regulations Part 210, Gramm- Leach-Bliley Act, Federal Trade Commission Act, and Driver's Privacy Protection Act."

19

**RESPONSE TO ADMISSION NO. 51**:

     Deny.


DATED: March 11, 2022
        New York, New York


                               Yours, etc.,

                               **BARATTA, BARATTA & AIDALA LLP**

                           By: */s/Joseph P. Baratta*
                               Joseph P. Baratta, Esq.
                               *Attorneys for Defendant Jonathan Braun*
                               546 5th Avenue, 6th Floor
                               New York, New York 10036
                               (212) 750-9700


To:    Gregory A. Ashe, Esq.
        Julia Heald, Esq.
        *Attorneys for the Plaintiff Federal Trade Commission*
        Federal Trade Commission
        600 Pennsylvania Avenue, NW
        Mail Stop CC-10232
        Washington, DC 20580
        (202) 326-3719

PX36 - 30

## **VERIFICATION**

STATE OF NEW YORK      )
                                              :ss
COUNTY OF  BRONX      )


Defendant Jonathan Braun individually makes the within Verification of the Responses to Plaintiff's Second Set of Requests for Admissions as I have read the foregoing Responses to Plaintiff's Second Set of Requests for Admissions and know the contents thereof which are true to my knowledge except to matters alleged on information and belief or not having sufficient information, and as to those matters, I believe them to be true. The grounds for my belief are my information or from information that was available to me.


_____
JONATHAN BRAUN


Sworn to before me this 11th day
of March, 2022.


Notary


Stefanie J. Almonte
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AL6388628
Qualfied in Bronx County
Commission Expires    March 11, 2023

21

# ATTACHMENT D

| | |
|---|---|
| **From:** | Michael DiBenedetto |
| **To:** | Ashe, Gregory; Denise |
| **Cc:** | Heald, Julia |
| **Subject:** | RE: FTC v. Richmond Capital |
| **Date:** | Friday, April 1, 2022 9:44:37 AM |
| **Attachments:** | image001.png |
| | Response to FTC"s First RFA"s to Jonathan Braun 20220331.pdf |

Gregory,

Good morning. Please see attached Defendant Braun's objection and responses to Plaintiff's First Set of Requests for Admissions.

Thank you

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Monday, March 28, 2022 11:30 AM
**To:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>; Denise <denise@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

Sure.  Just email when you're done.

Gregory Ashe
Senior Staff Attorney
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3719

**From:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>
**Sent:** Monday, March 28, 2022 11:28 AM
**To:** Ashe, Gregory <GASHE@ftc.gov>; Denise <denise@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

I sincerely apologize, can we make it 1145? My court appearance just started.

**From:** Ashe, Gregory <GASHE@ftc.gov>
**Sent:** Monday, March 28, 2022 11:26 AM
**To:** Michael DiBenedetto <mdibenedetto@aidalalaw.com>; Denise <denise@barattalaw.com>
**Cc:** Heald, Julia <jheald@ftc.gov>
**Subject:** RE: FTC v. Richmond Capital

We'll call you at 11:30 at that number.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FEDERAL TRADE COMMISSION,

                              Plaintiff,

        - against -

RCG ADVANCES, LLC et al.,

                           Defendants.
------------------------------------------------------------------X

DEFENDANT JONATHAN
BRAUN'S RESPONSE TO
PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION

20-cv-4432 (LAK)

## DEFENDANT BRAUN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant, Jonathan

Braun ("Defendant"), by his undersigned attorneys, object and respond to Plaintiff's First Set of

Requests for Admissions dated November 4, 2020 ("Plaintiff's Demand"), as follows:

## GENERAL OBJECTIONS

1.      Defendant submits these objections and responses solely upon his knowledge,

information and/or belief as to the facts and information available to him as of the date of this

response, and without waiver and subject to the objections made herein.

2.      Defendant's objections and responses do not constitute an admission to any of the

requests and/or allegations made in such requests, nor does Defendant's objections and responses

made herein constitute an admission that Defendant agrees with the characterization, definition,

or assumption contained in any request nor does Defendant concede that a request is proper, or

seeks information and/or documents that is properly discoverable.  Furthermore, a statement or

objection that documents will or will not be produced in response to a request does not mean that

Defendant possesses the knowledge that any such document or information exists or is in his

custody or control.

1

3.     Defendant reserves any and all objections to relevance, materiality, and/or admissibility of any information provided or document identified in response to the requests during the pendency of this litigation.

