UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et. al. Plaintiff, - against - RCG ADVANCES, LLC et. al., Defendants. | Case No.: 1:20-cv-04432 (LAK) |

**DEFENDANT JONATHAN BRAUN'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION TO WITHDRAW AND AMEND HIS DEEMED ADMISSIONS AND TO AMEND HIS ANSWER**

TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

COUNTER-SUMMARY OF FACTS ............................................................................ 7

A. The action.............................................................................................................. 7

B. The FTC's evidence does not establish Braun's liability or damages ................................... 9

ARGUMENT ........................................................................................................... 10

I. The Court should grant Braun's cross-motion pursuant to Fed. R Civ. P. 36(a)(2) and allow Braun to withdraw the deemed admissions and amend them ........................................ 10

A. The standard for withdrawal or amendment under Fed. R. Civ. P. 36(a)(2) is not onerous. ........................................................................................................... 10

B. The Court should withdraw the deemed admissions because it promotes the presentation of the merits and will not prejudice the FTC's ability to prove its case at trial........................ 11

II. There are disputed factual issues precluding summary judgment ....................................... 13

A. Legal standard for summary judgment ............................................................................ 13

B. The Court should not impose any adverse inference on Braun, who never invoked his Fifth Amendment privilege, merely because other defendants invoked their own Fifth Amendment privilege........................................................................................................... 13

C. There are disputed factual issues whether Braun violated Section 5 of the FTC Act by engaging in deception (count i)............................................................................................ 16

D. There are disputed factual issues whether Braun violated Section 5 of the FTC Act by engaging in unfair practices (counts i through iv) ................................................................. 18

E. There are disputed factual issues whether Braun violated the Gramm-Leach-Biley Act (count v) ...................................................................................................................... 19

III. The FTC cannot obtain damages and civil penalties for Braun's alleged violations of Section 5 of the FTC Act (counts i through v) or the GLBA (count v) ........ 21

A. The FTC can only obtain injunctive relief for Braun's alleged violations of Section 5 of the FTC Act ........ 21

B. Even if Braun violated the GLBA, the FTC cannot obtain damages or civil penalties .... 22

C. Even if the FTC can obtain damages under the GLBA, the FTC can only recover for the 3 years prior to suit ........ 24

1. The three-year limitations is jurisdictional and thus cannot be waived ........ 24

2. To the extent the three year bar is not jurisdictional, Braun cross-moves to amend his answer to the AC to interpose a statute of limitations defense ........ 25

D. There are disputed factual issues as to injury and damages ........ 26

1. The FTC improperly relies on statistical samples of injury and damages when the FTC has the information to try to establish an exact amount of purported damages ........ 27

2. The purported expert testimony of FTC employee Patrick McAlvanah is also biased and flawed ........ 29

E. The FTC is not entitled to the civil penalties it seeks ........ 30

1. The FTC has not established that Braun had actual knowledge that he was violating the GLBA or that the violations of the other defendants can all be attributed to Braun under this provision ........ 30

2. The FTC has not established that Braun committed 918 knowing violations ........ 32

3. The FTC has not established that the maximum penalty amount should be imposed on Braun ........ 33

IV. The FTC's requested injunctive relief is draconian, punitive and unlawful ........ 34

CONCLUSION........................................................................................................................ 37

**Cases**

*AEP Energy Servs. Gas Holding Co. v Bank of Am., N.A.*, 626 F.3d 699 (2d Cir. 2010) ........ 24
*Bank of Am., N.A. v Fischer*, 927 F. Supp. 2d 15 (E.D.N.Y. 2013) ........ 15
*Bianchini v Vance*, 2018 U.S. Dist. LEXIS 63346, at *10 (S.D. Miss Apr. 16, 2018) ........ 33
*Carlton v. Mystic Transp., Inc.*, 202 F.3d 129 (2d Cir. 2000) ........ 15
*Commodity Futures Trading Commn. v Am. Metals Exch. Corp.*, 991 F.2d 71, 77 (3d Cir. 1993). ........ 27
*Conlon v United States*, 474 F.3d 616 (9th Cir 2007) ........ 11, 12
*Cush v BWIA Intl. Airways Ltd.*, 175 F Supp 2d 483 (E.D.N.Y. 2001) ........ 15
*Davis v HSBC Bank*, 691 F.3d 1152 (9th Cir. 2012) ........ 18
*Dillon v Morano*, 497 F.3d 247 (2d Cir. 2007) ........ 15
*Diversified Carting, Inc. v City of NY*, 2006 U.S. Dist. LEXIS 1701 (S.D.N.Y. Jan. 20, 2006) ........ 24
*Duverny v Hercules Med. P.C.*, 2020 U.S. Dist. LEXIS 205317 (S.D.N.Y. Nov. 3, 2020) ........ 14
*FTC v 1263523 Ont., Inc.*, 205 F. Supp 2d 218, 223 (S.D.N.Y. 2002) ........ 35
*FTC v AMREP Corp.*, 705 F Supp 119 (S.D.N.Y. 1988) ........ 21
*Ftc v Cardiff*, 2021 U.S. Dist. LEXIS 155342 (C.D. Cal June 29, 2021) ........ 22
*FTC v Credit Bur. Ctr., LLC*, 2021 U.S. Dist. LEXIS 173180 (N.D. Ill. Sep. 13, 2021) ........ 23
*FTC v Credit Bur. Ctr., LLC*, 937 F.3d 764 (7th Cir 2019) ........ 22
*FTC v Cuban Exch., Inc.*, 2014 U.S. Dist. LEXIS 105760 (E.D.N.Y. June 25, 2014) ........ 16
*FTC v Febre*, 128 F.3d 530, 536 (7th Cir. 1997) ........ 36
*FTC v Gill*, 265 F.3d 944, 957 (9th Cir. 2001) ........ 35
*FTC v LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) ........ 16, 17
*FTC v Minuteman Press*, 53 F. Supp. 2d 248 (E.D.N.Y. 1998) ........ 21
*FTC v Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) ........ 34

*FTC v Moses*, 913 F.3d 297 (2d Cir. 2019) ........................................ 17

*FTC v Noland*, 2021 U.S. Dist. LEXIS 226238 (D Ariz Nov. 23, 2021) ........................................ 26

*FTC v PayDay Fin. LLC*, 989 F. Supp. 2d 799, 821 (D.S.D. 2013) ........................................ 33

*FTC v Vyera Pharms., LLC*, 2021 U.S. Dist. LEXIS 183303, (S.D.N.Y. Sep. 24, 2021) ........................................ 20

*FTC v Washington Data Resources*, 856 F. Supp. 2d 1247 (M.D. Fla 2012) ........................................ 21

*FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119 (D. Conn. 2008) ........................................ 16

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) ........................................ 26, 27

*FTC v. Lakshimi Infosoul Svcs. Pvt. Ltd.*, 2014 U.S Dist. LEXIS 108387 (S.D.N.Y. July 10, 2014) ........................................ 23

*FTC v. Minuteman Press*, 53 F. Supp. 2d 248 (E.D.N.Y. 1998) ........................................ 16

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) ........................................ 18

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006) ........................................ 16

*Gonzalez v Penn Sta. Shoe Repair, Inc.*, 2021 U.S. Dist. LEXIS 59736 (S.D.N.Y. Mar. 29, 2021) ........................................ 11

*Gwynn v City of Phila.*, 719 F.3d 295 (3d Cir. 2013) ........................................ 11, 12

*Hypoxico, Inc. v Colorado Altitude Training, LLC*, 2008 U.S. Dist. LEXIS 67222 (S.D.N.Y. Sep. 3, 2008) ........................................ 15

*In re 650 Fifth Ave. & Related Props. v 650 Fifth Ave. & Related Props.*, 2017 U.S. Dist. LEXIS 218052 (S.D.N.Y. May 30, 2017) ........................................ 14

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006) ........................................ 16

*Katharine Gibbs Sch. (Inc.) v FTC*, 612 F2d 658 (2d Cir. 1979) ........................................ 30

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997) ........................................ 10

*Kirschenbaum v 650 Fifth Ave.*, 257 F. Supp. 3d 463 (S.D.N.Y. 2017) ........................................ 14

*LABMD, Inc. v FTC*, 894 F.3d 1221 (11th Cir. 2018) ........................................ 17, 18, 22

*Lamb-Weston, Inc. v McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir 1991) ........................................ 34

*Latouche v Rockland County*, 2022 U.S. Dist. LEXIS 78275, at *8 (S.D.N.Y. Apr. 29, 2022)

................................................................................................................................ 36

*LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997)
................................................................................................................................ 14

*Monahan v NY City Dept. of Corr.*, 214 F.3d 275 (2d Cir. 2000)
................................................................................................................................ 25

*Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354 (11th Cir. 1988)
................................................................................................................................ 18

*Porter v Hamilton Beach/Proctor Silex, Inc.*, 2003 U.S. Dist. LEXIS 18571, at *5 (W.D. Tenn. Aug. 27, 2003)
................................................................................................................................ 28

*Powell v Natl. Bd. of Med. Examiners*, 364 F/3d 79 (2d Cir. 2004)
................................................................................................................................ 13

