| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br>     Plaintiff, <br><br>     v. <br><br> RCG ADVANCES, LLC, *et al.*, <br><br>     Defendants. | Case No. 20-CV-4432-LAK <br><br> **STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND CIVIL PENALTY AS TO DEFENDANTS RCG ADVANCES, LLC AND ROBERT L. GIARDINA** |

Plaintiff, the Federal Trade Commission ("FTC"), filed its First Amended Complaint for Civil Penalties, Permanent Injunction, Monetary Relief, and Other Relief ( "Complaint"), for a permanent injunction, monetary relief, civil penalties, and other relief in this matter, pursuant to Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(A), 45(m)(1)(A), 53(b), 56(a), and 57(b), and Section 522(a) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6822(a).   The FTC and Defendants RCG Advances LLC and Robert Giardina stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

## FINDINGS

By stipulation of the parties, the Court finds that:

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in the advertising, marketing, and offering of small business financing.   The Complaint further charges that Defendants

obtained customer information of a financial institution relating to another person by making false, fictitious, or fraudulent statements, in violation of Section 521 of the GLB Act, 15 U.S.C. § 6821.

3. Settling Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Settling Defendants admit the facts necessary to establish jurisdiction.

4. Settling Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear their own costs and attorney fees.

5. Settling Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6. Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary Consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.   In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and

audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary Consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary Consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary Consumers" includes reasonable members of that group.

B. **"Consumer"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

C. **"Corporate Settling Defendant"** means RCG Advances, LLC and its successors and assigns.

D. **"Covered Products or Services"** means any product or service represented, expressly or by implication, to provide or assist in providing, directly or indirectly, funds in exchange for future receivables, revenues, or proceeds.

E. **"Debt"** means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

F. **"Debt Collection Activities"** means any activities of a Debt Collector to collect or attempt to collect, directly or indirectly, a Debt owed or due, or asserted to be owed or due.

G. **"Debt Collector"** means any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any Debts, or who regularly collects or attempts to collect, directly or indirectly, Debts owed or due or asserted to be owed or due another. The term also includes any creditor who, in the process of collecting its own Debts, uses any name other than its own which would indicate that a third person is collecting or attempting to collect such Debts. The term also includes any person to the extent such person collects or attempts to collect any Debt that was in default at the time it was obtained by such person.

H. **"Express, Informed Consent"** means an affirmative act communicating unambiguous assent to be charged, made after receiving and in close proximity to a Clear and Conspicuous Disclosure of all material information related to the charge, including (a) the product, service,

fee, or interest associated with the charge; (b) the specific amount of the charge; and (c) whether the charge is recurring and the frequency of recurrence.

I. **"Individual Settling Defendant"** means Robert L. Giardina.

J. **"Person"** mean a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

K. **"Related Litigation"** means (1) *FCI Enterprises, Inc. v. Richmond Capital Group, LLC* et al., Index No. 520934/2018 (N.Y. Sup. Ct.); (2) *Dual Diagnosis Treatment Center, Inc.* et al. *v. Yellowstone Capital West, LLC* et al., Index No. 525443/2018 (N.Y. Sup. Ct.); (3) *Gateway International,360, LLC v. Richmond Capital Group, LLC* et al., Index No. 654636/2018 (N.Y. Sup. Ct.); (4) *James Davis II* et al. *v. Richmond Capital Group, LLC* et al., Index No. 656346/2018 (N.Y. Sup. Ct.); (5) *ACS Payment Solutions, Ltd. Co. v. Capital Merchant Services, LLC* et al., Index No. 126110-2019 (N.Y. Sup. Ct.); (6) *P & HR Solutions, LLC v. Richmond Ram Capital Funding, LLC* et al., Index No. 650238/2019 (N.Y. Sup. Ct.); (7) *Fleetwood Services, LLC v. Ram Capital Fund LLC* et al., Index No. 651759/2020 (N.Y. Sup. Ct.), 20-cv-05120 (S.D.N.Y.); (8) *Lateral Juscom Feeder LLC,* as assignee of *Benchmark Builders, Inc.* et al. *v. Tzvi Reich* et al., Index No. 655241/2021 (N.Y. Sup. Ct.); and (9) *Lateral Recovery LLC,* as assignee of *Benchmark Builders, Inc.* et al. *v. Tzvi Reich* et al., Index No. 656791/2021 (N.Y. Sup. Ct.).

L. **"Settling Defendants"** means Individual Settling Defendant and Corporate Settling Defendant, individually, collectively, or in any combination.

## ORDER

## BAN

I. **IT IS THEREFORE ORDERED** that Settling Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering, providing, arranging for, assisting any Consumer in receiving or applying for, or collecting or attempting to collect payment or other consideration in connection with, any Covered Product or Service;

B. Assisting others engaged in advertising, marketing, promoting, offering, providing, arranging for, assisting any Consumer in receiving or applying for, or collecting or attempting to collect payment or other consideration in connection with, any Covered Product or Service; or

C. Participating in any Debt Collection Activities.

## PROHIBITION AGAINST MISREPRESENTATIONS

II. **IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, distributing, servicing, offering, or selling any product or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

A. Any requirements for obtaining a product or service;

B. The existence, amount, or timing of any fees or charges, or the total cost;

C. Any benefit of any product or service, including any amount of money a Consumer might receive or obtain;

D. What circumstances would constitute a breach of contract;

E. That Settling Defendants can participate in any activities banned by Section I of this Order or otherwise prohibited by this Order;

F. That a Consumer has a legal obligation to pay any Person; or

G. Any other material fact, including any material restrictions, limitations, or conditions; or any material aspect of performance, efficacy, nature, or central characteristics.

