# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

RCG ADVANCES, LLC, et al.,

     Defendants.

**Case No. 20-CV-4432-LAK**

**FTC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JONATHAN BRAUN**

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................................1

II.   DEFENDANT BRAUN RAISES NO GENUINE DISPUTES AS TO  MATERIAL
      FACTS ......................................................................................................................................2

      A.   Defendant Braun's Associates' Invocations of the Fifth Amendment Warrant Adverse
           Inferences Against Him ....................................................................................................3

      B.   Defendant Braun Fails to Refute that He Violated Section 5 of the FTC Act ...............5

      C.   Defendant Braun Fails to Refute that He Violated Section 521 of the GLB Act ...........9

III.  INJUNCTIVE AND MONETARY RELIEF ARE PROPER REMEDIES.........................10

      A.   The Proposed Injunctive Provisions Are Appropriate and Necessary ..........................10

      B.   Defendant Braun Fails to Refute that Monetary Relief Is Appropriate ........................11

           1.   Monetary Relief Is Appropriate for Defendant Braun's Violations  of the GLB
                Act.............................................................................................................................11

           2.   Defendant Braun Does Not Rebut the FTC's Proof of Consumer Injury..............13

           3.   Section 19 Relief Amount.......................................................................................14

           4.   Defendant Braun Is Liable for Civil Penalties for His Knowing Violations of the
                GLB Act...................................................................................................................17

           5.   The Maximum Civil Penalty Amount Is Appropriate in Light of Defendant
                Braun's Driving Role in Defendants' Misconduct .................................................19

IV.   CONCLUSION .....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)...................................................................................16

*Adler v. Penn Credit Corp.*,
2022 WL 744031 (S.D.N.Y. Mar. 11, 2022) .......................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986)...................................................5

*Arias v. United States*,
2014 WL 5004409 (S.D.N.Y. Sept. 29, 2014 )...................................7

*Bank of Am. v. Fischer*,
927 F. Supp. 2d 15 (E.D.N.Y 2013) ....................................................5

*Bonnie & Co. Fashions v. Bankers Trust Co.*,
945 F. Supp. 693 (S.D.N.Y. 1996).......................................................15

*Bostock v. Clayton Ct.*,
140 S. Ct. 1731 (2020)............................................................................10

*Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venezuela*,
341 F. App'x 722 (2d Cir. 2009) ..........................................................15

*D'Amico v. City of N.Y.*,
132 F.3d 145 (2d Cir. 1998).................................................................5

*Danzer v. Norden Sys., Inc.*,
151 F.3d 50 (2d Cir. 1998 )...................................................................6

*Donovan v. Carls Drug Co.*,
703 F.2d 650 (2d Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677 (1988) ...........................................2

*Duverny v. Hercules Med. P.C.*,
2020 WL 6465443 (S.D.N.Y. Nov. 3, 2020)........................................5

*FTC v. 1263523 Ontario, Inc.*,
205 F. Supp. 2d 218 (S.D.N.Y. 2002).................................................10

*FTC v. AMREP Corp.*,
705 F. Supp. 119 (S.D.N.Y. 1988).......................................................12

*FTC v. BlueHippo Funding LLC,*
762 F.3d 238 (2d Cir. 2014)..................................................14

*FTC v. Bronson Partners, LLC,*
654 F.3d 359 (2d Cir. 2011)................................................14, 16

*FTC v. Cardiff,*
2021 WL 3616071 (C.D. Cal. June 29, 2021) ............................12

*FTC v. Connelly,*
2006 WL 6267337 (C.D. Cal. Dec. 20, 2006) ............................17

*FTC v. Credit Bureau Center, LLC,*
937 F.3d 764 (7th Cir. 2019) ...............................................13

*FTC v. Cyberspace.com, LLC,*
453 F.3d 1196 (9th Cir. 2006) ...............................................7

*FTC v. Febre,*
128 F.3d 530 (7th Cir. 1997) ...............................................10

*FTC v. Figgie Int'l, Inc.,*
994 F.2d 595 (9th Cir. 1993) ...............................................13

*FTC v. Gill,* 265
 F.3d 944 (9th Cir. 2001) ...................................................10

*FTC v. LeadClick Media, LLC,*
838 F.3d 158 (2d Cir. 2016)..................................................7

*FTC v. Lead Express, Inc.,*
2021 WL 4173922 (D. Nev. Sept. 13, 2021) ............................

*FTC v. Minuteman Press,*
53 F. Supp. 2d 248 (E.D.N.Y. 1998) ..................................10, 12

*FTC v. Mortg. Relief Advocates LLC,*
2015 WL 11257575 (C.D. Cal. 2015)......................................13

*FTC v. Moses,*
913 F.3d 297 (2d Cir. 2019)..........................................12, 14, 16

*FTC v. Noland,*
2021 WL 5493443 (D. Ariz. Nov. 23, 2021) ............................13

*FTC v. OMICS Grp. Inc.,*
374 F. Supp. 3d 994 (D. Nev. 2019)......................................13

*FTC v. QYK Brands LLC*,
2022 WL 1090257 (C.D. Cal. Apr. 6, 2022) ...........................................13, 14

*FTC v. Washington Data Resources*,
856 F. Supp. 2d 1247 (M.D. Fla. 2012)...........................................12

*In re Int'l Harvester Co.*,
104 F.T.C. 949 (1984 )...........................................7

*Jeffreys v. City of N.Y.*,
426 F.3d 549 (2d Cir. 2005)...........................................5

*JF v. Carmel Cent. School Dist.*,
168 F. Supp. 3d 609 (S.D.N.Y. 2016)...........................................6

*Katharine Gibbs Sch. (Inc.) v. FTC*,
612 F.2d 658 (2d Cir. 1979)...........................................18

*Khudan v. Lee*,
2016 WL 4735364 (S.D.N.Y. Sept. 8, 2016) ...........................................6

*Kirschenbaum v. 650 Fifth Ave.*,
257 F. Supp. 3d 463 (S.D.N.Y. 2017), *rev'd on other grounds sub nom. Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174 (2d Cir. 2019) ...........................................4

