UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FEDERAL TRADE COMMISSION,

                              Plaintiff,          Case No. 20-CV-04432-LAK

        -against-

RCG ADVANCES, LLC, RAM CAPITAL
FUNDING, LLC, ROBERT L. GIARDINA,
JONATHAN BRAUN, and TZVI REICH,

                              Defendants.
----------------------------------------------------------X


**PROPOSED INTERVENORS' APPLICATION SEEKING TO INTERVENE
FOR LIMITED PURPOSE OF VACATING LIQUIDATION ORDER
<u>AND FOR EMERGENCY INTERIM STAY</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES... ................................................................................................ ii

 BACKGROUND ...................................................................................................................2

ARGUMENT.........................................................................................................................8

CONCLUSION ...................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Aristocrat Leisure Limited v. Deutsche Bank Trust Co. Americas*,
    262 F.R.D. 348 (S.D.N.Y. 2009) ...........................................................................9

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ............................................................................ 8

*E. Capital Invs. Corp. v. GenTech Holdings, Inc.*,
    No. 21-CV-10300-LLS, 2022 U.S. Dist. LEXIS 41727 (S.D.N.Y. Mar. 9, 2022) ............ 6

*Floyd v. City of New York*,
    302 F.R.D. 69 (S.D.N.Y. 2014) ....................................................................... 8

*In re Magnale Farms, LLC*,
    No. 17-61344, 2018 Bankr. LEXIS 1040 (Bankr. N.D.N.Y. Apr. 3, 2018) ...................... 15

*Kupferman v. Consol. Research & Mfg. Corp.*,
    459 F.2d 1072 (2d Cir. 1972) .......................................................................... 10

*Mass. Bricklayers and Masons Funds v. Deutsche Alt-A Sec.*,
    273 F.R.D. 363 (E.D.N.Y. 2011) ...................................................................... 11

*Patton Boggs LLP v. Chevron Corp.*,
    No. 12-CV-9176-LAK, 2016 U.S. Dist. LEXIS 169286 (S.D.N.Y. Dec. 7, 2016) ............ 1

*Specrite Design, LLC v. Elli N.Y. Design Corp.*,
    No. 16-CV-6154-ER, 2017 U.S. Dist. LEXIS 113416 (S.D.N.Y. July 20, 2017) ............ 12

*Tachiona v. Mugabe*,
    186 F. Supp. 2d 383 (S.D.N.Y. 2002) ................................................................ 1

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    No. 6:12-CV-00196 (BKS/ATB), 2017 U.S. Dist. LEXIS 222869 (N.D.N.Y. Jan. 6, 2017). 1

*United States v. Peoples Benefit Life Ins. Co.*,
    271 F.3d 411 (2d Cir. 2001) ........................................................................... 8

*U.S. Postal Service v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) .......................................................................... 11

*Volmar Distribs. v. N.Y. Post Co.*,
    152 F.R.D. 36 (S.D.N.Y 1993) ....................................................................... 12

**Statutes and Rules**                                                    **Page(s)**

FRCP 24 ...................................................................................................................1, 8, 10

28 U.S.C. § 1331 ......................................................................................................1

28 U.S.C. § 1332 ......................................................................................................1

28 U.S.C. § 1367 ......................................................................................................1

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of Broad Street Global Fund

SCSp ("Broad Street Fund"), Broad Street GP II S.'ar.l. ("Broad Street GP"), CJS Technology

Select Management LLC ("CJS Management LLC"), CJS Technology Select Fund LLC ("CJS

Fund LLC") and CJS Financial Corp. ("CJS Advisers") (collectively, "Broad Street" or "Broad

Street Intervenors")[1] in support of their application, brought by order to show cause, to: (i)

intervene (the "Motion to Intervene") in the above action pursuant to Rule 24 of the Federal Rules

of Civil Procedure for the limited purpose of seeking a vacatur (the "Intervenors' Claim")[2] of the

Order Directing Liquidation and Transfer of Certain Assets to Effectuate Final Order, entered on

July 11, 2022 (ECF No. 138) (the "Liquidation Order") and (ii) their emergency application in

---

[1] Broad Street Fund is a special limited partnership organized in Luxembourg, with its principal place of business located in Luxembourg. Broad Street GP is a société à responsabilité limitée organized in Luxembourg, with its principal place of business located in Luxembourg. CJS Management LLC is a Delaware limited liability company, with its principal place of business located in South Carolina. Each of the members of CJS Management LLC are citizens and residents of South Carolina. CJS Fund LLC is a Delaware limited liability company, with its principal place of business located in New Hampshire. There are three members of CJS Fund LLC: two members are citizens and residents of South Carolina, and the other member is a citizen and resident of New Hampshire. CJS Advisers is a Florida corporation, with its principal place of business located in New Hampshire.

