**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

FEDERAL TRADE COMMISSION,                    Case No. 20-CV-4432-LAK

       Plaintiff,

v.


RCG ADVANCES, LLC, RAM CAPITAL
FUNDING, LLC, ROBERT L. GIARDINA,
JONATHAN BRAUN, and TZVI REICH

       Defendants.
------------------------------------------------------------X

**DEFENDANTS RCG ADVANCES, LLC AND GIARDINA'S MEMORANDUM IN**
**OPPOSITION TO PROPOSED INTERVENORS' APPLICATION**
**FOR IMMEDIATE INTERIM EMERGENCY RELIEF**

1

## I.   PRELIMINARY STATEMENT

Defendants RCG Advances, LLC (RCG") and Robert Giardina ("Giardina") submit this memorandum solely in connection with the Proposed Broad Street Intervenors[1] (hereafter ("Proposed Intervenors" or "Broad Street") Request for Emergency Relief. While some discussion of the merits is necessarily included herein,  Defendants request the opportunity to fully brief the substantive issues and disputed fact for the Court.

## II.   INTRODUCTION

Although just newly engaged, it has not taken undersigned counsel long to realize that something is terribly awry.  Our investigation into the mysterious facts surrounding the millions of dollars of escrow monies at issue remains ongoing, but what we have discovered thus far is troubling to say the least.

While there remains much we do not know, what we do know is this:  (1) between late 2018 and early 2019, defendant RCG wired a total of $9,070,000.00 to attorney David Feingold at Feingold Morgan Sanchez ("Feingold"), as escrow agent, pursuant to an escrow agreement, for the express purpose of funding legal settlements and claims and paying associated legal fees and expenses (the "Escrow Funds"); (2) as escrow agent, Feingold was obligated to receive and disburse the Escrow Funds to be used to pay any fines settlements, judgments, pending or threatened claims on Defendants' behalf, and had a limited power of attorney to execute documents to facilitate the transaction contemplated by the escrow agreement; (3) the escrow agreement includes no authorization to invest escrow funds in the purported Broad Street Global Fund or take any action which would impair the liquidity of the escrow funds; (4) in March

---

[1] The Broad Street Intervenors claim to include Broad Street Global Fund SCSp, Broad Street GP II S.'ar.1., CJS Technology Select Management LLC, and CJS Financial Corp.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000

2022, and in direct response to an inquiry by the FTC regarding the account that the Escrow Funds were being held in, attorney Feingold revealed for the first time that the monies were actually in a "hedge fund brokerage" account; (5) just days later Feingold abruptly resigned as escrow agent; (6) a statement from the purported hedge fund was eventually provided and reflected that, as of December 31, 2022, the account had a purported value of $6,673,077.25 ($4,000,000.00 in an alleged portfolio of illiquid real estate projects and $2,673,077.25 in a portfolio of technology stocks); (7) assuming the legitimacy of the hedge fund account statement provided (which remains in doubt), there are still millions of dollars of the Escrow Funds that remain unaccounted for; (8) no accounting has ever been provided by Feingold regarding the monies entrusted to him and his purported law firm (which has no website or other visible sign of operation); (9) attached to the intervenors' moving papers is a purported contract (undated and with no financial figures included therein) which, at face value, indicates that Feingold used some unknown portion of the escrow monies to purchase a "limited partnership" interest in the hedge fund; (10) RCG is being told by the hedge fund that it cannot access any of the Escrow Funds which were entrusted to Feingold to settle lawsuits and claims; and (10) as the coup de gras **it was just recently discovered the attorney Feingold is listed as the CEO on  the hedge fund's website**.

The Proposed Intervenors have not legal rights in this case. They are simply trying to obstruct the Court's lawful enforcement of the FTC Order and delay payment of the settlement funds to the FTC.

### III.     PROCEDURAL HISTORY

The evidence of the fraud, deceit, and misconduct by the Broad Street Intervenors, including by Broad Street's CEO David Feingold and COO Steven Baldassarra ("**Baldassarra**")

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131 305.379.9000

is flagrant. On December 10, 2018, Robert Giardina, on behalf of RCG, and Feingold, entered into an Escrow Agreement (the "**Escrow Agreement**"). The Escrow Agreement is attached as **Exhibit "A"**. The purpose of the Escrow Agreement was to hold RCG's funds in escrow for the purpose of funding settlement with the FTC and related cases. Central to its purpose, that the funds could be readily available pending expected settlements with the FTC and other governmental bodies. The Escrow Agreement directs that Feingold:

> shall receive in escrow from you sums of money (the "Money") ***to be used to pay any fines, settlements, judgements [sic], pending or threatened claims or any potential liabilities or monies owed that we belied based on the information that we have that may be asserted against you or your company, including but not limited to litigation, arbitrations, governmental fines, investigations or actions*** or claims of professionals of employees for fees or monies owed ("the Claims").

