EXHIBIT A



**Reply to:**
ALAN J. KLUGER
akluger@klugerkaplan.com

August 28, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Irwin Weltz, Esq.
Weltz Kakos Gerbi Wolinetz Volynsky LLP
170 Old Country Road, Suite 310
Mineola, NY 11501
Irwin@weltz.law

      Re:    *FTC v. RCG Advances, LLC, RAM Capital Funding, LLC, Robert L. Giardina, Jonathan Braun, and Tzvi Reich,* **Case No. 20-CV-4432-LAK ("FTC Action")**

Dear Irwin:

      We were shocked and dismayed to have received your letter dated August 25, 2022.  Not simply as a result of the blatantly false narrative that you seek to portray regarding both the status of things and the substance of our meet and confer discussions, but also because this is not the first time you have done so (including, in your recent counter "status report" to the Court). Nevertheless, in an attempt to avoid burdening the Court with continued quibbling or immediately seeking to hold Broad Street in contempt for failing to comply with the Court's liquidation order dated July 11, 2022 (ECF 138) (the "Liquidation Order"), we met and conferred with you again in good faith about a path forward.  That path involved Broad Street providing RCG with its remaining funds (as it has repeatedly indicated it is in the process of doing) and attorney Feingold providing a full and complete accounting of the $9,070,000.00 in escrow monies that he was charged with protecting (the "Escrow Funds").

      As discussed during our recent meet and confers, Broad Street is already in contempt of the Court's Liquidation Order.  As you know, the Court expressly declined to issue the interim stay that you had sought in your Order to Show Cause.  And the fact that your client, attorney Feingold, still has not produced a full and complete accounting of the Escrow Funds in compliance with our letter demand for an accounting dated August 2, 2022, after all this time, is frankly unconscionable.

      Notably, the accounting-related documents we have asked for are not documents that attorney Feingold should need to create or compile.  Instead, they are documents that he, as an attorney holding escrow funds, is *legally required* to maintain, have in his possession, and be in a position to promptly produce.  Our concerns about the Escrow Funds are further heightened given attorney Feingold's documented decades-long history of engaging in fraudulent, deceptive and/or other misconduct as evidenced by, *inter alia*, successful enforcement actions brought against him

August 28, 2022
Page 2

by federal and state regulatory agencies (including the SEC and the FTC), as well as the varied allegations of misconduct alleged against him in various federal and state litigations.

With respect to the limited set of documents that attorney Feingold has produced to date, they are largely incomplete and raise more questions than provide answers. Moreover, many have been improperly redacted so as to prevent us from learning, for example, the name of the account holder whose account Escrow Funds were held in or transferred to/from, or the account number (even the last four digits have been redacted leaving us with no way to identify differing accounts). Even the time period (including the year) covered by many of the bank statements provided has been redacted. Neither you nor your client attorney Feingold has the right to redact such basic information from his accounting to RCG with respect to the Escrow Funds.

We appreciate potential reasons why you and attorney Feingold would want to try and prevent us from learning the account information into and out of which the Escrow Funds travelled. Such information might (and we submit would likely) establish that attorney Feingold improperly comingled RCG's Escrow Funds with his other law firm or business accounts. Or perhaps, in connection with his scheme to defraud RCG, he used a number of similarly named entities (or account names) in an effort to confuse. With respect to the later, attorney Feingold was previously found to have engaged in a similar practice in an enforcement action bought against him by the Maryland Commissioner of Financial Regulation in connection with certain false and deceptive business practices (ALJ: "The relationship between the different LLCs and individuals is confusing and, based upon the record as a whole, I conclude it was purposely so."). Regardless of the reason, however, our client has the absolute right to know where, when, how and through what accounts the Escrow Funds entrusted to attorney Feingold thereafter travelled and were shuffled around by him.

We also note the facial inconsistencies in the manually created spreadsheets that Feingold has provided in his attempt to account for the Escrow Funds. For example, in an initial spreadsheet provided, attorney Feingold maintained that of the Escrow Funds, a total of $220,000.00 was paid to his firm for fees and that such payment was made in January 2019. Notably, he has not provided any support for this payment in the form of an invoice or authorization. More recently, attorney Feingold produced another spreadsheet indicating that his firm took a monthly fee of $7,350.00 between January 2019 and March 2022, totaling $286,650.00. Of course, no support of authorization for these payments has been provided either. Are we to understand that these more recently disclosed fees are separate from and in addition to the $220,000.00 previously disclosed? Or is attorney Feingold simply increasing the amount of fees taken from the Escrow Funds from $220,000.00 to $286,650.00? Notably, this is but one of the countless questions raised by documents provided and the apparent back and forth transfer of Escrow Funds between Broad Street and Feingold (and/or entities under his control).

