**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

FEDERAL TRADE COMMISSION,                    Case No. 20-CV-4432-LAK

    Plaintiff,

        v.

RCG ADVANCES, LLC, RAM CAPITAL
FUNDING, LLC, ROBERT L. GIARDINA,
JONATHAN BRAUN, and TZVI REICH,

    Defendants.
------------------------------------------------------------X

## NOTICE OF FILING

    Defendants RCG Advances, LLC and Robert Giardina hereby file this Notice of Filing Letter dated March 15, 2023 following a telephone call with Chambers on March 8, 2023 and in accordance with Minute Entry dated March 9, 2023 authorizing the filing of the attached letter.

    Respectfully submitted,

    **KLUGER, KAPLAN, SILVERMAN, KATZEN**
    **& LEVINE, P.L.**

    By: */s/ Alan J. Kluger*
        Alan J. Kluger, Esq. (AK5039)
        akluger@klugerkaplan.com
        Marissa A. Reichel, Esq. ((MR2828)
        mreichel@klugerkaplan.com
        Citigroup Center, 27th Floor
        201 S. Biscayne Blvd.
        Miami, Florida 33131
        Telephone: (305) 379-9000
        Fax: (305) 379-3428



**Reply to:**
ALAN J. KLUGER
akluger@klugerkaplan.com
(305) 379-9000

March 15, 2023

**VIA ECF**
The Honorable Jed S. Rakoff
United States District Judge, SDNY
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Federal Trade Commission v. RCG Advances, LLC, et al.*; 20 CV-4432 (JSR)

Dear Judge Rakoff:

We represent RCG Advances, LLC ("**RCG**") and Robert L. Giardina ("**Giardina**") (collectively, "**Defendants**") in the above case. Defendants seek return of the remaining $4,483,072.75 from a total of $9,070,000.00 of escrow funds (the "**Escrow Funds**") that had been entrusted to attorney David Feingold, Esq. ("**Feingold**") for the express purpose of funding Defendants' legal claims and settlements, but which he misappropriated. Defendants seek a hearing to compel a proper accounting and obtain the return the misappropriated funds.

## I.   Introduction.

The Escrow Funds are the cornerstone of the June 2, 2022 Stipulated Order pursuant to which the underlying action was settled (the "**Settlement Order**"). *See* ECF 127. The Settlement Order includes provisions regarding not only the Escrow Funds generally, but also limitations on how and when they can be used, as well as their ultimate disposition. *See id.* at § VI. The Settlement Order further provides that the Court retains jurisdiction to ensure enforcement. *Id.* at § XIII ("[T]his Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order."). *See also* ECF 157 at 10:3-5 (counsel for Feingold and Broad Street Global Fund and associated entities (**"Broad Street"**) acknowledging that that the Court retained jurisdiction over elements of the Settlement Order). The Court, therefore, has continued jurisdiction over the Escrow Funds, which are an integral part of and necessary to the enforcement of the Settlement Order. Moreover, Broad Street and Feingold have appeared in this action through counsel. *See*, *e.g.*, ECF 156, at p. 1 and n.1 (noting that the Weltz firm is appearing on behalf of both Broad Street and Feingold in this case). Both Broad Street and Feingold also (separately) served and responded to discovery demands in this case. Thus, there can be no dispute that the Court has the authority to order them to properly account for and return the missing Escrow Funds.

Our concerns regarding the misappropriated Escrow Funds are heightened given Feingold's documented decades-long history of engaging in fraudulent, deceptive and other misconduct as evidenced by, *inter alia*, successful enforcement actions having been brought against him by both numerous federal and state regulatory agencies (including the Federal Trade

Commission (**"FTC"**) and the Securities and Exchange Commission)[1], as well as the varied allegations of fraud and misconduct alleged against him in numerous federal and state litigations.

