UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FEDERAL TRADE COMMISSION,

       Plaintiff,

  -against-

RCG ADVANCES, LLC, RAM CAPITAL
FUNDING, LLC, ROBERT L. GIARDINA,
JONATHAN BRAUN, and TZVI REICH,

       Defendants.
----------------------------------------------------------X

Case No. 20-CV-04432-JSR

**BROAD STREET INTERVENORS'
NOTICE OF FILING LETTER
RESPONSE TO LETTERS FILED BY
DEFENDANTS RCG ADVANCES, LLC
AND ROBERT GIARDINA AND FTC**

      The Broad Street Intervenors hereby file this Notice of Filing Letter Response to the Letter filed by Defendants RCG Advances, LLC and Robert L. Giardina [ECF No. 169] in accordance with the Minute Entry, dated March 9, 2023, authorizing such filing, and the Federal Trade Commission's Letter filed on March 21, 2023 [ECF No. 171].

Dated: Mineola, New York
       March 22, 2023

       Respectfully submitted,

       **WELTZ KAKOS GERBI WOLINETZ
         VOLYNSKY LLP**

       By: /s/ *Irwin Weltz*
          Irwin Weltz
          Thomas Scot Wolinetz
       170 Old Country Road, Suite 310
       Mineola, New York 11501
       Tel: 516-506-0561
       irwin@weltz.law

       *Attorneys for Broad Street Intervenors*
       Broad Street Global Fund SCSp, Broad Street GP II
       S.'ar.l., CJS Technology Select Management LLC,
       CJS Technology Select Fund LLC, and CJS
       Financial Corp.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 22, 2023, a true and correct copy of **BROAD STREET INTERVENORS' NOTICE OF FILING LETTER RESPONSE TO LETTERS FILED BY DEFENDATS RCG ADVANCES, LLC AND ROBERT GIARDINA AND FTC** was filed electronically with the United States District Court for the Southern District of New York using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Thomas Scot Wolinetz*
Thomas Scot Wolinetz

Attorneys for Broad Street Intervenors



WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
170 OLD COUNTRY ROAD | SUITE 310
MINEOLA, NEW YORK 11501

T: (516) 320-6945
F: (516) 855-8776
WWW.WELTZ.LAW

Direct line 516-506-0561

March 22, 2023

**_Via ECF_**
Hon. Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **FTC v. RCG Advances, LLC, et al.**
                <u>Case No. 20-cv-4432-JSR</u>

Dear Judge Rakoff:

      We represent the Broad Street Intervenors in the above matter. This letter is respectfully submitted in opposition to the letter, dated March 15, 2023, of Defendants Robert L. Giardina ("Giardina") and RCG Advances, LLC ("RCG Advances") (collectively, "RCG Defendants") [ECF No. 169]. Initially, we briefly address the FTC's letter of yesterday afternoon. [ECF 171].

      The FTC's unexpected letter is wrong on the facts and the law and both letters are easily disproved by a single document (although there is much more). Thus, at page 11 (Item 24) of the RCG financial statement, dated January 25, 2022, made under penalties of perjury by Giardina and submitted to the FTC as a pre-condition of any settlement, Giardina lists the "Present Market Value of Assets" for the now liquidated property as **"Zero to $8,600,000.00"** with an explanation that "**\*\*Funds are subject to …market risks of investments."** Thus, for the FTC and RCG Defendants to now suggest that they did not know about the investments, the market risks or that they were _without_ an assigned value (and could be "Zero"), is specious, at best. The FTC accepted that value as between **zero and $8.6M** because the RCG Defendants well knew that the investments were speculative, there was no guaranty of the value and the FTC accepted this financial affidavit attached as <u>**Ex. 1**</u>. However, now they file a letter saying they always thought $9.07M was on account. That is simply impossible, and they accepted that the escrow could be worth as little as zero due to the kinds of investments. Also, David Feingold ("Feingold") did not join Broadstreet, Inc. until July 2022, years after the investments were made in December 2018/early 2019, and that entity was not even formed until June 2022. <u>**Ex. 2**</u>. Further, the purported accounting they all now claim to need has already been provided months ago (and the RCG Defendants already well knew and directed how the funds have been used). ECF 160 at 1, and Exs. A-C thereto and ECF 162-1, at 2, ¶ 3, Ex. A thereto.

