UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>JONATHAN BRAUN et al.<br><br>  Defendants. | Case No. 1:20-cv-04432-JSR<br><br>**FTC'S REPLY TO DEFENDANT BRAUN'S POST-TRIAL BRIEF** |

i

# TABLE OF AUTHORITIES

## CASES

*FTC v. BlueHippo Funding, LLC*,
　762 F.3d 238 (2d Cir. 2014) ........................................................................................2, 3

*FTC v. Direct Mktg. Concepts, Inc.*,
　648 F. Supp. 2d 202 (D. Mass. 2009) ................................................................................3

*FTC v. Figgie Int'l, Inc.*,
　994 F.2d 595 (9th Cir. 1993) ..............................................................................................3

*FTC v. Moses*,
　913 F.3d 297 (2d Cir. 2019) ...............................................................................................3

*FTC v. Sec. Rare Coin & Bullion Corp.*,
　931 F.2d 1312 (8th Cir. 1991) ............................................................................................3

*FTC v. Shkreli*,
　581 F. Supp. 3d 579 (S.D.N.Y. 2022) ................................................................................3

## STATUTES

15 U.S.C. § 45(m)(1)(A) ..............................................................................................................1

15 U.S.C. § 57b ............................................................................................................................1

15 U.S.C. § 5821 ..........................................................................................................................1

18 U.S.C. § 1956(a)(1)(B)(i) ........................................................................................................8

28 U.S.C. § 1961(a) .....................................................................................................................9

Federal Civil Penalties Inflation Adjustment Act of 1990, 101 P.L. 410, 104 Stat. 890 (1990) .....5

Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 114 P.L. 74, Title VII, § 701(b), 129 Stat. 584 (2015) ...........................................................................................5, 6

89 Fed. Reg. 1445 (Jan. 10, 2024) ...........................................................................................5, 6

Fed. R. Evid. 609(a) .....................................................................................................................8

Plaintiff Federal Trade Commission ("FTC"), by and through its undersigned counsel, hereby submits its response to Defendant Braun's post-trial brief. (ECF No. 208.) Defendant Braun offers no evidence or any principled reason to disregard the jury's findings as to the amount of consumer harm caused by his violations or the appropriate amount of civil penalties for those violations. Accordingly, at a minimum, the Court should enter those amounts as the amount of monetary relief under Section 19 of the FTC Act, 15 U.S.C. § 57b ("Section 19 redress judgment") and civil penalties under Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A) ("civil penalty judgment") to be imposed against Defendant Braun for his violations of Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 5821. And, as discussed in the FTC's post-trial brief (ECF No. 207), there is ample evidence for the Court to enter an even higher Section 19 redress judgment and civil penalty judgment.

## I. Defendant Braun Offers No Reason to Reduce the Jury's Finding of Section 19 Consumer Harm

For the first time, and with no evidence, expert or otherwise, in support, Defendant Braun argues that the 95% confidence intervals Dr. McAlvanah used are incorrect, and that dramatically larger sample sizes would have been needed to achieve a 95% confidence interval. Leaving aside the complete lack of support for such a position and that it was not raised by a competing expert[1] or even in Dr. McAlvanah's cross examination, Braun is simply wrong as a matter of statistics. (*See* Decl. Dr. McAlvanah at 2-4 ¶¶ 4-10 (attached as Exhibit A).)

---

[1] Indeed, as Dr. McAlvanah testified, Paul Ribaudo (who had been retained by now-settled defendants RCG Advances and Robert Giardina as a competing expert) had no criticism of the methodology by which Dr. McAlvanah selected the random sample or the methodology by which Dr. McAlvanah determined the mean over-collection and under-funding violations rates or associated confidence intervals. (Trial Tr. at 50:25 – 51:1-6, 71:10-17.)

1

The formulas and numbers in Defendant Braun's brief are relevant to what is called a "specific hypothesis test," a test that would not be appropriate for calculating the harm Defendants caused and is not the test Dr. McAlvanah sought to perform. (*See id.* at 2 ¶ 4, 4 ¶ 11.) Dr. McAlvanah's analysis estimated the instances of under-funding and over-collection, and the mean amounts of each. A specific hypothesis test would only be appropriate to answer specific questions, such as "was the over-collection rate in 2017 different from the rate in 2018?" (*Id*. at 2 ¶ 4, 4 ¶ 11.) Such a question is not relevant to determining the amount of consumer harm Defendants caused. (*Id*. at 4 ¶ 11.)

