UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>RCG ADVANCES, LLC et al.<br><br>  Defendants. | Case No. 1:20-cv-04432-JSR<br><br>**DEFENDANT JONATHAN BRAUN'S REPLY TO PLAINTIFF'S POST-TRIAL BRIEF** |

## Table of Contents

Preliminary Statement..................................................................................1

Argument.................................................................................................1
    I. Plaintiff's Expert Witness' Random Sample was Statistically
       Inaccurate and not an Accurate Approximation of Alleged Harm
       to Consumers Pursuant to Section 19, 15 U.S.C. § 57b or of violations
       of Section 521 of the GLB Act......................................................1
    II. Consideration of all Statutory Factors Warrants a Significantly Lower
        Civil Penalty Judgment..............................................................5
          a. The Civil Penalty Maximum Increase Should Not Apply
             Retroactively to Defendant Braun...........................................5
          b. Plaintiffs Have Not Conclusively Proven that Defendant Braun
             has the Ability to Pay the Civil Penalty....................................5
          c. Defendant Braun's Prior Conduct is Not Relevant to this Matter......6
          d. Defendant Braun is Not More Culpable than the Other
             Individual Defendants.......................................................7
          e. The Permanent Injunction issued In This Matter Has An Effect
             on Defendant Braun's Ability to Continue to Work in the
             Merchant Cash Advanced Business, Warranting a Lower
             Civil Penalty..................................................................8

Conclusion..............................................................................................8

## Table of Authorities

*Cases*

*FTC v. BlueHippo Funding*, LLC,
   762 F.3d 238 (2nd Cir. 2014) .................................................................................. 1
*FTC v. Figgie Int'l*,
   994 F.2d 595 (9th Cir. 1993) .................................................................................... 1
*FTC v. Kuykendall*,
   371 F.3d 745 (10th Cir. 2004) .................................................................................. 2
*McGregor v. Chierico*,
   206 F.3d 1378 (11th Cir. 2000) ................................................................................ 2
*FTC v. Consumer Def., LLC*,
   2022 U.S. Dist. LEXIS 234261. (NV 2022) ............................................................ 1


*Statutes*

15 U.S.C. §57b(a)(1), (b) .............................................................................................. 1
15 U.S.C. § 57b ............................................................................................................. 1
15 U.S.C. § 57b(b) ........................................................................................................ 2
15 U.S.C. § 5821 ........................................................................................................... 1

## PRELIMINARY STATEMENT

Defendant Jonathan Braun ("Mr. Braun"), by and through his undersigned counsel, hereby submits his Reply Memorandum in response to Plaintiff's ("FTC") post-trial brief regarding the amount of monetary relief under Section 19 of the FTC Act, 15 U.S.C. § 57b ("Section 19 redress judgment") and civil penalties under Section 5(m)(1)(A) of the FTC Act § 45(m)(1)(A) ("civil penalty judgment") to be imposed against Mr. Braun for his violations of Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 5821.

## ARGUMENT

**I.    Plaintiff's Expert Witness' Random Sample was Statistically Inaccurate and not an Accurate Approximation of Alleged Harm to Consumers Pursuant to Section 19, 15 U.S.C. § 57b or of violations of Section 521 of the GLB Act**

Pursuant to the Federal Trade Commission Act ("FTC Act") §19(a)(1), the FTC can obtain an award of monetary relief "necessary to redress injury to consumers," including refunds and payments of damages.[1] Relief must be distributed directly to harmed consumers. An approximation of *likely* harm is insufficient under §19 redress judgment or §521 of the GLB Act to prove that an award of Sixty-Six Million, Seven Hundred and Forty-Nine Thousand, Seven Hundred, and Sixty ("$66,749,760.00") Dollars is warranted.

The Court held in *Federal Trade Commission v. Consumer Defense, LLC*,[2] "in terms of redress, the final order allows 'consumer redress and any attendant expenses for the administration of any redress fund.'" Consumer redress and attendant expenses are clearly permitted as part of a monetary award.[3] The Second Circuit requires that the Federal Trade Commission calculate damages to ensure that all of the consumers who were presumed to have relied on the defendant's misrepresentations receive "full compensation." *FTC v. BlueHippo*

---

[1] 15 U.S.C. §57b(a)(1), (b).
[2] *FTC v. Consumer Def., LLC*, 2022 U.S. Dist. LEXIS 234261. (NV 2022)
[3] See 15 U.S.C. § 57b(b); *FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993).