4.     Defendant objects to any and all requests to the extent that they are irrelevant, vague, overly broad, unduly burdensome, harassing, involve undue expense, and/or are irrelevant to the claims and defenses of the parties, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

5.     Defendant objects to each of the requests to the extent they could be construed as requesting disclosure of information prepared by or at the direction of their attorneys; to the extent that it could be construed as requesting disclosure of information prepared by or for Defendant in contemplation of arbitration; to the extent that it could be construed as requesting disclosure, release, or review of confidential communications by and between Defendant and Defendant's counsel; and to the extent it is otherwise covered by the attorney-client privilege and the attorney work-product privilege. The inadvertent production of any document protected by an applicable privilege or doctrine is not intended to constitute, and shall not constitute, a waiver in whole or in part of such privilege or doctrine.

6.     Defendant objects to the requests to the extent that they seek to impose a discovery obligation beyond the scope of the relevant statutes, rules and/or case law, including the Local Rules of this Court.

7.     Defendant objects to any and all document and/or information requests to the extent that they seek confidential or financial information before an appropriate protective order or confidentiality stipulation is in place.

8.     Defendant objects to the requests to the extent that they seek documents and/or information that is not relevant to the subject matter of any claim or defense that is at issue in

2

this litigation; that is not proportional to the needs of the case; and/or that is not reasonably calculated to lead to the discovery of admissible evidence.

9.     Defendant objects to the requests to the extent that they seek documents and/or information that is not in Defendant's possession, custody, or control.

10.     Defendant objects to any and all document and/or information requests to the extent they seek the identification of documents, writings, records, or publications in the public domain or within Plaintiff's possession or control and is thus available to Plaintiff.

11.     Defendant objects to the requests to the extent that they seek discovery in violation of any applicable law.

12.     Defendant objects to the requests to the extent that they call for information concerning documents that are no longer in existence.

13.     Defendant objects to the requests to the extent that they are irrelevant, vague, ambiguous, overly broad, unduly burdensome, unreasonably cumulative, overlapping or duplicative.

14.     Defendant objects to the requests to the extent that they purport to require disclosure of information that is already in the possession of the Plaintiff; available from public sources; as accessible to the Plaintiff as to Defendant; or obtainable from another source that is more convenient, less burdensome or less expensive, such as a party to the above-captioned litigation.

15.     Defendant objects to the requests to the extent that they imprecisely specify the information sought.

16.     Defendant objects to the requests to the extent that they purport to impose a duty on Defendant to undertake a search for information beyond a diligent search of their files when information responsive to the request would reasonably be expected to be found.

3

17.     Defendant object to the requests that they seek information that is the confidential and propriety information of Defendant, the joint confidential and proprietary information of Defendant, his business, representatives, employees, agents and/or third party, or the subject of a non-disclosure/confidentiality agreement or the like between Defendant and a third party.

18.     Defendant objects to any and all document demands that are not reasonably limited in time and/or scope.

19.     Defendant objects to the requests to the extent that they call for the discovery of information protected by the attorney-client privilege, the attorney work-product immunity and/or any other applicable privilege or immunity under federal, state or local law.   The inadvertent production of any information that is privileged or otherwise protected from discovery shall not constitute a waiver of any such privilege or protection.

20.     Defendant objects to the requests to the extent that they call to produce information and/or documents protected by the attorney-client privilege, work-product doctrine or otherwise protected or protectable from discovery (collectively, "Privilege").

21.     Defendant objects to the requests to the extent that they call for information and/or documents that are not in his possession, custody or control, or that are in the possession, custody, or control of Plaintiff or third parties whom Defendant does not control, including former employees, agents, attorneys, officers, directors, consultants, representatives or other persons who formerly acted on behalf of Defendant.

22.     Defendant's responses are given without, in any way, waiving or intending to waive, but on the contrary, intending to preserve: (a) all questions as to the competency, relevancy, materiality, privilege, and admissibility of evidence, for any purpose, of the responses, or subject matter thereof, in any subsequent proceedings in, or the trial of, this action; (b) the right to object to the use of any of the responses produced in any subsequent proceedings in, or

PX36 - 37

the trial of, this action; (c) the right to object on any ground, at any time, or to a demand for further discovery procedures involving or relating to the responses herein provided; and (d) the right to review, correct, add to, or clarify any of the responses to the document demands.