*Pugni v Giannini*, 163 A.D.3d 1018 (2d Dep't 2018)
................................................................................................................................ 19

*Pure Power Boot Camp, Inc. v Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011)
................................................................................................................................ 14

*Riv. Light V, L.P. v Lin & J Intl., Inc.*, 299 F.R.D. 61 (S.D.N.Y. 2014)
........................................................................................................................... 10, 11

*Seaboard C. L. R. Co. v Long Is. R. Co.*, 447 F Supp 108, (E.D.N.Y. 1978)
................................................................................................................................ 24

*SEC v First City Fin. Corp.*, 890 F.2d 1215, 1231-1232 (D.C. Cir. 1989)
................................................................................................................................ 28

*SEC v McGinn, Smith & Co.*, 752 F. Supp. 2d 194 (N.D.N.Y. 2010)
................................................................................................................................ 13

*State Teachers Retirement Bd. v Fluor Corp.*, 654 F.2d 843 (2d Cir 1981)
................................................................................................................................ 24

*Stormans, Inc. v Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009)
................................................................................................................................ 34

*Sucesores De Don carlos Nuñez Y Doña Pura Galvez, Inc. v Société Générale, S.A.*, 2021 U.S. Dist LEXIS 244498, at *29 (S.D.N.Y. Dec. 22, 2021)........................................................
................................................................................................................................ 30

*United States v Cornerstone Wealth Corp.*, 549 F. Supp 2d 811, 823 (N.D. Tex. 2008)
................................................................................................................................ 32

*United States v Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020)
................................................................................................................................ 30

*United States v Dish Network, L.L.C.*, 2016 U.S. Dist. LEXIS 1383, at *3-4 (C.D. Ill. Jan. 6, 2016)
................................................................................................................................ 30

*United States v J. B. Williams Co.*, 498 F.2d 414, 434 (2d Cir 1974)
................................................................................................................................ 31

*United States v Lawrence Aviation Indus.*, 2019 U.S. Dist. LEXIS 45093, at *56 (E.D.N.Y Mar. 19, 2019)
................................................................................................................................ 32

*United States v T.C.A., Inc.*, 1997 U.S. Dist. LEXIS 13196, at *3 (N.D. Cal Aug. 21, 1997)
................................................................................................................................ 33

*United States v. 4003-05 5th Ave.*, 55 F.3d 78 (2d Cir. 1995) ........ 13

*United States v. Corps. for Character, L.C.*, 116 F. Supp. 3d 1258 (D. Utah Mar. 31, 2015) ........ 30

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131,139-40 (4th Cir. 1996) ........ 30

*Vermont Teddy Bear Co. v 1-800 BEARGRAM Co.*, 373 F.3d 241 (2d Cir. 2004) ........ 12

*Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60 (1st Cir. 2002) ........ 14

**Statutes**

15 U.S.C. § 45(a)(1) ........ 16

15 U.S.C. § 45(a) ........ 8

15 U.S.C. § 45(m) ........ 3

15 U.S.C. § 45(m)(1) ........ 4, 30

15 U.S.C. § 45(m)(1)(A) ........ 22

15 U.S.C. § 45(m)(1)(C) ........ 30

15 U.S.C. § 45(n) ........ 16, 18

15 U.S.C. § 57a ........ 22

15 U.S.C. § 57b(a)(1) ........ 20, 21

15 U.S.C. § 57b(b) ........ 25

15 U.S.C. § 6821 ........ 3, 8

15 U.S.C. § 6822 ........ 22

15 U.S.C. § 8404 ........ 22

15 USCS § 45 ........ 17

15 USCS § 57b(d) ........ 23

15 USCS § 57b-3 ........ 21

15 USCS § 6821(a)(2) ........ 18

Fed. R. Civ. P. 15(a) ........ 24
Fed. R. Civ. P. 56(c) ........ 12
Fed. R. Civ. P. Rule 36(a)(1) ........ 10
Fed. R. Civ. P. Rule 36(b) ........ 1, 10, 11

**Other Authorities**

H. Conf. Rep. 106-434, at Title V, Subsection B (1999) ........ 19
H.R. Conf. Rep. 106-434 at Title V, Subsection A (1999) ........ 19
Leach, Christopher, US FTC Succeeds in First Expanded Use of Gramm-Leach-Biley Authority, Mayer Brown Roe and Maw LLP website (Jan. 20, 2022) ........ 31

Defendant Jonathan Braun ("Braun") submits the following memorandum of law in opposition to the Federal Trade Commission's ("FTC") motion for summary judgment and in support of Braun's cross-motion to withdraw his deemed admissions and to accept his previously served amended admissions and to amend his answer to interpose the affirmative defense of the statute of limitations and for such other further relief as the Court deems just and proper, as follows:

## **Introduction**

The FTC's summary judgment motion rests on an unprecedented use of the Gramm-Leach-Biley Act ("GLBA"), a disregard for the Supreme Court's recent ruling disallowing the FCC from using injunctions to obtain damages and restitution, and what amounts to "gotcha" evidence to impute corporate liability onto Braun.

The FTC relies upon deemed admissions because of Braun's failure to timely respond to requests for admission, but Fed. R. Civ. P. Rule 36(b) allows a party to move to withdraw or modify deemed admissions if doing so will promote the presentation of the merits, and if there is no prejudice at trial to the other party. The prejudice referred to by the statute is prejudice at trial, not summary judgment, and the deemed admissions here preclude an effective presentation of the merits. The FTC will not be prejudiced by having to litigate issues on the merits; the FTC even initially agreed to accept the late responses in exchange for Braun's reiteration that he would not plead the Fifth Amendment at a proposed deposition, understanding that Braun was incarcerated when the FTC served the requests for admission, during the height of Covid-19, and that he was discussing settlement with the FTC for much of this litigation.[1]

[1] Indeed, Braun did not respond to the requests earlier because his counsel understood from the FTC that he did not have to do so while engaged in long-standing settlement discussions.

Braun long-ago testified in a pre-investigative hearing conducted by the New York State Attorney General ("NYAG")[2] that he neither controlled nor owned the merchant cash advance defendants accused in this action of violating the FTC Act and the GLBA by deceptive and unfair conduct. He has testified that his role was limited to underwriting—assessing transaction risk—and providing consulting advice. He was neither aware of, nor participated in, any wrongdoing by the other defendants. In fact, Defendant Giardina admitted to the NYAG that he, not Braun, is the sole owner of Richmond Capital Group, LLC ("RCG"), and Defendant Reich also testified that he, not Braun, owned Ram Capital Funding ("Ram"). Braun has further testified that he never filed any confessions of judgment, never executed any merchant cash advance agreements ("MCA"), and never had any ultimate decision-making authority with respect to funding, bank accounts, wire transfers, disbursements, withdrawals, confessions of judgment, or dealings with the processing company (Actum Processing) that was used by RCG to service its merchant customers. These are disputed issues of fact going to the credibility and weight of testimony, requiring a trial. Additionally, there is a material dispute as to the damages claimed by the FTC and any civil penalties.

The FTC has also failed to establish that the silence of others can or should be imputed to Braun. Any adverse inference because Braun's co-defendants or non-parties invoked their Fifth Amendment privilege is improper where Braun has never invoked his Fifth Amendment

Settlement discussions included a cooperation agreement with the FTC, and occurred when Braun was represented by criminal counsel that was also negotiating with an Assistant U.S. Attorney from the Department of Justice ("DOJ") regarding a potential criminal charge against Braun and his co-defendants. Representatives of the FTC were aware of the meetings with the DOJ.

[2] On the same date the FTC filed this case, the NYAG commenced an action in New York Supreme Court against the defendants in this action. *People of the State of New York v. Richmond Capital Group, LLC et. al.*, Index No. 451368/2020 (N.Y. Co.).

privilege, has answered many of the same questions, and has repeatedly offered the FTC his deposition. In any case, any adverse inference must be weighed against Braun's own testimony—something reserved for the fact finder at trial, not summary judgment where the Court is merely tasked with identifying the existence of disputed issues.

As to the merits, even if the Court finds that Braun violated Section 5 of the Federal Trade Commission Act ("FTC Act"),[3] the FTC is not entitled to damages or civil penalties for any of Braun's purported violations because the Supreme Court ruled last year in *AMG Capital Mgmt., LLC v. FTC*[4] that district courts do not have authority to award damages or restitution under Section 13 of the FTC Act as part of a permanent injunction.[5] Furthermore, the FTC's right to seek damages under Section 19[6] and civil penalties under Section 5(m)[7] is limited to violations of the FTC's promulgated rules or its cease-and-deist orders, not, as here, statutory violations.

The FTC tries to bypass *AMG* by arguing that Section 521 of the GLBA[8] is a "deemed rule" and therefore it can seek damages for GLBA violations under Section 19 of the FTC Act, and civil penalties under Section 5(m) of the FTC Act, both of which limit damages to rule violations. While the GLBA is a statute, not a rule, even if Section 521 of the GLBA is deemed a rule, it was enacted to prevent unwitting disclosure of account information, not to encompass claims that a party did not intend to properly perform their contractual obligations when they entered contracts. Section 521 of the GLBA does not allow the FTC to sue anyone who obtains

[3] 15 U.S.C. § 45.
[4] 141 S.Ct. 1341 (2021).
[5] 15 U.S.C. § 53(b).
[6] 15 U.S.C. § 57b.
[7] 15 U.S.C. § 45(m).
[8] 15 U.S.C. § 6821.

bank account information as part of a contract simply because that party did not properly perform their contractual obligations or misrepresented their intent to properly perform. Tellingly, no court appears to have ever interpreted the GLBA in this manner, and the FTC does not appear to have ever moved under this provision.