## PROHIBITION AGAINST UNAUTHORIZED CHARGES

III. **IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from causing debits or withdrawals to be made from any Consumer's bank or other financial account, or from billing any Consumer for any charge, without the Consumer's Express, Informed Consent.

## PROVISIONS RELATING TO JUDGMENTS, LIENS, AND CREDIT REPORTING

IV. **IT IS FURTHER ORDERED** that Settling Defendants, within thirty (30) days of the date of entry of this Order, shall:

A. In every case in which a Settling Defendant is or was a plaintiff and in which a customer of any Defendant is or was a defendant, file (i) for pending cases, a motion to dismiss the Settling Defendant's claims with prejudice, or (ii) for concluded cases in which a judgment against a customer of any Defendant was entered, a satisfaction of judgment;

B. File a termination statement relating to any UCC lien and take all necessary steps to withdraw, extinguish, or remove any other lien where any Settling Defendant is a creditor and any customer of any Defendant is a debtor; and

C. For any negative or derogatory information or Debt owed or purported to be owed by any customer that Settling Defendants reported or caused to be reported to a credit reporting agency prior to entry of this Order, Settling Defendants shall request that each such credit reporting agency delete such negative or derogatory information or Debt from the customer's credit reporting file.

**INJUNCTION RELATED TO CUSTOMER FINANCIAL INFORMATION**

V. **IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A. Obtaining or attempting to obtain customer information of a financial institution (including but not limited to bank account routing number, account number, and log-in credentials) from a Consumer by making false, fictitious, or fraudulent statements or representations to any Consumer or financial institution; or

B. Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, §§ 6821-6827.

**MONETARY JUDGMENT AND CIVIL PENALTY**

VI. **IT IS FURTHER ORDERED** that:

A. Judgment in the amount of TWO MILLION, SEVEN HUNDRED AND THIRTEEN THOUSAND, SEVEN HUNDRED, AND FIVE Dollars ($2,713,705) is entered in favor

of the FTC against Settling Defendants, jointly and severally, as monetary relief pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, for Settling Defendants' violations of Section 521 of the GLB Act;

B. Settling Defendants are ordered to pay to the FTC the judgment entered in Section VI.A above as follows:

   1. Settling Defendants shall pay to the FTC One Million, Five Hundred Thousand Dollars ($1,500,000), which, as Settling Defendants stipulate, their counsel holds in escrow for no purpose other than payment to the FTC.   Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of the FTC;

   2. Settlings Defendants shall pay One Million, Two Hundred and Thirteen Thousand, Seven Hundred, and Five Dollars ($1,213,705) on or before twelve months from the date of entry of this Order, to the FTC, in accordance with instructions provided by a representative of the FTC; *provided that* if on or before twelve months from the date of entry of this Order, Settling Defendants pay an amount equal to or greater than the amount set forth in this Section VI.B.2 to the State of New York pursuant to any judgment entered in *People v. Richmond Capital Group*, Index No. 451368/2020 (N.Y. Sup. Ct.), Settling Defendants shall be deemed to have satisfied the payment obligation set forth in this Section VI.B.2.

C. To secure the payment obligations under Section VI.B above, J. Iandolo Law P.C. grants the FTC a security interest in the Trust Account, as that term is defined in the Guaranty

and Security Agreement ("Security Agreement") attached as Attachment A hereto, which is incorporated herein as if fully set forth verbatim.

D.    In the event that Settling Defendants fail to make a required payment when due under Section VI.B of this Order, or the FTC is not allowed to retain any such payment, or if any Event of Default as defined in the Security Agreement occurs and is not timely cured the entire judgment amount set forth in Section VI.A, less any amount previously paid, shall immediately become due and payable by Settling Defendants.   Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance.   Time is of the essence for the payments specified in this Section.

E.    The FTC's agreement to Section VI.B of this Order is expressly based on the material representations of Settling Defendants that the value of the Trust Account set forth in the Security Agreement is at least Three Million Dollars ($3,000,000) less any amount paid pursuant to Section VI.B.1.   If, upon motion of the FTC, a Court determines that Settling Defendants made a material misrepresentation or omitted material information concerning ownership or authority to pledge the Trust Account, any encumbrance of the Trust Account, or the value of the Trust Account, the entire judgment amount set forth in Section VI.A, less any amounts previously paid by Settling Defendants, shall immediately become due and payable by Settling Defendants.   Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance.   *Provided that* proceedings instituted under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies, as may be provided by law,

including but not limited to, contempt proceedings or any other proceedings that the FTC may initiate to enforce this Order.