*LabMD v. FTC*,
894 F.3d 1221 (11th Cir. 2018) ...........................................12, 13

*LaTouche v. Rockland County*,
2022 WL 1292291 (S.D.N.Y. Apr. 29, 2022)...........................................10, 11

*LiButti v. United States*,
107 F.3d 110 (2d Cir. 1997)...........................................3

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011)...........................................4

*Rexnord Hldgs., Inc. v. Bidermann*,
21 F.3d 522 (2d Cir. 1994 )...........................................7

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011)...........................................5, 6

*Schmidt v. Tremmel*,
1995 WL 6250 (S.D.N.Y. Jan. 6, 1995) ...........................................5

*SEC v. Aly*,
2018 WL 1581986 (S.D.N.Y. Mar. 27, 2018) ...................................................6

*SEC v. McGinn, Smith & Co.*,
752 F. Supp. 2d 194 (S.D.N.Y. 2010)...............................................................4

*Spadaro v. United States Customs & Border Prot.*,
978 F.3d 34 (2d Cir. 2020).............................................................................10

*Sucesores de Don Carlos Nuñez Y Doña Pura Galvez, Inc., v. Société Générale, S.A.*,
2021 WL 6065758 (S.D.N.Y. Dec. 22, 2021) .................................................18

*Toure v. Cent. Parking Sys.*,
2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..................................................15

*United States v. Com. Recovery Sys., Inc.*,
179 F. Supp. 3d 728 (E.D. Tex. 2016) .............................................................19

*United States v. Cornerstone Wealth Corp, Inc.*,
549 F. Supp. 2d 811 ((N.D. Tex. 2008) ...........................................................19

*United States v. Daniel Chapter One*,
89 F. Supp. 3d 132 (D.D.C. 2015) ...................................................................19

*United States v. J.B. Williams Co.*,
498 F.2d 414 (2d Cir. 1974).............................................................................18

*United States v. Nat'l Fin. Servs., Inc.*,
98 F.3d 131 (4th Cir. 1996) .............................................................................17

*Walker v. Carter*,
210 F. Supp. 3d 487 (S.D.N.Y. 2016)...........................................................6, 9

## STATUTES & REGULATIONS

15 U.S.C. § 45............................................................................................................1

15 U.S.C. § 45(m)(1)(A).....................................................................................11, 17

15 U.S.C. § 45(n)........................................................................................................7

15 U.S.C. § 57b(b)....................................................................................................11

15 U.S.C. § 57b(d)....................................................................................................14

15 U.S.C. § 1692 *et seq*............................................................................................12

15 U.S.C. § 1692*l*(a) .................................................................................12

15 U.S.C. § 6821 .........................................................................................1

15 U.S.C. § 6821(a)(2) .................................................................................9

15 U.S.C. § 6822(a) ....................................................................................12

28 U.S.C. § 2462 .......................................................................................15

## MISCELLANEOUS

H.R. Rep. No. 106-434, at 173 (1999) (Conf. Rep).......................................9

140 Cong. Rec. H 6006 (July 21, 1994) .......................................................7

Telemarketing Sales Rule, 75 FR 48458, 48501 (Aug. 10, 2010).................17

# I.    INTRODUCTION

In his Opposition (ECF No. 119[1]), Defendant Braun identifies no reason to deny the FTC's Motion for Summary Judgment (ECF No. 109).  The FTC has set forth evidence of Defendant Braun's repeated misdeeds at the expense of small business consumers, including his boasts that his company "over collected [$]16k lol" (SMF ¶ 83), and violent threats made to consumers unable to keep up with payments, including telling consumers "I can literally make your life a living hell," "I know where you live," "I know where  your mother lives," and "I will take your daughters from you" (SMF ¶ 161) and "Be thankful you're not in New York, because your family would find you floating in the Hudson."  (SMF ¶ 158.)  In the face of this evidentiary showing, Defendant Braun's attempts to refute the substantial evidence consist mainly of unsubstantiated, largely unfocussed opinion, generalizations, and denials based almost entirely on his own self-serving affidavit without any additional supporting evidence.  In short, he has not proffered any evidence to rebut the FTC's substantial showing that he violated Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 521 of the GLB Act, 15 U.S.C. § 6821, by:

- misrepresenting that (i) Defendants[2] did not require personal guarantees from business owners, (ii) Defendants did not charge upfront fees, (iii) consumers would receive a specified amount of funding, and (iv) Defendants would withdraw a specified amount from consumers to repay that funding;

- unfairly using confessions of judgment;

- making unfair collection threats;

- unfairly making unauthorized withdrawals; and

- making false, fictitious, or fraudulent statements to obtain consumers' financial information.

---

[1] Also filed as ECF No. 118.

[2] Defined terms used in this brief have the same meaning as used in the FTC's Memorandum in Support of Its Motion for Summary Judgment (ECF No. 110).

Neither has Defendant Braun proffered any evidence to rebut the FTC's substantial showing that he had the authority to control, did control, or participated in the violative acts and practices, and had the requisite knowledge to make him liable for injunctive and monetary relief and civil penalties. While Defendant Braun's Opposition makes one argument about reducing the *amount* of relief sought, he makes no principled or legal objections to the appropriateness of the FTC's requested relief.

Such a paltry response raises no true disputes as to material facts that would require resolution by trial. The applicable law fully supports the judgment that the FTC seeks. The proposed injunctive provisions, monetary relief, and civil penalties in the revised proposed final order are appropriate in light of Defendant Braun's past egregious conduct and the likelihood of recurrence absent such relief. Accordingly, the Court should grant the FTC's motion for summary judgment against Defendant Braun.

## II.     DEFENDANT BRAUN RAISES NO GENUINE DISPUTES AS TO MATERIAL FACTS

Defendant Braun's Opposition does not identify any material facts truly in dispute. In fact, Defendant Braun agrees with 100 of the 184 facts the FTC has identified over which there are no material disputes. (ECF No. 122.[3]) Where he does argue that material facts remain in dispute, Defendant Braun either offers no supporting evidence or relies on his own self-serving affidavit. Indeed, he identifies no third-party testimony to support his positions.[4]

---

[3] Also filed as ECF No. 121. Defendant Braun objects to the FTC's Rule 56.1 Statement of Material Facts because it exceeds 80 paragraphs, citing the local rules of the Northern District of Illinois. (ECF No. 122 at 3.) The local rules of this District contain no such limitation.