[2] The Broad Street Intervenors submit that the basis for the Intervenors' Claim is clearly articulated in this submission, and that in view of the unique circumstances at bar, the Motion to Intervene should be treated as a functional equivalent of a pleading. No prejudice would befall the RCG Defendants as both the restrictive covenants regarding redemption rights and the forum selection clause in the controlling limited partnership agreement (an agreement that was inexplicably hidden from the Court) bar the relief that was seemingly consented to by the RCG Defendants and the FTC, and the RCG Defendants can hardly claim any surprise by the Broad Street Intervenors' intervention here. *See Patton Boggs LLP v. Chevron Corp.*, No. 12-CV-9176-LAK, 2016 U.S. Dist. LEXIS 169286, at *14 n.22 (S.D.N.Y. Dec. 7, 2016) ("As [the proposed intervenors] have made their position quite clear in extensive briefing, the Court will take papers as the substantial equivalent of the missed pleading."); *Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) (noting that where, as here, "the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements."); *see also Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-CV-00196 (BKS/ATB), 2017 U.S. Dist. LEXIS 222869, at *21 n.4 (N.D.N.Y. Jan. 6, 2017) ("Here, Century specifically articulates its request to intervene for the sole purpose of challenging the parties' motions to seal summary judgment submissions in its filings. Thus, the Court waives the separate pleading requirement." (Internal citations omitted)).

view of the five (5) day period in the Liquidation Order for an interim stay of (a) any enforcement efforts, and (b) any actions or performance, in connection with the Liquidation Order pending a final disposition of the Motion to Intervene and the Intervenors' Claim.[3]

## BACKGROUND[4]

### The FTC Action and Settlement

This action involves claims brought by the Federal Trade Commission (the "FTC") against various Defendants, including Defendants RCG Advances, LLC (f/k/a Richmond Capital) and Robert L. Giardina (collectively, the "RCG Defendants"), for violations of Federal law.  ECF 84. According to the ECF docket, on June 2, 2022, the FTC and the RCG Defendants resolved their dispute pursuant to a Court approved settlement (the "Stipulated Final Order").  ECF 127.  As part of that settlement, the RCG Defendants are required, among other things, to make certain payments to the FTC.  ECF 127 at Section VI.  The Court has retained jurisdiction over this matter for purposes of construction, modification and enforcement of the Stipulated Final Order.  ECF 127 at XIII.

---

[3] The Broad Street Intervenors have submitted concurrently herewith the Declaration of Irwin Weltz ("Weltz Decl.") and Declaration of Steven Baldassarra (the "Baldassarra Decl.").

[4] As a threshold matter, this Court has subject matter jurisdiction over the Broad Street Intervenors' application to have the Court vacate the Liquidation Order pursuant to 28 U.S.C. §§ 1331, 1332 and 1367(a). Specifically, each of the causes of action asserted against the RCG Defendants in the First Amended Complaint (ECF No. 84) arise under a federal statute and the Court has retained jurisdiction over enforcement of the parties' settlement of which the Liquidation Order is an outgrowth.

Additionally, and independent of the Court's supplemental jurisdiction, there is also complete diversity as and between each of the Broad Street Intervenors and the other parties to this action (*supra*, fn. 1) and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, in light of the Liquidation Order which directs the Broad Street Intervenors to potentially liquidate millions of dollars to the RCG Defendants, in derogation of the controlling limited partnership agreement.

**The Liquidation Order**

On or about July 8, 2022, FTC and the RCG Defendants filed a joint Stipulated Motion for Order Directing Liquidation and Transfer of Certain Assets to Effectuate Final Order ("Stipulated Motion for Order") seeking an order directing CJS Select Technology Fund LLC[5] and any other necessary person to liquidate "CJS Technology Select Management account number xxxx299 in the name of Feingold Morgan Sanchez Trust/Escrow FBO Richmond Capital (or any successor account) ("Securities Account") and then transfer the proceeds of such liquidation" to "the RCG Defendants' counsel's client trust account, Citibank account number xxxx0997 in the name of J. Iandolo Law P.C. ("Trust Account"). *See* ECF 137 and 137-1.  Neither the FTC nor the RCG Defendants provided any notice of this application to the Broad Street Intervenors. This is particularly troubling since the RCG Defendants are well aware that they are not entitled to obtain the property covered by the application at this time (the "Property").  *See* Baldassarra Decl. at ¶ 3.