(emphasis added). The Escrow Agreement further states that "the firm of Feingold Morgan Sanchez, LLC shall be providing escrow services in a transaction related to this escrow arrangement and shall have ***a limited power of attorney*** to execute any and all documents ***in order to facilitate the transaction contemplated*** . . . ." (emphasis added). As stated in the Escrow Agreement, the reason RCG's funds were put into escrow was to allow Feingold to pay fines, settlements, and judgments on behalf of RCG.

After the Escrow Agreement was executed, RCG wired a total of $9.07 million to Feingold Morgan Sanchez to hold in "[e]scrow for litigation, settlement, & attorney fees." The Wire Transfer of Funds Notices, dated December 11, 2018 through April 29, 2019 are attached as **Composite Exhibit "B"**. Feingold, acting as RCG's escrow agent, took possession of the $9.07 million. Feingold then purportedly and improperly invested RCG's escrowed funds in Broad Street. The Broad Street webpage lists Feingold as CEO (attached as **Exhibit "C"**). According to the statement provided by Broad Street, it appears that Feingold removed at least

$6.67 million of the RCG's escrowed funds and placed it into Broad Street's purported hedge fund, CJS Select Technology Fund LLC.

Feingold, purporting to act as escrow agent for RCG, signed a "Special Limited Partnership Agreement" with "Broad Street Global Fund SCSp," signing as a "Limited Partner." *See* ECF No. 139-1, Exhibit 1 to July 14, 2022 Letter from Irwin Weltz. Not only is this purported partnership agreement undated and unsigned by RCG, but it also ***does not specify what amount of the escrowed funds were invested*** in the Broad Street Global Fund and on what date the funds were to be transferred. Furthermore, Feingold clearly acted outside of the scope of the Escrow Agreement by attempting to bind RCG as a Limited Partner in a partnership, and violated his fiduciary duties as RCG's escrow agent by engaging in self-dealing.

In short, instead of holding the money in escrow and making it readily available for fines and settlements as Feingold was contractually obligated to do pursuant to the Escrow Agreement, Feingold put at least $6.67m of the escrowed funds into the CJS Select Technology Fund LLC, which is controlled and owned by Broad Street and by Feingold as Broad Street's CEO. Now, Feingold and Broad Street refuse to allow RCG to withdraw the escrowed funds to pay the settlement with the FTC and refuse to comply with this Court's liquidation order.

Unfortunately, the misconduct continues as Baldassarra, Manager and Chief Operating Officer of Broad Street, submitted a declaration attesting that "[n]either the FTC nor the RCG Defendants provided any notice of this application [to liquidate funds] to the Broad Street Intervenors." Baldassarra Decl. at ¶ 3. This statement is far from the truth. In actuality, on March 21, 2022, the FTC wrote to Baldassarra and the Broad Street Global Fund, informing him that:

> The Federal Trade Commission ("FTC") is contemplating a settlement agreement with certain defendants in the above-captioned action in which funds payable to the FTC would be held in the CJS Technology Select Management account named

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131 305.379.9000

"FEINGOLD MORGAN SANCHEZ TRUST/ESCROW FBO RICHMOND CAPITAL," with account number ending in -299. . . .  The contemplated settlement agreement provides that the defendants' payment obligations would be secured by a security interest in the above-referenced account.

The FTC's March 21, 2022 letter to Baldassarra is attached as **Exhibit "D"**.

Baldassarra responded to the FTC's inquiry regarding RCG's escrowed funds the very same day, stating:

> *we are aware of your proposed settlement, do have the assets associated to your referenced account and believe they will be able to satisfy the proposed amounts of the settlement and are happy to execute any such document needed to achieve your goal and the settling parties goals*.  Kindly forward any appropriate agreement and I will have our legal counsel review and make sure that it is satisfactory for all parties needing to sign.

Baldassarra's March 21, 2022 email is attached as **Exhibit "E"**. Thus, contrary to the assertions contained in Baldassarra's Declaration, nearly four months prior to the entry of the liquidation order, Baldassarra: (1) confirmed that he was holding the escrowed funds; (2) confirmed he was aware of the settlement between the FTC and RCG; and (3) stated that he was "***happy*** to execute any such document needed to achieve your goal and the settling parties goals" of releasing RCG's funds in order to satisfy the settlement with the FTC (emphasis added). For Baldassarra to now act as though the FTC settlement and liquidation order were done covertly and without notice to him and to Broad Street is disingenuous and is further proof of Broad Street, Baldassarra, and Feingold's concerted and fraudulent efforts to deprive the FTC and RCG of the escrowed funds.