We also note that attorney Feingold still has not provided any backup in the form of invoices, billing statements, or other supporting documentation whatsoever with respect to the myriad of disbursements that he made from the Escrow Funds.

August 28, 2022
Page 3

     Incredibly, attorney Feingold also appears to be claiming a set-off to the Escrow Funds entrusted to him for payments which his law firm, Feingold Morgan Sanchez, was contractually obligated to make to a company named Redzone Enterprises LLC ("Redzone") for consulting services provided pursuant to a written contract prepared by attorney Feingold. We understand that attorney Feingold has already fully explained the nature of his firm's consulting arrangement with Redzone (and the payments his firm made pursuant to the contract) to the IRS in connection with a recent tax audit. We ask that you please explain to us exactly what attorney Feingold's position is with respect to these payments. Is he maintaining that his law firm, Feingold Morgan Sanchez, borrowed the monies to make the Redzone payments from the Escrow Funds and that Giardina (or someone else) gave him permission to do so? Or is Feingold maintaining that Giardina (or someone else) consented to his using the Escrow Funds to pay Feingold Morgan Sanchez's contractual obligations without any obligation to pay the money back? Or is Feingold claiming that the contract that he drafted and entered into on behalf of Feingold Morgan Sanchez was a sham and that he and Giardina (and/or others) were engaged in a criminal scheme to siphon money out of the Escrow Funds and send it Redzone? Putting aside Feingold's apparent ethical violations in entering into a business relationship with a client without obtaining an appropriate conflict waiver, regardless of what attorney Feingold's position is with respect to any of these questions, RCG's position is clear: To the extent that any Escrow Funds were used by Feingold Morgan Sanchez to pay Redzone under the consulting contract, such payments were unauthorized, constitute theft and should be returned forthwith.

     As for the so-called Broad Street "quarterly statements" that have been provided, they lack sufficient information from which a meaningful understanding of the assets at issue can be gleaned and are, among other things, internally inconsistent, facially amateurish, and bear other indicia of fraud, leading us to further question their *bona fides*. Moreover, despite several demands, your clients have still refused to provide the most recent quarterly statement of the Escrow Funds for the 2nd quarter of 2022, notwithstanding the fact that, even according to the Broad Street's own documents provided to the Court, such statement should have been prepared and delivered to RCG long ago. We also note that the documents previously submitted to the Court regarding portfolio "F1" describes the portfolio as having been created in 2018 for publicly traded stocks, yet most of the quarterly statements provided describe the portfolio as being "fixed income". And obviously, no documentation has been provided as to how much of the Escrow Funds were initially purportedly invested in the various portfolios or the transfers documenting the same.

     In sum, despite having indicated that it would do so, Broad Street still has failed to provide RCG the Escrow Funds purportedly under their control (or any details or information relating thereto) and notwithstanding the amount of time that has passed, attorney Feingold continues to play "hide the ball" and refuses to provide the full, complete, clear, concise and understandable accounting of the Escrow Funds that the law requires.

     As for where things currently stand and the developments since we last appeared before Judge Kaplan:

August 28, 2022
Page 4

It is undisputed that RCG wired the Escrow Funds ($9,070,000.00) to your client, attorney Feingold, at Feingold Morgan Sanchez. These monies were provided to Feingold for the express purpose of funding settlements and claims and paying associated legal fees and expenses. Notably, we have provided you with copies of all the wire transfer confirmations for the various transfers that comprise the Escrow Funds. And there is no dispute that attorney Feingold received all of those funds.

When we appeared before Judge Kaplan on July 20, 2022, in connection with your emergency application and proposed Order to Show Cause seeking to intervene and vacate the Liquidation Order, the Court indicated that it would permit us to take some limited discovery and also set a briefing schedule. The Court thereafter issued the written Order to Show Cause in which the Court expressly struck the stay provision that you and your clients had sought. On July 26, 2022 and July 27, 2022, we exchanged requests for production (we having served you on the 26th and you having served us on the 27th).