The missing Escrow Funds remain unavailable to fund settlements as contemplated by the Settlement Order *and* the underlying escrow agreement between Defendants and Feingold (the "**Escrow Agreement**"). Instead of using the Escrow Funds for their intended purpose, Feingold diverted them to Broad Street, an alleged "hedge fund" of which he is the CEO. Notably, rules governing attorney conduct require lawyers to maintain clear, concise and complete ledgers of escrow monies and supporting documentation. Here, no such documents have been provided. Instead, Feingold (and Broad Street) have produced a hodge-podge of documents that a hearing will demonstrate are incomplete, raise more questions than provide answers, have been redacted to conceal Feingold's commingling of Escrow Funds, and many of which are facially amateurish, inconsistent and contradictory with each other, and bear other significant indicia of fraud.

Feingold was never authorized by Defendants to invest the Escrow Funds in Broad Street (or in stocks or real estate generally) and he remains liable to Defendants (as well as the FTC and other beneficiaries of the Settlement Order) for $4,483,072.75—the difference between what was entrusted to him and what has been returned (or disbursed on legitimate non-disputed expenses).[2]

## II.     The Escrow Agreement.

On December 10, 2018, Giardina, as Manager of RCG, met with attorney Feingold regarding a subpoena that RCG received in connection with a state investigation. At that meeting, Feingold advised that it would be in RCG's interest to transfer its funds to his firm to hold in escrow so they would remain available to pay potential claims and settlements. Feingold advised Giardina that the funds would be invested in an interest-bearing account, with the interest accruing for the benefit of RCG. Following the meeting, Giardina (on behalf of RCG) executed the Escrow Agreement. *See* Email from Feingold to Giardina dated December 10, 2018 (Exhibit "C") and executed Escrow Agreement (Exhibit "D"). The Escrow Agreement provides that the Escrow Funds are "***to be used to pay any fines, settlements, judgements [sic], pending or threatened claims or any potential liabilities or monies owed that we believe based on the information that we have that may be asserted against you or your company . . . .***" Ex. D at ¶ 7 (emphasis added). The Escrow Agreement further states that Feingold's firm would "have a ***limited power of attorney*** to execute any and all documents ***in order to facilitate the transaction contemplated*** . . . ." *Id.* at

---

[1] *See, e.g.,* FTC Press Release dated June 21, 2011 ("FTC Stops Bogus Mortgage Loan Modification Business") (Exhibit "A"); SEC Release 33-7779 (Nov. 18, 1999) (Exhibit "B").

[2] Of the $9,070,000.00 entrusted to Feingold, Defendants do not dispute the following $4,586,927.25 in "offsets": (1) $2,673,077.25, representing RCG's purported interest in "Portfolio F1"; (2) $620,000.00, representing RCG purported interest in "Portfolio R2"; and (3) a total of $1,293,850.00 in legal fees and expenses paid to attorneys *other than* Feingold. ***All remaining "offsets" claimed by Feingold in his "accounting" documents are disputed.*** Among the disputed items are more than $500,000 in purported legal fees taken by Feingold from the Escrow Funds; and $883,750 used by Feingold to pay his law firm's corporate obligations to an entity called Red Zone Enterprises, LLC (of which Giardina was a manager). Even taking into account these disputed items, however, there still remains millions of dollars in unaccounted for Escrow Funds.

¶ 5 (emphasis added). In reliance on the Escrow Agreement, RCG wired $9,070,000.00 to Feingold's law firm, specifically noting on each wire that the funds were to be held in "[e]scrow for litigation, settlement, & attorney fees." *See* Wire Transfers (Exhibit "E").

### III.    The FTC Settlement.

As Defendants were negotiating a settlement with the FTC in early 2022, the FTC was informed that RCG had millions of dollars in escrow with Feingold and that those funds were available for settlement. On March 16, 2022, as the FTC was preparing the settlement documents and requested the escrow account information, Feingold disclosed to RCG for ***the very first time*** that the Escrow Funds were actually in a "hedge fund brokerage" account and "not a bank account." *See* Email from Feingold to Varbero dated March 16, 2022 (Exhibit "F"). In response to a request for further information regarding the account, Feingold thereafter provided a ***cropped version*** of an account statement containing only the name of the account holder and the account number, ***not the purported investments or their claimed value***. That cropped image was then passed on to the FTC. *See* Email from Varbero to Ashe, et al. dated March 17, 2022 (Exhibit "G").