      Mr. Feingold and Steven Baldassarra, the Manager of the Broad Street Intervenors, have for many months been prepared to testify here, but the RCG Defendants resisted and refused to be deposed and have never even submitted any affidavit at all here. In view of the FTC and RCG Defendants' defamatory assertions, we submit that if the Court should find this submission

insufficient there should be an evidentiary hearing before Your Honor, which would of course include testimony from Richard Cardinale and Giardina, as his lawyers make assertions without affidavit and Giardina has invoked the Fifth Amendment in all related actions. It is unfair to provide such defamatory and unsworn assertions whose sole goal is to inflame this Court and affect Feingold, who is not even a party in this case.

The RCG Defendants have also failed to comply with the Court's straightforward ECF Minute Entry directive (of March 8, 2023) to "specifically identify[] both the actions it contends were or were not taken in violation of previous orders." This is because they cannot demonstrate any violation. As Your Honor ordered, "the assets in that certain CJS Technology Select Management Account number xxxx299" have been fully liquidated. ECF 165-166. The F1 portfolio (of marketable securities) was previously fully liquidated and the proceeds wired to Mr. Iandolo, and the R2 portfolio (of illiquid, incomplete real estate projects) was fully liquidated and the proceeds of $620,000 wired to Mr. Iandolo on January 5, 2023 - - exactly what Your Honor ordered. **Ex. 3** (wires for F1 and R2 liquidation proceeds). The RCG Defendants made no complaint about (and kept) the F1 portfolio proceeds and then went silent for nearly two months after receiving and accepting the R2 portfolio proceeds. Similarly, the FTC remained silent.

Critically, the RCG Defendants themselves drafted the initial Liquidation Order (ECF 138, which mirrors Your Honor's Order) and despite being repeatedly warned about the consequences of demanding liquidation of the R2 portfolio in a short timeframe they persisted and Your Honor correctly stated - - "So we need to have a date certain, and **if it means it's a fire sale, too bad.**" ECF 167, Tr. at 24(10)-25(2); ECF 162-1, ¶¶ 5-14 (prior warning about premature R2 liquidation). Your Honor then issued the Order of November 29, 2022. ECF 165, 166. Although not required by Your Honor's Order, I have annexed hereto as **Ex. 4** a compilation of the significant efforts made by the Broad Street Intervenors to liquidate the R2 portfolio interest, which efforts included (i) the ads in the initial six national and international publications [ECF 162-1, at 2, ¶ 4 ], (ii) subsequent ads run showing 139 ad listings for the liquidation [ECF 162-1, at 2, ¶ 4, Ex. B], (iii) running another set of ads with 135 ad listings beginning on or about November 23, 2022 (a day after the conference), (iv) an eBay auction with 90 views, but no offers, (v) using a real estate agent to sell the property via an Exclusive Right to Sell Listing Agreement, (vi) individual outreach efforts, and (vii) the ultimate sale to the buyer.[1]

---

[1] The FTC and RCG Defendants (*not the intervenors*) filed an *ex parte* motion for an order directing liquidation (ECF 137) and Judge Kaplan signed the proposed order (the "Liquidation Order")(ECF 138). The Broad Street Intervenors filed an application to intervene for the limited purpose of seeking to vacate the Liquidation Order. ECF 141-144. Judge Kaplan wanted the F1 portfolio sold since it held publicly traded securities and an issue arose as to the remaining assets which were held in an illiquid portfolio of real estate projects (R2 portfolio). Consistent with Judge Kaplan's view of the F1 portfolio, the Broad Street Intervenors promptly liquidated the F1 portfolio and wired $1,336,538.62 to Iandolo's trust account. ECF 162-1, ¶ 3 and wire at **Ex. 3**. Likewise, with respect to the R2 portfolio, the Broad Street Intervenors immediately put up for sale RCG Advances' limited partnership interest in the R2 portfolio. ECF 162-1, ¶ 4 and Ex. B. Judge Kaplan allowed for a "limited amount of discovery" (ECF 157, Tr. at 26 (11-12)), and the Broad Street Intervenors complied with that directive, but the RCG Defendants did not. ECF 160 at 1 (recounting intervenors' compliance and RCG Defendants' refusal). Judge Kaplan also set down a briefing schedule that the RCG Defendants likewise never complied with (Tr. at 26(11) – 27(14)).

The final sale occurred at a discount due to the years from completion status of the real estate infrastructure projects and the litigation risk presented by the RCG Defendants' own conduct. The difficulties in accomplishing such a sale of the seven, ongoing real estate projects and the RCG Defendants' interest was previously described in the Declaration of Steven Baldassarra, [ECF 162-1, at 3-6, ¶¶ 5-14], which also includes project details and project photographs. Yet, this information, already known by the RCG Defendants prior to Mr. Baldassarra's declaration, did not deter them from first drafting the initial Liquidation Order [ECF 137], pursuing it and then raising no objections to Your Honor's directives concerning a "fire sale." Thus, the substantial discount was due to the RCG Defendants own doings and now they belatedly complain about the results they themselves orchestrated.