Defendant Braun also argues that because the FTC did not call any individual consumer-victims to testify and instead relied upon Dr. McAlvanah's calculations, that somehow the FTC failed to demonstrate to the jury that any actual consumer harm occurred. (ECF No. 208 at 3.) The jury's finding that Defendant Braun caused $3.5 million in consumer harm refutes that claim. As does the Court's conclusions at summary judgment that Defendant Braun is individually liable for Defendants' violations of the GLB Act and that he inflicted serious harm on consumers. (ECF No. 179 at 32, 44.)

Moreover, the Second Circuit (like many other circuits) has held that the FTC does not need to show each individual consumer's harm as that "would be an onerous task with the potential to frustrate the purpose of the FTC's statutory mandate." *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014). As the Eighth Circuit explained:

> It would be virtually impossible for the FTC to offer such proof, and to require it would thwart and frustrate the public purposes of FTC action. This is not a private fraud action, but a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors. It would be inconsistent with the statutory purpose for the court to require proof of subjective reliance by each individual consumer.

*FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991); *see also FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993). Instead, the FTC must make a reasonable estimate of the consumer harm, after which the burden shifts to Defendant Braun to show that such estimate was not incorrect or not reasonable. *FTC v. Moses*, 913 F.3d 297, 310 (2d Cir. 2019); *FTC v. Shkreli*, 581 F. Supp. 3d 579, 640-41 (S.D.N.Y. 2022).

Here, the FTC made that reasonable estimate by means of Dr. McAlvanah's statistical analysis of Defendants' deals through use of random samples.[2] With respect to over-collection, Dr. McAlvanah testified that that for 14 out of 52 consumers in the random sample,[3] the amount that Defendants actually withdrew from consumers' bank accounts was more than the agreed upon Total Purchase Amount set forth in the merchant agreements, which implies a 26.9% over-collection incidence rate with a 95% confidence interval of 15.6% to 41.0%, and that the mean amount over-collected was $9,397. (Trial Tr. at 58:6-19, 64:4-7; FTC Trial Ex. 02 at 4; FTC Trial Ex. 04; FTC Trial Ex. 06.) Applying these calculations to the sub-population of 918 deals

---

[2] Where the FTC seeks to recover *all* of a defendant's revenues as consumer injury, it may establish a presumption that every consumer was harmed by showing that the defendant made material misrepresentations that were widely disseminated and that consumers actually paid money to the defendant. *See, e.g. BlueHippo Funding*, 762 F.3d at 244. Here, however, the FTC is not seeking to recover all of Defendants' revenues but only those resulting from Defendants' over-collections and under-funding; thus, the use of random samples to provide a reasonable estimate of those amounts is appropriate under Second Circuit case law. *Moses*, 913 F.3d at 310; *Shkreli*, 581 F. Supp. 3d at 640-41; *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 220 (D. Mass. 2009) (holding that FTC's damages calculation need not be "precisely calculated; a sound estimate will suffice").

[3] The consumers from which Defendants over-collected in the random sample include Amarachi, Inc. ($1,455 over-collected), Edna Anders d/b/a Anders Livery & Delivery ($2,663), Colins Painting Co. ($783), Crossway Transport, LLC ($10,350), Domaci, LLC ($760), E Logic, LLC ($1,030), First Class Express, LLC ($4,733), Dandra Barnes d/b/a Integrity Grass Sales ($1,901), Items 4 Online Sellers Corp. ($4,986), JMC Concepts, Inc. ($5,070), KLS Trucking, Inc. ($4,008), Sally Williamson and Associates, Inc. ($5,020), Shiv Kupra Cash Services, LLC ($13,510), and Truman Marketing, LLC/Blue Mountain, Inc. ($75,290). (*See* FTC Trial Ex. 01 at 20-21; FTC Trial Ex. 44.) These are real businesses that suffered real harm from Defendants' over-collection practices.

without least one transaction after June 10, 2017, means that Defendants most likely over-collected from at least 246 consumers and as many as 376 consumers, causing $2,311,662 and as high as $3,533,272 in consumer harm. And although Defendant Braun suggests now that the data upon which Dr. McAlvanah relied was faulty, he offered no evidence to challenge that data or refute Dr. McAlvanah's determinations.