*Funding*, LLC, 762 F.3d 238, 244 (2nd Cir. 2014); *see also FTC v. Kuykendall,* 371 F.3d 745 (10th Cir. 2004). The Tenth Circuit, in *Kuykendall*, and the Eleventh Circuit, in *McGregor v. Chierico*, 206 F.3d 1378, 1383-84 (11th Cir. 2000), held that the total gross receipts from all consumers entitled to compensation should serve as the baseline for calculating the actual loss to consumers caused by the defendants' contemptuous conduct. ("We can see no basis for allowing the [FTC] to keep money in excess of what it reasonably spends to [provide redress]...."). "Section 19 would permit only 'consumer redress and reasonable attendant expenses for the administration of any redress fund.'"[4]

The FTC's expert, Patrick McAlvanah ("McAlvanah"), testified that he relied on a random sample to base his calculations of the average harm allegedly incurred by consumers. McAlvanah admitted that he did not review any MCA agreement nor any of its specific terms, or if any of the initial advances made by RCG Advances LLC ("RCG") to any customer were ever repaid. Any such repayment made to a customer without proof of repayment by a customer would be a windfall to that customer. No such proof of repayment was presented to the advisory jury nor to the court at the damage trial. Random samples can be useful tools to give a valid estimation of damages when a sufficient sample size is used; however, McAlvanah failed to extract an adequate sample from the data of the 1,499-deal population. He also failed to consider the nature of the data presented when he decided to draw such a sample. Furthermore, the random sample extrapolated by McAlvanah that was provided was statistically insignificant and not representative of the true population. It is a statistical fact that any given population requires a minimum necessary sample size, based on a variety of factors, to be proportional to the population and valid for conducting statistical analysis. To calculate the minimum necessary sample size ($n$), one multiplies a standard score (z-score), that dictates how far the raw score is

---

[4] See 15 U.S.C. § 57b(b).

from the mean, with the proportion of the population (p), which is assumed to be p = 0.50 for maximum heterogeneity, divided by the squared tolerated margin of error (E) (i.e., the degree of error in results received from random sampling). For a population of 1,499 deals, the above calculation determines that at a 95% confidence interval (i.e., the results obtained have only a 5% probability of being due to chance and a 95% probability of being due to a tangible, observable effect) a sample size of 385 is necessary.[5] *https://goodcalculators.com/sample-size-calculator*. If a more stringent (tighter) confidence interval were used (e.g., 99% confidence interval) a sample size of 664 is necessary to obtain statistically significant results.[6] McAlvanah relied on a sample size of 87 for a purported 95% confidence interval which is far below the minimum necessary to obtain a statistically significant result. McAlvanah's flawed sampling produced a statistically inaccurate result and should not be relied upon by the Court to assess monetary damages.

McAlvanah and FTC investigator, Elizabeth Kwok ("Kwok"), testified at trial that conducting a "manual review" (i.e., tracing the contracted amounts and actual amounts funded and/or collected for each merchant) is a "very laborious process." (Trial Tr. 172:18-23). A manual review of the entire population provides the most accurate assessment of monetary damages. If the FTC did not want to conduct a manual review, then it should have taken an adequate sample size to reach an accurate amount of damages. McAlvanah's calculations were

---

[5] To calculate the minimum sample size necessary to obtain significant results at a 95% confidence interval
$n = [(z^2)(p)(1-p)]/E^2$
$n = [(1.96^2)(0.5)(1-0.5)]/(0.05)^2$
$n \approx 385$
where:
$n$ = sample size;
$z$ = z-score obtained from a standard z-table;
$p$ = estimated portion of the population (p = 0.5);
E = tolerated margin of error (5%)

[6] 99% confidence interval
$n = [(z^2)(p)(1-p)]/E^2$
$n = [(2.576^2)(0.5)(1-0.5)]/(0.05)^2$
$n \approx 664$

3

aggregate and not particularized due to inherent deviations among individual MCA contracts. A manual review is necessary to conclusively determine that a particular consumer was deprived of the appropriate/promised funding and to ensure that discrepancies in funding/collection are not due to the agreed-upon fees outlined in Appendix A of the Merchant Cash Advance Agreements. In the absence of a manual review or the use of a proper sample size, McAlvanah and the FTC cannot identify particular consumers who were allegedly harmed by Mr. Braun's actions.