## OBJECTIONS TO INSTRUCTIONS

1.      Defendant objects to the instructions in Plaintiff's request to the extent that said instructions are overly broad, unduly burdensome, and disproportionate, to the needs of this action and/or seeks disclosure of documents and/or information beyond Defendant's control, possession, custody or knowledge.

2.      Defendant further objects to the instructions in Plaintiff's requests to the extent that said instructions are to impose obligations inconsistent with or in addition to the Federal Rules of this Court.

## RESPONSES TO REQUESTS FOR ADMISSIONS

Defendant responds to the individually numbered admissions as follows:

**ADMISSION NO. 1:**

Admit that You created content for the website www.richmondcapitalgroup.com.

**RESPONSE TO ADMISSION NO. 1**:

Deny.

**ADMISSION NO. 2:**

Admit that You directed Defendant Robert Giardina to deposit funds into the bank accounts of one or more Consumers.

**RESPONSE TO ADMISSION NO. 2**:

Admitted as per my job as underwriter.

**ADMISSION NO. 3:**

Admit that You directed Defendant Tzvi Reich to deposit funds in the bank

PX36 - 38

accounts of one or more Consumers.

**RESPONSE TO ADMISSION NO. 3**:

Admitted in part as per my job as underwriter, but suggested, not directed.

**ADMISSION NO. 4:**

Admit that for one or more Consumers, You directed Defendant Robert Giardina to deposit into Consumers' bank accounts an amount less than the amount listed as the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 4**:

Admitted as per the terms of the Merchant Agreement, but suggested, not directed.

**ADMISSION NO. 5:**

Admit that for one or more Consumers, You directed Defendant Tzvi Reich to deposit into Consumers' bank accounts an amount less than the amount listed as the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 5**:

Admitted as per the terms of the Merchant Agreement, but suggested, not directed.

**ADMISSION NO. 6:**

Admit that RCG's policy was to deposit into Consumers' bank accounts an amount less than the amount listed as the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 6**:

Admitted as it was RCG's policy as per the terms of the Merchant Agreement.

**ADMISSION NO. 7:**

Admit that Ram's policy was to deposit into Consumers' bank accounts an amount less

6

than the amount listed as the "Total Purchase Price" on the first page of the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 7**:

Admitted as it was Ram's policy as per the terms of the Merchant Agreement.

**ADMISSION NO. 8:**

Admit that for one or more Consumers, You directed Defendant Robert Giardina to deduct fees from the "Total Purchase Price" amount listed on the first page of Your "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

**RESPONSE TO ADMISSION NO. 8:**

Admitted as per the terms of the Merchant Agreement and in accord with my job as underwriter, but suggested, not directed.

**ADMISSION NO. 9:**

Admit that for one or more Consumers, You directed Defendant Tzvi Reich to deduct fees from the "Total Purchase Price" amount listed on the first page of Your "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

**RESPONSE TO ADMISSION NO. 9:**

Admitted as per the terms of the Merchant Agreement and in accord with my job as underwriter, but suggested, not directed.

**ADMISSION NO. 10:**

Admit that RCG's policy was to deduct fees from the "Total Purchase Price" amount listed on the first page of the "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

PX36 - 40

**RESPONSE TO ADMISSION NO. 10**:

Defendant lacks knowledge or information as to whether it was RCG's policy was to deduct fees from the "Total Purchase Price" amount listed on the first page of the "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

**ADMISSION NO. 11:**

Admit that Ram's policy was to deduct fees from the "Total Purchase Price" amount listed on the first page of the "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

**RESPONSE TO ADMISSION NO. 11**:

Defendant lacks knowledge or information as to whether it was Ram's policy was to deduct fees from the "Total Purchase Price" amount listed on the first page of the "Merchant Agreement" before depositing the funds into Consumers' bank accounts.

**ADMISSION NO. 12:**

Admit that You had the authority to change the fees Consumers were required to pay in order to obtain Financing.

**RESPONSE TO ADMISSION NO. 12**:

Deny as Defendant had no authority to change fees without approval.

**ADMISSION NO. 13:**

Admit that in one or more instances, You changed the fees Consumers were required to pay from the fees listed in "Appendix A: The Fee Structure," attached to the "Merchant Agreement."

**RESPONSE TO ADMISSION NO. 13**:

Admit in part in that RCG Advances LLC may have changed the fees Consumers were

8

required to pay from the fees listed in "Appendix A: The Fee Structure," attached to the "Merchant Agreement.".

**ADMISSION NO. 14:**

Admit that one or more Consumers complained that they received fewer funds than they expected to receive.