Section 19 of the FTC Act also limits the FTC's damages claim to 3 years;[9] thus, even if the FTC could establish that Braun violated Section 521 of the GLBA, the FTC can only recover damages under Section 19 for rule violations occurring less than three years prior to suit. Here, the FTC is improperly seeking to recover for alleged violations going back to 2015. To the extent the FTC claims this bar is a statute of limitations defense, and not a jurisdictional predicate to suit, Braun is cross-moving to amend his answer, as there is no litigation or evidentiary prejudice to the FTC from such an amendment and the omission of such defense was not willful or in bad faith.

The FTC also cannot recover any civil penalties for the alleged GLBA violations without showing that Braun knew he was violating the GLBA. The FTC's use of the GLBA in this case has been described in the bar as "expansive" and "a first" and there appears to be no precedent for the FTC's use of the GLBA. As civil penalties require that the violator know he was violating an FTC rule or cease-and-desist-order,[10] the FTC has not demonstrated that Braun—who is not a lawyer—was aware that he was violating the GLBA, a prerequisite for any civil penalties.

The FTC further fails to establish injuries, violations and damages. The FTC relies on the purported expert testimony from its employee, Patrick McAlvanah ("McAlvanah"), who, by extrapolating from a small sample, testifies that merchant customers suffered an estimated 913

[9] 15 U.S.C. § 57b(d).
[10] 15 U.S.C. § 45(m)(1).

injuries, within a range deviating from that number by the hundreds. Courts have held that demonstrating actual injury is an essential part of a Section 19 damages claim, and the FTC provides no evidence that it lacks the information to provide actual evidence of injury rather than a wide-ranging estimate of alleged injury. On the contrary, the same information by which it proffered the estimate is the information by which it can attempt to demonstrate injury.

Furthermore, McAlvanah's report is flawed and does not demonstrate that there was, in fact, any underpayment or over-collection. Rather, McAlvanah's report presupposes that any discrepancy between funded or collected amounts and the purchase price or disbursement amounts was nefarious, rather than lawful. Braun has testified that some of the FTC's proffered examples of overcollections and underpayments were entirely proper and there are also numerous lawful reasons for discrepancies, including fees properly taken for defaults, and agreements reached with the borrower subsequent to the contract. McAvlanah's initial report, as he admits, included hundreds of duplicates that inflated his estimations and which he intended to present to the Court as "violations" until a co-defendant's expert pointed out this flaw. Only then did McAlvanah withdraw duplicates. As pointed out by that expert, McAlvanah's study still contains an inflated universe of transactions. Furthermore, rather than redo the sample after withdrawing duplicates, McAlvanah just removed the duplicates from the sample at a ratio that was far less than the proportion of duplicates relative to the overall pool.

The FTC also improperly seeks to impose the maximum civil penalty for an inflated, arbitrarily selected estimate of 913 violations despite such penalty rendering Braun insolvent. In addition, the FTC seeks to impose a draconian injunction that would bar Braun for the rest of his life from the merchant cash advance industry and that could be construed to bar him from lending money to anyone, even his friends or his own wife. The FTC makes no showing that this

drastic and overbroad relief is proper or lawful, let alone necessary to deter Braun. The FTC has not alleged that Braun engaged in any misconduct since at least 2018 and there is no evidence that monitoring relief will be inadequate.

The FTC's proposed injunction, in a further breathtaking overreach, requires Braun to issue satisfactions of judgment for amounts owed to him (or the settling corporate or LLC defendants for which he is not a member), and to discontinue all active legal proceedings seeking to recover amounts owed to him (or the settling corporate defendants). This mandatory injunction seeks to give all of Braun's alleged customers a windfall beyond the damages sought by the FTC and is entirely punitive and entirely unlawful. It amounts to a taking of property without due process or any showing of right and violates the Rooker-Feldman doctrine because it seeks to undo state court judgments. It also violates *AMG*'s holding that a Section 13 injunction cannot be used to award damages as well as Section 19's express prohibition on punitive damages. Requiring Braun to discontinue proceedings to collect monies owed to him, or issue satisfactions of all outstanding judgments in his favor, equates to a windfall over and above any award of damages the FTC seeks in this proceeding.

For the reasons detailed herein, the Court should deny the FTC's motion and grant Braun's cross-motion.

## Counter-summary of facts[11]

### A. The action

The FTC commenced this action against Braun and his co-defendants on June 10, 2020, ECF 1, alleging that Braun and his co-defendants, individuals and entities involved in the merchant cash advance industry, had violated Section 5 of the FTC Act by misrepresenting terms to customers, by over-collecting and underfunding some of their contracts, and engaging in unfair conduct by improperly filing confessions of judgment and harassing some customers. Compl., ECF 1. On June 10, 2021, the FTC amended its complaint (the "AC"). ECF 84. The FTC's initial complaint sought monetary relief under Section 13 of the FTC Act as part of a permanent injunction, but that relief was foreclosed by the Supreme Court's 2021 ruling in *AMG* which held that the FTC cannot obtain monetary relief under Section 13. The AC instead seeks monetary relief under Section 19 of the FTC Act and alleges that Braun and his co-defendants violated the GLBA, which it claims is the equivalent of an FTC rule.

The AC alleges that Braun "is a *de facto* owner and an officer or manager of RCG," AC ¶ 8, ECF 84, which "has advertised, marketed, offered, or distributed financing to businesses throughout the United States." *Id.* ¶ 5. The AC further alleges that although the defendants "purport to provide immediate funds in a specific amount in exchange for consumers' agreement to repay a higher amount from future business receivables . . . . in numerous instances, Defendants withdraw more than the represented Total Purchased Amount." *Id.* ¶ 13. Furthermore, the AC alleges that "sensitive consumer information is regularly used to withdraw funds beyond what customers are told in the contract that they are obligated to pay." *Id.*

---

[11] Braun respectfully refers the Court to his affidavit in opposition and his response to the FTC's Rule 56.1 Statement for a fuller recitation of the factual background.

The FTC asserts that "Defendants falsely claim [in their advertising] that their financing products do not feature a personal guaranty or upfront costs. . . . [and that they] promise consumers a specific amount of financing, but provide a much smaller amount." *Id.* ¶ 14. Additionally, defendants "engage in unfair collection practices, including, in some instances, by filing confessions of judgment against consumers in circumstances not permitted by their financing agreements and threatening physical violence, and make unauthorized debits from consumers' accounts." *Id.*

The AC brings four counts under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. *Id.* ¶¶ 36-47. It also brings a count under Section 521 of the GLBA, 15 U.S.C. § 6821, which inter alia, prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." *Id.*

On June 24, 2021, Braun filed an answer to the AC, which did not include the statute of limitations only because the AC did not assert that it was seeking damages under Section 19 for conduct occurring more than three years prior to suit. *See* AC, ECF 90.[12]

On or about November 4, 2020, the FTC served its first set of requests for admissions, DX5-1, and on or about June 25, 2021, the FTC served its second set of requests for admission. DX5-2. As detailed in the Baratta Declaration in Support of the Cross-Motion, Braun did not immediately respond to these requests because he understood from the FTC that he was not required to respond at that time as a result of the ongoing settlement and cooperation discussions,

[12] In this motion, the FTC makes clear for the first time that it is seeking damages going back to 2015 despite Section 19's express bar on such actions. Accordingly, Braun is now seeking to amend his answer to interpose the statute of limitations.

the DOJ discussions, Braun's incarceration and COVID-19. Baratta Decl. in Supp. of Cross Mot. at ¶ 15. The FTC does not dispute that it had informal settlement discussions with Braun. The FTC was aware that Braun's separate counsel was in discussion with the Department of Justice ("DOJ") about possible criminal charges. *Id.* at ¶ 15.

On or about October 4, 2021, Defendants Tzvi Reich and RCG reached a settlement agreement and stipulated and moved the Court to stay the action for 120 days pending FTC commissioner approval. ECF 98. The Court granted a stay request, ECF 99, and the settlement was finalized on or about January 4, 2022. ECF 101-02.

On February 28, 2022, the Court closed discovery and set a dispositive motion schedule, with summary judgment motions due on April 11, 2022. ECF 106. The FTC had agreed that it would accept Braun's responses to its request for the filing of late admissions prior to the April 11, 2022 date of the stipulated order. Baratta Decl. in Supp. of Cross Mot. ¶ 24. Counsel for Braun sent a stipulation to confirm the admissions agreement, and the next day, the FTC decided that they would not sign the stipulation. *Id.*

On March 11, 2022 and on March 31, 2022, Braun responded to the requests for admissions and provided responses to the admissions. DX5-5, DX5-6.