F. To the extent that funds remain in Citibank account number XXXX0997 in the name of J. Iandolo Law P.C. at the conclusion of *People v. Richmond Capital Group*, Index No. 451368/2020 (N.Y. Sup. Ct.), such funds shall, within ten (10) days of such conclusion, be paid to the FTC as a civil penalty pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), for Settling Defendants' violations of Section 521 of the GLB Act.

G. To the extent that any funds are transferred from Citibank account number XXXX0997 in the name of J. Iandolo Law P.C. to Settling Defendants or to any third party for purposes unrelated to a judgment entered in, or litigation costs (including attorney fees) related to, *People v. Richmond Capital Group*, Index No. 451368/2020 (N.Y. Sup. Ct.) or the Related Litigation (as defined above), the amount of such funds shall be immediately due and owing to the FTC as a civil penalty pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), for Settling Defendants' violations of Section 521 of the GLB Act.

H. Settling Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

I. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the FTC, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to Section VI.A of this Order, such as a nondischargeability complaint in any bankruptcy case.

J. The facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

K. Settling Defendants agree that any judgment entered in Section VI.F or VI.G of this Order represents a civil penalty owed to the government of the United States, is not compensation for actual pecuniary loss, and, therefore, as to Settling Defendants, it is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

L. Settling Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Settling Defendants previously submitted to the FTC, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

M. All money received by the FTC pursuant to Section VI.B of this Order may be deposited into a fund administered by the FTC or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.   If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the FTC may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Settling Defendants' practices alleged in the Complaint.   Any money not used for relief is to be deposited to the U.S. Treasury. Settling Defendants have no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

## CUSTOMER INFORMATION

**VII.** **IT IS FURTHER ORDERED** that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress.   If a representative of the FTC requests in writing any information related to redress, Settling Defendants must provide it, in the form prescribed by the FTC, within 14 days;

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Settling Defendants obtained prior to entry of this Order in connection with the offering of small business funding products; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

D. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

**COOPERATION**

**VIII**. **IT IS FURTHER ORDERED** that Settling Defendants must fully cooperate with representatives of the FTC in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Settling Defendants must provide truthful and complete information, evidence, and testimony. Individual Settling Defendant must appear, and Corporate Settling Defendant must cause its officers, employees, representatives, or agents to appear, for interviews, discovery, hearings, trials, and any other proceedings that a FTC representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a FTC representative may designate, without the service of a subpoena. Nothing herein shall be deemed a waiver by Individual Settling Defendant of any rights he may have pursuant to the Fifth Amendment to the Constitution of the United States.

**ORDER ACKNOWLEDGMENTS**

**IX**. **IT IS FURTHER ORDERED** that Settling Defendants obtain acknowledgments of receipt of this Order:

A. Each Settling Defendant, within 7 days of entry of this Order, must submit to the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 10 years after entry of this Order, Individual Settling Defendant for any business that Individual Settling Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Corporate Settling Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct

specified in Sections I, II, and III, and all agents and representatives who participate in conduct specified in Sections I, II, and III; (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Settling Defendant delivered a copy of this Order, that Settling Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## COMPLIANCE REPORTING

**X.** **IT IS FURTHER ORDERED** that Settling Defendants make timely submissions to the FTC:

A. One year after entry of this Order, each Settling Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Settling Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with Settling Defendant; (b) identify all of that Settling Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Settling Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Settling Defendant is in compliance with each Section of this Order, including providing an itemized list of

judgments, liens, and/or negative or derogatory information or Debt reported to credit reporting agencies subject to Section IV and the disposition of each; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2. Additionally, Individual Settling Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Individual Settling Defendant performs services whether as an employee or otherwise and any entity in which Individual Settling Defendant has any ownership interest; and (c) describe in detail Individual Settling Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Settling Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Settling Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Settling Defendant or any entity that such Settling Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, Individual Settling Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Settling Defendant

performs services whether as an employee or otherwise and any entity in which

Individual Settling Defendant has any ownership interest, and identify the name,

physical address, and any Internet address of the business or entity.

C.  Each Settling Defendant must submit to the FTC notice of the filing of any bankruptcy

petition, insolvency proceeding, or similar proceeding by or against such Settling

Defendant within 14 days of its filing.

D.  Any submission to the FTC required by this Order to be sworn under penalty of perjury

must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I

declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.   Executed on:  _____" and supplying the date, signatory's

full name, title (if applicable), and signature.

E.  Unless otherwise directed by a FTC representative in writing, all submissions to the FTC

pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier

(not the U.S. Postal Service) to:   Associate Director for Enforcement, Bureau of

Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC   20580.   The subject line must begin:   FTC v. RCG Advances, LLC,

Matter No. X200045.

## RECORDKEEPING

**XI.**   **IT IS FURTHER ORDERED** that Settling Defendants must create certain records for 10

years after entry of the Order, and retain each such record for 5 years.   Specifically,

Corporate Settling Defendant and Individual Settling Defendant, for any business that

Individual Settling Defendant, individually or collectively with any other Defendants, is a

majority owner or controls directly or indirectly, must create and retain the following records:

A.  accounting records showing the revenues from all goods or services sold;

B.  personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:   name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.  all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E.  a copy of each unique advertisement or other marketing material.