[4] The FTC has separately filed its Opposition to Defendant Jonathan Braun's Motion to Accept Late Responses to the FTC's Requests for Admission. (ECF No. 123.) For the reasons set forth therein and in the FTC's Memorandum of Law in Support of its Motion for Summary Judgment (ECF No. 110 at 12–13), the matters Defendant Braun has admitted are "conclusively established," Fed. R. Civ. P. 36(b), and "may be used for Rule 56 Summary Judgment." *Donovan v. Carls Drug. Co.*, 703 F.2d 650, 651 (2d Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677 (1988).

### A. Defendant Braun's Associates' Invocations of the Fifth Amendment Warrant Adverse Inferences Against Him

On a motion for summary judgment, the Court may draw adverse inferences against parties to a civil action based on non-parties' invocations of the Fifth Amendment privilege. *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997). *LiButti* explains that "the overarching concern" when considering whether adverse inferences are to be drawn "is fundamentally whether the adverse interest is trustworthy under all the circumstances and will advance the search for the truth," and sets out four "non-exclusive factors" to help guide a trial court's decision: (1) the nature of the relationship between the non-party and defendant, (2) the degree of control the defendant exerts over the non-party witness, (3) the compatibility of the interests between the defendant and witness in the outcome of the litigation, and (4) the non-party's role in the litigation. *Id.*

Each factor weighs in favor of drawing adverse interests against Defendant Braun based on the repeated invocations of the Fifth Amendment by five of his employees and his co-conspirator and former co-defendant, Robert Giardina.[5] First, Mr. Giardina and the RCG employees each shared a bond of "business" with Defendant Braun, suggesting each would be "less likely . . . to render testimony in order to damage the relationship [with Braun]." *Id.* at 123. Second, Defendant Braun exerted significant control over the RCG employees. (SMF ¶¶ 27-29, 31, 38-39, 41-42, 44.) Third, the RCG employees, and Mr. Giardina in particular, all shared an interest with Defendant Braun at the time of their assertions of the Fifth Amendment privilege in defeating the relevant litigation. Finally, the RCG employees, and Mr. Giardina in particular, were key players at RCG and therefore in the litigation. Further, the FTC has presented ample corroborating evidence beyond the proposed adverse inferences.

---

[5] The Court has entered a settlement between the FTC and Defendant Giardina. (ECF No. 127.)

Defendant Braun offers no compelling reason that adverse inferences should not be drawn against him. He argues that his testimony to the New York Attorney General protects him from any such inferences (ECF No. 119 at 13–14), but cites no case that actually supports such a proposition.[6] In *SEC v. McGinn, Smith & Co.*, the court declined to draw an adverse interest based on the defendant's *own* invocation of the Fifth Amendment to the extent he had already responded to particular questions because it determined the SEC had not in fact been denied the defendant's testimony, and *did* draw adverse inferences based upon a *non-party's* invocation of the privilege. 752 F. Supp. 2d 194, 209–10 (N.D.N.Y. 2010). The FTC does not seek any adverse inferences based on Defendant Braun's invocation of the Fifth Amendment and has not taken the position it has been denied his testimony. Defendant Braun relies on other cases simply for their general and uncontroversial statements of the relevant standard, but in those cases courts did in fact draw adverse inferences. In *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, for example, the court explained that "[t]here is no doubt that a non-party witness's invocation of his or her Fifth Amendment right not to testify may constitute admissible, competent evidence in a civil case," and did in fact draw adverse inferences because "a non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree" and "silence is often evidence of the most persuasive character." 257 F. Supp. 3d 463, 508–10 (S.D.N.Y. 2017) (quoting *LiButti*, 107 F.3d at 121, 124)), *rev'd on other grounds sub nom. Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174 (2d Cir. 2019); *see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011)

---

[6] Defendant Braun also falsely claims that he did not invoke the Fifth Amendment privilege in his investigative hearing with the New York Attorney General's office. *Compare* ECF No. 119 at 13 (stating Braun testified "without invoking his Fifth Amendment privilege") *and* DX14 at 7 ¶ 9 ("I did not exercise my right to assert my Fifth Amendment privilege at the September 18, 2019 investigative hearing. . .") *with* DX3 at 14:17–20 ("Again, I just don't want to say the wrong thing, so upon the advice of my counsel, I invoke my Fifth Amendment right against self-incrimination to decline to answer your question.").

(drawing adverse inferences based on other witnesses' invocation of Fifth Amendment and declining to draw inference only where no corroborating evidence was presented); *Bank of Am. v. Fischer*, 927 F. Supp. 2d 15, 26, 31 (E.D.N.Y. 2013) (drawing negative inferences and granting summary judgment).[7]

## B. Defendant Braun Fails to Refute that He Violated Section 5 of the FTC Act

In responding to the FTC's argument that Defendant Braun has violated Section 5 of the FTC Act, which is supported by citations to evidence from multiple sources, Braun relies entirely on a self-serving affidavit in which he denies having control over RCG or personally engaging in any misconduct. (ECF No. 119 at 16–19.) Because Defendant Braun's affidavit is directly contradicted by substantial evidence from multiple sources, it should be disregarded.