The Property subject to the Liquidation Order is a limited partnership interest owned by Defendant RCG Advances, LLC in the Broad Street Fund, which includes a series fund referred to as Portfolio F1 and a series fund referred to as Portfolio R2.  As the RCG Defendants are well aware, Defendant RCG Advances, LLC's investor redemption rights to the Property have already been exhausted for this calendar year for Portfolio F1, and there remains a lock up on investor redemptions with respect to Portfolio R2, which includes illiquid, ongoing real estate investments presently not complete. *See* Baldassarra Decl. at ¶ 4.

---

[5] The Stipulated Motion for Order and, consequently, the Liquidation Order's reference to "CJS Select Technology Fund LLC" appears to be in reference to proposed intervenor CJS Technology Select Fund LLC.

Without this vital information, known to the RCG Defendants, the Court approved the parties' application and issued the Liquidation Order. ECF 138.  The Liquidation Order provides that,

> within five (5) business days of the receipt of this Order through any means, CJS Select Technology Fund LLC and any other necessary person shall liquidate, or cause to be liquidated, CJS Technology Select Management account number xxxx299 in the name of Feingold Morgan Sanchez Trust/Escrow FBO Richmond Capital (or any successor account) and transfer the proceeds of such liquidation to Citibank account number xxxx0997 in the name of J. Iandolo Law P.C. in accordance with written instructions to be provided by counsel to the RCG Defendants.

**The Broad Street Intervenors and Intervenors' Claim**

The Broad Street Fund was established to invest the funds raised from its partners in a pool of assets.  Broad Street GP is the general partner of the Broad Street Fund.  CJS Management LLC (an affiliate of Broad Street) is the administrator of the Broad Street Fund.  CJS Advisers is a registered investment advisor affiliated with Broad Street and CJS Fund LLC is also an affiliated entity.  *See* Baldassarra Decl. at ¶ 6.

Defendant RCG Advances, LLC invested funds in the Broad Street Fund and is a limited partner.  The account referenced in the Liquidation Order (the "Account") is a sub-account for Defendant RCG Advances, LLC representing its proportional interest in the Broad Street Fund (*i.e.*, Portfolio F1 and Portfolio R2).  Baldassarra Decl. at ¶ 6.[6]

The limited partnership is governed by the Special Limited Partnership Agreement (the "SLPA").  *See* Baldassarra Decl. at **Exhibit B**.  Section 8.1 of the SLPA (under "Redemption of

---

[6] As reflected in the most recent statement for the Account for the quarter ended March 31, 2022, the Account holds publicly traded stocks valued at approximately $2.6 million for Portfolio F1.  There are approximately 150 investors in Portfolio F1 and Portfolio F1 includes a mix of securities, many of which are not considered actively traded.  There are approximately 400 investors in Portfolio R2 and Portfolio R2 includes illiquid, ongoing real estate investments presently not complete valued at approximately $4 million. *See* **Exhibit A** of Baldassarra Decl. and ¶ 7.

4

Partnership Interests") provides in pertinent part that (i) "A Limited Partner may not, of its own initiative, require the relevant Sub-Fund to redeem its shares," and (ii) "Upon a decision by the General Partner to redeem any Interests, such redemption shall be up to the amount and in terms **specified by the General Partner in a notice served to the Partners**. Such notice will specify the number of Interests to be redeemed, the redemption price which shall be equal to the value and the redemption date as to be determined by the General Partner." (Emphasis supplied).

There are two separate notices issued in connection with the two discrete series funds that Defendant RCG Advances, LLC invested in that were previously provided to the limited partners invested in those portfolios. Baldassarra Decl. at ¶ 9.

### *The Portfolio FI Notice*

The first notice relates to Portfolio F1 and such notice provides that there cannot be a "withdrawal of greater than 50% of account value in any calendar year." *See* Baldassarra Decl. at ¶ 10 and **Exhibit C**.