### IV.    ARGUMENT

#### A.  No legal basis exists to stay the Court's Liquidation Order.

The Proposed Intervenors request a stay of the Liquidation Order, but cite no authority supporting this relief. The two cases relied upon by the Proposed Intervenors are inapposite and

have no relevance here, where the suit between the FTC and RCG has been settled and the Court

entered an Order for Permanent Injunction, Monetary Judgment, and Civil Penalty over a month-

and-a-half ago.

The cases relied upon by the Proposed Intervenors are inapplicable to post-judgment

orders involving non-parties. In *Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36

(S.D.N.Y. 1993), the court stayed discovery in a civil suit pending completion of related criminal

matter. In *Specrite Design, LLC v. Elli N.Y. Design Corp.*, No. 16 CIV. 6154 (ER), 2017 WL

3105859, at *1 (S.D.N.Y. July 20, 2017), the court stayed claims pending the outcome of a

related action in state court. Neither of these cases is applicable here, where the Proposed

Intervenors are not seeking a "stay" of this action (since the action is already over), but are

seeking, post-judgment, to evade enforcement of an order directing them to turn over RCG's

funds to the FTC pursuant to a settlement agreement and order. The Court should deny the

request for a stay and should enforce its order directing the liquidation of RCG's funds

### B.  The Proposed Intervenors' Motion to Intervene has no merit.

The Proposed Intervenors' Motion to Intervene is entirely meritless, because the

proposed intervenors have not timely moved to intervene and have no valid interest in RCG's

funds that were purportedly and improperly invested in Broad Street's purported hedge fund.

"Under Rule 24(a), intervention as of right is mandated when all of the following

conditions are met: (1) ***the motion is timely***; (2) ***the applicant asserts an interest relating to the***

***property or transaction that is the subject of the action***; (3) the applicant is so situated that

without intervention, disposition of the action may, as a practical matter, impair or impede the

applicant's ability to protect its interest; and (4) the applicant's interest is not adequately

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000

represented by the other parties." *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 234 (S.D.N.Y. 2007) (emphasis added).

Under Fed. R. Civ. P. 24(b)(1), courts may allow permissive intervention when a proposed intervenor makes a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." In considering whether to allow permissive intervention, courts consider "the nature and extent of the intervenors' interests,' and to what, if any, degree those interests are 'adequately represented by other parties,' as well as 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007), quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 (2d Cir. 1986).

In all cases, whether pre- or post-judgment, the rule governing intervention as of right requires courts to measure timeliness *from the moment when the proposed intervenor had actual or constructive notice of its unrepresented interest*, not from the moment a judgment was issued or from the moment when existing parties decided not to appeal that judgment. *See Floyd v. City of New York*, 302 F.R.D. 69, 89 Fed. R. Serv. 3d 121 (S.D. N.Y. 2014), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014). In *Floyd*, the court noted:

> *the intervention clock started to run from the moment the [proposed intervenors] became aware or should have become aware that they had interests in the subject matter of the litigation not otherwise protected by the existing parties to the lawsuit. . . . Even where post-judgment intervention is sought, courts deem these efforts timely only where the judgment itself, or events subsequent to judgment, are the first time that the intervenor learns of its unrepresented interests in the action.*

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000

302 F.R.D. at 84–85 (emphasis added). Here, the Proposed Intervenors were aware, by and through their CEO, Feingold, that RCG's escrowed funds were to be kept liquid and utilized to satisfy settlements. *See* Ex. A, Escrow Agreement. Then, as of March 21, 2022—nearly four months ago—Baldassarra, Broad Street's COO, was directly advised by the FTC of the proposed settlement between the FTC and RCG, and in fact confirmed to the FTC that the Broad Street "do[es] have the assets associated to your referenced account and believe they will be able to satisfy the proposed amounts of the settlement and are happy to execute any such document needed to achieve your goal and the settling parties goals." *See* Ex. E, Baldassarra's March 21, 2022 email to FTC. Thus, the "intervention clock" began to run nearly four months ago (if not much earlier), when the Proposed Intervenors were notified by the FTC that the settlement was going to be funded. The Intervenors' Motion for Intervention is clearly untimely at this late hour, after the entry of the Court's June 2, 2022 Order for Permanent Injunction, Monetary Judgment, and Civil Penalty, and after the entry of the Liquidation Order.