On July 28, 2022, the very next day, we received your letter in which you advised that: (1) $1,336,538.62 (representing the purported remaining balance of the Escrow Funds in the "F1" stock portfolio) would be immediately wired to the current escrow agent, Jeremy Iandolo's escrow account and; (2) the purported interest in the limited partnership in the "R2" real estate portfolio (purportedly comprising the remainder of the Escrow Funds with Broad Street) would "immediately be put up for sale" and the funds wired upon receipt.

Following your clients' sudden stark shift in position and stated agreement to provide RCG with its Escrow Funds purportedly in the so-called "R2" portfolio (which Broad Street had repeatedly and most recently valued at $4 million), we requested a full and complete accounting of the Escrow Funds from Feingold pursuant to the Rules Regulating the Florida Bar, Rule 5-1.12, as more fully detailed in our letter dated August 2, 2022 ("Demand for Accounting").

Thereafter, we participated in a meet and confer, and you agreed to immediately begin providing documents in response to the Demand for an Accounting. We received documents from you on August 3rd and 8th. In light of the changed circumstances (*i.e.*, your clients' agreement to provide RCG its monies as opposed to seeking to vacate the Liquidation Order), coupled with your clients' agreement to provide a full accounting, it was agreed during a subsequent meet and confer call that your clients' motion to intervene and to vacate the Liquidation Order was likely moot. As we have discussed subsequently, there was an obvious subsequent miscommunication about whether or not the extant discovery demands were still necessary. Be that as it may, it was further agreed at that time that both sides would prepare a proposed case management order or other document to advise the Court of the recent developments.

When we attempted to obtain your input for the filing with the Court, you failed to respond for days. Instead, when we filed out status report, you filed a counter status report with the Court which ignored our discussions and inexplicably reverted to a discussion of the prior discovery requests, claiming those were now necessary, serving your clients' objections and responses, and unfairly seeking to portray our clients as somehow being non-compliant.

August 28, 2022
Page 5

After filing our respective status reports, and in an effort to avoid us filing a "reply" status report, we reached out to you to meet and confer and move things forward in a productive and timely manner. Once again, we spoke and reached agreement, this time on a stipulation, *inter alia*, for a litigation "stand still" period during which your clients would complete the full and complete accounting and provide all backup documentation. On August 23, 2022, we sent you the draft stipulation for your review and comment. Instead of providing constructive comments, you once again repudiated the agreement we had reached and reverted back to the false narrative that our clients were somehow non-compliant in failing to serve responses to your clients' requests[1].

Finally, it is worth noting that your letter continues your clients' campaign of self-serving assertions and unsubstantiated rhetoric about what our clients purportedly knew and authorized and when. To be clear, we categorically deny these false assertions. This effort on your part appears to be nothing more than a transparent attempt to obfuscate the issue currently at hand – the necessary accounting of the Escrow Funds.

As I explained to you when you and I last spoke, at this juncture the *only* issue to be resolved is where, as a factual matter, the Escrow Funds entrusted to attorney Feingold went. And with respect to that issue, the only discovery that is relevant from RCG is proof of, and the details relating to, the $9,070,000.00 which was wired to Feingold at Feingold Morgan Sanchez, documents which, as previously noted, we have provided you. Once we receive the full and complete accounting (and have been provided with the $4 million from Broad Street) we will then be in a position to evaluate and discuss with you next steps vis-à-vis any of the Escrow Funds that remain missing, unaccounted for, have been misappropriated, and/or are otherwise disputed.

In short, we demand that the remaining Escrow Funds be provided to us forthwith pursuant to the Liquidation Order and that we be provided with a full and complete accounting of the Escrow Funds as more fully demanded in our letter dated August 2, 2022 letter. You can rest assured that we will not stand idly by while your clients continue to delay producing critical records and play games with millions of dollars of RCG's money and we will not stop until every single penny of the Escrow Funds has been accounted for.

Sincerely

KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.


By: */s/ Alan J. Kluger*
   Alan J. Kluger

---

[1] Notwithstanding our miscommunication regarding whether or not discovery would still proceed given your clients' change in position, we have no objection and agree to promptly preparing and serving responses and objections to your clients' discovery requests.