On March 21, 2022, the FTC wrote to Steven Baldassarra of Broad Street, indicating that the FTC was contemplating a settlement with Defendants "in which funds payable to the FTC would be held in the [Broad Street] CJS Technology Select Management account named 'FEINGOLD MORGAN SANCHEZ TRUST/ESCROW FBO RICHMOND CAPITAL,' with account number ending in -299." *See* Letter from Heald to Baldassarra dated March 21, 2022 (Exhibit "H"). The FTC letter further stated: "The contemplated settlement agreement provides that the defendants' payment obligations would be secured by a security interest in the above-referenced account." *Id.* Baldassarra responded to the FTC the same day, stating: "we are aware of your proposed settlement, do have the assets associated to your referenced account and believe they will be able to satisfy the proposed amounts of the settlement and are happy to execute any such document needed to achieve your goal and the settling parties' goals." *See* Email from Baldassarra to Heald dated March 21, 2022 (Exhibit "I").

On March 24, 2022, the FTC requested that Feingold sign a guaranty, as escrow agent, with respect to the Escrow Funds which were to be used to satisfy RCG's financial obligations under the proposed settlement. *See* Email from Ashe to Varbero dated March 24, 2022 (Exhibit "J"). Rather than provide the FTC with the reasonable assurance it was seeking, the next day, Feingold instead abruptly resigned as RCG's escrow agent. He was replaced by Jeremy Iandolo, Esq. *See* Email from Feingold to Giardina, et al. dated March 25, 2022 (Exhibit "K"). At no time did Feingold deliver or transfer the Escrow Funds to the successor escrow agent.

On March 28, 2022, three days after Feingold's resignation, a Broad Street account statement was finally provided by Baldassarra to RCG's counsel and Iandolo which reflected that, as of December 31, 2021, the account holding the Escrow Funds had a purported value of $6,673,077.25 ($4,000,000.00 in an alleged portfolio of illiquid real estate projects ("Portfolio R2") and $2,673,077.25 in an alleged portfolio of technology stocks ("Portfolio F1")). *See* Exhibit "L." ***This was the very first notice RCG ever received that the Escrow Funds had purportedly been invested in stocks and illiquid real estate projects.*** Notably, a different version of this very same statement surfaced during discovery which, contrary to the statement provided by Broad

Street, purports to reflect that the monies invested in "Portfolio F1" were invested in **"mortgage-backed securities,"** *not* publicly-traded *stocks*. *See* Exhibit "M."

### IV.     Broad Street Fails to Return the Escrow Funds Despite the Liquidation Order.

When RCG learned the purported whereabouts of the Escrow Funds, it demanded that Broad Street transfer the funds to Iandolo. Broad Street refused, relying upon purported disclosures contained in self-serving "Series Specifications" documents (which had never been disclosed to or approved by RCG). *See* Exhibit "N." With respect to the "Portfolio F1," Broad Street maintained that RCG was limited to redeeming 50% of its account value in any given calendar year and that Broad Street had already retuned to RCG the 50% for 2022 ($1,366,538.60). With respect to the "Portfolio R2", Broad Street maintained that RCG was not entitled to any of the money held therein (valued by Broad Street at $4,000,000.00) until all real estate in the portfolio was fully liquidated.

On July 9, 2022, Judge Kaplan signed an order directing "CJS Select Technology Fund LLC and any other necessary person" to "liquidate, or cause to be liquidated," the RCG account "and transfer the proceeds of such liquidation" to Iandolo. *See* ECF 138 (the "**Liquidation Order**"). Broad Street sought to vacate the Liquidation Order, but failed. *See* ECF 139-144. Following the July 20, 2022 argument on Broad Street's request for a stay of the Liquidation Order, Broad Street wired Iandolo $1,366,538.60, purportedly representing the other 50% of the "Portfolio F1" account value. The alleged $4,000,000.00 in "Portfolio R2" was not returned.