Instead of presenting evidence, or even any sworn statement at all during the course of this limited intervention, the RCG Defendants improvidently use the Court's time via their counsel's incompetent testimony seeking to discredit Feingold, not a party here, with baseless and defamatory assertions that cannot go without a response. Tellingly, when the issue of discovery was raised before Your Honor, counsel for the RCG Defendants was "scratching his head" about the need for any discovery yet now he suddenly needs an accounting *again* (as was previously provided). ECF 167, Tr. 18(3) – 20(6); ECF 160 at 1, and Exs. A-C thereto, ECF 162-1, at 2, ¶ 3, Ex. A thereto.

This underlying case involves an FTC action against RCG Advances, Giardina and others in connection with serious merchant cash advance abuses. The nature of these MCA fraudsters' improper activity is described in *Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2022 US Dist. LEXIS 100837 (SDNY June 6, 2022). Judge Liman found Giardina liable under civil RICO and recounted the FTC allegations that included "threatening physical violence when the merchants advise that they cannot make the payments required by the Agreements" ("After Richmond obtained a confessed judgment against the rabbi and synagogue, its harassment grew more intense with threats of a sexual and physical nature to the point where the Rabbi was forced to apply for an order of protection, which the Rabbi received."). *Fleetwood Servs., LLC*, at 2022 US Dist. LEXIS 100837, * 16-18. This summarizes who the RCG Defendants are quite clearly.

Feingold, on the other hand, is a businessman and an attorney in good standing licensed to practice law in the State of Florida for over 30 years. **Ex. 5** (Florida Bar website). Feingold had been the initial escrow agent for RCG Advances pursuant to an escrow services agreement, dated December 10, 2018. ECF 169-4. Contrary to the RCG Defendants' current assertions (made years later), the escrow services agreement specifically authorized that the funds would be used for "investments."[2] Thus, in the email, from Feingold to Giardina, dated December 10, 2018 (as Exhibit C, ECF 169), at the very first point it states that the funds would be "**invested as discussed**" and consistent with that discussion the first wire was sent to CJS Technology Select Management on December 12, 2018. **Ex. 6** (wire confirmations for $8,850,000). As stated, Feingold did not

---

[2] ECF 169-4 ("Sixth" par. refers to "account, fund or investment made," and "Seventh" par. states "We are further authorized to place the Money in an interest bearing account, fund or investments during the term of this escrow relationship and …. shall not be held responsible for any investment gains or losses generated by the Money and we are authorized to so invest said Money upon receipt of the same.").

3

hold any position with the intervenors at that time, and not until years later. **Ex. 7**, at Feingold Decl. at ¶ 2.  Further, no FTC or NY AG litigation was pending at that time either.

Giardina and frequent-partner Richard Cardinale ("Cardinale") (who is also an owner and manager of RCG Advances) fully controlled the disposition of these escrow funds as described in the Baldassarra declaration: "RCG is a limited partner in the Broad Street Fund, and has been invested in the CJS F1 portfolio and R2 portfolio of the limited partnership. I personally met with both Giardina and Richard Cardinale ("Cardinale") on multiple occasions in Greenville, South Carolina, the location of the home office of Broadstreet. I toured multiple real estate properties included in the R2 portfolio with both Giardina and Cardinale." ECF 162-1, ¶ 2. Cardinale has even recently testified that he took eight multi-day trips to South Carolina to visit with the Baldassarras (and others) and Giardina joined Cardinale on virtually all of those trips between 2019-2021[3] and he has pictures of those trips with Giardina. **Ex. 8** (second picture Giardina at end of table on right view).  Miraculously, years later they now claim to know nothing, which is absurd and untrue, and both also hold themselves out as experienced and sophisticated in investment, real estate matters and both are former licensed stockbrokers and fund managers.  **Ex. 9**.

The RCG funds, a total of $8,850,000 in wires received from the escrow account were initially invested in the F1 portfolio, but that changed during the stock market correction which began in approximately March 2020 when Giardina demanded that more of the funds be invested in real estate due to stock market concerns. ECF 162-1, ¶ 2. The remainder of the funds ($4 million) had been placed in the R2 portfolio of seven ongoing, but not completed, real estate projects at Giardina's direction. ECF 162-1, ¶ 3.