Meanwhile, Dr. McAlvanah also testified that for 9 out of 19 consumers in the random sample,[4] the amount that Defendants actually funded to consumers was less than the agreed upon Total Purchased Price less contractual fees set forth in the merchant agreements, which implies a 47.4% under-funding incidence rate with a 95% confidence interval of 24.4% to 71.1%, and that the mean amount under-funded was $3,022. (Trial Tr. at 93:20-25, 94:1-3, 97:19-22; FTC Trial Ex. 02 at 9; FTC Trial Ex. 08; FTC Trial Ex. 10.) Applying these calculations to the sub-population of 768 deals with the first transaction after June 10, 2017, means that Defendants most likely under-funded at least 364 consumers and as many as 546 consumers, causing $1,100,008 and as high as $1,650,012 in consumer harm. Again, Defendant Braun has offered no evidence to refute these determinations. And nothing in his post-trial brief alters the conclusions about which Dr. McAlvanah testified. (Decl. Dr. McAlvanah at 4 ¶ 12.)

In sum, Defendant Braun presented no evidence or argument warranting any reduction to the jury's determination that Defendants caused at least $3.5 million in consumer harm. And as

---

[4] The consumers for which Defendants under-funded in the random sample include Amarachi, Inc. ($101 under-funded), Bellaview, Inc. ($1,000), Creative Renovations, LLC ($10,000), Domaci, LLC ($200), Favored Express, LLC ($1,499), Shiv Kupra Cash Services, LLC ($2,500), Society Management Group, LLC ($7,200), The Espinosa Group, Inc. ($4,500), and Tropical Caribbean Cuisine, LLC ($200). (*See* FTC Trial Ex. 01 at 23-24; FTC Trial Ex. 44; FTC Trial Ex. 45 at 2-53.) These are real businesses that suffered real harm from Defendants' under-funding practices.

the FTC demonstrated in its post-trial brief (ECF No. 207 at 5-7) that amount could be as large as $5,183,284.

## II. Defendant Braun Offers No Reason to Reduce the Jury's Finding of the Appropriate Civil Penalty Amount or Disregard the Factors Not Considered by the Jury

Neither does Defendant Braun offer any credible evidence or argument warranting reduction of the jury's determination of a $7,500,000 civil penalty. He concedes that consideration of his ability to continue to do business warrants no downgrade from the maximum civil penalty amount. (ECF No. 208 at 78.) And he identifies no other factors justice may require justifying any downgrade. Indeed, "the egregiousness of Mr. Braun's conduct, the seriousness of the harm he inflicted on consumers, his continuing denial of his role in the misconduct, and the sheer number of times Mr. Braun engaged in misconduct" (ECF No. 179 at 44) are all factors weighing heavily towards a substantial civil penalty.

### A. The Applicability of Revised Civil Penalty Maximum

As the FTC discussed in its post-trial brief, the civil penalty maximum under Section 5(m)(1)(A) of the FTC Act increased to $51,744 on January 10, 2024. (ECF No. 207 at 7 (citing 89 Fed. Reg. 1445, 1446) (Jan. 10, 2024).) Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 101 P.L. 410, 104 Stat. 890 (1990), as amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 114 P.L. 74, Title VII, § 701(b), 129 Stat. 584 (2015), as amended ("FCPIAA"), directs federal agencies to adjust the civil penalty maximums under their jurisdiction for inflation every January.[5] Section 6 of the

---

[5] Section 5 of the FCPIAA states that the adjustment for inflation is based on the cost-living-adjustment calculated as the percent change between the U.S. Department of Labor's Consumer Price Index for all-urban consumers ("CPI-U") for the month of October preceding the date of adjustment, and the CPI-U for the October of the prior year. Based on that formula, the cost-of-living adjustment multiplier for 2024 is 1.03241. 89 Fed. Reg. 1445, 1446 (Jan. 10, 2024).