Further, the FTC risks distributing "windfall" payments to consumers who have not been harmed or deprived of the promised funding. It would be detrimental if a consumer, who received the appropriate funding, pursuant to their MCA Agreement, is distributed redress payments due to the FTC's vague estimate of average harm, the consumer(s) will receive windfall payments. It would contradict the purpose and legislative intent of §19 and §5 and not truly remedy the alleged consumer harm. It is the FTC's burden of proof to show which particular RCG consumers were harmed and to demonstrate damages within the respective three- and five-year statute of limitations. It was concluded by the FTC by virtue of its admission that it seeks damages up to November 2018 in its Amended Complaint, that Braun's liability is limited to approximately 17 months under §19 of the FTC Act and two and a half years under §5 of the GLB Act. The use of 1,290 violations by McAlvanah does not have a solid foundation under accepted statistical guidelines. His report stated that there was at least one violation of §19 and §5 is a far cry from the 1,290 violations claimed by the FTC for the calculation of damages.

## II. Consideration of all Statutory Factors Warrants a Significantly Lower Civil Penalty Judgment

### A. The Civil Penalty Maximum Increase Should Not Apply Retroactively to Defendant Braun

The advisory jury issued its recommendations with respect to the compensatory and penalty damages on January 10, 2024. Coincidentally, the effective date of the amendment to the statute that provided for an increase in the penalty damages was the same day. Resultantly, the advisory jury was unaware of the increase in the penalty damage per violation from $50,120 to $51,744. Additionally, Braun has contested the 1,290 violations based upon the FTC's expert's report and testimony being deficient in that its so-called random sample did not meet the criteria established for statistical accuracy. Further, the FTC's expert qualified his report as related to the number of violations by stating that there was at least one violation of the FTC Act and the GLB Act, so that the increase of $1,624 per violation results in $2,094,960 in the requested penalty damages by the FTC which, in light of the circumstances, should not be imposed on Braun. It is respectfully submitted in the interest of justice that the Court not use the increase in the penalty damage to make a final determination of damages.

### B. Plaintiffs Have Not Conclusively Proven that Defendant Braun has the Ability to Pay the Civil Penalty

Under this factor, which the advisory jury was not made aware of, the FTC has not proven that Mr. Braun has the ability to pay the civil penalty. Nothing in evidence constitutes any showing of his financial position, assets, or sources of income that would render him capable of paying the FTC's requested judgment. The FTC contends that because Mr. Braun allegedly had authority and control over RCG Advances, LLC, ("RCG"), he must have earned a substantial amount of money. However, the FTC failed to consider that Mr. Braun was terminated from RCG in or about November 2018, and has been incarcerated for a significant period thereafter.

5

Mr. Braun holds no financial assets and has a low annual income. Mr. Braun is not the beneficiary of any will or trust fund, his only checking account is nearly empty, and he owns no real property or any other tangible asset. He is currently under the supervision of the federal authorities and is subject to the Government's Supervised Release Program, and is making payment of small periodic payment of a court imposed payment as a result of his prior unrelated criminal conviction which is based upon its ability to pay. The FTC failed to meet its evidentiary burden to prove Mr. Braun's capacity to pay the exorbitant civil penalties that were requested by the FTC. The court excluded any reference to Kessef Capital LLC ("Kessef") or to Mr. Braun's relatives, as the FTC could not connect any proof or relevance of Kessef to their claims in this case. Further, Mr. Braun is not a named party to any complaints regarding alleged unfair collection practices and such complaints have already been deemed irrelevant in this matter. The FTC has not shown that Braun has any material assets or has disposed of any such assets that would constitute conclusive evidence of Mr. Braun's ability to pay.

### C. Defendant Braun's Prior Conduct is Not Relevant to this Matter

Mr. Braun's prior conduct should not be given any weight as it does not relate to this matter. The FTC has failed to create a causal connection between his prior conviction of money laundering approximately 8 years ago and his alleged wrongdoings in this matter. Further, the FTC has only stated allegations of a "lengthy history" of wrongful conduct in the MCA industry but has not proven this at trial. Pursuant to the three- and five-year statute of limitations, Mr. Braun's alleged history in the MCA industry should not be considered a factor as it is outside the statutory period, not proven as a fact, nor appears in the record. The companies listed in the FTC's post-trial brief are not defendants in this matter and such allegations should have no bearing on the pertinent issues in this case. Considering Mr. Braun's prior conviction is highly

6

prejudicial and without merit. It should not be given any weight in the Court's final determination of damages.