**RESPONSE TO ADMISSION NO. 14**:

Admit in part and in that complaining customers had the right to cancel the agreement by returning the funds and cancelling the agreement due to any type of misunderstanding.

**ADMISSION NO. 15:**

Admit that You had the authority to declare Consumers in default of their Merchant Agreements.

**RESPONSE TO ADMISSION NO. 15**:

Deny authority to declare a default and made suggestions in the event of a default..

**ADMISSION NO. 16:**

Admit that You did declare one or more Consumers in default of their Merchant Agreements.

**RESPONSE TO ADMISSION NO. 16**:

Deny authority but reviewed any declarations and made suggestions in the event of a default.

**ADMISSION NO. 17:**

Admit that You had the authority to direct the filing of confessions of judgment against Consumers.

**RESPONSE TO ADMISSION NO. 17**:

Admit in part but I did not have the authority and only suggested the filing of

9

confessions of judgment as per the Merchant Agreement.

**ADMISSION NO. 18:**

Admit that You did direct filing of confessions of judgment against one or more Consumers.

**RESPONSE TO ADMISSION NO. 18**:

Admit in part but I did not have the authority and only suggested the filing of confessions of judgment as per the Merchant Agreement.

**ADMISSION NO. 19:**

Admit that You directed the filing of confessions of judgment against one or more Consumers who were current on their daily payments.

**RESPONSE TO ADMISSION NO. 19**:

Deny I had the authority to direct the filing of confessions of judgment, but I suggested the filing of confessions of judgment due to a reason for default in the Merchant Agreement.

**ADMISSION NO. 20:**

Admit that RCG directed the filing of confessions of judgment against one or more Consumers who were current on their daily payments.

**RESPONSE TO ADMISSION NO. 20**:

To my knowledge, there were other breaches of the Merchant Agreement that had nothing to do with daily payments.

**ADMISSION NO. 21:**

Admit that You directed the filing of confessions of judgment against one or more Consumers because their bank accounts had insufficient funds from which to withdraw the daily payments.

**RESPONSE TO ADMISSION NO. 21**:

Deny that I directed the filing of confessions of judgment but may have suggested it based on the fact that Customers were in violation of the Merchant Agreement.

**ADMISSION NO. 22:**

Admit that RCG directed the filing of confessions of judgment against one or more Consumers because their bank accounts had insufficient funds from which to withdraw the daily payments.

**RESPONSE TO ADMISSION NO. 22**:

To my knowledge, RCG has filed confessions of judgment on customers who violated the Merchant Agreement.

**ADMISSION NO. 23:**

Admit that You directed the filing of confessions of judgment against one or more Consumers after their daily payments were rejected three times due to insufficient funds in their accounts.

**RESPONSE TO ADMISSION NO. 23**:

Deny direction except that perhaps I may have suggested the filing in cases where there were violations of the Merchant Agreement.

**ADMISSION NO. 24:**

Admit that it was RCG's policy to file confessions of judgment against one or more Consumers when their daily payments were rejected three times due to insufficient funds in their accounts.

**RESPONSE TO ADMISSION NO. 24**:

Deny that it was a policy, but RCG had a right to file a judgment if the client was in default of the terms of the Merchant Agreement.

11

**ADMISSION NO. 25:**

Admit that You directed the filing of confessions of judgment against one or more Consumers after being informed that those Consumers could not continue making payments due to a business slowdown.

**RESPONSE TO ADMISSION NO. 25:**

Deny that I directed the filing of confessions of judgment, but may have suggested it, as per violations of the terms of the Merchant Agreement.

**ADMISSION NO. 26:**

Admit that RCG directed the filing of confessions of judgment against one or more Consumers after being informed that those Consumers could not continue making payments due to a business slowdown.

**RESPONSE TO ADMISSION NO. 26:**

Deny.

**ADMISSION NO. 27:**

Admit that You directed the filing of confessions of judgment against one or more Consumers after being informed that those Consumers could not continue making payments because their business went bankrupt or otherwise ceased operations in the ordinary course of business.

**RESPONSE TO ADMISSION NO. 27:**

Deny.

**ADMISSION NO. 28:**

Admit that RCG directed the filing of confessions of judgment against one or more Consumers after being informed that those Consumers could not continue making payments because their business went bankrupt or otherwise ceased operations in the ordinary course of

12

business.

**RESPONSE TO ADMISSION NO. 28**:

    Deny.