On March 25, 2022, Defendants RCG Advances, LLC and Robert Giardina reached a settlement and stipulated and moved the Court to stay the action for 120 days pending the FTC commissioner approval of the settlement. ECF 107. The Court granted the stay request. ECF 108.

**B. The FTC's evidence does not establish Braun's liability or damages**

In support of its summary judgement motion, the FTC relies on Braun's deemed admissions, others' invocation of their Fifth Amendment privilege, and flawed evidence that does not demonstrate that Braun directly participated in any fraudulent and unfair scheme or that

he had authority or control over RCG, Ram or Viceroy. Braun Decl. in Opp. ¶¶ 4-43. Indeed, Braun does not own RCG, Ram or Viceroy and Braun has denied that he controlled them. *Id.* at ¶ 4. Rather, Braun's role was merely to assess risk and consult with the owners of RCG, Ram and Viceroy. *Id.* As detailed in Braun's declaration, the evidence against Braun does not conclusively establish that Braun controlled any of the defendants, that Braun participated in any wrongdoing, or that Braun harassed any customers. *Id.* at ¶¶ 4-43.

## <u>Argument</u>

### I. The Court should grant Braun's cross-motion pursuant to Fed. R Civ. P. 36(a)(2) and allow Braun to withdraw the deemed admissions and amend them

#### A. The standard for withdrawal or amendment under Fed. R. Civ. P. 36(a)(2) is not onerous

Fed. R. Civ. P. Rule 36(a)(1) provides that requests for admission that the receiving party does not answer within 30 days are deemed admitted. Despite this "deemed admission" rule, "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

Rule 36(b) does not require an absence of prejudice "for withdrawal of a deemed admission will almost always be to the requesting party's detriment." *Riv. Light V, L.P. v Lin & J Intl., Inc.*, 299 F.R.D. 61, 63 (S.D.N.Y. 2014). Rather "[t]his prejudice to the requesting party's ability to present its case or its defenses 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *Id.* at 63-64 (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (citation omitted). Thus, courts have held that "reliance on a deemed admission in preparing a summary

judgment motion does not constitute prejudice" and "we are reluctant to conclude a lack of discovery, without more, constitutes prejudice. The district court could have reopened the discovery period, and prejudice must relate to the difficulty a party may face in proving its case at trial." *Conlon v United States*, 474 F.3d 616, 624 (9th Cir 2007) (citations omitted); *Gonzalez v Penn Sta. Shoe Repair, Inc.*, 2021 U.S. Dist. LEXIS 59736, at *5 (S.D.N.Y. Mar. 29, 2021) ("Defendants' need to conduct discovery that they hope to avoid through admissions of the RFAs" is not prejudice.). Indeed, any concern about discovery can be "adequately addressed by the extension of the discovery deadline." *Gwynn v City of Phila.*, 719 F.3d 295, 299 (3d Cir. 2013).

Finally, "Rule 36(b) does not include an 'excusable neglect' requirement." *Riv. Light V, L.P.*, 299 F.R.D. at 64 (citations omitted). "Courts may consider 'whether the moving party can show good cause for the delay, but they are not required to do so.'" *Id.* at 63 (quoting *Gwynn v City of Phila.*, 719 F3d at 298.

**B. The Court should withdraw the deemed admissions because it promotes the presentation of the merits and will not prejudice the FTC's ability to prove its case at trial**

The Court should withdraw the deemed admissions because doing so will promote the presentation of the merits and will not prejudice the FTC. Braun disputes the allegations in the AC and has presented testimony rebutting those allegations. *See* Braun Decl. in Supp. of Cross Mot.; Braun Decl. in Opp. The deemed admissions go to the core of these disputed allegations. Indeed, absent this relief, Braun is unable to properly defend this action on the merits. Thus, allowing Braun to amend the deemed admissions will promote the presentation of the merits of the action.

There is no prejudice to the FTC from the amendment of the deemed admissions. There is no pre-trial order in this case, and the responses to the admissions have already been served. DX5-5, DX 5-6. The FTC is not prejudiced, having the cooperation of the two former co-defendants, and the opportunity to take Braun's deposition. To the extent the FTC wants it, Braun has always told the FTC he will be answer questions at any deposition. The relevant prejudice is at trial, not summary judgment, and the FTC is not prejudiced by allowing Braun to defend this action on the merits. *Conlon*, 474 F.3d at 624; *Gonzalez*, 2021 US Dist LEXIS 59736, at *5. Any concern about discovery can be "adequately addressed by the extension of the discovery deadline." *Gwynn*, 719 F.3d at 299.

Braun also has a reasonable excuse for failing to timely respond to the requests. Braun received the requests while subject to a DOJ criminal inquiry, while incarcerated, and while he and his counsel were subject to COVID-19 restrictions and could not properly communicate with each other. Barrata Decl. in Supp. of Cross Mot. ¶¶ 15-20. Furthermore, the FTC and Braun were engaged in ongoing settlement and cooperation discussions that reasonably led Braun and his counsel to believe that the FTC was not demanding responses while they continued to engage in these settlement discussions. *Id.* Even as late as March 2022, it appeared that the FTC was amenable to accepting the discovery responses on conditions that Braun agreed to. *Id.* The FTC then reneged. *Id.* While Braun and his counsel's understanding may have been erroneous, it was a good-faith understanding and constitutes a reasonable excuse. *Id.*

Accordingly, the Court should allow Braun to withdraw the deemed admissions and should accept the amended responses as the operative responses.

## II. There are disputed factual issues precluding summary judgment

### A. Legal standard for summary judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted). "In reviewing a summary judgment motion, we must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* If the movant meets this burden, then the burden shifts to the non-movant to show that there are disputed factual issues. *Powell v Natl. Bd. of Med. Examiners*, 364 F/3d 79, 84 (2d Cir. 2004).

### B. The Court should not impose any adverse inference on Braun, who never invoked his Fifth Amendment privilege, merely because other defendants invoked their own Fifth Amendment privilege

The FTC may not use the silence of co-defendants or non-parties against Braun, who has testified in a related-action before the New York Attorney General without invoking his Fifth Amendment privilege, and who has offered his testimony in this action without invoking that privilege. "The purpose underlying the allowance of an adverse inference in civil cases is equitable, not punitive, and serves to vitiate the prejudice to the party denied evidence by invocation of the privilege." *SEC v McGinn, Smith & Co.*, 752 F. Supp. 2d 194, 209 (N.D.N.Y. 2010) (citing *United States v. 4003-05 5th Ave.*, 55 F.3d 78, 82-83 (2d Cir. 1995). Thus, an adverse inference should not be drawn against a party who has offered to answer questions or who actually answered questions, even if other parties or non-parties have invoked their own Fifth Amendment privilege. *McGinn,* 752 F. Supp. 2d at 209 ("In those instances where David Smith answered a question during the FINRA hearing, the SEC has not been denied David

Smith's testimony as to an answered question and no basis exists for an adverse inference there. Thus, the SEC is entitled to adverse inferences only to the extent that the questions to which David Smith asserted the privilege were not otherwise answered during his testimony in the FINRA investigation.").

Courts also do not automatically impose an adverse inference when co-parties or non-parties invoke their own Fifth Amendment privileges. Rather, "[t]he Second Circuit has identified 'a number of nonexclusive factors' to guide this determination, including the nature of the relevant relationships, the degree of control over the non-testifying witness, the compatibility of the interests between the non-testifying witness and the party, and the role of the non-testifying witness in the litigation." *Pure Power Boot Camp, Inc. v Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011) (citing *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997). "[T]he overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124. "The burden is on the proponent of admissibility to show that in the circumstances of the case a failure to speak is so unnatural that it supports the inference proffered by the proponent." *Duverny v Hercules Med. P.C.*, 2020 U.S. Dist. LEXIS 205317, at *2 (S.D.N.Y. Nov. 3, 2020) (citing *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 67 (1st Cir. 2002). Each specific question for which an adverse inference is sought must be individually assessed. *Kirschenbaum v 650 Fifth Ave.*, 257 F. Supp. 3d 463, 511 (S.D.N.Y. 2017); *See also In re 650 Fifth Ave. & Related Props. v 650 Fifth Ave. & Related Props.*, 2017 U.S. Dist. LEXIS 218052, at *27-28 (S.D.N.Y. May 30, 2017) ("Courts assess the propriety of instructing a jury about adverse inferences on a case-by-case, and question-by-question, basis.").

While the Court should not impose any adverse inference against Braun because he has not invoked any privilege and has testified on these subjects, the FTC has also failed to demonstrate that such an adverse inference should be imposed here. The FTC has failed to demonstrate that that the relationship between Braun and these parties and non-parties is sufficiently close to render it "less likely the non-party witness would be to render testimony in order to damage the relationship," *LiButti*, 107 F.3d at 123, or that Braun controlled these witness. *Id.* Furthermore, the non-parties and parties all had an interest in pinning any blame on Braun and not themselves, and thus their interests are not aligned. *Id.* (It is relevant whether "the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation."). The FTC also must demonstrate on question-by-question basis why an adverse inference may be drawn—something it notably fails to do.