## COMPLIANCE MONITORING

**XII.**   **IT IS FURTHER ORDERED** that, for the purpose of monitoring Settling Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.  Within 14 days of receipt of a written request from a representative of the FTC, each Settling Defendant must:   submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the FTC is authorized to communicate directly with each Settling Defendant. Settling Defendants must permit representatives of the FTC to interview any employee or other person affiliated with any Settling Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. The FTC may use all other lawful means, including posing, through its representatives, as Consumers, suppliers, or other individuals or entities, to Settling Defendants or any individual or entity affiliated with Settling Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning Individual Settling Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## RETENTION OF JURISDICTION

XIII. **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this _____ day of _____, 2022.**

_____
Lewis A. Kaplan
United States District Judge

**SO STIPULATED AND AGREED**

/s/ Gregory A. Ashe
_____

MARGUERITE L. MOELLER
GREGORY A. ASHE
JULIA E. HEALD
Federal Trade Commission
600 Pennsylvania Ave. NW
Mail Stop CC-10232
Washington, DC 20580
Tel: (202) 326-2905 (Moeller)
Tel: (202) 326-3719 (Ashe)
Tel: (202) 326-3589 (Heald)
Facsimile: (202) 326-2752
Email: mmoeller@ftc.gov, gashe@ftc.gov
         jheald@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

/s/ Robert Giardina (with permission)
_____

RCG ADVANCES, LLC, Defendant
By:   Robert Giardina, Managing Partner


/s/ Robert Giardina (with permission)
_____

ROBERT L. GIARDINA, Defendant


/s/ Anthony Varbero (with permission)
_____

JEREMY IANDOLO
J. Iandolo Law P.C.
7621 13th Avenue
Brooklyn, NY 11228
Tel: (347) 850-6022

ANTHONY VARBERO
DAVID C. CASAGRANDE
Law Offices of Joseph Mure, Jr.
26 Court Street, Suite 1200
Brooklyn, NY 11242
Tel: (718) 852-9100

Attorneys for Defendants RCG Advances, LLC
and Robert Giardina

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 1, 2022, a true and correct copy of **STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND CIVIL PENALTY AS TO DEFENDANTS RCG ADVANCES, LLC AND ROBERT L. GIARDINA** was filed electronically with the United States District Court for the Southern District of New York using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

_/s/Gregory A. Ashe_____
Attorney for Plaintiff
Federal Trade Commission

# ATTACHMENT A

# <u>GUARANTY AND SECURITY AGREEMENT</u>

This **GUARANTY & SECURITY AGREEMENT** (this "Agreement"), executed as of the date(s) indicated below and effective as of the Effective Date (defined below), is made by and between J. Iandolo Law P.C., with an address at 7621 13th Avenue, Brooklyn, New York 11228, and its successors and assigns (collectively, the "Guarantor"), and the Federal Trade Commission (the "Secured Party") (Guarantor and Secured Party shall collectively be referred to as the "Parties").

**WHEREAS**, the Defendant-Debtors (defined below) and the Secured Party are parties to the Stipulated Final Judgment (defined below) being entered into for the full and final resolution of all claims asserted against the Defendant-Debtors in the matter of *Federal Trade Commission v. RCG Advances, LLC, et. al.*, Case No. Case No. 20-CV-4432-LAK (S.D.N.Y.);

**WHEREAS**, Guarantor has agreed to enter into this Agreement to provide assurance to the Secured Party for the performance of the Defendant-Debtors' Obligations (defined below) under the Stipulated Final Judgment and to induce the Secured Party to enter into the Stipulated Final Judgment;

**WHEREAS**, the execution and delivery of this Agreement is a condition to the Secured Party entering into the Stipulated Final Judgment; and

**WHEREAS**, under the terms hereof, the Secured Party desires to obtain and the Guarantor desires to grant to the Secured Party a security interest in the Trust Account (defined below) to secure performance by Defendant-Debtors of the Obligations.

**NOW, THEREFORE,** the Guarantor and the Secured Party intending to be legally bound, hereby agree as follows:

1. **<u>Definitions.</u>**

   A. **"Trust Account"** means Citibank, N.A. account number XXXX0997 in the name of J. Iandolo Law P.C.

   B. **"Defendant-Debtors"** shall refer to RCG Advances, LLC and Robert Giardina, and shall not include any other defendants involved in the lawsuit styled *Federal Trade Commission v. RCG Advances, LLC, et. al.*, Case No. Case No. 20-CV-4432-LAK (S.D.N.Y.).

   C. **"Effective Date"** means the date of entry of the Stipulated Final Judgment by the U.S. District Court for the Southern District of New York.

D. **"Obligations"** shall mean Defendant-Debtors' payment obligations as set forth in Section VI.B of the Stipulated Final Order.

E. **"Stipulated Final Judgment"** means that certain Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief entered as to the Defendant-Debtors in the lawsuit styled *Federal Trade Commission v. RCG Advances, LLC, et. al.*, Case No. Case No. 20-CV-4432-LAK (S.D.N.Y.).

2. **Guaranty.** Guarantor hereby unconditionally and absolutely guarantees Defendant-Debtor's performance of the Obligations under the Stipulated Final Judgment. This Guaranty shall continue in full force and effect until all of the Obligations have been discharged. Guarantor's duty and liability under this Guaranty shall be limited solely to the payment of monies for the Obligations, and Guarantor shall have no further obligations to perform, or to otherwise be restrained or enjoined, under the Stipulated Final Judgment, except as may be expressly set forth therein. In addition, Guarantor's liability hereunder shall not exceed Defendant-Debtors' liability under Section VI.B of the Stipulated Final Judgment.