In order to defeat summary judgment, Defendant Braun must identify more than the "mere existence of a scintilla of evidence in support of [his] position . . . ; there must be evidence on which the jury could *reasonably* find for [him]." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986)). "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). In cases where nothing in the record supports a non-party's position "other than the [non-movant's] own contradictory and incomplete testimony," granting summary judgment is proper because "no reasonable person would undertake the suspension of disbelief necessary to give credit to" the non-movant's position. *Id.* at 555 (quoting *Schmidt v. Tremmel*, 1995 WL 6250 (S.D.N.Y. Jan. 6, 1995)). The Second Circuit reaffirmed its holding in *Jeffreys* in *Rojas v. Roman Catholic Diocese of Rochester*,

---

[7] *Duverny v. Hercules Med. P.C.*, 2020 WL 6465443 (S.D.N.Y. Nov. 3, 2020), is similarly unhelpful to Defendant Braun. It did not involve anyone's invocation of the Fifth Amendment but rather considered whether to admit testimony that the plaintiff had not told her romantic partner that she had been sexually assaulted. *Id.* at *1.

holding that, in a case where a defendant has moved for summary judgment, to "require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings . . . would license the mendacious to seek windfalls in the litigation lottery." 660 F.3d 98, 106 (2d Cir. 2011) (internal quotation and citation omitted). Courts in this District therefore regularly grant summary judgment where the non-movant relies entirely on their own testimony. *E.g.*, *Adler v. Penn Credit Corp.*, 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (granting summary judgment holding that "a non-moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment") (internal quotation and citation omitted); *SEC v. Aly*, 2018 WL 1581986, at *24 (S.D.N.Y. Mar. 27, 2018) (granting summary judgment after rejecting defendant's "self-serving assertion" because, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment") (internal quotations and citation omitted); *Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016) (granting summary judgment where only evidence of particular facts was non-movant's "own self-serving testimony," which "alone is not enough to create a genuine issue of material fact"); *JF v. Carmel Cent. School Dist.*, 168 F. Supp. 3d 609, 621 n.11, 625 (S.D.N.Y. 2016) (declining to give credence to "self-serving statement, unsupported by any other evidence in the record" and granting summary judgment); *Khudan v. Lee*, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) ("Plaintiff's 'self-serving' and 'incomplete' testimony . . . is insufficient to create a *genuine* dispute of fact.").[8] Similarly, "[u]nsupported statements of counsel are insufficient to

---

[8] The Second Circuit has held, in the context of an employer moving for summary judgment against former employees alleging discrimination, that a non-movant's exclusive reliance on their own affidavit is not insufficient by default. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).

generate a genuine issue of fact." *Arias v. United States*, 2014 WL 5004409, at \*10 (S.D.N.Y.

Sept. 29, 2014) (quoting *Rexnord Hldgs., Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994)

(granting summary judgment because, "[a]lthough [non-movant] pointed to certain issues of fact

in his memorandum of law and at oral argument, he failed to provide evidentiary support for his

contentions").

Defendant Braun argues that he has not violated Section 5 of the FTC Act because, he

claims in his affidavit, he did not personally make the alleged misrepresentations, file the unfair

confessions of judgment, or threaten consumers, and did not control the corporate defendants.

(ECF No. 122 at 17–19.)[9]  His position is contradicted by extensive evidence from the corporate

defendants' records and affidavits sworn to by numerous small business owners.  For example,

Defendant Braun admitted in an email to misrepresenting the amount of money that would be

collected from a consumer in their contract, saying "we also overcollected 3,200 on the previous

5k deal – LOL." (SMF ¶ 77.)  Defendant Braun does not deny making this statement, he

responds only that it was "made in jest." (ECF No. 122 at ¶ 77.)  Defendant Braun was also

personally involved in misrepresenting the amount of money advanced to consumers, admitting

---

[9] Defendant Braun also partially misstates the applicable legal standard for Section 5 deception.  Although he correctly notes that an act or practice is deceptive under Section 5 if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances, *see FTC v. LeadClick Media, LLC*, 838 F.3d 158, 168 (2d Cir. 2016), he then argues, citing Section 5(n) of the FTC Act, 15 U.S.C. § 45(n), that a deceptive act must be "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." (ECF No. 119 at 25.)  But Section 5(n) sets forth the standard for whether a practice is *unfair* not deceptive.  The conference report associated with Section 5(n)'s addition to the FTC Act explained that it "is derived from the 1980 policy statement of the [Federal Trade] Commission regarding *unfairness*, the Commission's 1982 letter on the same subject, and from subsequent interpretations of and applications to specific *unfairness* proceedings by the Commission."  140 Cong. Rec. H 6006, \*18 (July 21, 1994) (emphasis added).  The 1980 FTC policy statement (which was later appended to the FTC's decision in *In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984)) itself explains that the FTC's unfairness jurisdiction provides "a more general basis for action against acts or practices which cause significant injury." *Id.* at 1060 (emphasis added).  The three-part test that the FTC must meet to establish that an act or practice is unfair (as it must with respect to Counts II, III, and IV), therefore, is simply not applicable to the FTC's deception analysis in Count I.  *See, e.g.*, *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 n.2 (9th Cir. 2006) (noting that the "plain language" of Section 5(n) shows that its requirements do not apply to claims based on deception).

to withholding an additional $2,000 from one consumer's advance to "try and make extra money with no risk lol." (SMF ¶ 107.) Again, Defendant Braun does not dispute that he made this claim or taking this action. (ECF No. 122 at ¶ 107.) Defendant Braun attempts to evade responsibility for RCG's unfair use of COJs by arguing that he, personally, "never filed" COJs against consumers (ECF No. 122 at 18), but Defendant Braun admits that he did personally declare a consumer in default and direct the company's lawyers to file a COJ where the merchant had missed only four payments (SMF ¶ 138; ECF No. 122 at ¶ 138).

Defendant Braun's denial that he unfairly threatened small business consumers who were unable to keep up with their payments (ECF No. 119 at 19) is squarely contradicted by statements from multiple consumers who spoke with him and by Braun's own emails and messages (*see* SMF ¶¶ 159 ("I will kill you"), 160 ("We will take everything from you," "We'll take care of you and your family"), 161 ("I can literally make your life a living hell," "I know where you live," "I know where your mother lives," "I will take your daughters from you," "You have no idea what I'm going to do"), 162 ("I am going to come down there and beat the s*** out of you," "I am going to make you bleed"), 163 ("Pay up now or you will suffer"), 165 ("We can get you wherever we want"), 168 (Braun boasted to colleagues that merchant was "petrified of me" and "ill rock [merchant's] world . . . im gonna get paid and make yet another grown man cry"); 169 (Braun told Reich to tell a consumer RCG would "spend a ton of money making sure they lose there business and freedom").)