The RCG Defendants apparently failed to advise the Court that Defendant RCG Advances, LLC already put in their redemption request for calendar year 2022 for Portfolio F1 and actually already received 1,333,538.68 (the "Redeemed Sum"). Thus, on April 22, 2022, a wire transfer of $1,333,538.68 was sent to attorney Iandolo's trust account. The Redeemed Sum represents the "50% of account value in any calendar year" for the F1 Portfolio in the Account *which satisfied the total remaining redemption amount permitted under the SLPA for calendar year 2022*. Consequently, the RCG Defendants are not entitled to any further redemptions for calendar year 2022. In addition to breaching the SLPA, the Liquidation Order would also adversely impact the limited partnership and its investors by requiring the forced sale of pooled investments under current market conditions, negatively impact fund valuations and force the general partner into a

premature, disorderly liquidation of investor assets - - the opposite of seeking to maximize investor gains. This is precisely the reason for limitations on redemptions. Baldassarra Decl. at ¶ 10.

### *The Portfolio R2 Notice*

The second notice is for Portfolio R2, and it provides that "investor funds are locked up until all real estate in the portfolio has been liquidated. It is the Manager's intent to liquidate all assets on or before January 1, 2023, provided market conditions permit unless so extended due to inability to obtain sufficient return." *See* Baldassarra Decl. at ¶ 12 and **Exhibit D**. This lock up in the second notice remains in place. A premature, forced liquidation of Portfolio R2, if it even could be done, will, *inter alia*, compromise and significantly impair the completion of the underlying real estate projects as the outflow of such capital will necessarily need to be raised elsewhere and any such delay or lack of capital will have a material adverse effect on those projects, and most significantly, put in jeopardy the investments made by the other limited partners. Baldassarra Decl. at ¶ 12.[7]

---

[7] Moreover, by burying the existence of the SLPA and clandestinely submitting a the Stipulated Motion for Order without any mention of the SLPA, the RCG Defendants are also improperly sidestepping the forum-selection clause in the SLPA which mandates that "All disputes involving this SLP Agreement, the investors, the General Partner including its affiliates and legal and accounting professionals or any investment related to this SLP Agreement shall only be pursued and resolved in a court in the country of Luxembourg." **See Exhibit B** of Baldassarra Decl. at § 15.3. Thus, the Stipulated Motion for Order, which the Broad Street Fund is not a party to and had no notice of, improperly short circuits a Luxembourg court's ability to decide a crucial issue which the parties contractually agreed would be heard and decided exclusively in such court. Consequently, absent a vacatur of the Liquidation Order, the Broad Street Intervenors will be irreparably harmed, irreversibly prejudiced, unfairly deprived of their day in the forum that they and the other limited partners (including the RCG Defendants) are contractually bound to. *See E. Capital Invs. Corp. v. GenTech Holdings, Inc.*, No. 21-CV-10300-LLS, 2022 U.S. Dist. LEXIS 41727, at *7 (S.D.N.Y. Mar. 9, 2022) ("None of the reasons sufficiently overcomes the strong policy in favor of enforcing the bargained-for forum selection clause. While it is true that there will be significant overlap in the facts with respect to Note 1 and the action on Notes 2-8, 'efficiency and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory forum selection clause.'").

In April 2022, Anthony Varbero, Esq., counsel for the RCG Defendants, contacted the Manager of Broad Street by telephone, and demanded that the Manager had to fully redeem Defendant RCG Advances, LLC.  The Manager specifically advised Mr. Varbero that the SLPA restricted his client from obtaining any further redemption beyond the wire described above and that Broad Street would not be complying with his improper request.  *See* Baldassarra Decl. at ¶ 14, **Exhibit E**.

During another telephone call with Mr. Varbero at around the same time frame, he advised the Manager that the Redeemed Sum was intended to be used to pay and satisfy a portion of a settlement that, according to Mr. Varbero, had been agreed to between the RCG Defendants and the FTC, but that Mr. Giardina had spent the Redeemed Sum on six-figure legal bills to his legal counsel and asked Broad Street to ignore the redemption restrictions as a favor.  Mr. Varbero further volunteered that Mr. Giardina actually had the ability to use other assets to satisfy the FTC, but that Mr. Giardina could not use such assets because he did not disclose them to the FTC.  Broad Street declined Mr. Varbero's demand as further redemptions are not permitted under the SLPA. Baldassarra Decl. at ¶ 15.