Furthermore, even setting aside the untimeliness of the Proposed Intervenors' Motion to Intervene, the Proposed Intervenors should not be permitted to intervene because they hold no legitimate interest in RCG's money which was at all times intended for use in the payment of settlements. Simply put, Proposed Intervenors' cannot now claim an interest in money which was fraudulently transferred by Feingold, acting as RCG's escrow agent, into a purported hedge fund controlled by Feingold himself. For this separate reason, the Proposed Intervenors' Motion to Intervene must be denied.

### C.  Even if the Proposed Intervenors are permitted to intervene, no legal basis exists to vacate the Liquidation Order.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000

While the Proposed Intervenors style the relief they seek as an "Application Seeking to Intervene for Limited Purpose of Vacating Liquidation Order and for Emergency Interim Stay," the Proposed Intervenors fail to offer any authority which would support vacating the Liquidation Order.

"Rule 60(b) permits a district court to 'relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any [ ] reason that justifies relief.' Fed. R. Civ. P. 60(b)(6)." *Viera v. United States*, No. 18-CV-9270 (KHP), 2022 WL 955919, at *1 (S.D.N.Y. Mar. 30, 2022). Vacatur of an order "is an 'extraordinary remedy' and should be granted only in 'exceptional circumstances'." *BMC, LLC v. Verlan Fire Ins. Co.*, No. 04-CV-0105A (SC), 2008 WL 2858737, at *1 (W.D.N.Y. July 22, 2008), quoting *U.S. Bankcorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 26, 29 (1994). This is because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40 (1993) (Stevens, J., dissenting). In seeking vacatur, "the burden is on the party or parties seeking vacatur to show that such relief 'is equitably justified by exceptional circumstances.'" *BMC, LLC*, 2008 WL 2858737, at *1, quoting *Major League Baseball Props. Inc. v. Pac. Trading Cards Inc.,* 150 F.3d 149, 151 (2d Cir. 1998).

Here, no such "exceptional circumstances" exist sufficient to warrant vacatur of the Court's Liquidation Order. The Proposed Intervenors were aware of the pendency of the instant action since its inception. In fact, Feingold, Broad Street's CEO, served as escrow agent to RCG throughout the pendency of this suit and abruptly withdrew as RCG's escrow agent on March 25,

2022. Despite Feingold being involved behind the scenes in negotiations with the FTC and serving as RCG's escrow agent during suit, neither Feingold nor any other representative of Broad Street sought to intervene at any point prior to the Court's entry of the Liquidation Order.

To the contrary, Feingold (under the terms of the Escrow Agreement) and Baldassarra (in correspondence with the FTC) represented that RCG's funds were available to satisfy the settlement with the FTC and that Broad Street would be able to liquidate RCG's money for settlement purposes. Now, after the entry of the Liquidation Order, the Proposed Intervenors falsely claim that "neither the FTC nor the RCG Defendants provided any notice" and that "the RCG Defendants are well aware that they are not entitled to obtain the property covered by the application at this time." *See* ECF No. 144 at p. 3.

The Proposed Intervenors' claims are designed to distract from the core issue which is Feingold's blatant misappropriation of RCG's funds, which were supposed to be kept liquid and held in escrow for the very purpose of satisfying settlements. The Broad Street Proposed Intervenors had every opportunity to intervene in this case prior to the entry of the Liquidation Order, and to advise the FTC that they were unwilling to release RCG's money for the purpose of settlement, but the Broad Street Intervenors failed to do so. The Broad Street Proposed Intervenors offer no credible reason why they have suddenly chosen to attempt to intervene and vacate the Liquidation Order. The Broad Street Intervenors cannot meet the high burden of showing that vacatur of the Liquidation Order is "equitably justified by ***exceptional circumstances***.'" *BMC, LLC*, 2008 WL 2858737, at *1 (emphasis added). Additionally, the Broad Street Intervenors are unable to show how "public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co.* 513 U.S. at 26.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000

The Court should deny the Broad Street Intervenors' request to intervene "for [the] limited purpose of vacating [the] Liquidation Order," and put an end to the charade of Feingold and Baldassarra.

## V.    CONCLUSION

Defendants RCG Advances, LLC and Robert Giardina respectfully request that the Court deny all relief requested in the Proposed Intervenors' Application Seeking to Intervene for Limited Purpose of Vacating Liquidation Order and for Emergency Interim Stay.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.**


By: */s/ Alan J. Kluger*
           Alan J. Kluger, Esq. (AK5039)
           akluger@klugerkaplan.com
           Citigroup Center, 27th Floor
           201 S. Biscayne Blvd.
           Miami, Florida 33131
           Telephone: (305) 379-9000

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131 305.379.9000