### V.     Feingold and Broad Street Fail to Account for the Missing Escrow Funds.

Following the July 20, 2022 argument (*see* ECF 157), Defendants attempted to gain further information regarding the mishandling of the Escrow Funds. Feingold and Broad Street provided only limited documents which, as noted *supra* at Section I, were woefully insufficient and bear ***significant indicia of fraud***. Given the Court-imposed page limitation, Defendants are unable to set forth herein details regarding the inconsistencies and fraudulent nature of the documents that were produced but, at a hearing (or if permitted to file a full motion on the issue or a supplemental letter) are fully prepared to lay out in detail the basis for our assertions in this regard.

Defendants' also retained ethics counsel, Michael S. Ross, to attempt to obtain information and documents from Feingold which he was obligated under the rules of attorney professional conduct to provide. Ross sent Feingold (through his attorney Weltz) a letter seeking various specifically identified documents and information. *See* Letter from Ross to Weltz dated August 26, 2022 (Exhibit "O"). Feingold thereafter retained Florida counsel who advised Ross that he was in receipt of his letter and would get back to him shortly. *See* Email from Cummings to Ross dated September 8, 2022 (Exhibit "P"). ***Ross has never received any further response from the Florida attorney (nor Feingold) and was never provided with any of the requested information.***

### VI.     The Failure to Comply with the Liquidation Order and Compliance Order.

Following the July 2022 hearing before Judge Kaplan, several filings were made seeking (and opposing) Broad Street's compliance with the Liquidation Order and the return of the remaining Escrow Funds. *See* ECF 159-163. While those requests were pending, this matter was

reassigned to this Court. A hearing was held on November 22, 2022, after which the Court entered an Order directing compliance with the Liquidation Order by January 6, 2023. *See* ECF 165 (the **"Compliance Order"**). On January 6, 2023, without explanation, Broad Street and Feingold wired Iandolo **$620,000.00**—a mere **15.5%** of the $4,000,000.00 that Broad Street had repeatedly valued RCG's interest in the "R2" account – and having done so, maintain that they have complied with the Compliance Order.  *See* Email from Weltz to Meyers dated January 6, 2023 (Exhibit "Q"). No closing, sale, purchase, or other documents regarding the purported "liquidation" have been provided. Broad Street and Feingold have failed to explain how the purported interest was liquidated, to whom it was sold and for how much, or whether any fees were taken by Broad Street or Feingold in connection with the transaction.

### VII. Feingold Must Account for and Return the Remaining Escrow Funds.

Feingold is liable to both account for and return the misappropriated Escrow Funds. He was involved in negotiating the terms of the settlement with the FTC and knew that the Escrow Funds would be needed to comply therewith (and to settle other litigations). Feingold thus owed a fiduciary duty not only to RCG, but also to the FTC and other intended beneficiaries of the Settlement Order. *See In re Liddle*, 613 B.R. 186, 193 (S.D.N.Y. 2020) ("An escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust . . . .") (Rakoff, J.) (quoting *Takayama v. Schaefer*, 240 A.D.2d 21, 25 (1998)). In breach of his duties, Feingold wrongly transferred and converted the Escrow Funds and then abruptly resigned as RCG's escrow agent ***the day after*** the FTC requested that he sign a guaranty with respect thereto.

Notably, the Escrow Funds which RCG seeks to recover will be used ***exclusively*** to pay claims, settlements and associated expenses provided for and contemplated by the Settlement Order. *See* ECF 127 at Section VI. ***Not one cent of the Escrow Funds that Defendants are seeking will be returned to the Defendants.***  As the Settlement Order makes clear—any remaining monies from the Escrow Funds are ultimately required to be turned over to the FTC. *Id.*

In sum, Defendants respectfully request that the Court set a hearing, in accordance with, *inter alia*, its retention of jurisdiction over the Settlement Order (ECF 127), at which Defendants will seek a full and proper accounting and return of the missing $4,483,072.75 of Escrow Funds.

                    Respectfully submitted,

                    KLUGER, KAPLAN, SILVERMAN,
                    KATZEN & LEVINE, P.L.

                    By: */s/ Alan J. Kluger*
                         Alan J. Kluger, Esq.

Attachments (Exhibits A-Q)
cc:    All counsel of record (via ECF)