Feingold sued Cardinale and others in February 2022 in the pending action styled *David Feingold and Michael Dazzo v. Richard Cardinale, Vania Cardinale, RVCNY, LLC and RVCSI, LLC*, U.S.D.C. Southern District of Florida, Case No. 1:22-cv-20375-RKS. The Second Amended Complaint in that case includes allegations and evidence that Cardinale and Giardina recently engaged in additional gangster-like tactics to try to force a competitor to give over his business to

---

[3] Portions of Cardinale's testimony:
Q. Have I ever visited South Carolina? A. Yes. How many times? A. Approximately eight.****
Q. On any of the trips you went to South Carolina, were you joined by anyone else going down there? A. Yes. Q. And who would that be? A. Robert Giardina.****
Q. And aside from what we've described for 2019, in 2020, did you go down to South Carolina to look at some of the infrastructure projects with Robert Giardina? A. Sitting here today, I don't remember which projects we may or may not have went to, but we did see -- you know, meaning specifically infrastructure, but we did see a lot of different projects when we went down. Q. And that would be true of your trips in 2021 as well, correct? A. Correct.****
A. We've -- I mean, we met -- some of the first trips down, we met Ford and Josh. Ford Elliot and Josh Howard. They made introductions in a conference room to their staff of people. This had to be some of the first trips. I believe Maxine, I don't know the last name. She was present I think at one of those as well as some of their staff, maybe some of their selling agents for the homes, which would mean that Martin Childress and Robin Childress were there. Joseph Baldassarra and Steven Baldassarra were at those meetings. Obviously David Feingold and Michael Dazzo. Some of the trips, David Berger was present. In general terms, those type of people, specific people.****
Q. Let's go back to 2019, your first trip to South Carolina. What was the purpose of that trip, if you recall? A. If it were 2019, which I'm -- again, I don't know for sure. Some of the first trips were Dave and Mike were going to make introductions to some of the potential investments, the owners of some of the potential investments and meet, you know, people pertaining to that. ****

them (much like Judge Liman's description of the events at RCG/Richmond). **Ex. 10** at ¶¶ 55-62.[4] Significantly, during Cardinale's recent deposition there, he testified that Feingold *did not steal from him*.[5] Also, even though Cardinale deposed Feingold on February 28, 2023, *not a single question* was asked about the escrow account even though Cardinale is a co-owner of RCG Advances. **Ex. 12** (Giardina's invocation of Fifth Amendment in response to questions concerning his and Cardinale's involvement and LLC agreement for Richmond Capital).

In March 2022, Feingold resigned as the escrow agent as the settlement with the FTC required that his law firm act as a guarantor of a settlement that he was not a party to, which naturally Feingold declined to do. This is demonstrated by the RCG Defendants themselves as in Exhibit J [ECF 169-10] at point 3 of the FTC email it required Feingold's law firm to act as "Guarantor" and the very next day in Exhibit K [ECF 169-11] Feingold resigned and Jeremy Iandolo, counsel for the RCG Defendants, then became the escrow agent and guarantor. The guaranty is set forth at ECF 125, at Attachment (23 of 36) at ¶ 2 (unconditional and absolute guaranty of performance). Giardina accepted that resignation by Feingold's law firm obviously understanding that any rational law firm would not act as a guarantor.

In April 2022, Cardinale conveyed (via Giardina) threats to Feingold that he would destroy Feingold's business and relationships unless Feingold acceded to Cardinale's threats, a similar business tactic Giardina and Cardinale used throughout the years. **Ex. 7**, declarations of Feingold (at ¶ 45) and Dazzo (at ¶¶ 4-6). In May 2022, Feingold would cease all communications with Cardinale and Giardina due to their thug tactics against a competitor. **Ex. 7**, declarations of Feingold (at ¶¶ 46-49) and Dazzo (at ¶¶ 4-6).

## CONCLUSION

The Broad Street Intervenors have complied with Your Honor's Order. In truth, the RCG Defendants and FTC's request should be denied and this intervention closed, but we are fully prepared to schedule an evidentiary hearing before Your Honor.

Respectfully submitted,
/s/ *Irwin Weltz*
Irwin Weltz

cc:  All counsel of record (via ECF)

---

[4] The court there ordered that Cardinale and the other defendants be deposed prior to their obtaining other discovery, finding (**Ex. 11**, at 3-4): "Plaintiffs sufficiently allege the presence of unique circumstances that generate a concern that Defendants [including Cardinale] may tailor their testimony. . . These unique circumstances include the intricate structure of the investment funds and Cardinale's multiple roles in the companies."

[5] "Did David Feingold steal any money from you? MR. BENAYOUN: Object to the form. A. I don't believe so. Q. Did Michael Dazzo steal any money from you. MR. BENAYOUN: Object to the form. A. I don't believe so. Q. Did either of them steal any money from any entities that you were involved with them in? A. I don't believe so."