5

FCPIAA states that "[a]ny increase under this Act" shall apply to penalties "whose associated violations predated such increase, which are assessed after the date the increase takes effect." *See also* 89 Fed. Reg. at 1447 ("These new penalty levels apply to civil penalties assessed after the effective date of the applicable adjustment, including civil penalties whose associated violation predated the effective date.") These revised civil penalty maximum amounts were published on and are effective as of January 10, 2024. 89 Fed. Reg. at 1446. Because the Court will be assessing civil penalties against Defendant Braun after January 10, 2024, and because the jury considered a lower civil penalty maximum (ECF No. 205 at 14), the revised amount, $51,744, is the applicable civil penalty maximum and warrants a 3.241% increase to the jury's award.

### B. Defendant Braun's Substantial Culpability Is Not Lessened Because Others Also Had Some Degree of Culpability

Like a motorist trying to avoid a speeding ticket by arguing that other people were also speeding, Defendant Braun argues that the actions of his co-defendants Mr. Giardina and Mr. Reich somehow should reduce his civil penalty. Defendant Braun argues that the trial testimony showed that his name never appeared on relevant documents. (ECF No. 208 at 6.) The FTC never disputed that fact but presented evidence, with which the jury agreed, that that fact was not relevant as he directed others to sign those documents. (Trial Tr. at 195:2-10, 196:13-21, 197:21-25 – 198:1-9, 23-25, 199:12-25 – 200:1-3, 209:12-15.)

Defendant Braun also argues that the FTC failed to show any evidence substantiating higher culpability for him than Messrs. Giardina or Reich. (ECF No. 207 at 6.) On the contrary, substantial evidence establishes Defendant Braun's culpability. First, the Court already found, which the jury accepted as established, that Defendant Braun "had the authority to control almost every aspect of what the defendants did" and "directly participated in over-withdrawing from

6

customers' bank accounts and under-funding the MCA Agreements." (ECF No. 179 at 32.)
Second, Mr. Reich testified that Defendant Braun was the boss and made all the decisions, (Trial Tr. at 222:25–223:1-12), corroborating the adverse inference drawn from Mr. Giardina's testimony to the same effect. (Trial Tr. at 193:10-25–194:1-11.) Finally, the FTC presented evidence of numerous emails from Defendant Braun to his subordinates either instructing them to engage in violative over-collection or under-funding practices or boasting that he had engaged in them. (*See, e.g.*, FTC Trial Ex. 51; FTC Trial Ex. 53; FTC Trial Ex. 54; FTC Trial Ex. 56; FTC Trial Ex. 62; FTC Trial Ex. 63; FTC Trial Ex. 64; FTC Trial Ex. 65.)

In addition, Defendant Braun is factually incorrect when he claims that Mr. Giardina settled with the FTC for only $1.3 million. (ECF No. 208 at 6.) In fact, a monetary judgment of $2,713,705 was entered against him. (ECF No. 127 at 8-9 (Section VI.A).)[6] In any event, the amounts for which Defendant Braun's co-defendants settled has no bearing on Defendant Braun's culpability or the appropriate civil penalty amount determined at trial.

### C. Defendant Braun's Lengthy History in the Merchant Cash Advance Industry Warrants a Higher Civil Penalty

As the FTC discussed in its post-trial brief, Defendant Braun has a long history in the merchant cash advance industry, working with multiple companies alleged to have engaged in illegal conduct. (ECF No. 207 at 9-11.) Defendant Braun makes no argument that this factor weighs in favor of anything less than the maximum amount, asserting only that his money laundering conviction is not relevant to his history of prior such conduct. His lengthy

---

[6] In addition, Mr. Giardina is required to transfer to the FTC as a civil penalty the balance of a client trust escrow account in his name. (*Id.* at 11 (Section VI.F).) The RCG Defendants wired over $9 million to that escrow account but over $4.4 million is unaccounted for. (ECF No. 171 at 2.) If recovered, that money would be turned over to the FTC.

involvement with Defendants and other merchant cash advance providers, however, warrants a significantly larger civil penalty.

### D. Defendant Braun Offers No Credible Evidence as to His Inability to Pay a Significant Civil Penalty

Defendant Braun argues that it "has been well established that [he] holds no financial assets." (ECF No. 208 at 7.) Defendant Braun, however, presented no evidence of that at trial. Instead, for the first time he now submits a bare-bones, self-serving affidavit in which he claims he holds "almost no financial assets," has "no ability to pay" monetary damages or civil penalties, and that to do so would "render me insolvent." (ECF No. 208-1 at 2.) But he has no evidence to back his claims—no bank statements, no wage statements—nothing to corroborate his bald assertions.