Defendant Robert Giardina's ("Giardina") pleading of the Fifth Amendment on direct examination by the FTC should not be taken as an adverse inference to Mr. Braun without giving consideration of the inverse implication. In fact, Giardina's testimony should be viewed favorable as to Braun. The FTC had the burden in this matter and their own witness took the fifth amendment. The questions asked during cross-examination of Giardina, were nearly inversely identical. If the Court takes any adverse inference against Braun, the Court should also take any adverse inference in support of Braun.

**D. Defendant Braun is Not More Culpable than the Other Individual Defendants**

Mr. Braun worked as an underwriter and was not shown by the FTC to have engaged in overcollections and/or underfunding with any specific customers at trial. As the testimony at trial established, Mr. Braun's name did not appear on any Actum Processing documents or other pertinent financial documents. The FTC could not establish one instance in which Mr. Braun purposefully over-collected and/or underfunded a specific merchant account that was not in accordance with the signed Merchant Cash Advance ("MCA") Agreement.  The FTC did not call a single "harmed" consumer to appear as a witness at trial. As the evidence established, Giardina's name appeared on all of the documents pertaining to Actum Processing in which he was listed as an owner of RCG. Therefore, the FTC failed to show any evidence substantiating a higher culpability for Mr. Braun as opposed to the other individual defendants.

Mr. Tzvi Reich (Steven Reich) also agreed to testify against Mr. Braun at trial and stated in his testimony that he paid $675,000 in full settlement of the FTC claims, which are the same claims against Mr. Braun. The record shows that Mr. Braun's Co Defendants Messrs. Giardina

and Reich failed to pay the full sum of approximately $2,000,000 to the FTC while both admitted owners of RCG did not pay the full sum of $1,300,000 to the FTC so the deficient amount while the FTC is still seeking the sum of approximately $70,000,000 against Braun when the advisory jury recommended the sum of $11,000,000 for both actual damages and civil penalties.

### E. The Permanent Injunction issued In This Matter Has An Effect on Defendant Braun's Ability to Continue to Work in the Merchant Cash Advanced Business, Warranting a Lower Civil Penalty

Pursuant to this Court's permanent injunction issued against Mr. Braun on September 27, 2023, Mr. Braun is permanently enjoined from conducting business in the MCA industry (ECF No. 179). Mr. Braun also spent about one year and two months in Federal custody. The FTC has not shown that Braun has any material assets or has disposed of any such assets to pay any Judgment rendered against it by the FTC. Finally, RCG Advances LLC, which includes Richmond Capital Group LLC d/b/a Ram Capital Funding and Viceroy Capital Funding, have all discontinued the operation of their business without any assets being distributed to Mr. Braun. The civil penalty judgment has no bearing on Mr. Braun's ability to continue to conduct business in the MCA industry; therefore, it should warrant a lower civil penalty since it is a non-applicable factor. The FTC failed to present any evidence at trial to substantiate that this factor should apply to the calculation of a civil penalty judgment. For the FTC to claim 1,290 violations without any evidentiary support from its own expert witness or its investigator, or even from Reich, is both excessive and against the interest of justice as its claim is 35 times the aggregate settlement amount of $2,000,000 for former Defendants Giardina and Reich and RCG.

### III. Conclusion

For the foregoing reasons, it is respectfully submitted that the FTC failed to meet its evidentiary burden to prove the need for an increased judgment beyond the advisory jury's

recommendation or for even as much as the $11,000,000 recommended by that jury where the former Co Defendant and the FTC agreed to $2,000,000. The within application is made to substantially reduce the $11,000,000.00 damage award recommendation of the advisory jury plus 9% interest per annum to a sum that the Court determines to be fair and reasonable and which Mr. Braun may be able to pay. Mr. Braun intends to become a useful part of society and to benefit his wife and children and himself, and for such other relief as to this Court may seem just and proper.

Dated: New York, New York
        January 24, 2024

**Respectfully Submitted,**
**Aidala, Bertuna & Kamins, P.C.**

By: *Michael DiBenedetto*
    Michael DiBenedetto

By: *[signature]*
    Joseph P. Baratta

cc:    Gregory Ashe, Esq.
       Julia Heald, Esq.
       Federal Trade Commission
       600 Pennsylvania Avenue NW
       Washington, DC 20580
       (202) 326-3719