**ADMISSION NO. 29:**

    Admit that You directed the filing of confessions of judgment against one or more Consumers after being informed that they were experiencing technical difficulties with their bank accounts that prevented the withdrawal of daily payments.

**RESPONSE TO ADMISSION NO. 29**:

    Deny that I directed the filing of confessions of judgment and may have suggested the filing due to a default in the Merchant Agreement .

**ADMISSION NO. 30:**

    Admit that RCG directed the filing of confessions of judgment against one or more Consumers after being informed that they were experiencing technical difficulties with their bank accounts that prevented the withdrawal of payments.

**RESPONSE TO ADMISSION NO. 30**:

    Admit that RCG directed the filing of confessions of judgment, but deny that I directed the filings of confessions of judgment.

**ADMISSION NO. 31:**

    Admit that You directed the filing of confessions of judgment against one or more Consumers after receiving assurances that they were working to resolve the technical difficulties with their bank accounts that prevented the withdrawal of daily payments.

**RESPONSE TO ADMISSION NO. 31**:

    Admit in part, except that I never directed the filings of confessions of judgment but

13

may have suggested same as per the terms of the Merchant Agreement

## ADMISSION NO. 32:

Admit that RCG directed the filing of confessions of judgment against one or more Consumers after receiving assurances that they were working to resolve the technical difficulties with their bank accounts that prevented the withdrawal of daily payments.

## RESPONSE TO ADMISSION NO. 32:

Admit except that I had no authority to direct the filings.

## ADMISSION NO. 33:

Admit that You used obscene or profane language in telephone calls to one or more Consumers who were struggling to make their daily payments.

## RESPONSE TO ADMISSION NO. 33:

Admit that I may have used obscene or profane language.

## ADMISSION NO. 34:

Admit that Defendant Robert Giardina used obscene or profane language in telephone calls to one or more Consumers who were struggling to make their daily payments.

## RESPONSE TO ADMISSION NO. 34:

Defendant lacks knowledge or information as to whether Robert Giardina used obscene or profane language in telephone calls to one or more Consumers who were struggling to make their daily payments.

## ADMISSION NO. 35:

Admit that Defendant Tzvi ("Steve") Reich used obscene or profane language in telephone calls to one or more Consumers who were struggling to make their daily payments.

**RESPONSE TO ADMISSION NO. 35**:

Admit.

**ADMISSION NO. 36:**

Admit that You threatened one or more Consumers with physical violence if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 36**:

Deny.

**ADMISSION NO. 37:**

Admit that Defendant Robert Giardina threatened one or more Consumers with physical violence if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 37**:

Defendant lacks knowledge or information as to whether Defendant Robert Giardina threatened one or more Consumers with physical violence if they stopped making their daily payments.

**ADMISSION NO. 38:**

Admit that Defendant Tzvi ("Steve") Reich threatened one or more Consumers with physical violence if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 38**:

Defendant lacks knowledge or information as to whether Defendant Tzvi ("Steve") Reich threatened one or more Consumers with physical violence if they stopped making their daily payments.

**ADMISSION NO. 39:**

Admit that You threatened to ruin the reputation of one or more Consumers if they

15

stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 39**:

Deny.

**ADMISSION NO. 40:**

Admit that Defendant Robert Giardina threatened to ruin the reputation of one or more Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 40**:

Defendant lacks knowledge or information as to whether Defendant Robert Giardina threatened to ruin the reputation of one or more Consumers if they stopped making their daily payments.

**ADMISSION NO. 41:**

Admit that Defendant Tzvi ("Steve") Reich threatened to ruin the reputation of one or more Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 41**:

Defendant lacks knowledge or information as to whether Defendant Tzvi ("Steve") Reich threatened to ruin the reputation of one or more Consumers if they stopped making their daily payments.

**ADMISSION NO. 42:**

Admit that You threatened to ruin the personal property of one or more Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 42**:

Deny.

16

**ADMISSION NO. 43:**

Admit that Defendant Robert Giardina threatened to ruin the personal property of one or more Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 43**:

Defendant lacks knowledge or information as to whether Defendant Robert Giardina threatened to ruin the personal property of one or more Consumers if they stopped making their daily payments.

**ADMISSION NO. 44:**

Admit that Defendant Tzvi ("Steve") Reich threatened to ruin the personal property of one or more Consumers if they stopped making their daily payments.

**RESPONSE TO ADMISSION NO. 44**:

Defendant lacks knowledge or information as to whether Defendant Tzvi ("Steve") Reich threatened to ruin the personal property of one or more Consumers if they stopped making their daily payments.