Finally, even if the Court were to draw an adverse inference, such adverse inference is not dispositive by itself; it is only an inference that must be ultimately weighted and assessed by the fact-finder together with the total mix of evidence. *Bank of Am., N.A. v Fischer*, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) ("[A] motion for summary judgment cannot be granted on an adverse inference alone . . . .") (internal citations and quotations omitted). Furthermore, because summary judgment exists "merely to discern whether there are disputed material facts" but "does not extend to resolving any such disputes[,]" *Hypoxico, Inc. v Colorado Altitude Training, LLC*, 2008 U.S. Dist. LEXIS 67222, at *5 (S.D.N.Y. Sep. 3, 2008), the Court "may not make credibility determinations or weigh the evidence." *Cush v BWIA Intl. Airways Ltd.*, 175 F Supp 2d 483, 486 (E.D.N.Y. 2001) (citation and quotation omitted). Rather, it can only grant such a motion by finding that "no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).

Braun has submitted his own sworn testimony and evidence disputing his knowledge of the alleged wrongdoing, and his role with the corporate defendants; his testimony will be assessed for credibility at trial and weighed there for its credibility, in light of the total mix of evidence, including any purported adverse inference. The Court here "may not make credibility determinations or weigh the evidence, and we must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party[,]" here Braun. *Dillon v Morano*, 497 F.3d 247, 251 (2d Cir. 2007) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006)).

### C. There are disputed factual issues whether Braun violated Section 5 of the FTC Act by engaging in deception (count i)

There are disputed factual issues as to whether Braun violated Section 5 by engaging in deceptive conduct. Section 5(a) of the FTC Act declares unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). "Section 5 of the FTC Act 'empower[s] and direct[s]' the FTC to 'prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce,' and declares unlawful 'unfair or deceptive acts or practices in or affecting commerce.'" *FTC v LeadClick Media, LLC*, 838 F.3d 158, 167 (2d Cir. 2016) (quoting 15 U.S.C. § 45(a)(1) and (a)(2)).

"To prove a deceptive act or practice under § 5(a)(1), the FTC must show three elements: '[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material.'" *Id.* (quoting *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006)). The deceptive acts or practices must be "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id.* (quoting 15 U.S.C. § 45(n)). "A representation is material if it involves information that is 'important to consumers and, hence, likely to affect their choice of . . . a

product.'" *FTC v Cuban Exch., Inc.*, 2014 U.S. Dist. LEXIS 105760, at *6-7 (E.D.N.Y. June 25, 2014) (quoting *FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 258 (E.D.N.Y. 1998)). "Express claims are presumed to be material." *Id.* (citing *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 135 (D. Conn. 2008)).

"An individual may be held liable under the FTCA for a corporation's deceptive acts or practices 'if, with knowledge of the deceptive nature of the scheme, he either participate[s] directly in the practices or acts or ha[s] authority to control them.'" *FTC v Moses*, 913 F.3d 297, 306 (2d Cir. 2019) (quoting *LeadClick Media, LLC*, 838 F.3d at 169)). That is, "[o]nce corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them. Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Moses*, 913 F.3d at 307.

Braun has submitted evidence showing that he did not control the corporate defendants and did not participate in any wrongdoing. Braun Decl. in Opp. ¶ 4. The FTC alleges that the corporate defendants misrepresented that: "(1) they would withdraw a specific dollar amount of funds in exchange for MCAs;" (2) "no personal guaranties were necessary to obtain MCAs;" and (3) "they would charge no upfront fees and advance a specific dollar amount of funds." Pl's Memo in Supp. at 17, ECF 110. Braun never made any of these misrepresentations. Braun Decl. in Opp. ¶ 4. To the extent the other corporate defendants made misrepresentations, they cannot and should not be imputed to Braun, who did not control or own the corporate defendants. *Id.*

**D. There are disputed factual issues whether Braun violated Section 5 of the FTC Act by engaging in unfair practices (counts i through iv)**

There are disputed factual issues as to whether Braun engaged in unfair practices under Section 5. "Section 5(a) of the FTC Act authorizes the FTC to protect consumers by 'prevent[ing] persons, partnerships, or corporations . . . from using unfair . . . acts or practices in or affecting commerce." *LABMD, Inc. v FTC*, 894 F.3d 1221, 1227 (11th Cir. 2018) (quoting 15 USCS § 45)). "The Act does not define the term 'unfair,'" *id.*, but does state that the FTC cannot declare an act unfair unless the act "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). [A]n 'unfair' act or practice is one which meets the consumer-injury factors listed above [in the statute] and is grounded in well-established legal policy." *LABMD, Inc.*, 894 F.3d at 1229.

"In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *Davis v HSBC Bank*, 691 F.3d 1152, 1168-1169 (9th Cir. 2012) (quoting *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010)). "An injury is reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Davis v HSBC Bank*, 691 F.3d 1152, 1168-1169 (9th Cir. 2012) (citing *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988)).

The FTC claims that Braun engaged in unfair conduct because the corporate defendants misused confessions of judgment, but Braun never filed, let alone signed, any confessions of judgment. Braun Decl. in Supp. ¶ 13. Braun also did not own or control the corporate defendants so any wrongdoing by his co-defendants should not be imputed to him. Braun Decl. in Opp. ¶ 4.

The FTC also alleges that Braun harassed and threatened customers, but Braun has strenuously denied ever making any of these threats or even speaking to many of these individuals. *Id.* at ¶¶ 15-38. Summary judgment is inappropriate to decide issues of credibility, and Braun should have the opportunity to cross-examine at trial all witnesses making these claims.

**E. There are disputed factual issues whether Braun violated the Gramm-Leach-Biley Act (count v)**

There are also disputed issues of fact whether Braun violated the GLBA. 15 U.S.C. § 6821(a)(2) of the GLBA, makes it unlawful to "obtain or attempt to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution . . ." *Id.*[13]

The GLBA was enacted to "provid[e] consumers with new protections with respect to the transfer and use of their nonpublic personal information by financial institutions." H.R. Conf. Rep. 106-434 at Title V, Subsection A (1999). According to the Committee Report, the purpose of § 6821 was to prevent the procurement of such information by fraudulent means such as "misrepresenting the identity of the person requesting the information or otherwise misleading an institution or customer into making unwitting disclosures of such information." H. Conf. Rep. 106-434, at Title V, Subsection B (1999). In other words, the GLBA was intended to reach the unwitting disclosure of customer financial information because of impersonation and similar fraud; as with common law fraud, it does not provide a claim simply because a party allegedly

[13] "The term 'customer' means, with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary." 15 USCS § 6827(1). "The term 'customer information of a financial institution' means any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer." 15 USCS § 6827(2).

never had the intent to perform its contractual obligations. *Pugni v Giannini*, 163 A.D.3d 1018, 1020 (2d Dep't 2018) ("[G]eneral allegations that a defendant entered into a contract while lacking the intent to perform are insufficient to support a fraud cause of action.").

While it does not appear that any federal court has ever interpreted the scope of this statute, the FTC's proffered interpretation would have the Court turn a claim that a defendant did not fully perform otherwise lawful contracts or misrepresented its intent to fully perform a lawful contract, into a GLBA claim. Specifically, the FTC claims that Braun violated the GLBA by misrepresenting in some instances that (1) defendants would collect one amount but then collected more, (2) that they would provide one amount of funding but then provided less, and thereby induced the customers to enter MCA contracts requiring disclosure of their banking information. Pl's Memo in Supp. at 24-25, ECF 110. In other words, the FTC is attempting through this action to drastically expand the scope of the GLBA to reach allegations that a defendant failed to perform contractual obligations or lacked the intent to do so.[14] The GLBA's purpose, as expressed by Congress, was to prevent unwitting theft of account information, not to convert allegations that a party did not perform their contractual obligations, or lacked the intent to do so, into GLBA fraud.

[14] The FTC has gone from apparently gone from never invoking this statute to an unprecedented attempt to expand the reach of this statute after *AMG* required the FTC to seek a cease and desist order or promulgate rules before seeking damages from the district courts.

## III. The FTC cannot obtain damages and civil penalties for Braun's alleged violations of Section 5 of the FTC Act (counts i through v) or the GLBA (count v)

### A. The FTC can only obtain injunctive relief for Braun's alleged violations of Section 5 of the FTC Act

The FTC cannot obtain damages for Section 5 violations under Sections 13(b) or 19 of the FTC Act. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." This authorization does not allow damages. *AMG*, 141 S.Ct. at 1341; *FTC v Vyera Pharms., LLC*, 2021 U.S. Dist. LEXIS 183303, at *6 (S.D.N.Y. Sep. 24, 2021) ("[T]he Supreme Court held [in *AMG*] that § 13(b) of the FTC Act does not authorize the FTC to seek equitable monetary relief such as disgorgement.").