3. **Grant and Perfection of Security Interest.** To secure the Obligations, as of the Effective Date, the Guarantor assigns and grants to the Secured Party a continuing lien on and security interest in the Trust Account. For the avoidance of doubt, nothing in this Agreement shall be construed as granting any lien or security interest in or right to any other assets or property belonging to Guarantor that is not specifically set forth in this Agreement.

10. **Account Control Agreement.** To perfect the Secured Party's security interest in the Trust Account, Guarantor and Secured Party have entered into a Deposit Account Control Agreement with Citibank, N.A., a copy of which is attached as **Exhibit "A"** hereto and incorporated by reference herein, providing for control by the Secured Party of the Guarantor's Trust Account in an Event of Default.

11. **Events of Default.** The Guarantor shall be in default under this Agreement upon the happening of any of the following events or conditions (each, an "Event of Default"): (a) any failure on the part of Guarantor to timely cure the failure of Defendant-Debtors to make any payment when due as required by Section VI.B of the Stipulated Final Judgment; or (b) the balance of the Trust Account is less than Three Million Dollars ($3,000,000) less any amount paid pursuant to Section VI.B.1 of the Stipulated Final Judgment.

12. **Governing Law and Jurisdiction.** This Agreement shall be construed and governed by, and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof. Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of the United States District Court for the Southern District of New

York in any action or proceeding arising out of or relating to this Agreement and further irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined by such court.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of June 1, 2022.

**GUARANTOR:** J. Iandolo Law P.C**.**      **SECURED PARTY:** The Federal Trade Commission


By: */s/Jeremy Iandolo*              By: */s/Gregory A. Ashe*        
Name: Jeremy Iandolo       Name: Gregory A. Ashe
Title: Managing Partner       Title: Attorney for the Federal Trade Commission

# EXHIBIT A

## to

## Guaranty and Security Agreement

## Deposit Account Control Agreement

This Deposit Account Control Agreement (the "Agreement") is entered into as of June 1, 2022 among J. Iandolo Law P.C. (the "Guarantor"), the United States Federal Trade Commission (the "Secured Party"), and Citibank, N.A. (the "Bank").

### Recitals

A. The Guarantor maintains deposit account number XXXX0997 in the name of the Guarantor with the Bank (the "Account")

B. The Guarantor and the Secured Party have notified the Bank that, in connection with a Security & Guaranty Agreement, the Guarantor has granted the Secured Party a security interest in the Account.

C. The Secured Party and the Guarantor desire to enter into this Agreement to perfect the Secured Party's security interest in the Account and to describe the respective rights and duties of the parties hereto with respect to the Account.

Therefore, the parties agree as follows

1. Definitions: In this Agreement, the following terms have the following meanings or interpretations:

   (a) **"Account-related Agreements"** means any cash management or other agreements entered into between the Bank and the Guarantor with respect to the Account, each as may be amended, modified or supplemented from time to time.

   (b) **"Business Day"** means any day of the week that is not a Saturday, Sunday, bank holiday or other day that the Bank is closed.

   (c) **"Disposition Notice"** means the Initial Instruction and any other notice received by the Bank from the Secured Party thereafter directing the disposition of funds in the Account.

   (d) **"Initial Instruction"** means the notice received by the Bank from the Secured Party in the form of Exhibit A.

   (e) **"Outside time"** means a reasonable time, not to exceed two (2) Business Days, after the Business Day on which the Initial Instruction is actually received by the Bank by facsimile in accordance with the notice provisions set forth in this Agreement. If the Initial Instruction is actually received by the Bank after the close of business, then, in determining the Outside Time, the Initial Instruction will be deemed to have been received on the following Business Day.

   (f) **"Release Notice"** means a written notice from the Secured Party to the Bank in the form of Exhibit B, notifying the Bank that the Secured Party is terminating the Agreement and releasing its security interest in the Account.

(g) "**UCC**'" means the Uniform Commercial Code of the jurisdiction whose law governs this Agreement.

2. The parties hereto agree that, in accordance with the terms of this Agreement:

(a) The Bank shall comply with the instructions originated by the Secured Party directing the disposition of the funds in the Account without further consent by the Guarantor.

(b) Prior to the Outside Time, the Guarantor (but not the Secured Party) may withdraw funds from the Account and provide all other funds transfer and other disposition instructions with respect to the Account to which it is entitled under the Account-related Agreements.

(c) On and after the Outside Time, and until such time as the Bank is in receipt of a Release Notice or a final order of a court of competent jurisdiction ordering the disposition of the funds in the Account, the Secured Party (but not the Guarantor) may direct the disposition of the funds in the Account by delivering a Disposition Notice.

(d) On and after the Outside Time, the Bank will not comply with any instructions from the Guarantor and will block the Account in a manner that will prevent the Guarantor from having any rights of withdrawal from the Account.