In addition to failing to refute the FTC's evidence of his direct personal involvement in the corporate defendants' violations of Section 5 of the FTC Act, Defendant Braun fails to refute the FTC's substantial evidence of his control over the corporate defendants. Though he now disclaims any authority over RCG (ECF No. 119 at 18; ECF No. 122 ¶ 27), substantial evidence shows that Defendant Braun frequently identified himself in written communications as a

"manager" or "Senior Funding Manager," told a business associate he was "in charge," and instructed Mr. Giardina to "fill out and scan back" a contract (SMF ¶¶ 27–28).

In light of the FTC's substantial evidence from multiple sources of Defendant Braun's personal involvement in the corporate defendants' violations of Section 5 of the FTC Act, and his authority to control the corporate defendants, his "self-serving statement, without direct or circumstantial evidence . . . is insufficient to defeat a motion for summary judgment." *Walker*, 210 F. Supp. 3d at 503 (citation omitted). The Court may therefore find him liable for Counts I–IV.

### C. Defendant Braun Fails to Refute that He Violated Section 521 of the GLB Act

Defendant Braun's sole argument that he has not violated Section 521 of the GLB Act, which prohibits using false statements or representations in order to obtain banking information about banks' consumers, is that the GLB Act was not intended to cover the type of statements made by Defendants.[10] (ECF No. 119 at 19–20.) Relying on one part of the GLB Act's Conference Report, Defendant Braun asserts that the act should be read narrowly to reach only acts of impersonation. (*Id.* at 19.) The same Conference Report, however, also explains that the GLB Act contains a broad prohibition on "otherwise misleading an institution or customer into making unwitting disclosures." H.R. Rep. No. 106-434, at 173 (1999) (Conf. Rep.).

Moreover, the statute's legislative history need not even be considered because the plain language of the statute clearly prohibits obtaining a consumer's financial information by making false statements, without any limitation or narrowing of the subject matter of the false statement to impersonation. 15 U.S.C. § 6821(a)(2). The Supreme Court "has explained many times over

---

[10] The relevant statutory language states that the GLB Act makes it unlawful to "obtain or attempt to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." 15 U.S.C. § 6821(a)(2).

many years that, when the meaning of the statute's terms is plain, [the Court's] job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Ct.*, 140 S. Ct. 1731, 1749 (2020); *see also Spadaro v. United States Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) ("When the language of a statute is unambiguous, judicial inquiry is complete.").

Because, as discussed in Section II.C above, Defendant Braun has not raised any genuine disputes of material facts about the misrepresentations constituting his violations of Section 521 of the GLB Act, and has identified no reason why the GLB Act does not prohibit such conduct, the Court may find him liable for Count V.

## III. INJUNCTIVE AND MONETARY RELIEF ARE PROPER REMEDIES

### A. The Proposed Injunctive Provisions Are Appropriate and Necessary

Defendant Braun's attempt to challenge the FTC's proposed injunctive provisions falls short. Similar injunctive provisions, including industry bans and monitoring provisions, are commonly entered where defendants engage in egregious violations. Indeed, Defendant Braun identifies no cases in which a similar injunctive provision was found to be overbroad.[11] (ECF No. 119 at 35–36.) Further, Defendant Braun's invocation of the *Rooker-Feldman* doctrine, in arguing that the issuance of satisfactions of judgment would be overbroad, is entirely irrelevant. As explained in *LaTouche v. Rockland County*, the case upon which Defendant Braun relies, the doctrine applies only where, among other things, "the federal-court plaintiff [has] lost in state court," "the plaintiff [complains] of injuries caused by a state-court judgment," "the plaintiff

---

[11] Each FTC case upon which Defendant Braun relies imposed the injunctive provisions proposed by the FTC or affirmed a district court's injunctive order. *See FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 263 (E.D.N.Y. 1998) (granting permanent injunction); *FTC v. Gill*, 265 F.3d 944, 958 (9th Cir. 2001) (affirming entry of permanent injunction); *FTC v. 1263523 Ont., Inc.*, 205 F. Supp. 2d 218, 223 (S.D.N.Y. 2002) (issuing permanent injunction); *FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997) (affirming award of damages and uncontested permanent injunction).

[invites] district court review and rejection of that judgment," and "the state-court judgment [has] been rendered before the district court proceedings commenced." 2022 WL 1292291, at *4 (S.D.N.Y. Apr. 29, 2022). None of these requirements are met here.

## B. Defendant Braun Fails to Refute that Monetary Relief Is Appropriate

The FTC seeks two forms of monetary relief for Defendant Braun's violations of the GLB Act: (1) return of money pursuant to Section 19 of the FTC Act, and (2) civil penalties pursuant to Section 5(m)(1)(A) of the FTC Act. Although he correctly identifies that there is a limitations period for Section 19, Defendant Braun fails in his arguments that monetary relief is wholesale unavailable.

### 1. Monetary Relief Is Appropriate for Defendant Braun's Violations of the GLB Act

In his Opposition, Defendant Braun responds to a position the FTC has not taken, arguing that the FTC may not obtain monetary relief for his violations of Section 5 of the FTC Act. (ECF No. 119 at 21–22.) To be clear, the FTC seeks monetary relief only for Defendant Braun's violations of the GLB Act.

Defendant Braun's primary argument against the monetary relief sought places form over substance, taking the position that because the GLB Act is a *statute*, as opposed to a *rule* propounded by the FTC, Congress did not intend for monetary relief to be available. (ECF No. 119 at 21–23.) This is plainly contradicted by the statutory language. Both Sections 5(m)(1)(A) (regarding civil penalties) and 19 (regarding consumer redress) of the FTC Act provide for monetary relief for "rule" violations. *See* 15 U.S.C. § 45(m)(1)(A) (permitting civil penalties against anyone who "violates any rule . . . with actual knowledge or knowledge fairly implied"); 15 U.S.C. § 57b(b) (permitting relief "necessary to redress injury to consumers or other persons . . . resulting from [a] rule violation"). While the GLB Act is a statute and not a rule, Congress made clear that it be treated as a "rule" for purposes of seeking relief. Congress declared that

11

"compliance with [the GLB Act] shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act ["FDCPA," 15 U.S.C. 1692 et seq.] to enforce compliance with such Act." 15 U.S.C. § 6822(a). The FDCPA, in turn, authorizes the FTC to enforce compliance "in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation *rule*." 15 U.S.C. § 1692*l*(a) (emphasis added); *see also FTC v. Moses*, 913 F.3d 297, 307 (2d Cir. 2019). In sum, by reference to the FDCPA, Congress made clear that the GLB Act is to be treated as a trade regulation rule for purposes of enforcement actions.