Mr. Varbero also advised Broad Street that he would be filing a lawsuit over their improper redemption requests.  Broad Street waited to receive the lawsuit papers, but they never arrived. Instead, on July 11, 2022, Broad Street received an email from the FTC enclosing the Liquidation Order.  This is the first point in time that Broad Street was notified of (and became aware of) what was going on here.  Also, contrary to the Liquidation Order, the RCG Defendants have not even provided wire transfer instructions.  Baldassarra Decl. at ¶ 16, **Exhibit F**.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD GRANT INTERVENTION
FOR THE BROAD STREET INTERVENORS AND STAY THE LIQUIDATION ORDER**

Rule 24(a) of the Federal Rules of Civil Procedure, which sets out the standards governing motions to intervene as of right, provides that the district court must allow any party to intervene who, "[o]n timely motion,"

> . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

Thus, a putative intervenor as of right must "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). For a party to intervene in a case as of right pursuant to Rule 24(a)(2), that party must have an interest in the case that is "direct, substantial, and legally protectable." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).

Whether each requirement is satisfied, however, is a determination that cannot be made through the application of "bright line" tests. *Floyd v. City of New York*, 302 F.R.D. 69, 83-84 (S.D.N.Y. 2014) (noting that, "[i]n applying the Rule, courts must be cognizant that its "various components . . . are not bright lines, but ranges — not all 'interests' are of equal rank, not all

8

impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness"). "Courts applying Rule 24 accept as true the non-conclusory allegations of the motion," but "must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Aristocrat Leisure Limited v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

The Broad Street Intervenors amply satisfy this standard. First, the Motion to Intervene has been filed in a timely manner. The Broad Street Intervenors were not provided with any notice of the parties Stipulated Motion for Order and were thereby deprived of any opportunity to object in the first instance. The first time the Broad Street Intervenors got any inkling of what was transpiring here was on July 11, 2022, when they received a copy of the Liquidation Order via email from the FTC. On July 14, 2022, the Broad Street Intervenors promptly advised the Court of various omitted facts and their objection to the Liquidation Order. *See* ECF No. 139 (the "Objection Letter"). On July 15, 2022, the Court denied the Objection Letter, without prejudice to the Broad Street Intervenors' right to file a motion to intervene. ECF 140. Thus, there can be no genuine dispute that the instant Motion to Intervene, filed one business day after the Court's denial of the Objection Letter without prejudice, is timely, and as described below, should be granted to avoid a significant prejudice to the Broad Street Intervenors.

Second, the Broad Street Intervenors properly claim an interest relating to the property or transaction that is the subject of the action. Indeed, as described, the FTC and the RCG Defendants apparently reached a settlement of the action, pursuant to which the RCG Defendants, *inter alia*, were required to make certain payments within a specified period of time. The proposed settlement was ultimately signed by the Court and entered as the Stipulated Final Order. The parties are now

9

apparently seeking to use some or all of the Property in connection with the settlement. However, that Property is not currently available to be used for the settlement by virtue of the contractually agreed to redemption restrictions and any liquidation of the Property will also cause damage to the Broad Street Intervenor's other limited partners and investors. Baldassarra Decl. ¶¶ 11-12. The RCG Defendants were aware of these redemption restrictions and should have planned to use different assets to satisfy the settlement requirements. Baldassarra Decl. ¶¶ 14-15.

The third and fourth requirements of intervention under Rule 24(a)(2) are related and have also been satisfied. These requirements are that the proposed intervenor demonstrate both that it "is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest" and that "[its] interest is not adequately represented by the other parties." Here, faced with a 5-day turnover order for the Property, the Broad Street Intervenors' only real remedy is to seek to vacate the Liquidation Order. Neither the FTC nor the RCG Defendants can or will adequately protect the Broad Street Intervenors' interests as they already proceeded, without giving notice to the Broad Street Intervenors, in derogation of the Broad Street Intervenors' contractual rights. *See Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1074 n.1 (2d Cir. 1972) ("Since Consolidated appears to be defunct, Jacobson is the real party in interest. Although it would have been more orderly if he has sought intervention pursuant to F.R.Civ.P. 24, **a finding of fraud on the Court empowers the district court to set aside the judgment *sua sponte*.**" (Emphasis added)).

In the event the Court should decline intervention as of right, it should permit intervention on a permissive basis under Federal Rule of Civil Procedure 24(b). Thus, Rule 24(b) provides in part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law

10

or fact . . . . In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties rights.