As the Court is aware, Defendant Braun was convicted of money laundering, specifically 18 U.S.C. § 1956(a)(1)(B)(i), which related to concealing or disguising the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. (ECF No. 188-1 at 1.) This conviction calls into question Defendant Braun's character for truthfulness, particularly related to the availability of funds. *See* Fed. R. Evid. 609(a). Moreover, in a state-court action filed by the New York Attorney General that parallels the FTC's action, Defendant Braun also submitted a self-serving affidavit, which Judge Borrok noted several times was perjurious. (ECF No. 188-2 at 9 n.11 ("The Court notes that certain of the [defendants] have also submitted perjurious affidavits in this case. For example, Mr. Braun indicates in his affidavit that he was merely the underwriter (NYSCEF Doc. No. 676 ¶ 6). This is false."), 23 n.19 ("The Court notes that this, among other things in the record, further established beyond all doubt that Mr. Braun's affidavit . . . is perjurious.").) Given the complete

lack of corroboration and Defendant Braun's history of dishonesty, the Court need not credit Defendant Braun's latest self-serving affidavit.

And as the FTC demonstrated in its post-trial brief, the evidence shows that Defendant Braun does have the ability to pay a significant civil penalty.[7] (ECF No. 207 at 8-9.) Thus, the statutory factor, ability to pay, warrants a significant civil penalty.

## III. Conclusion

In sum, the evidence presented at trial fully supports the Court using the jury's verdict of $3.5 million for the Section 19 redress judgment and $7.5 million for the civil penalty judgment.[8] Defendant Braun offers no evidence or any principled argument to reduce these amounts. On the contrary, as the set forth in the FTC's post-trial brief, the evidence supports the Court entering a Section 19 redress judgment of at least $3.5 million and as high as $5,183,284 and a civil penalty judgment of at least $7,743,075 and as high as $19,357,687, $47,242,272, or even $66,749,760. Accordingly, the FTC respectfully requests that the Court enter the FTC's proposed order for monetary judgment and civil penalties.

---

[7] Among other things, Ms. Kwok testified at trial that Richmond Capital transferred approximately $44 million to a company nominally controlled by Defendant Braun's father and former brother-in-law, of which at least $3 million was wire transferred back to Defendant Braun's wife. (Trial Tr. at 146:25 – 147:1, 148:2-3, 148:9 – 149:8, 151:12-20; FTC Trial Ex. 69; FTC Trial Ex. 70; *see also* ECF No. 109-53 at 186 (Bloomberg reporter noted that in November 2021, Defendant Braun was driving a Bentley Bentayga SUV), 198 ("Braun's associates say he keeps no assets in his name, anyway. If he's assessed a penalty, he can plead poverty and avoid paying it." And "He was photographed recently wearing Gucci slippers and what looked to be a Patek Philippe Aquanaut watch, worth about $120,000.").) Although FTC Trial Exs. 69 and 70 were ultimately not admitted at trial, they and the Bloomberg article would have been used to impeach Defendant Braun had he offered trial testimony similar to his affidavit.

[8] Defendant Braun makes reference to a "9% interest" rate. (ECF No. 208 at 8.) The FTC assumes he is referring to the post-judgment interest rate set by 28 U.S.C. § 1961(a). Based on the weekly average 1-year constant maturity Treasury yield published by the Federal Reserve today, that rate is 4.83%. *See* https://www.federalreserve.gov/releases/h15/.

Dated: January 24, 2024                                     Respectfully Submitted,

                                                  */s/Gregory A. Ashe*
                                                  Gregory A. Ashe
                                                  Julia E. Heald
                                                  Federal Trade Commission
                                                  600 Pennsylvania Ave. NW
                                                  Washington, D.C. 20580
                                                  gashe@ftc.gov
                                                  jheald@ftc.gov
                                                  (202) 326-3719 (Ashe)
                                                  (202) 326-3589 (Heald)

                                                  *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I, Gregory A. Ashe, hereby certify that on January 24, 2024, I electronically filed **FTC'S REPLY TO DEFENDANT BRAUN'S POST-TRIAL BRIEF** with the Clerk of the Court using its CM/ECF system, which will send notification of such filing to all counsel of record.

                                                  */s/Gregory A. Ashe*
                                                  GREGORY A. ASHE