**ADMISSION NO. 45:**

Admit that one or more Consumers complained about receiving threatening telephone calls regarding their daily payments.

**RESPONSE TO ADMISSION NO. 45**:

Defendant lacks knowledge or information as to whether that one or more Consumers complained about receiving threatening telephone calls regarding their daily payments.

**ADMISSION NO. 46:**

Admit that You directed RCG's payment processor to debit two separate daily payments from Consumers' bank accounts on days following bank holidays.

17

**RESPONSE TO ADMISSION NO. 46**:

Deny.

**ADMISSION NO. 47:**

Admit that You directed Ram's payment processor to debit two separate daily payments from Consumers' bank accounts on the days following bank holidays.

**RESPONSE TO ADMISSION NO. 47**:

Deny.

**ADMISSION NO. 48:**

Admit that You are or were a de facto owner of RCG.

**RESPONSE TO ADMISSION NO. 48**:

Deny.

**ADMISSION NO. 49:**

Admit that You are or were a manager of RCG.

**RESPONSE TO ADMISSION NO. 49**:

Deny that I was a manager, but admit that I was a senior funding specialist.

**ADMISSION NO. 50:**

Admit that You are or were a manager of RCG.

**RESPONSE TO ADMISSION NO. 50**:

Deny.

**ADMISSION NO. 51:**

Admit that You have or had authority to control RCG.

**RESPONSE TO ADMISSION NO. 51**:

Deny.

18

**ADMISSION NO. 52:**

Admit that You have or had authority to make decisions on behalf of RCG.

**RESPONSE TO ADMISSION NO. 52**:

Deny.

**ADMISSION NO. 53:**

Admit that You have or had authority to establish policies for RCG.

**RESPONSE TO ADMISSION NO. 53**:

Deny.

**ADMISSION NO. 54:**

Admit that You are or were a de facto owner of Ram.

**RESPONSE TO ADMISSION NO. 54**:

Deny.

**ADMISSION NO. 55:**

Admit that You are or were a manager of Ram.

**RESPONSE TO ADMISSION NO. 55**:

Deny.

**ADMISSION NO. 56:**

Admit that You are or were an officer of Ram.

**RESPONSE TO ADMISSION NO. 56**:

Deny.

**ADMISSION NO. 57:**

Admit that You have or had authority to control Ram.

**RESPONSE TO ADMISSION NO. 57**:

Deny.

19

**ADMISSION NO. 58:**

Admit that You have or had authority to make decisions on behalf of Ram.

**RESPONSE TO ADMISSION NO. 58**:

Deny.

**ADMISSION NO. 59:**

Admit that You have or had authority to establish policies for Ram.

**RESPONSE TO ADMISSION NO. 59**:

Deny.

Defendant reserves the right to supplement and/or amend the information provided herein up to and including the time of trial.

Dated:   March 30, 2022
           New York, New York

                                    Yours, etc.,

                                    **BARATTA, BARATTA & AIDALA LLP**

                                  By:  */s/Joseph P. Baratta*
                                          Joseph P. Baratta, Esq.
                                          *Attorneys for Defendant Jonathan Braun*
                                          546 5th Avenue, 6th Floor
                                          New York, New York 10036
                                          (212) 750-9700

To:    Gregory A. Ashe, Esq.
        Julia Heald, Esq.
        *Attorneys for the Plaintiff Federal Trade Commission*
        Federal Trade Commission
        600 Pennsylvania Avenue, NW
        Mail Stop CC-10232
        Washington, DC 20580
        (202) 326-3719

20

## VERIFICATION

STATE OF NEW YORK   )

                          :ss

COUNTY OF   kings   )

      Defendant Jonathan Braun individually makes the within Verification of the Responses to Plaintiff's First Set of Requests for Admissions as I have read the foregoing Responses to Plaintiff's First Set of Requests for Admissions and know the contents thereof which are true to my knowledge except to matters alleged on information and belief or not having sufficient information, and as to those matters, I believe them to be true. The grounds for my belief are my information or from information that was available to me.

                                                             JONATHAN BRAUN

Sworn to before me this 31st day
of March, 2022.

                   Notary

                BREINDY KRAUSZ
            Notary Public, State of New York
                 No. 01KR6390280
             Qualified in Kings County
          Commission Expires April 15, 2023

\\LS-BARATTA\bba\BB4A\CLIENTS-BBA\Braun\FTC v Braun\Admissions\Response to FTC's First RFAs to Jonathan Braun 20220330.docx