Section 19 of the FTC Act, 15 U.S.C. § 57b(a)(1) and (2), allows the FTC to bypass its own internal proceedings and seek damages directly from the District Court only when a party violates, respectively, an FTC rule or a cease-and-desist order. "The term 'rule' means any rule promulgated by the Commission under section 6 or section 18 [15 USCS § 46 or § 57a] . . ." 15 U.S.C. § 57b-3. The statute, in other words, does not authorize the FTC to initiate a damages action for statutory violations without first commencing its own administrative proceeding. *See FTC v Washington Data Resources,* 856 F. Supp. 2d 1247, 1278 (M.D. Fla 2012) ("Section 19(b) permits only final relief and only for a violation of a promulgated rule, such as the Telemarketing Sales Rule, and not for a violation of a statute, such as Section 5, unless the FTC first issues a final cease and desist order.") (citations omitted). Courts in this Circuit have similarly interpreted Section 19. *FTC v Minuteman Press,* 53 F. Supp. 2d 248, 258-259 (E.D.N.Y. 1998) (applying Section 19 to violation of FTC promulgated rule); *FTC v AMREP Corp.*, 705 F Supp 119, 125 (S.D.N.Y. 1988) ("Section 19 authorizes the Commission to sue on

behalf of defrauded consumers, but only *following* the issuance of a final cease and desist order under Section 5.").

The same restriction is true for civil penalties under 15 U.S.C. § 45—the statute is expressly limited to rule violations. 15 U.S.C. § 45(m)(1) ("The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this Act respecting unfair or deceptive acts or practices . . .").

**B. Even if Braun violated the GLBA, the FTC cannot obtain damages or civil penalties**

The FTC cannot obtain monetary damages or civil penalties against Braun under the GLBA. The FTC, aware that *AMG* bars it from seeking damages, argues that Section 19 of the FTC Act, 15 U.S.C. § 57b(a)(1) and (2), allows it to seek damages because a violation of the GLBA is a violation of a rule. While courts have allowed the FTC to rely on Section 19 when the FTC seeks to enforce a statute that expressly provides that those statutory violations shall be treated as rule violations, the GLBA does not contain such an express, unequivocal provision. *See e.g.*, *FTC v Cardiff*, 2021 U.S. Dist. LEXIS 155342, at *6 (C.D. Cal June 29, 2021) ("ROSCA authorizes the FTC to enforce ROSCA [the Restore Online Shoppers' Confidence Act] and to treat violations of the statute as a rule violation under Section 18 of the FTC Act, 15 U.S.C. § 57a.); *See also* ROSCA, 15 U.S.C. § 8404 ("Violation of this Act or any regulation prescribed under this Act shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act . . .").[15] Instead, Congress delegated enforcment of the GLBA to the FTC "in the same manner and with the same power and authority as the Commission has under the

[15] Section 18 of the FTC Act allows the FTC to promulgate rules. *See* 15 USCS § 57a.

Fair Debt Collection Practices Act." 15 U.S.C. § 6822. Congress did not expressly state that such violations shall be treated as rule violations.

Such an intent should not be presumed unless expressly stated because the purpose of rules is to "define with specificity unfair acts or practices within the meaning of Section 5(a)[,]" *LABMD*, 894 F.3d at 1231, and Section 19 then imposes liability for violations. "By preemptively resolving whether certain conduct violates the FTCA, rulemaking permits the Commission to pursue 'quick enforcement' actions against violators." *FTC v Credit Bur. Ctr., LLC*, 937 F.3d 764, 771 (7th Cir 2019) (citations omitted). That is, "[o]nce the Commission promulgates a rule, it can seek legal and equitable remedies, including restitution, from violators[,]" *id.*, and "if it establishes that a violator had 'actual knowledge or knowledge fairly implied on the basis of objective circumstances' that his conduct violated a rule, the Commission can also pursue civil penalties. *Id.* (quoting 15 U.S.C. § 45(m)(1)(A)). Not only is there no such promulgated rule under the GLBA here, there do not appear to be any precedents whatsoever interpreting the statute at all.

The FTC cites only two cases to support its interpretation of Rule 19, one of which was decided under ROSCA, a provision that expressly equates statutory violations with rule violations. *FTC v Credit Bur. Ctr., LLC*, 2021 U.S. Dist. LEXIS 173180, at *6 (N.D. Ill. Sep. 13, 2021) ("[S]ection 5(a) of ROSCA plainly authorizes it to seek monetary relief for ROSCA violations via sections 18 and 19 of the FTC Act."). The other case was a pre-*AMG* default judgment in which the Court did not address Rule 19 other than in an oblique reference and which allowed damages under 15 USCS § 53(b). *See FTC v. Lakshimi Infosoul Svcs. Pvt. Ltd.*, 2014 U.S Dist. LEXIS 108387 at 2 (S.D.N.Y. July 10, 2014). Neither of these cases support the FTC's attempted use of Rule 19.

### C. Even if the FTC can obtain damages under the GLBA, the FTC can only recover for the 3 years prior to suit

Section 19(d) provides a three-year statute of limitations for any action brought under that section. It states in relevant part that "[n]o action may be brought by the Commission under this section more than 3 years after the rule violation to which an action under subsection (a)(1) relates, or the unfair or deceptive act or practice to which an action under subsection (a)(2) relates. . . ." 15 USCS § 57b(d). Thus, the FTC can only obtain damages under Section 19 for violations occurring less than three years prior to suit. In other words, the FTC cannot recover damages for any violations occurring prior to June 10, 2017, three years before it commenced this action.

#### 1. The three-year limitations is jurisdictional and thus cannot be waived

Section 19(d) uses express language barring the FTC from bringing a claim under that section for violations more than 3 years old. *Id.* ("no action may be brought . . ."). This language evidences a jurisdictional limitation on the FTC's use of Section 19. A jurisdictional bar is unwaivable. *Seaboard C. L. R. Co. v Long Is. R. Co.*, 447 F Supp 108, 111, n 5 (E.D.N.Y. 1978) ("Although defendant did not plead the federal statute of limitations in its answer, it did not waive it because this provision is jurisdictional if it applied."); *Diversified Carting, Inc. v City of NY*, 2006 U.S. Dist. LEXIS 1701, at *30 (S.D.N.Y. Jan. 20, 2006) ("The action was filed in December 2004. Plaintiffs argue that Turner waived any statute of limitations defense by failing to raise that defense in its answer or in a motion on the pleadings. However, the Miller Act limitations period is jurisdictional and may be raised at any time.").

### 2. To the extent the three year bar is not jurisdictional, Braun cross-moves to amend his answer to the AC to interpose a statute of limitations defense

To the extent the three year bar is not jurisdictional, the Court should allow Braun to amend his answer and interpose a statute of limitations defense. Fed. R. Civ. P. 15(a) provides that the court should "freely give leave [to amend a pleading] when justice so requires." *Id.* "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v Fluor Corp.*, 654 F.2d 843, 856 (2d Cir 1981). "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v Bank of Am., N.A.*, 626 F.3d 699, 725-726 (2d Cir. 2010) (internal citations and quotations omitted). "The fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings. Rather, we will be most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Monahan v NY City Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000).

When an affirmative defense is raised in a summary judgment opposition, the Court may construe the opposition as a cross-motion to amend and entertain the defense even in the absence of a formal cross-motion. *Id.* at 283 ("Although *res judicata* is an affirmative defense that should be raised in the defendant's answer, the district court has the discretion to entertain the defense when it is raised in a motion for summary judgment, by construing the motion as one to amend the defendant's answer.").

The Court should allow Braun to interpose a statute of limitations defense. First, the defense is meritorious as Section 19 clearly bars the FTC from seeking damages for conduct

occurring more than 3 years prior to suit. Second, the delay in interposing the affirmative defense was not the result of any bad faith; rather, Braun omitted a statute of limitations defense from his answer only because the FTC did not assert it was seeking damages for conduct occurring more than three years prior to suit in derogation of Section 19. Barrata Decl. in Supp. of Cross Mot. ¶ 29. In its summary judgment motion, however, the FTC now makes clear that it is seeking damages going back to 2015 despite Section 19's express bar on such damages. Third, there is no litigation prejudice to the FTC because the FTC may seek damages for the period that the statute allows; all of the information that it relied upon for its damages claim encompassed or can encompass that period.

**D. There are disputed factual issues as to injury and damages**

The FTC has not established that 913 customers suffered $4,847,911 million in damages. "Under 15 U.S.C. § 57b(b), district courts 'have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from [a] rule violation . . . . Such relief may include . . . the payment of damages . . . except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.'" *FTC v Noland*, 2021 U.S. Dist. LEXIS 226238, at *12 (D Ariz Nov. 23, 2021) (quoting 15 U.S.C. § 57b(b)). Under Section 19 of the FTC Act, "[t]here may be no redress without proof of injury . . . [a]nd the relief must be necessary to redress the injury." *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993).

When the FTC choses "to affirmatively move for summary judgment on the issue of damages . . . [it] must affirmatively put forth evidence that would satisfy its proof burden at trial. If the moving party fails to identify and document facts that would support a finding for that party at trial, then the motion must fail." *Noland*, 2021 U.S. Dist. LEXIS 226238, at *13 (cleaned

up, quotations and citations omitted). "The presence of . . . uncertainty [as to damages] means that the FTC's motion for summary judgment must be denied." *Id.* at *14. This is because "the statute only authorizes damage awards as 'necessary to redress injury'" and thus the FTC must establish that each injury happened and the particular damages amount as being necessary to redress that injury. *Id.* at *15-16.