(e) The Bank shall have no obligation to inquire or investigate whether the Guarantor is in default in the payment or performance of its obligations to the Secured Party or to any other party.

(f) The Bank will not be liable to the Guarantor for complying with any direction of the Secured Party even if the Guarantor notifies the Bank that a default had not occurred and/or that the Secured Party was not justified in issuing a Disposition Notice.

3. Notices.

(a) In order for any Disposition Notice, Release Notice, or any other notice sent to the Bank to be binding upon the Bank, such notice must be delivered to the Bank by facsimile transmission to: 877-285-9314, Attn: Citibank CBG Servicing Re; Control Agreement, with a written copy sent to the address set forth for the Bank on the signature pages hereto. Such copy must by delivered by hand, mailed by United States registered or certified mail, postage prepaid and return receipt requested, sent by overnight courier, or delivered via facsimile or email transmission, to the extent that a facsimile number or email address has been provided for the purposes of receiving such notices.

(b) Notices to all other parties must be in writing and delivered by hand, mailed by United States registered or certified mail, postage prepaid and return receipt requested, sent by overnight courier, or delivered via facsimile or email transmission,

to the extent that a facsimile number or email address has been provided for the purposes of receiving such notices.

(c) Any notice or communication shall be deemed to have been duly given or made and to have become effective at the time of the receipt thereof by the recipient.  Any party may change its mailing or email address or facsimile number for notices by notifying the other parties hereto in accordance with the notice provisions set forth in this Section.

4.  (a) The Bank will not be obligated to follow, nor shall it be liable to the Secured Party or the Guarantor for failing to follow:

    i.    an Initial Instruction that is not in the form of Exhibit A or is not otherwise fully completed; or

    ii.    a Disposition Notice
        a)  prior to the Outside Time;
        b)  that does not have attached to it a fully executed copy of this Agreement;
        c)  that requires the disposition of funds from the Account that are not immediately available at the time such funds are to be transferred;
        d)  that requires funds to be sent to more than one recipient;
        e)  that requires the Bank to make more than one disposition of funds during the term of this Agreement; or
        f)  that requires the disposition of funds to a location outside of the United States.

(b)      In addition, the Bank will not be liable to the Secured Party or the Guarantor for any failure or any delay in following any Disposition Notice (including any funds transfer requests) or any provision of this Agreement due to a computer malfunction, interruption of communication facilities, labor difficulties, act of God, war, terrorist attack, or other cause beyond the Bank's reasonable control.

5.  If at any time
    (a) the Guarantor become subject to a voluntary or involuntary proceeding under the United States Bankruptcy Code,
    (b) the Bank is otherwise served with a court order which the Bank in good faith believes affects the Account, or
    (c) the Bank determines that acting upon the instructions of either the Guarantor or the Secured Party would result in the violation of any applicable law, rule, or regulation,

the Bank may cease acting upon the instructions of both the Guarantor and the Secured Party and suspend disbursements from the Account otherwise required by the terms hereof or any Disposition Notice, until such time as the Bank receives assurances reasonably satisfactory to the Bank that funds in the Account may continue to be disbursed.

6.  The Bank represents and warrants to the Secured Party that:

(a) the Bank is an organization engaged in the business of banking,

(b) the Bank maintains the Account as a deposit account in the ordinary course of the Bank's business,

(c) The Bank has not entered into any currently effective control agreement with respect to the Account for the benefit of any person other than the Secured Party;

(d) the Bank will not enter into a control agreement with respect to the Account for the benefit of any person other than the Secured Party during the term of this Agreement.

(e) The Bank agrees that it will not change the name or account number of the Account without the prior written consent of the Secured Party.

7. Subordination

(a) Except for amounts referred to in clause (b) of this Section, the Bank (i) subordinates any security interest, lien, or other encumbrance it may have against the Account to the Secured Party's security interest and (ii) will not exercise any right of recoupment, setoff, or debit against the Account. This subordination will not apply to any security interest that the Bank has in an item under the UCC Article 4 as a collecting bank.

(b) Notwithstanding subparagraph (a) of this Section, and regardless of any agreement of the Guarantor to compensate the Bank by means of balances in the Account, the Bank may charge the Account, to the extent permitted by any of the Account-related Agreements or applicable law, for (i) the face amount of a check, draft, money order, instrument, wire transfer of funds, automated clearing house entry, other electronic transfer of funds or other item (A) deposited in or credit to the Account and returned unpaid or otherwise uncollected or subject to an adjustment entry, whether for insufficient funds or for any other reason and without regard to the timeliness of the return or adjustment or the occurrence or timeliness of any other person's notice of nonpayment or adjustment, or (B) subject to an notice against the Bank for breach of transfer, presentment, encoding, retention, or other warranty under Federal Reserve regulations or Operating Circulars, clearing house rules, the UCC, or other applicable laws, (ii) any adjustments or corrections of any posting or encoding errors, and (iii) fees and expenses chargeable by the Bank in respect of the Account or any related services, including those services specified in the Account-related Agreements.

8. The Agreement shall be absolute and continuing and shall remain in effect until terminated as hereinafter provided.

9. The Agreement shall apply only to the Account and shall not apply to any other accounts of the Guarantor now existing or hereafter created at the Bank except pursuant to a written amendment to this Agreement executed by the parties hereto.