None of the cases upon which Defendant Braun relies (ECF No. 119 at 21–23) support his position that monetary relief is unavailable for statutory violations that Congress has instructed be treated as rules for purposes of enforcement. *FTC v. Washington Data Resources*, for example, is not a case in which the FTC sought monetary relief pursuant to Section 19, and did not consider whether relief pursuant to Section 19 is available for statutory violations. 856 F. Supp. 2d 1247, 1281 (M.D. Fla. 2012) (explaining that the FTC was pursuing damages under Section 13(b) of the FTC Act and not Section 19). *FTC v. Cardiff*, in fact, is an example of a statute—the Restore Online Shoppers' Confidence Act—being treated as a trade regulation rule for enforcement purposes. 2021 WL 3616071, at *2 (C.D. Cal. June 29, 2021) ("Because Congress designated a violation of ROSCA as a rule violation under the FTC Act, it may be enforced via a direct suit under the language of Section 19, without the need for a final cease-and-desist letter.").[12]

---

[12] The other cases on which Defendant Braun relies are equally irrelevant. *FTC v. Minuteman Press* is simply an example of Section 19 relief awarded for a rule violation; nothing in the opinion suggests that such relief would be unavailable for a statutory violation Congress stated should be treated as a rule violation. 53 F. Supp. 2d 248, 258–59 (E.D.N.Y. 1998). *FTC v. AMREP Corp.* is inapposite as it refers to Section 19 relief sought for violations of Section 5 of the FTC Act, not, as in this case, violations of the GLB Act. 705 F. Supp. 119, 125 (S.D.N.Y. 1988). *LabMD v. FTC* did not consider this question or even Section 19, and concerned a defendant's suit to vacate a cease

Because Congress expressly stated that the GLB Act should be enforced in the same manner as the FDCPA, which is treated as a trade regulation rule for enforcement purposes, monetary relief pursuant to Section 19 and in the form of civil penalties is an appropriate remedy for Defendant Braun's GLB Act violations.

### 2. Defendant Braun Does Not Rebut the FTC's Proof of Consumer Injury

Defendant Braun challenges the proposed Section 19 consumer redress in its entirety based on a mischaracterization of the caselaw regarding the necessary proof of injury. Defendant Braun relies upon *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993), for his assertion that the FTC is required to prove each consumer's injury individually (ECF No. 119 at 26–27), but that case held that "[i]t is well established . . . that proof of individual reliance by each purchasing customer is not needed" to prove injury. 994 F.2d 595, 605–06. The *Figgie* court held that, for Section 19, "[a] presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product," and concluded that, because the defendant, like Braun, "presented no evidence to rebut the presumption of reliance, injury to consumers has been established." *Id.* at 605–06; *see also FTC v. OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1015 (D. Nev. 2019) ("[T]he FTC need not prove reliance by each consumer misled by Defendants."); *FTC v. Mortg. Relief Advocates LLC*, 2015 WL 11257575, at *9 (C.D. Cal. 2015) ("A showing of individual consumer reliance is not required for redress under Section[] . . . 19 of the FTC Act.").[13]

---

and desist order issued by the FTC following administrative proceedings. 894 F.3d 1221 (11th Cir. 2018). Finally, *FTC v. Credit Bureau Ctr.* is inapplicable because it involved monetary relief sought only pursuant to Section 13(b) of the FTC Act, not civil penalties or Section 19 relief. 937 F.3d 764, 764 (7th Cir. 2019).

[13] Defendant Braun's reliance upon *FTC v. Noland*, 2021 WL 5493443 (D. Ariz. Nov. 23, 2021), is equally misplaced. As recently explained in another case, *Noland* did not "address[] whether the FTC was entitled to a presumption of reliance that, if applicable, would have overcome any concerns with individual injury." *FTC v. QYK*

The Second Circuit adopted *Figgie*'s presumption of consumer reliance in *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014); *see also Moses*, 913 F.3d at 310. In *BlueHippo*, the court specifically rejected an argument that harm must be proven individually because "[t]o require proof of each individual consumer's reliance on a defendant's misrepresentations would be an onerous task with the potential to frustrate the purpose of the FTC's statutory mandate." 762 F.3d at 244. As the Court explained, "[t]he injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions." *Id.* Under the Second Circuit's framework, because the FTC has established presumed reliance, Defendant Braun had the opportunity, which he did not take, "to rebut the determined baseline loss calculation, allowing [him] to put forth evidence showing that certain amounts should offset the sanctions assessed against him." *Id.* at 246 (internal quotation and citation omitted); *see also FTC v. Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) (defendant must demonstrate "that *individual* transactions were atypical").

### 3. Section 19 Relief Amount

In calculating the proposed consumer redress amount for a monetary penalty pursuant to Section 19, the FTC inadvertently used the Defendant's full history of misrepresentations to small business consumers without accounting for the 3-year limitations period contained in 15 U.S.C. § 57b(d), which states that "[n]o action may be brought by the Commission under this section more than 3 years after the rule violation to which an action . . . relates." Though he did not specify the violations he believes to be outside of this limitations period, Defendant Braun correctly stated in his brief that this time limitation applies to a Section 19 monetary penalty.