Permissive intervention is thus within the court's broad discretion. *See U.S. Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978). In exercising such discretion, courts consider factors that include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Id.* (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." *Mass. Bricklayers and Masons Funds v. Deutsche Alt-A Sec.*, 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

The Court should use its discretion to grant permissive intervention here. The issue at hand centers upon whether the RCG Defendants can utilize the Property to satisfy their settlement obligations to the FTC. Plainly, they cannot, and the parties have already demonstrated that they cannot adequately protect the Broad Street Intervenors' interests. The RCG Defendants should never have promised the Property to the FTC (if they did), and can simply resort to other assets to avoid the unwarranted potential harm to the Broad Street Intervenors. Baldassarra Decl. ¶ 16.

## POINT II

### THE COURT SHOULD STAY THE LIQUIDATION
### ORDER PENDING A DETERMINATION OF THE MOTION TO INTERVENE

There exists good cause for the Court to stay the Liquidation Order pending a final resolution of the instant Motion to Intervene and decision on vacating the Liquidation Order (*i.e.*, the Intervenors' Claim). The Court should issue a stay here since it will avoid significant unjust

11

and irreparable harm and prejudice to the Broad Street Intervenors and their investors without any prejudice to any party in this action. *See* Weltz Decl. ¶ 14; Baldassarra Decl. ¶ 11-12.

"[D]istrict courts have the inherent power, in the exercise of discretion, to issue a stay when the interests of justice require such action." *Volmar Distribs. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y 1993). In deciding whether a stay is appropriate, courts consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See id.* "In balancing these factors, courts make a case-by-case determination, in which the basic goal is to avoid prejudice." *Specrite Design, LLC v. Elli N.Y. Design Corp.*, No. 16-CV-6154-ER, 2017 U.S. Dist. LEXIS 113416, at *4-5 (S.D.N.Y. July 20, 2017) (internal citations and quotations omitted). Here, all of these factors militate in favor of staying the Liquidation Order pending the disposition of the Motion to Intervene and the Intervenor's Claim.

Indeed, neither the FTC nor the RCG Defendants could or would be prejudiced by a stay of these proceedings since the FTC and RCG Defendants have already resolved their claims in this action for $2,713,705.00 (the "Settlement Amount") (subject to various caveats concerning the disposition of a separate, related action captioned *People v. Richmond Capital Group, LLC, et al. Index No. 451368/2020*, currently pending in the Supreme Court of the State of New York, County of New York (the "NYAG Action")) to be paid as follows:

> B. Settling Defendants are ordered to pay to the FTC the judgment entered in Section VI.A above as follows:
>
> 1. Settling Defendants shall pay to the FTC One Million, Five Hundred Thousand Dollars ($1,500,000), which, as Settling Defendants stipulate, their counsel holds in escrow for no purpose other than payment to

the FTC. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of the FTC;

     2. Settlings Defendants shall pay One Million, Two Hundred and Thirteen Thousand, Seven Hundred, and Five Dollars ($1,213,705) on or before twelve months from the date of entry of this Order, to the FTC, in accordance with instructions provided by a representative of the FTC; provided that if on or before twelve months from the date of entry of this Order, Settling Defendants pay an amount equal to or greater than the amount set forth in this Section VI.B.2 to the State of New York pursuant to any judgment entered in People v. Richmond Capital Group, Index No. 451368/2020 (N.Y. Sup. Ct.), Settling Defendants shall be deemed to have satisfied the payment obligation set forth in this Section VI.B.2.

ECF 127 at § VI.B. (Emphasis added).

     In connection therewith, the RCG Defendants' counsel, Joseph Iandolo, Esq., apparently opened an escrow account with Citibank, ending in XXXX0997 (hereinafter, the "Trust Account"), which the RCG Defendants apparently represented, as of the date of the Stipulated Final Order, is valued at "at least Three Million Dollars ($3,000,000) less any amount paid pursuant to VI.B.1." *See id.*, at § VI.E. ("The FTC's agreement to Section VI.B of this Order is expressly based on the material representations of [the RCG Defendants] that the value of the Trust Account as set forth in the Security Agreement is at least Three Million Dollars ($3,000,000) less any amount paid pursuant to Section VI.B.1").[8]

     Stated differently, the RCG Defendants represented to both the FTC and the Court that they had sufficient funds in their attorney's Trust Account to not only satisfy the first $1,500,000.00 tranche of the Settlement Amount (the "First Tranche"), but also, if necessary, the second tranche of $1,213,705.00 of the Settlement Amount (the "Second Tranche"). Indeed, nothing in the

---

[8] The Stipulated Final Order provides at §VI.C that the Trust Account shall have the same meaning as ascribed to it in the Guaranty and Security Agreement (the "Security Agreement") that is attached as Exhibit A to the Stipulation Injunction Order. In turn, the Trust Account in the Security Agreement is defined as "Citibank, N.A. account number XXXX0997 in the name of J. Iandolo Law P.C." ECF No. 127 at p. 23 of 26.