### 1. The FTC improperly relies on statistical samples of injury and damages when the FTC has the information to try to establish an exact amount of purported damages

The FTC cannot rely on statistical models to prove how many customers were injured and the damages they suffered when the information to prove the exact alleged injury is in the FTC's possession and forms the basis of its "estimates."

The FTC's claim that there were 913 injuries and $4,847,911 million in damages is premised on the expert-declaration of its employee, McAlvanah. FTC Memo of Law at 32-34, ECF 110; McAlvanah Decl. ¶¶ 19, 32, ECF 109-41. McAlvanagh purportedly took a random sample of 87 transactions out of a total of 1499 such transactions and unnamed FTC staff then determined that defendants overcharged in 23 of them. McAlvanah Decl. ¶¶ 6-28, ECF 109-41. Out of that same sample, McAlvanagh claims that FTC could only determine how much was underfunded for 52 of the 87 MCA contracts, and he then reduced the sample to 52. *Id.* at ¶ 29. Unnamed FTC staff then purportedly determined that 18 of the 52 contracts were underfunded. *Id.* at ¶ 32.

McAlvanagh extrapolates from the 87 MCA contracts to a purported 95% confidence interval that defendants took more than they were entitled between 17.6% and 37.0% of the 1499 contracts. *Id.* at ¶ 19. He also extrapolates from 52 contracts to a 95% confidence interval that between 22.0% to 49.1% of the 1499 were underfunded. *Id.* at ¶ 32. Based on his review of the

23 over-collected contracts he extrapolates a mean over-collecting amount of $8,579 and of his review of the 18 underfunded contracts, a mean underfunding amount of $2,817. *Id.* at ¶¶ 24, 36. Thus, under Mr. McAlvanah's estimations, he claims that there is a 95% probability that anywhere from between roughly 263 to 554 customers were injured by overcollection, and 330 to 734 customers were injured by under-collection.

These estimations do not equate to proof of injury as required by Section 19. *Figgie*, 994 F.2d at 605 (no redress under Section 19 without proof of injury). Section 19 requires a demonstration of actual injury and actual damages, and the FTC cannot resort to estimates of injuries and damages by broad strokes, especially when there is "no basis upon which to conclude that it would be inordinately difficult to measure unlawful profits" and "[t]here was no showing that [][defendant] kept poor business records or purposely obscured his records." *Commodity Futures Trading Commn. v Am. Metals Exch. Corp.*, 991 F.2d 71, 77 (3d Cir. 1993).

In fact, the information it relied on admittedly included the information necessary to determine the actual alleged injuries and damages. *See* Kwok Decl., ¶ 20, ECF 109-42 ("As part of its production described above, Actum Processing produced an Excel spreadsheet containing every transaction it processed on behalf of Defendants."). It was from these entries that McAlvanah drew the "sample," *id.*, ¶ 21, and it was from these entries the FTC allegedly compiled the incidences of purported underpayments and overpayments. *Id.* ¶ 22-23.

Estimates can be proper only where injury is not the essential element of the claim and "separating legal from illegal profits exactly may at times be a near-impossible task." *SEC v First City Fin. Corp.*, 890 F.2d 1215, 1231-1232 (D.C. Cir. 1989). Section 19 does not allow exemplary or punitive damages, 15 U.S.C. § 57b ("[N]othing in this subsection is intended to authorize the imposition of any exemplary or punitive damages."), and Section 19 requires actual

proof of injury and that damages are necessary to redress the actual injury. *Noland*, 2021 U.S. Dist. LEXIS 226238, at *13. Mcalvanah's "estimates" are inadequate proof of injury or damages.

**2. The purported expert testimony of FTC employee Patrick McAlvanah is also biased and flawed**

McAlvanah's testimony is also biased and flawed. As a full-time FTC employee, his testimony is inherently biased. *Porter v Hamilton Beach/Proctor Silex, Inc.*, 2003 U.S. Dist. LEXIS 18571, at *5 (W.D. Tenn. Aug. 27, 2003) ("Here, the fact that Zachwieja is a full-time, salaried employee of HBPS is sufficient to demonstrate bias."). "Courts should guard against the use of data which may have been segmented and particularized and fashioned to obtain a desired result." *EEOC v W. Elec. Co.*, 713 F2d 1011, 1018-1019 (4th Cir. 1983) (internal quotations omitted).

The FTC and McAlvanah also provide no evidence, let alone any conclusive evidence, that any of these people or companies were actually overcharged or underfunded. Instead, McAlvanah's report assumes that any apparent discrepancies were actually discrepancies, and nefarious, rather than lawful. Lawful reasons for discrepancies include fees properly taken for defaults, and subsequent agreements reached with the borrower. In fact, the FTC gives samples of supposed overcharges that were not overcharges at all. Braun Decl. in Opp. ¶ 48; Pls' SMF at 130. McAvlanah's initial report also included hundreds of duplicates that he now admits inflated his estimations and shows that the entire report itself was sloppily prepared.[16] Furthermore, instead of redoing the sample after discovering hundreds of duplicates, the FTC's purported

[16] The FTC only admitted any mistakes at all in response to the expert report of Paul Ribaudo DX 11, and did not admit all mistakes, only some.

employee expert just removed the duplicates from the sample at a ratio that was far less than the proportion of duplicates to the overall total of transactions.

The February 21, 2022 expert report of Paul M. Rubaudo also shows that the proper universe of transactions is actually only 846, not 1499, and thus Mcalvanah has still grossly over-inflated the number of injuries and damages. *See* DX 11, Paul M. Rubaudo Expert Decl., ¶ 63 ("[T]here were only 846 funded deals (less than half of the funded deals relied on by McAlvanah) that could have resulted in an over-collection (i.e., the Total Amount Collected exceeded the Total Purchase Price) . . ."). Furthermore, Mr. Ribaudo effectively shows that there was no over-collection for many of the samples. *Id.* ¶¶ 66-79. This, in turn also made erroneous McAlvanah's claimed "mean" damages amounts. *Id.* ¶¶ 80-83.

**E. The FTC is not entitled to the civil penalties it seeks**

**1. The FTC has not established that Braun had actual knowledge that he was violating the GLBA or that the violations of the other defendants can all be attributed to Braun under this provision**

Even if the GLBA is treated as an FTC rule, the FTC has not established that Braun was aware that he was violating the GLBA, a statute that the FTC apparently has never sought to enforce this way. The FTC can only obtain civil penalties for rule violations against someone who "violates any rule under this Act respecting unfair or deceptive acts or practices . . . with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. . . ." 15 U.S.C. § 45(m)(1). Thus, "§45(m)(1)(A) includes a variation on an ignorance-of-the-law defense; a business can be liable only if it either knew that the act was unlawful or if it should have known the act was unlawful . . ." *United States v Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) (citations omitted);

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131,139-40 (4th Cir. 1996).[17] "Courts applying this statute inquire whether a plaintiff has made sufficient allegations to fairly imply a company's knowledge of an FTC rule—even when it is a domestic regulation that actively governs the conduct of the company and its industry." *Sucesores De Don carlos Nuñez Y Doña Pura Galvez, Inc. v Société Générale, S.A.*, 2021 U.S. Dist LEXIS 244498, at *29 (S.D.N.Y. Dec. 22, 2021) (citing *Dish Network L.L.C.*, 954 F.3d at 978. Rules must be defined with specificity precisely so that a party is aware they are violating the rule before being subjected to civil penalty claims. *Katharine Gibbs Sch. (Inc.) v FTC*, 612 F2d 658, 662 (2d Cir. 1979) ("In order to comply with section 57a(a)(1)(B) the Commission must define with specificity in the Rule those acts or practices which are unfair or deceptive and may include requirements for preventing them.").

The FTC does not point to any court interpreting the GLBA in the expansive manner proposed for the first time here by the FTC or any promulgated rules or guidance with respect to this provision of the GLBA. In other words, the FTC presents no evidence that Braun knew or should have known that he was violating the GLBA by allegedly entering into funding contracts requiring account information while allegedly misrepresenting that he would fully perform those contracts. The FTC's use of the GLBA has been described in the bar as "expansive" and "a first" [18]—Braun, a non-attorney, could hardly have known he was violating that statute. This is also a

[17] "The United States Supreme Court has suggested that Section 45(m)(1)(A) provides for a mistake-of-law defense to civil liability." *United States v Dish Network, L.L.C.*, 2016 U.S. Dist. LEXIS 1383, at *3-4 (C.D. Ill. Jan. 6, 2016) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010) and *United States v. Corps. for Character, L.C.*, 116 F. Supp. 3d 1258 (D. Utah Mar. 31, 2015)).

[18] Leach, Christopher, US FTC Succeeds in First Expanded Use of Gramm-Leach-Biley Authority, Mayer Brown Roe and Maw LLP website (Jan. 20, 2022), available at: https://www.mayerbrown.com/en/perspectives-events/publications/2022/01/us-ftc-succeeds-in-first-expanded-use-of-gramm-leach-bliley-penalty-authority

circumstance where it was incumbent on the FTC to give notice to Braun before seeking to impose penalties. *United States v J. B. Williams Co.*, 498 F.2d 414, 434 (2d Cir 1974) (recognizing that there might be circumstances where notice may be required).