10. Except with respect to the obligations and duties expressly provided in this Agreement, this Agreement shall not impose or create any obligations or duties upon the Bank that are greater than or in addition to the usual and customary obligations and duties, if any, of the Bank with respect to the Account or the Guarantor. The Bank shall have no obligation or duty whatsoever to interpret the terms of any agreements between the Guarantor and the Secured Party or to determine whether any default exists thereunder.

11. The Guarantor hereby irrevocably authorizes and instructs the Bank to perform and comply with the terms of this Agreement. The Account-related Agreements will continue to apply to the Account and any services provide in connection with the Account (including any fund transfers); provided, however, that to the extent there is any conflict between this Agreement and any Account-related Agreement, the provisions of this Agreement will control. Notwithstanding the foregoing, this Agreement will not (a) derogate from any claim or defense that the Bank may have against the Guarantor under any Account-related Agreement or (b) create any third-party beneficiary rights under any of the Account-related Agreements in favor of the Secured Party.

12. During the term of this Agreement, the Account may not be closed by the Guarantor, except by a notice to the Bank given jointly with the Secured Party. The parties acknowledge, however, that the Bank reserves the right to close the Account in accordance with the terms of the Account-related Agreements.

13. (a) This Agreement may not be terminated by the Guarantor, except by a notice to the Bank given jointly with the Secured Party.

(b) This Agreement may be terminated by the Secured Party at any time by providing a Release Notice to the Guarantor and the Bank.

(c) This Agreement may be terminated by the Bank (1) immediately upon notice to the Guarantor and the Secured Party if the Bank becomes obligated to terminate this Agreement or to close the Account under any statute, rule or regulation, court order, or any legal process binding upon the Bank, (2) otherwise upon thirty (30) days' notice to the Guarantor and the Secured Party.

(d) If the Bank terminates this Agreement pursuant to Section 13(c)(1), the Bank will, unless a previously delivered and continuing effective Disposition Notice directs otherwise, remit any available funds in the Account on the date of termination, by check mailed to the address of the Secured Party for receiving communications under this Agreement.

(e) If the Bank terminates this Agreement pursuant to Section 13(c)(2), the Bank will, unless a previously delivered and continuing effective Disposition Notice directs otherwise, remit any available funds in the Account on the effective date of the termination (A) at the direction of the Secured Party if the direction is received by the Bank prior to the effective date of termination of this Agreement or (B) if no such direction is received by the Bank prior to such date by check mailed to the address of the Secured Party for receiving communications under this Agreement.

(f) Any obligation of the Bank to remit funds to or at the direction of the Secured Party under this subsection is subject to Sections 4 and 5 hereof.

(g) The termination of this Agreement will not affect any rights created or obligations incurred under this Agreement before termination.

14. The Guarantor shall indemnify and hold harmless the Bank from and against any and all claims, actions, and suites (whether groundless or otherwise), losses, damages, costs, expenses (including reasonable attorney's fees and disbursements), and liabilities of every nature and character arising out of or related to this Agreement or the transactions contemplated hereby or any actions taken or omitted to be taken by the Bank hereunder, except to the extent directly caused by the Bank's gross negligence or willful misconduct. The foregoing indemnity provision shall survive the termination of this Agreement.

15. The Bank may act upon any instrument or other writing believed by it in good faith to be genuine and to have been signed or presented by a person purporting to be the Secured Party or the Guarantor (or any agent thereof), as the case may be. The Guarantor and Secured Party hereby agree that the procedures set forth in this Agreement, together with the execution of this Agreement, are commercially reasonable for each of them and that no other security procedures, as such term is defined in Article 4A of the UCC, are necessary or desired, including, without limitations, those involving any call back to the Secured Party or other methods of verification of authority with respect to Disposition Notices or any other writings. The Bank shall not be liable in connection with the performance or non-performance of its duties hereunder, except for its own gross negligence or willful misconduct. The Bank's duties shall be determined only with reference to this Agreement and applicable laws, and the Bank shall not be charged with knowledge of, or any duties or responsibilities in connection with, any other document or agreement. The Bank shall have no liability to any party for any incidental, punitive, or consequential damages resulting from any breach by the Bank of its obligations hereunder.

16. If the Secured Party so requests the Bank will provide to the Secured Party a copy of each periodic account statement relating to the Account ordinarily furnished by the Bank to the Guarantor. The Bank's liability for failing to provide the account statement will not exceed the Bank's cost of providing the statement. The Guarantor authorizes the Bank to provide to the Secured Party such statements and any other information concerning the Account that the Bank may agree to provide to the Secured Party at the Secured Party's request.

17. This Agreement may not be amended or modified without the prior written consent of the Bank, the Guarantor, and the Secured Party.

18. No delay or omission on the part of the Secured Party, the Guarantor, or the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Agreement. No waiver of any right under this Agreement shall be effective unless in writing and signed by the party waiving such right, and no waiver on one occasion shall be construed as a bar to or waiver of any such right on any other occasion.

19. This Agreement and any waiver or amendment hereto may be executed in counterparts and by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. This Agreement may be executed and delivered by pdf format via email transmission or by facsimile transmission, all with the same force and effect as if the same were a fully executed and delivered manual counterpart.

20. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflicts of law principles thereof) and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. The Bank's jurisdiction for purposes of Part 3 of Article 9 of the UCC is New York.

21. This Agreement, together with any Schedules and Exhibits attached hereto, constitutes the entire agreement, and supersedes any prior agreements, of the parties concerning its subject matter. In the event a provision of this Agreement is unenforceable, this Agreement shall be construed to the extent possible as if the unenforceable provision were omitted.

22. Each of the Secured Party, Guarantor, and the Bank hereby knowingly and intentionally waives the right to trial by jury with respect to any litigation arising out of or directly or indirectly relating to this Agreement.

| For the Guarantor | For the Secured Party |
|---|---|
| */s/Jeremy Iandolo* | */s/Gregory A. Ashe* |
| J. Iandolo Law P.C. | Federal Trade Commission |
| By: Jeremy Iandolo, Managing Partner | By: Gregory Ashe, Attorney for the |
| 7621 13th Avenue | Federal Trade Commission |
| Brooklyn, NY 11228 | 600 Pennsylvania Ave, NW |
| Facsimile: 718395-1732 | Washington, DC 20580 |
| Email: jiandolo@jiandololaw.com | Facsimile: 202-326-3762 |
| | Email: gashe@ftc.gov |

For the Bank


_____

Citibank, N.A.

By:

**EXHIBIT A**
**Form of Initial Instruction**

Deposit Account Control Agreement Initial Instruction

Date:

To: Citibank, N.A.
Facsimile: 877-285-9314

RE: Account number xxxx0997 (the "Account")

To Citibank Control Agreement Servicing:

This is the initial instruction, as defined in the Deposit Account Control Agreement dated June 1, 2022 attached hereto (the "Control Agreement"), among Citibank, N.A. (the "Bank"), J. Iandolo Law P.C. (the "Guarantor"), and the Federal Trade Commission (the "Secured Party"). Capitalized terms used in this Initial Instruction have the meaning assigned to them in the Control Agreement.

The FTC hereby directs the Bank to block the Account in a manner that will prevent the Guarantor from having any rights of withdrawal from the Account [and further direct the Bank to initiate a funds transfer, in accordance with the wire instructions set forth in Schedule 1 attached hereto).

The FTC recognizes that the Bank's obligation to comply with this Initial Instruction is subject to the other terms of the Control Agreement, including without limitation, Section 4 and 5 thereof.

Respectfully submitted,

Federal Trade Commission

_____
By: Gregory Ashe
Attorney for the Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
Facsimile: 202-326-3762
Email: gashe@ftc.gov

**Schedule 1 to Initial Instruction**
**Wire Instructions by Secured Party**

For electronic wire transfers, the payer must provide the following information to their bank:

Name on Account:  US Federal Trade Commission
Bank Branch Name:  Federal Reserve Bank of New York
Bank Address:   33 Liberty St, New York 10045-0001

Use the table below to complete the bank form. If any fields are not available, please enter the information in the "additional reference" section.

| Fedwire Field | Fedwire Field Name | Required Information |
|---|---|---|
| | | |
| {1510} | Type/Subtype | **1000** |
| {2000} | Amount | ***(Enter payment amount)*** |
| {3400} | Receiver ABA routing number | **021030004\*** |
| {3400} | Receiver ABA short name | **TREAS  NYC** |
| {3600} | Business Function Code | **CTR** |
| {4200} | Beneficiary Identifier (account number) | **829000001002** |
| {4200} | Beneficiary Name | **FTC Consumer Redress** |
| {5000} | Originator | **Citibank N.A.** |
| {6000} | Originator to Beneficiary Information – Line 1 | **RCG Advances & Robert Giardina** |
| {6000} | Originator to Beneficiary Information – Line 2 | **Richmond Capital Group** |
| {6000} | Originator to Beneficiary Information – Line 3 | **X200045** |

\* When using a non-US bank, include one of the two following SWIFT codes: TREAS_NYC or FRNYUS33XXX

**Exhibit B**
**Form of Release Notice**

Deposit Account Control Agreement Release Notice

Date:

To:  Citibank, N.A.
Facsimile:

RE: Account number xxxx0997 (the "Account")

To XXXXX:

This is a Release Notice, as defined in the Securities Account Control Agreement dated XXXX, 2022 attached hereto (the "Control Agreement"), among Citibank, N.A. (the "Bank"), J. Iandolo Law P.C. (the "Guarantor"), and the Federal Trade Commission (the "Secured Party").  Capitalized terms used in this Initial Instruction have the meaning assigned to them in the Control Agreement.

The FTC hereby gives the Bank notice that it has released its security interest in the Account and is hereby terminating the Control Agreement, effective upon the Bank's receipt of this notice.  To the extent that the FTC has delivered any Disposition Notice instructing the Bank to block the Guarantor's access to the Account or directing the disposition of funds from the Account, such instructions are hereby terminated, and the FTC agrees that the FTC no longer has any rights to provide instructions with respect to the Account.

Respectfully submitted,

Federal Trade Commission

_____

By: Gregory Ashe
Attorney for the Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
Facsimile: 202-326-3762
Email: gashe@ftc.gov