---

*Brands LLC*, 2022 WL 1090257, at *8 (C.D. Cal. Apr. 6, 2022). As in *QYK Brands*, *Noland*'s concerns with consumer injury do not readily translate here," and because the FTC's theory of liability "turns on Defendant's pre-purchase, materially misleading [statements], the presumption of actual reliance standard can apply." *Id.*

(ECF No. 119 at 24–26.)[14]  In making automatic withdrawals from consumers' bank accounts even after consumers had repaid the Total Purchased Amount, Defendants are not only causing to be disclosed to any person (*i.e.*, consumers' banks) consumers' bank information by making the false claim to consumers and their banks that consumers still owe money under the Merchant Agreement but also effectively obtaining anew consumers' bank information with the claim that consumers have not yet repaid the Total Purchased Amount, all in violation of Section 521(a) of the GLB Act.  In addition, with each automatic withdrawal, Defendants are.  Accordingly, the FTC has determined that of the 1,499 deals Defendants entered into with small business consumers, Defendants made at least one withdrawal from consumers' bank accounts for 1,354 deals within the three-year statute of limitations period (*i.e.*, on or after June 10, 2017).  (PX37 at 4-5 ¶ 12.)[15]  Multiplying this number by the violation rate for overcollection and the average amount of overcollection determined by Dr. McAlvanah (SMF ¶¶ 194, 195) yields consumer injury of at least $3,062,703 caused by Defendants' false statements about the amount of funds consumers would need to repay.  Multiplying this number by the violation rate for underfunding and the average amount underfunded determined by Dr. McAlvanah (SMF ¶¶ 196, 197) yields consumer injury of at least $1,318,356 caused by Defendants' false statements about the amount of fees they would withhold.  Adding these two consumer injury figures yields a revised total consumer injury of at least $4,381,059.

---

[14] Civil penalties for Defendant Braun's violations of the GLB Act are subject to a 5-year limitations period, *see* 28 U.S.C. § 2462, and the FTC's proposed amount therefore remains unchanged.

[15] District courts have broad discretion to consider evidence submitted with reply papers. *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venezuela*, 341 F. App'x 722,724–25 (2d Cir. 2009).  In particular, courts allow additional declarations where they "do not raise new arguments, but rather respond to issues raised in opposition or amplify points already made on the initial motion." *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007); *Bonnie & Co. Fashions v. Bankers Trust Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.").  Here, the supplemental declaration of FTC Investigator Kwok does not raise new issues but merely addresses Defendant Braun's statute of limitation argument and his claims of inability to pay a civil penalty.

Defendant Braun also claims, without any legal support, that the FTC cannot rely on "statistical models to prove how many customers were injured and the damage they suffered." (ECF No. 119 at 36.)  On the contrary, the FTC need only make a reasonable approximation of consumer injury, after which the burden shifts to defendants.  *See, e.g., Moses*, 913 F.3d at 310.  Any risk of uncertainty "fall[s] on the wrongdoer whose illegal conduct created the uncertainty." *Bronson Partners*, 654 F.3d at 368.  The FTC has made such a reasonable approximation, and Defendant Braun's objections fail to demonstrate that the FTC's calculations are inaccurate.

Other than his own self-serving affidavit, Defendant Braun relies on the expert disclosure report of Paul Ribaudo submitted by Defendants RCG and Giardina.  As discussed in detail in the FTC's Rule 56(c)(2) objection (ECF No. 128), Mr. Ribaudo's report is neither sworn nor verified and thus is not admissible for purposes of Rule 56 and should be disregarded.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).  But even if it were admissible, Mr. Ribaudo's report does not offer any principled basis to disregard the FTC's calculations.  First, he opined that, because some of Defendants' consumers were repeat borrowers, any overcollections should be measured against all those consumers' agreements.  For example, if a consumer entered into three deals with Defendants, two of which resulted in underpayment and one of which resulted in overpayment, Mr. Ribaudo believes the FTC should have looked at the net payments from the consumer.  Similarly, he opined that any violation rate derived from the random sample should have been multiplied by the number of merchants rather than the number of funded deals.  Because Defendants required consumers to enter into a new merchant agreement for each new deal (with a new Total Purchase Price, Total Purchased Amount, and Daily Payment) (SMF ¶ 67), however, the more appropriate measure is to calculate violation

rates and injury at the deal level.[16]  *Cf. FTC v. Connelly*, 2006 WL 6267337, at *11 (C.D. Cal.

Dec. 20, 2006) (in determining analogous success rates in debt relief operations, denominator is

all consumers not just those completing program); Telemarketing Sales Rule, 75 FR 48458,

48501 (Aug. 10, 2010) ("[A] provider must take into account the experience of all of its

customers.").  Mr. Ribaudo's report also identified several deals that Defendants claimed were

either duplicates or were not, in fact, funded by Defendants, but Dr. McAlvanah already

incorporated that into his expert declaration.  (*See* PX34 at 5–6 ¶ 14).  Defendant Braun also

makes the spurious claim that because the FTC's expert is an FTC employee, he is "inherently

biased."  (ECF No. 119 at 38.)  Defendant Braun, however, fails to identify any specific

circumstance raising suspicion that Dr. McAlvanah's status as an FTC employee affected his

opinions.

### 4. Defendant Braun Is Liable for Civil Penalties for His Knowing Violations of the GLB Act

Defendant Braun, again relying only on his self-serving affidavit, asserts that he was not

aware that his actions violated the GLB Act and that he is therefore not liable for civil penalties

for such violations.  Civil penalties are appropriate for violations of the GLB Act made "with

actual knowledge or knowledge fairly implied on the basis of objective circumstances that such

act is unfair or deceptive and is prohibited by such rule."  15 U.S.C. § 45(m)(1)(A).  Courts

interpreting this standard hold that the knowledge element is satisfied where "a reasonable

person under the circumstances would have known of the existence of the provision and that the

action charged violated that provision." *United States v. Nat'l Fin. Sevs., Inc.*, 98 F.3d 131, 139

(4th Cir. 1996).  After citing the same cases used by the FTC to explain the relevant standard,

---

[16] Using the above example of a merchant entering into three deals, Mr. Ribaudo would say that the two underpayments offset the overpayment resulting in a net underpayment so that at the merchant level the violation rate would be 0% (*i.e.*, 0/1), whereas viewing the transactions at the deal level results in a violation rate of 33% (*i.e.*, 1/3).