Stipulated Final Order implies that the RCG Defendants would need to obtain funds from any other source (let alone blatantly violate a redemption right in the SLPA) to satisfy the terms of the Stipulated Final Order.  To that end, the RCG Defendants were required to deliver the First Tranche to the FTC on or before June 9, 2022 (seven days after the entry of the Stipulated Final Order) and would necessarily need to wait until the earlier of (neither of which is believed to have been triggered): (1) twelve months after the entry of the Stipulated Final Order or (2) the disposition of the NYAG Action, before the Second Tranche would even come due.

Thus, it is unclear how or why on July 8, 2022 (the date of the Stipulated Motion for Order (ECF No. 137)) – one month *after* the deadline for the First Tranche – and without notice to any of the Broad Street Intervenors, the FTC and the RCG Defendants unilaterally determined that, notwithstanding the RCG Defendants' representations in the Stipulated Final Order that the Trust Account was sufficiently funded, a shotgun *ex parte* (as against the Broad Street Intervenors) order directing the liquidation of the Property is required "to effectuate the monetary provisions of the [Stipulated Final Order]." (ECF No. 137).  To be certain, the only amount that could have been due and owing to the FTC as of July 8, 2022 would have been the First Tranche and if the First Tranche had not, in fact, been paid to the FTC, then the FTC would have a remedy which has already been fixed at Section IV.E of the Stipulated Injunction Order (Emphasis added):

> The FTC's agreement to Section VI.B of this [Stipulated Injunction] Order is expressly based on the material representations of [the RCG Defendants] that the value of the Trust Account set forth in the Security Agreement is at least Three Million Dollars ($3,000,000) less any amount paid pursuant to Section VI.B.1. ***If, upon motion of the FTC, a Court determines that [the RCG Defendants] made a material misrepresentation or omitted material information concerning… the value of the Trust Account, the entire judgment amount set forth in Section VI.A, less any amounts previously paid by [the RCG Defendants], shall immediately become due and payable by the [RCG Defendants].***

Indeed, the RCG Defendants represented that they presently held sufficient funds in an attorney Trust Account and also ***contemplated a remedy*** with the FTC in the event that such representation was deemed false.   The FTC has, for reasons unknown to the Broad Street Intervenors, joined with the RCG Defendants ***to sidestep this contractual remedy that they seemingly bargained-for***, to force an improper liquidation event (without prior notice to the affected third parties) that will have severe consequences on the Broad Street Intervenors and hundreds of other investors. *See In re Magnale Farms, LLC*, No. 17-61344, 2018 Bankr. LEXIS 1040, at *15 (Bankr. N.D.N.Y. Apr. 3, 2018) ("Due process requires that parties in interest be given notice and an opportunity to be heard after due notice before they may be bound by a court order.").

The RCG Defendants had no legitimate grounds to engage in such chicanery and, more than that, the Court should not punish the Broad Street Intervenors and their investors because the FTC is now looking to give the RCG Defendants a "free pass" for apparently misrepresenting the value of the Trust Account.

Against this backdrop, no prejudice would befall either the FTC or the RCG Defendants if a stay is issued.   Indeed, the FTC has a remedy in the event that the First Tranche was not paid and if the First Tranche has been paid, then the FTC presently has no right to collect any amounts from the RCG Defendants. The RCG Defendants cannot possibly be prejudiced by a stay because, by requesting that the Court transfer the proceeds from the Account to the Trust Account, the RCG Defendants have effectively admitted (as they must) that they have no legal right to redeem the interests in the Account.

Conversely, if a stay is not granted and a court of competent jurisdiction ultimately determines that the liquidation at issue violates the SLPA and should not have been permitted,

then the Broad Street Intervenors would be severely prejudiced by the premature liquidation and without real recourse, *to wit*, the Broad Street Intervenors likely cannot pursue a claim against the FTC to recoup money damages and the RCG Defendants have likely been effectively rendered judgment-proof by their legal battles with the FTC and the New York State Attorney General as supported by their efforts to resort to interests they knew could not be liquidated by virtue of the restrictions on redemption.