The FTC's only evidence that Braun knowingly violated the GLBA consists of (1) defendants' contracts with Actum Processing that contained language in which they agreed to "follow all regulations," which was defined to include the GLBA; and (2) defendants partner agreement with Quarter Spot, Inc. warranting that they were not subject to GLBA investigations or legal proceedings. (Pls' SMF at 191-93). Evidence of corporate contracts containing generic references to the GLBA do not equate to awareness of the GLBA or awareness that this alleged conduct violated the GLBA.

Similarly, the FTC has not established that Braun was aware or participated in each of these alleged violations. As the statute requires that a party knowingly violate the GLBA, the FTC cannot simply impute others conduct onto Braun for every single alleged violation even if Braun was not involved in the transaction at all or was unaware of the transaction. While Sections 13 and 19 do not have this "knowing" requirement, Section5(m)(1)(a) does.

**2. The FTC has not established that Braun committed 918 knowing violations**

The FTC seeks $42,470,021 in civil penalties based on an estimated 918 violations, and a maximum penalty of $46,517 for each violation. The FTC has not established that there were 918 violations. As discussed in Section III(D), *supra*, the FTC's expert report is flawed, failing to demonstrate the actual number of purported violations or any reason for relying on a biased sampling rather than exact evidence.

**3. The FTC has not established that the maximum penalty amount should be imposed on Braun**

The FTC seeks to impose on Braun the maximum penalty amount per violation for a total amount of $42,470,021, but has not established any of the factors that would support such draconian sanctions. "In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C).

First, Braun has no ability to pay. He has testified that he will be rendered insolvent, and has provided the FTC with a detailed copy of his financial statement requested by the FTC as a part of its settlement procedure, in addition to further providing additional financial information requested by the FTC when the motion for summary judgment was made. Braun Decl. in Supp. of Cross Mot. ¶ 8; Braun Decl in Opp. ¶ 56. All the alleged over-collections and under-payments went to the corporate entities, and the FTC has submitted no evidence that Braun actually received any of those funds or any other corporate profits. "[T]he government has the burden of producing evidence of defendants' ability to pay . . ." *United States v Cornerstone Wealth Corp.*, 549 F. Supp 2d 811, 823 (N.D. Tex. 2008). Evidence of an inability to pay "weighs against imposition of the maximum statutory penalty." *United States v Lawrence Aviation Indus.*, 2019 U.S. Dist. LEXIS 45093, at *56 (E.D.N.Y Mar. 19, 2019); *United States v T.C.A., Inc.*, 1997 U.S. Dist. LEXIS 13196, at *3 (N.D. Cal Aug. 21, 1997). Where the evidence on the penalty factors is inadequate, the court may require a trial to determine the appropriate amount of civil penalties. *FTC v PayDay Fin. LLC*, 989 F. Supp. 2d 799, 821 (D.S.D. 2013).

Second, these penalties, imposed personally, will preclude Braun from engaging in any business of any kind, saddling him personally with a judgment of tens of millions of dollars, and

effectively precluding him from any financial future. The penalties are furthermore wholly disproportionate to the alleged damages amount.

Third, Braun is not the most culpable of the defendants; he was neither a member of or owner of the corporate defendants and thus stood to profit least. Braun Decl. in Opp. ¶¶ 4, 57.

Fourth, Braun has no history of such conduct prior to the time complained of in this action, and there is no accusation of such conduct after this action was filed. Braun Decl. in Opp. ¶ 58.

Finally, the FTC argues that a $42,470,021 penalty is necessary to deter Braun from future violations, accusing Braun of being active in the merchant cash advance industry (something not illegal) based on a news report. A news report is not evidence. *Bianchini v Vance*, 2018 U.S. Dist. LEXIS 63346, at *10 (S.D. Miss Apr. 16, 2018). In the two years since this suit was commenced there is no evidence, or accusation, that Braun has over-collected or underpaid any customers or evidence of any complaints against Braun. There is no evidence that a draconian $42 million penalty—which will render Braun insolvent—is necessary to deter Braun.

## IV. The FTC's requested injunctive relief is draconian, punitive and unlawful

The FTC seeks overbroad, draconian sanctions against Braun, including permanently banning Braun from lending money to anyone at all, that is from providing to anyone any "product or service represented, expressly or by implication, to provide or assist in providing, directly or indirectly, funds in exchange for future receivables, revenues, or proceeds." (PO at 14, ECF 109-55). This permanent ban is added on top of a proposed injunction that would bar

Braun from making any misrepresentations,[19] withdrawals from consumer accounts without express written consent, or violating the GLBA, and would affirmatively empower the FTC to monitor compliance. (PO at 15-16, ECF 109-55). To permanently prevent him from working in the MCA business, the business he knows, would impede his ability to pay the fine, as well as provide for the support of his family.

"A permanent injunction may properly issue in those situations involving a cognizable danger of recurrent violation[s], or some reasonable likelihood of future violations." *FTC v Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) (cleaned up, citations and quotations omitted). "Injunctive relief . . . must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v McCain Foods, Ltd.,* 941 F.2d 970, 974 (9th Cir 1991). "An overbroad injunction is an abuse of discretion." *Id.; Stormans, Inc. v Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (reversing overbroad injunction).

A permanent ban is not narrowly tailored; it is in fact the opposite. While courts have upheld permanent bans where a party has previously violated an injunction, *FTC v Gill*, 265 F.3d 944, 957 (9th Cir. 2001), such a ban must still be narrowly tailored—a permanent ban is not narrowly tailored. The ban is also overly broad as it can be construed to bar Braun from lending money to anyone. Furthermore, a permanent ban is a draconian and punitive penalty when there is no evidence of any non-compliance with the alternative, substantive terms of the injunction

---

[19] The FTC's proposed order would bar Braun from misrepresenting (1) "[a]ny requirements for obtaining a product or service;" (2) "[t]he existence, amount, or timing of any fees or charges, or the total cost;" (3) "[a]ny benefit of any product or service, including any amount of money a Consumer might receive or obtain;" (4) "[w]hat circumstances would constitute a breach of contract; (5) "[t]hat any Person can participate in any activities banned by Section I of this Order or otherwise prohibited by this Order;" (6) "[t]hat a Consumer has a legal obligation to pay any Person;" and (7) "[a]ny other material fact, including any material restrictions, limitations, or conditions; or any material aspect of performance, efficacy, nature, or central characteristics."

and when the injunction provides expansive monitoring provisions. There has been no "failure of prior enforcement efforts in requiring lawful activity and stopping unlawful activity" here, and no evidence that the substantive terms and monitoring provisions of the injunction will not suffice as a deterrent. *FTC v 1263523 Ont., Inc.*, 205 F. Supp 2d 218, 223 (S.D.N.Y. 2002).

The FTC's proposed order would also require Braun and any entity affiliated with Braun to issue satisfactions of judgment in all actions even though judgments are unsatisfied, and to discontinue lawsuits seeking amounts owed. Even according to the FTC's own employee-expert's "estimations,"—for which the FTC is already seeking damages—Braun did not over-collect and underpay in a majority of transactions, and even as to those transactions there is no allegation that the customers did not receive funds. PO at 16, ECF 109-55. Braun also has no legal authority to sign or bind RCG.

This injunction amounts to additional back-door penalties in the guise of an injunction because it bars Braun from recovering monies that he is lawfully entitled to or has received a judgment from a state or federal court. This violates the Supreme Court's ruling in *AMG* barring damage or restitution awards under Section 13(b), and Section 19's bar on punitive or exemplary damages. *FTC v Febre*, 128 F.3d 530, 536 (7th Cir. 1997) ("Punitive damages are damages awarded above and beyond what will compensate the victim for his losses.").

Further, it violates the Rooker-Feldman doctrine, which "bars federal district courts from hearing cases that in effect are appeals from state court judgments." *Latouche v Rockland County*, 2022 U.S. Dist. LEXIS 78275, at *8 (S.D.N.Y. Apr. 29, 2022). Asking this Court to in effect vacate existing state court judgments violates the Rooker-Feldman doctrine, as the FTC is suing on behalf of Braun's customers, complaining of injuries caused by the state court

judgments, and asking this court to reject those judgments, all of which were rendered before this action. *Id.*

Finally, this provision is also an unlawful, indiscriminate taking of property in violation of the Fifth Amendment and other provisions of the Constitution because it is entirely disconnected from any evidence of damages and sought without any statutory or legal authority.

## Conclusion

For the foregoing reasons, the Court should deny the FTC's motion in its entirety and grant Braun's cross-motion in its entirety.

Dated: New York, New York
May 13, 2022

Barrata, Barrata, & Aidala LLP

By: /s/ Joseph P. Barrata
Joseph P. Barrata, Esq.
Michael DiBenedetto, Esq.
546 5th Avenue, 6th Floor
New York, NY 10036
212-750-9700
jpb@barattalaw.com

*Counsel for Defendant Braun*

-and-

Law Office Of Allen Schwartz, Esq.
Allen Schwartz, Esq.
2635 Nostrand Ave
Brooklyn, NY 11210
allen@allenschwartzlaw.com

*Of-counsel to Barrata, Barrata, & Aidala, LLP*