Defendant Braun discusses several inapposite cases that do nothing to refute the FTC's arguments that he is liable for civil penalties. (ECF No. 119 at 30–32.) *Sucesores de Don Carlos Nuñez Y Doña Pura Galvez, Inc., v. Société Générale, S.A.* is a case involving assets confiscated from a Cuban bank that makes an analogy, in dicta, to FTC rules, and ultimately holds only that the court could not infer that the defendants had knowledge of a foreign rule applicable 40 years prior and never applicable to them—a factual scenario nothing like that present here. 2021 WL 6065758, at *10 (S.D.N.Y. Dec. 22, 2021).[17] Braun argues the FTC was required to give him notice before imposing civil penalties, citing only *United States v. J.B. Williams Co.*, 498 F.2d 414, 434 (2d Cir. 1974), because, in Braun's words, that case recognized that there "might" be circumstances where notice "may" be required. (ECF No. 119 at 32.) In that case, which involved a different section of the FTC Act, Section 5(*l*), the Court rejected a defendant's "extreme" argument that notice was required before civil penalties would accrue, concluding "[w]e find nothing in § 5(l) or in reason that would require such action [notice] by the FTC in every case." *Id.*

For the reasons discussed in Section II.B above, Defendant Braun's self-serving affidavit, supported by no other evidence and contrary to evidence put forward by the FTC, is insufficient to raise a dispute as to a material fact as to his knowledge of the GLB Act. One of RCG's key vendors, Actum Processing, which Defendants used to debit consumers' bank accounts, named the GLB Act and required compliance with it. (SMF ¶¶ 190–192.) And Defendant Braun personally directed Giardina to sign a one-paragraph contract amendment that similarly referenced the GLB Act. (*Id.* ¶¶ 28, 193.)

---

[17] *Katharine Gibbs Sch. (Inc.) v. FTC*, 612 F.2d 658 (2d Cir. 1979), is similarly irrelevant. There the court held in favor of plaintiff home study schools who had challenged an FTC rule, holding that the rule was insufficiently specific, and the Court concluded "that Congress expected more [specificity] than this." *Id.* at 662. The GLB Act, of course, is an act of Congress so there is no doubt that it reflects Congress's intent.

Because Defendant Braun was aware of the GLB Act, civil penalties are appropriate for his misrepresentations to consumers in violation of the act.

### 5. The Maximum Civil Penalty Amount Is Appropriate in Light of Defendant Braun's Driving Role in Defendants' Misconduct

Each of the five factors considered in determining civil penalty amounts (degree of culpability, history of prior conduct, ability to pay, effect on ability to continue to do business, and other factors as justice may require) weigh in favor of imposing the maximum amount of $46,517 for each of Defendant Braun's violations of the GLB Act.  Braun focuses his argument for a lower civil penalty amount on his ability to pay, relying on his own declarations to assert that he is unable to pay civil penalties.  (ECF No. 119 at 33.)  This factor, however, "is not . . . determinative" in assessing civil penalties.  *United States v. Cornerstone Wealth Corp., Inc.*, 549 F. Supp. 2d 811, 824 (N.D. Tex. 2008); *see also United States v. Comm. Rec. Sys., Inc.*, 2017 WL 1065137, at *3 (E.D. Tex. 2017) (holding that a defendant's ability to pay "is merely one factor to be considered by the Court").  Further, when courts consider a defendant's ability to pay, they "look beyond the funds and assets currently in the defendant's possession," and also consider dissipated assets.  *United States v. Daniel Chapter One*, 89 F. Supp. 3d 132, 154 (D.D.C. 2015). The substantial income—more than $44 million over four years—paid by RCG to an entity closely associated with Defendant Braun (PX37 at 4 ¶¶ 8, 10–11) indicates significant resources are available to pay civil penalties to the extent the Court considers this factor.

The other factors similarly weigh in favor of imposition of the maximum civil penalty amount.  Defendant Braun is highly culpable given his personal involvement in all aspects of Defendants' unfair and deceptive practices, his leading role in and personally making violent and abusive threats to struggling consumers (*e.g.*, "I am going to beat the s*** out of you," (SMF ¶

162; *see also* SMF ¶¶ 158–66)), and the apparent delight he took in profiting from Defendants' unscrupulous practices (*e.g.*, suggesting Defendants leave a consumer's automatic withdrawals on "forever and over collect lol," (SMF ¶ 77)).  His misconduct permeated throughout the corporate defendants and occurred over at least several years.  The fourth factor—the effect of civil penalties on the ability to continue business—considers the ability of a defendant business to continue, and because RCG has both ceased operations and, if it had not, is deserving of a ban on ongoing operations due to its misconduct, it too weighs in favor of a stiff civil penalty. Defendant Braun's claim that a large penalty would "effectively preclude[e] him from any financial future" (ECF No. 119 at 34) is irrelevant; that is not what the fourth factor considers, and, in any event, he could find a new line of work.

The Court has substantial discretion in determining the amount of civil penalties imposed on Defendant Braun, but each factor counsels imposition of the maximum amount in light of Defendant Braun's extensive bad behavior and resulting profits.[18]

## IV.     CONCLUSION

Accordingly, the FTC respectfully requests that this Court grant its motion for summary judgment and enter the revised proposed final order.

---

[18] Defendant Braun does not respond in his Opposition to the FTC's arguments regarding the affirmative defenses asserted in his answer, and therefore concedes that they should be rejected.  (*See* ECF No. 110 at 17 n.8, 34 n.11, 37–39.)

Respectfully submitted,

Dated:  June 3, 2022

/s/Gregory A. Ashe
GREGORY A. ASHE
JULIA E. HEALD
Federal Trade Commission
600 Pennsylvania Ave. NW
Mail Stop CC-10232
Washington, DC 20580
Tel: (202) 326-3719 (Ashe)
Tel: (202) 326-3589 (Heald)
Facsimile: (202) 326-2752
Email: gashe@ftc.gov, jheald@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 3, 2022, a true and correct copy of **FTC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JONATHAN BRAUN** was filed electronically with the United States District Court for the Southern District of New York using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Gregory A. Ashe
GREGORY A. ASHE
Attorney for Federal Trade Commission