Furthermore, there are at least three independent reasons why the interests of the Court also favor granting the stay requested by the Broad Street Intervenors. *First*, the RCG Defendants purposely failed to disclose to the Court that the purported "difficulty in getting CJS Select Technology Fund (and other necessary persons) to liquidate the Securities Fund" (ECF No. 137, at ¶3) was due to a contractual provision in the SLPA that bars a further liquidation of the Account. *Second*, the RCG Defendants' omission of the contractual provisions of the SLPA from the Court also hid the fact that, pursuant to the forum selection clause in the SLPA, this Court is not the proper forum to determine the RCG Defendants' rights to a liquidation of the Account *vis-à-vis* the Broad Street Intervenors. *Third*, although the RCG Defendants vaguely contend that a liquidation is necessary to effectuate some unidentified "monetary provision" of the Stipulated Final Order, the RCG Defendants fail to explain why they are presently in this position as, at base, the Stipulated Final Order was predicated on the RCG Defendants' affirmative representation that the Trust Account had sufficient funds. Thus, if the Trust Account did not have sufficient funds, then the RCG Defendants committed a fraud on the Court in procuring the Stipulated Final Order (and the Liquidation Order for that matter). As such, in the interests of justice, the Court should stay the enforcement of the Liquidation Order and any performance set forth therein, pending a final resolution of the Motion to Intervene and the Intervenors' Claim.

The fourth factor also weighs heavily in favor of a stay.  Indeed, even putting aside the contractual barrier that the RCG Defendants seemingly believe does not apply to them, the early liquidation of the assets in Portfolio F1 and Portfolio R2 will undoubtedly have severe prejudicial effects on hundreds of other investors that remain bound to the redemption restrictions in the SLPA. *See* Baldassarra Decl. ¶¶ 11-12.

Thus, as to Portfolio F1, the fire sale of approximately $1.3 million worth of securities amidst the current market volatility and under adverse conditions will undoubtedly cause precipitous downward selling pressure and result in a significant decline of the remaining securities (and even the securities that would need to be liquidated in this manner) held in the fund – the precise circumstance that the restrictive covenant in the SLPA seeks to avoid.

The consequences of even attempting to liquidate Portfolio R2 are even more catastrophic as Portfolio R2 is comprised of interests in various illiquid real estate projects that have not yet been completed.  A premature, forced liquidation of Portfolio R2 will, *inter alia*, stall or entirely compromise the completion of the underlying real estate projects as the outflow of such capital will necessarily need to be raised elsewhere and any such delay or lack of capital will have a material adverse effect on the hundreds of other investors that cannot unilaterally avail themselves of a right to redemption.

Finally, a consideration of the public interest also favors a stay insomuch as the Broad Street Intervenors did not receive notice or an opportunity to be heard prior to the FTC (a non-party to the SLPA) and the RCG Defendants agreement amongst themselves, post-judgment, to proceed as they did, and with the RCG Defendants abusing the judicial process to license them to violate other agreements with unrelated third-parties.  Indeed, to allow the Liquidation Order to stand without further scrutiny would result in a slippery-slope where a non-party to a suit can be

deprived of a substantial right without adequate due process.  At minimum, a stay should be granted to allow the Court to examine the relevant documentation and controlling provisions, which should have been presented to it in connection with the parties' Stipulated Motion for Order.

## CONCLUSION

For the reasons set forth herein and the Broad Street Intervenors' submissions,  the Broad Street Intervenors respectfully request that their Motion to Intervene in the above action be granted, the Liquidation Order be vacated and for a stay of (a) any enforcement efforts, and (b) any actions or performance, in connection with the Liquidation Order pending a final disposition of the Motion to Intervene and the Intervenors' Claim, and for such other and further relief in favor of the Broad Street Intervenors as this Court deems just and proper.

Dated: Mineola, New York
      July 18, 2022

                       Respectfully submitted,

             WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP

             By: _____
                 Irwin Weltz
                 Robert B. Volynsky
                 170 Old Country Road, Suite 310
                 Mineola, New York 11501
                 Tel: 516-506-0561
                 Fax: 516-855-8776
                 irwin@weltz.law
                 rvolynsky@weltz.law

                 *Attorneys for Proposed Intervenors*
                 Broad Street Global Fund SCSp, Broad Street GP II S.'ar.l., CJS Technology Select Management LLC, CJS Technology Select Fund LLC, and CJS Financial Corp.